FILED
2022 Jan-05  AM 11:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A: Volume 2

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | SUMMONS<br>- CIVIL - | Court Case Number<br>25-CV-2016-900001.00 |
| --- | --- | --- |

**IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA**
**MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT**

**NOTICE TO:** JEFFREY HUNTER WHITLOCK, 1707 HIGHWAY 31 SOUTH, SAGINAW, AL 35137

<em>(Name and Address of Defendant)</em>

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), KENDALL A. LEE                                                                                      ,

<em>[Name(s) of Attorney(s)]</em>

WHOSE ADDRESS(ES) IS/ARE: POST OFFICE BOX 661228, BIRMINGHAM, AL 35266                                           .

<em>[Address(es) of Plaintiff(s) or Attorney(s)]</em>

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:**

[✓] You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

[ ] Service by certified mail of this Summons is initiated upon the written request of _____

pursuant to the Alabama Rules of the Civil Procedure.

<em>[Name(s)]</em>

| 10/22/2018 10:10:10 AM | /s/ LISA MCSWAIN | By: _____ |
| --- | --- | --- |
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

[ ] Certified Mail is hereby requested.          _____

<em>(Plaintiff's/Attorney's Signature)</em>

## RETURN ON SERVICE

[ ] Return receipt of certified mail received in this office on _____ .

<em>(Date)</em>

[ ] I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,

<em>(Name of Person Served)</em>                                    <em>(Name of County)</em>

Alabama on _____ .

<em>(Date)</em>

_____                                    _____

<em>(Address of Server)</em>

_____          _____

<em>(Type of Process Server)</em>          <em>(Server's Signature)</em>          _____

<em>(Server's Printed Name)</em>          <em>(Phone Number of Server)</em>

ELECTRONICALLY FILED
10/22/2018 2:10 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

**State of Alabama**
**Unified Judicial System**
Form C-34  Rev. 4/2017

# SUMMONS
## - CIVIL -

**25-CV-2016-900001.00**

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA
## MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT

**NOTICE TO:** JEFFREY HUNTER WHITLOCK, 1707 HIGHWAY 31 SOUTH, SAGINAW, AL 35137

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), KENDALL A. LEE

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: POST OFFICE BOX 661228, BIRMINGHAM, AL 35266

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☑ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☐ Service by certified mail of this Summons is initiated upon the written request of _____
pursuant to the Alabama Rules of the Civil Procedure. *[Name(s)]*

10/22/2018 10:10:10 AM          /s/ LISA MCSWAIN          By: _____
*(Date)*                        *(Signature of Clerk)*          *(Name)*

☐ Certified Mail is hereby requested.

_____
*(Plaintiff's/Attorney's Signature)*

### RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____ .
*(Date)*

☑ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

JEFFREY HUNTER WHITLOCK in SHELBY _____ County,
*(Name of Person Served)*        *(Name of County)*

Alabama on 10-22-18 .
*(Date)*

Special Process Server          *Stephl Kelly*          600 Vestavia Pkwy, Ste
*(Type of Process Server)*      *(Server's Signature)*          *(Address of Server)*

Stephan Kelly          B'ham, Al. 35216
*(Server's Printed Name)*          205- 326-6600
*(Phone Number of Server)*

**25-CV-2016-900001.00**

MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT

C001 - ALBINA AGDASOVNA SHARIFULLINA, DECEASED   v.          D003 - JEFFREY HUNTER WHITLOCK
MARINA STE
*(Plaintiff)*          *(Defendant)*



## SERVICE RETURN COPY

ELECTRONICALLY FILED
10/30/2018 7:06 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

|  |  |  |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| As Administrator and Personal | ) | |
| Representative of the ESTATE OF | ) | |
| ALBINA AGDASOVNA | ) | |
| SHARFIFULLINA, deceased, | ) | |
|  | ) | |
|     Plaintiff, | ) | |
|  | ) | |
| v. | ) | Civil Action No.: CV 2016-900001 |
|  | ) | |
| DANIEL B. SNYDER, *et al.* | ) | |
|  | ) | |
|     Defendant. | ) | |

## ANSWER

COMES NOW, the Defendant, Jeffrey Hunter Whitlock, and for Answer to the Plaintiff's First Amended Complaint, and to each count and paragraph thereof, sets forth and assigns the following separate and several defenses:

## FIRST DEFENSE

The Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

This Defendant denies each and every material averment of the Plaintiff's First Amended Complaint and demands strict proof thereof.

## THIRD DEFENSE

With respect to each and every material averment of the Plaintiff's First Amended Complaint, this Defendant pleads not guilty.

## FOURTH DEFENSE

This Defendant denies he acted negligently as alleged in the Plaintiff's First Amended Complaint and denies any alleged negligence on his part proximately caused or contributed to cause the Plaintiff's injuries and/or damages.

## FIFTH DEFENSE

This Defendant denied he acted recklessly and/or wantonly as alleged in the Plaintiff's First Amended Complaint and denies that any alleged recklessness and/or wantonness on his part proximately caused or contributed to cause the Plaintiff's injuries and/or damages.

## SIXTH DEFENSE

This Defendant denies there is any causal relationship between any of his alleged actions and/or conduct and the injuries and/or damages allegedly sustained by the Plaintiff.

## SEVENTH DEFENSE

This Defendant denies that he breached any alleged duty owed to the Plaintiff and demands strict proof thereof.

## EIGHTH DEFENSE

This Defendant pleads assumption of the risk as a defense.

## NINTH DEFENSE

This Defendant pleads contributory negligence as a defense.

## TENTH DEFENSE

This Defendant alleges that if the Plaintiff suffered any damages, the damages were caused in whole, or in part, by the efficient intervening and/or superseding acts or omissions of third parties for whom this Defendant should not be held responsible.

## ELEVENTH DEFENSE

This Defendant pleads the general issue as a defense.

## TWELFTH DEFENSE

This Defendant pleads voluntary intoxication (APJI 3d 30.02) as a defense.

## THIRTEENTH DEFENSE

This Defendant pleads estoppel, waiver and laches as defenses.

## FOURTEENTH DEFENSE

This Defendant pleads lack of service of process as a defense.

## FIFTEENTH DEFENSE

This Defendant pleads insufficient service of process as a defense.

## SIXTEENTH DEFENSE

This Defendant pleads improper venue as a defense.

## SEVENTEENTH DEFENSE

This Defendant pleads the applicable statute of limitations as a defense.

## EIGHTEENTH DEFENSE

This Defendant denies the Plaintiff was injured and/or damaged to the nature and extent claimed and contests damages.

## NINTEENTH DEFENSE

This Defendant says the Plaintiff has failed to mitigate her alleged damages.

## TWENTIETH DEFENSE

This Defendant says that an award of punitive damages to the Plaintiff in this case would be violative of the constitutional safeguards provided to Defendants under the Constitution of the State of Alabama.

## TWENTY-FIRST DEFENSE

This Defendant says that any award of punitive damages to the Plaintiff in this case would be violative of the constitutional safeguards provided to Defendants under the Constitution of the State of Alabama.

## TWENTY-SECOND DEFENSE

This Defendant says that any award of punitive damages to the Plaintiff in this case will be violative of the constitutional safeguards provided to Defendants under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, in that punitive damages are vague and are not rationally related to legitimate government interests.

## TWENTY-THIRD DEFENSE

This Defendant says that any award of punitive damages to the Plaintiff in this case will be violative of Article I, Section 6 of the Constitution of the State of Alabama, which provides that no person shall be deprived of life, liberty, or property except by due process of law, in that punitive damages are vague and are not rationally related to legitimate government interests.

## TWENTY-FOURTH DEFENSE

This Defendant says that any award of punitive damages to the Plaintiff in this case will be violative of the procedural safeguards provided to Defendants under the Sixth Amendment to the Constitution of the United States, in that punitive damages are penal in nature and consequently, Defendant is entitled to the same procedural safeguards accorded to criminal Defendants.

## TWENTY-FIFTH DEFENSE

It is violative of the self-incrimination clause of the Fifth Amendment to the Constitution of the United States of America to impose against this Defendant punitive damages, which are

penal in nature, yet compel Defendant to disclose potentially incriminating documents and evidence.

### TWENTY-SIXTH DEFENSE

It is violative of the self-incrimination clause of Article I, Section 6 of the Constitution of the State of Alabama to impose against this Defendant punitive damages which are penal in nature, yet compel Defendant to disclose potentially incriminating documents and evidence.

### TWENTY-SEVENTH DEFENSE

It is violative of the rights guaranteed by the Constitution of the United States of America and the Constitution of the State of Alabama to impose punitive damages against this Defendant which are penal in nature by requiring a burden of proof on the Plaintiff, which is less than the "beyond a reasonable doubt" burden of proof required in criminal cases.

### TWENTY-EIGHTH DEFENSE

This Defendant says that any award of punitive damages to the Plaintiff in this case will be violative of the Eighth Amendment to the Constitution of the United States in that said damages would be an excessive fine in violation of the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

### TWENTY-NINTH DEFENSE

This Defendant says that any award of punitive damages to the Plaintiff in this case will be violative of the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States in that it would provide damages to the Plaintiff in excess of the amount determined to be appropriate under the formula adopted by the Alabama Legislature in 1981 in Section 27-1-17, Code of Alabama 1975, as amended.

**THIRTIETH DEFENSE**

This Defendant asserts any and all applicable statutory caps or limitations to any claim for punitive damages, including but not limited to, Section 6-11-21, <u>Code of Alabama</u> 1975, as amended.

*/s/ David R. Wells*
DAVID R. WELLS (WEL016)
Attorney for the Defendant,
Jeffrey Hunter Whitlock

OF COUNSEL:

MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203
(205) 639-5300
(205) 639-5350 *facsimile*
dwells@wmslawfirm.com

**DEFENDANT JEFFREY HUNTER WHITLOCK
DEMANDS TRIAL BY STRUCK JURY**

*/s/ David R. Wells*
OF COUNSEL

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that I have served a complete copy of the foregoing instrument upon the following attorney of record via the electronic ALAFILE system, on this 30th day of October, 2018.

Mark W. Lee
Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway
Suite 300
Birmingham, AL 35216
(205)   326-6600
mlee@pljpc.com
klee@pljpc.com

Daniel S. Wolter
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive
Suite 100
Birmingham, AL 35223
dwolter@wolterlawfirm.com

                          */s/ David R. Wells*
                          OF COUNSEL

ELECTRONICALLY FILED
10/30/2018 4:31 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

MARINA STEWART-MAGEE, WHO )
SUES AS ADMINISTRATOR AND )
PERSONAL REPRESENTATIVE OF )
THE ESTATE OF ALBINA )
AGDASOVNA SHARIFULLINA, )    CIVIL ACTION CV 2016-900001
DECEASED )
                            )
   Plaintiff )
                            )
v. )
                            )
DANIEL B. SNYDER, ET AL. )
   Defendant

### NOTICE OF POTENTIAL CONFLICT

COMES NOW the plaintiff, by and through her attorney, Mark W. Lee, and gives notice of a potential conflict on the hearing for motion for summary judgment. For grounds therefore your movant sets forth the following:

1.  For that the undersigned is scheduled to be in trial in Marshall County beginning November 13, 2018.

2.  It is anticipated that the case in Marshall County will be finished in time for the hearing on summary judgment scheduled for November 16. However, because this is a jury trial in Marshall County, the potential of an overrun is always possible.

WHEREFORE, PREMISES CONSIDERED, the plaintiff respectfully gives notice to the Court and counsel of the potential conflict of the hearing on motion for summary judgment for November 16, 20018.

                              *s/*Mark W. Lee
                              Mark W. Lee
                              Attorney for Plaintiff

OF COUNSEL:

PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway
Suite 300, Shelby Building
[P.O. Box 661228  35266-1228]
Birmingham, AL 35216
(205) 326-6600

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the 30th day of October , 2018, electronically filed the foregoing with the Clerk of the Court using the AlaFile E-system which will send notification of such filing to the following:

Daniel S. Wolter
Daniel Wolter Law Firm, LLC
402 Office Park Drive, Suite 100
Birmingham, AL  35223

s/Mark W. Lee
OF COUNSEL

ELECTRONICALLY FILED
10/31/2018 3:27 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARINA STEWART-MAGEE,** | ) | |
| **as Administrator and Personal** | ) | |
| **Representative of the ESTATE** | ) | |
| **OF ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | **CV-2016-900001** |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### PLAINTIFF'S MOTION FOR LEAVE TO FILE MEDICAL RECORDS AND PHOTOGRAPHS UNDER SEAL IN RESPONSE TO DEFENDANT DANIEL B. SNYDER'S MOTION FOR SUMMARY JUDGMENT

Comes now the Plaintiff, **MARINA STEWART-MAGEE**, **as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, and respectfully moves this Honorable Court for an Order allowing the Plaintiff to file certain medical records and unclothed photographs under seal as exhibits in support of Plaintiff's Opposition to Defendant Daniel B. Snyder's Motion for Summary Judgment (Doc. 158). As grounds for said Motion, Plaintiff submits the following:

1.      The Plaintiff has prepared, and intends to file, a response in opposition to the summary judgment motion (Doc. 158) filed by Defendant Daniel B. Snyder ("Snyder") in this case. The exhibits to be submitted in opposition to summary judgment include, *inter alia*, Snyder's post-accident medical records from Huntsville Hospital, an autopsy photograph of the Plaintiff's decedent, and certain unclothed photographs taken of Snyder on July 8, 2014 by a forensic photographer employed by the Decatur Police

Department. In the interest of protecting the privacy of the parties while allowing the Court to evaluate all of the facts relevant to this case, the Court should permit those records and photographs to be filed under seal.

      3.      Based on the foregoing, Plaintiff respectfully requests this Honorable Court to enter an Order allowing the Plaintiff to file the medical records and photographs identified above under seal as exhibits in opposition to summary judgment.

      Respectfully submitted this 31st day of October, 2018.

/s/ Kendall A. Lee
Mark W. Lee (LEE003)
Kendall A. Lee (LEE091)
Attorneys for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

2

---

**CERTIFICATE OF SERVICE**

---

I hereby certify that I have on this 31<u>st</u> day of October, 2018, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

Daniel S. Wolter, Esq.
**Daniel Wolter Law Firm, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

David R. Wells, Esq.
**Whitaker, Mudd, Luke & Wells, LLC**
2011 4<u>th</u> Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

/s/ Kendall A. Lee
OF COUNSEL

ELECTRONICALLY FILED
11/2/2018 2:08 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| ALBINA                AGDASOVNA SHARIFULLINA, DECEASED MARINA) STE, | | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Case No.:    CV-2016-900001.00 |
| | ) | |
| SNYDER DANIEL B., | ) | |
| WHITLOCK JEFFREY HOWARD, | ) | |
| WHITLOCK JEFFREY HUNTER, | ) | |
| Defendants. | ) | |

## ORDER

LEAVE TO FILE RECORDS AND PHOTOGRAPHS UNDER SEAL filed by ALBINA AGDASOVNA SHARIFULLINA, DECEASED MARINA STE is hereby GRANTED IN PART.  The Clerk shall designate such records as **"confidential"** so that counsel may access same without public access being allowed.

Any party utilizing filings which are designated "confidential" shall safeguard same from disbursal to non-parties or non-expert third persons and shall destroy any copies thereof at the close of the instant litigation.

**DONE this 2ⁿᵈ day of November, 2018.**

**/s/ MARTHA E. WILLIAMS**
**CIRCUIT JUDGE**

ELECTRONICALLY FILED
11/15/2018 12:21 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| MARINA STEWART-MAGEE,<br>as Administrator and Personal<br>Representative of the ESTATE<br>OF ALBINA AGDASOVNA<br>SHARIFULLINA, deceased,<br><br>     Plaintiff,<br><br>v.<br><br>DANIEL B. SNYDER, et al.,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO.
CV-2016-900001

---

### NOTICE OF FILING APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT EXECUTED BY TROOPER JOHN WILLIAMS AND SEARCH WARRANT ISSUED BY THE CIRCUIT COURT OF MORGAN COUNTY

---

Comes now the Plaintiff, **MARINA STEWART-MAGEE, as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, and gives notice of filing the following documents:

(1)     Application and Affidavit for Search Warrant executed by Trooper John Williams on July 8, 2014; and

(2)     Search Warrant issued by the Circuit Court of Morgan County on July 8, 2014.

The search warrant obtained by Trooper Williams is referenced in paragraph 13 of his affidavit (Doc. 216) filed in Opposition to Defendant Daniel B. Snyder's Motion for Summary Judgment.

Respectfully submitted this 15th day of November, 2018.

/s/ Mark W. Lee
Mark W. Lee (LEE003)
Kendall A. Lee (LEE091)
Attorneys for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

---

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 15th day of November, 2018, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

Daniel S. Wolter, Esq.
**Daniel Wolter Law Firm, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

David R. Wells, Esq.
**Whitaker, Mudd, Luke & Wells, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

/s/ Mark W. Lee
OF COUNSEL

ELECTRONICALLY FILED
11/15/2018 12:21 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

# IN THE DISTRICT COURT OF MORGAN COUNTY, ALABAMA

STATE OF ALABAMA,                          *

     PLAINTIFF,                          *

VS.                                        *

DANIEL BENJAMIN SNYDER,                     *
A WHITE MALE, DOB: ████████
84 BLUE SKY DRIVE,                          *
LACY SPRINGS, AL

                              *

     DEFENDANT.                          *

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

Before me, the undersigned authority, personally appeared John Williams, who being by me first duly sworn, deposes and says as follows:

My name is John Williams. I am an Investigator with the Alabama Marine Police and have been in law enforcement for the past 7 years.

I have probable cause to believe that photographs and/or digital images of the unclothed body of Daniel Benjamin Snyder, a white male, date of birth ████████ for evidence of or injuries, bruising and/or markings consistent with and constitutes, or is expected to constitute evidence consistent with driving and/or operating and/or control of a personal watercraft involving the above named Daniel Benjamin Snyder, which constitutes or is expected to constitute evidence of a criminal offense under the laws of the State of Alabama, to-wit: Criminally Negligent Homicide and/or Homicide by Vessel and/or Manslaughter and/or Boating Under the Influence and/or Operating without Vessel License

**My belief is based on the following facts:**

On July 6, 2014, at approximately 12:35 a.m., I John Williams, was dispatched to a watercraft collision that had occurred at a given location of dock address 1497 County Road 855, Crane Hill, Alabama, in Cullman County Alabama. The collision had involved two individuals, a white male identified as Daniel Benjamin Snyder and a white female identified as Albina Agdasovna Sharifullina.

Upon arrival on scene, I ascertained that Daniel Benjamin Snyder had sustained serious injuries and had been air lifted from the scene to Huntsville Hospital for treatment. The female Albina Sharifullina was laying on the dock ramp floatation. Paramedics still on scene informed me she was deceased and based upon their training and experience it was due to the collision. I began an investigation to determine if any other persons were involved in the collision and made

a determination that there was not.  As part of the investigation, I located a wrecked jet ski watercraft that was tied to the dock located at 1497 County Road 855, I observed the jet ski watercraft on scene and identified holes in the hull and the lanyard for the emergency shut off device still intact and tied to the watercraft. As part of the investigation, I observed the damage to the dock that would be consistent with a collision involving that type of watercraft.  Also on the dock, I observed what I believed to be blood and remains of human flesh.

Further in my investigation, information was given to me by multiple witnesses on scene that they saw a male slumped over the stabilizing cable where it was joined to the dock.  Also the witnesses informed me they saw the males head down in the water but his nose and mouth were not submerged and he was still breathing but unresponsive.  Upon talking with paramedics on scene, I was informed the male had head injuries and other bodily injuries consistent with a collision.

Further as part of my investigation, I contacted Huntsville Hospital to ascertain the medical condition of what was believed to be life threatening injuries to the male identified as Daniel Benjamin Snyder. Upon being informed that he was alive, as part of my investigation involving collisions of this type, I made a request for the medical staff to do a toxicology of his blood.  Later on same date of the collision of July 6, 2014, I was informed that Daniel Benjamin Snyder had been released.

As part of my investigation of the collision, I have not been able to determine the driver of the jet ski watercraft at the time of the collision occurred.

Further, as part of my duties and experience as an Alabama Marine Police, I have investigated multiple watercraft collisions and have knowledge of the type of injuries, bruising and/or markings consistent with and sustained to the body of individuals involved and/or in control of personal watercraft.

Therefore, the affiant believes that based on the foregoing facts and information that affiant has probable cause to believe that injuries, bruising and/or markings consistent with and constitutes, or is expected to constitute evidence consistent with driving and/or operating and/or control of a personal watercraft and is pertinent to the investigation of said collision and of a criminal offense under the laws of the State of Alabama, and that the same is on/within the person of the above named and described Daniel Benjamin Snyder, and is subject to seizure and makes this affidavit so that a warrant may be issued to take photographs and/or digital images of the unclothed body of the said Daniel Benjamin Snyder.

_John Nobilliams_
AFFIANT

Sworn to and subscribed before me this 8 day of July, 2014.

_____
Judge of the District Court
circuit

ELECTRONICALLY FILED
11/15/2018 12:21 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

IN THE DISTRICT COURT OF MORGAN COUNTY, A

STATE OF ALABAMA,                        *

    PLAINTIFF,                        *

VS.                                      *

DANIEL BENJAMIN SNYDER,                  *
A WHITE MALE, DOB: ███████
84 BLUE SKY DRIVE,                       *
LACY SPRINGS, AL

    DEFENDANT.                        *

## SEARCH WARRANT

**TO ANY LAW ENFORCEMENT OFFICER WITHIN THE STATE OF ALABAMA:**

    Affidavit in support of application for search warrant having been made before me, and the Court's finding that grounds for the issuance exist, pursuant to Rule 3.8 of the <u>Alabama Rules of Criminal Procedure</u>, **YOU ARE HEREBY ORDERED AND AUTHORIZED TO FORTHWITH SEIZE:**

**THE FOLLOWING PERSON OR PLACE:**
*Daniel Benjamin Snyder, a white male, DOB:* ███████
and is currently located at 84 Blue Sky Drive, Lacy Springs, Alabama

**FOR THE FOLLOWING PROPERTY:**
*photographs and/or digital images of the unclothed body for evidence of or injuries, bruising and/or markings consistent with and/or relating to personal watercraft operation(s) involved in a collision* and to make and produce digital images of the unclothed body, and further that Daniel Benjamin Snyder submit to *in camera* photographs and/or digital images of his body by John Williams and/or any other law enforcement officer with the Alabama Marine Police, and further that John Williams is directed to make a return of this warrant and an inventory of all property or digital images taken or seized there under before me and/or the magistrate of the court within _____ten_____ (10) days and retain possession of any and all photographs and/or digital images seized as required by law, pending further Orders of a Court of competent jurisdiction.

      ( ✓ ) This warrant may only be executed

      ( ✓ ) in the daytime between the hours of
      _____9:00_____ A.M. and __8:00__ P.M.

      ( ) The Court finds probable cause to believe
      that a nighttime search is necessary, and this
      warrant may be executed at any time of the
      day or night.

**ISSUED TO:**
at _3:04_ o'clock, _P_.M. this the _8th_ day of _July_, 2014.

_____
Judge of the District Court
       Circuit

ELECTRONICALLY FILED
11/16/2018 10:36 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| ALBINA AGDASOVNA SHARIFULLINA, DECEASED MARINA STE, Plaintiff, | ) ) ) |
| V. | ) Case No.:    CV-2016-900001.00 ) |
| SNYDER DANIEL B., WHITLOCK JEFFREY HOWARD, WHITLOCK JEFFREY HUNTER, Defendants. | ) ) ) ) ) |

## ORDER DENYING SUMMARY JUDGMENT

This matter was before the Court this date for hearing on Motion For Summary Judgment filed herein on behalf of Defendant, DANIEL B. SNYDER.  Present were:  Hon. Daniel S. Wolter for Defendant, SNYDER; and Hon. Marcus Lee for Plaintiff, MARINA STEWART-MAGEE, Administrator and Personal Representative of ALBINA AGDASOVNA SHARIFULLINA, Deceased.

Initially, the Court addressed the matter of Motion To Strike the Affidavit of Trooper John M. Williams.  For the purpose of the Motion For Summary Judgment, the Court does Grant the Motion To Strike as to hearsay information contained in Trooper Williams' Affidavit which was submitted on behalf of Plaintiff. Whether Trooper Williams may be qualified as an expert for trial purposes is yet to be determined and counsel anticipate further deposition inquiry to establish this issue.

After review of the other written submissions and argument of counsel, however, the Court finds that genuine issues of material fact exist which preclude Summary Judgment in favor of Defendant, SNYDER.

Therefore, the Motion For Summary Judgment is respectfully DENIED.

**DONE this 16th day of November, 2018.**

**/s/ MARTHA E. WILLIAMS**
**CIRCUIT JUDGE**

ELECTRONICALLY FILED
11/21/2018 10:21 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| **MARINA STEWART-MAGEE,**<br>**as Administrator and Personal**<br>**Representative of the ESTATE**<br>**OF ALBINA AGDASOVNA**<br>**SHARIFULLINA, deceased,**<br><br>　　　**Plaintiff,**<br><br>**v.**<br><br>**DANIEL B. SNYDER, et al.,**<br><br>　　　**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CIVIL ACTION NO.**
**CV-2016-900001**

---

### NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

Comes now the Plaintiff, **MARINA STEWART-MAGEE, as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, and gives notice of serving the following discovery documents on all counsel of record in the above-captioned lawsuit:

☒ Plaintiff's First Set of Interrogatories to Defendant Jeffery Hunter Whitlock; and

☒ Plaintiff's First Request for Production to Defendant Jeffery Hunter Whitlock.

/s/ Mark W. Lee
Mark W. Lee (LEE003)
Kendall A. Lee (LEE091)
Attorneys for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this <u>21st</u> day of November, 2018, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

Daniel S. Wolter, Esq.
**Daniel Wolter Law Firm, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

David R. Wells, Esq.
**Whitaker, Mudd, Luke & Wells, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

/s/ Mark W. Lee
OF COUNSEL

ELECTRONICALLY FILED
11/21/2018 10:21 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

MARINA STEWART-MAGEE,            )
as Administrator and Personal    )
Representative of the ESTATE     )
OF ALBINA AGDASOVNA              )
SHARIFULLINA, deceased,          )
                                 )        CIVIL ACTION NO.
    Plaintiff,                   )        CV-2016-900001
                                 )
v.                               )
                                 )
DANIEL B. SNYDER, et al.,        )
                                 )
    Defendants.                  )

### PLAINTIFF'S FIRST SET OF INTERROGATORIES
### TO DEFENDANT JEFFERY HUNTER WHITLOCK

Comes now the Plaintiff, **MARINA STEWART-MAGEE, as Administrator
and Personal Representative of the ESTATE OF ALBINA AGDASOVNA
SHARIFULLINA, deceased**, pursuant to Rule 33 of the Alabama Rules of Civil
Procedure, and propounds the following interrogatories to Defendant Jeffery Hunter
Whitlock:

### **DEFINITIONS**

1.    The terms "you" and "your" as used herein shall mean the Defendant,
Jeffery Hunter Whitlock.

2.    The term "person" as used herein shall mean any individual, partnership,
firm, association, corporation, or other business, governmental, educational, legal, or
other entity.

3.    The term "address" as used herein shall mean the complete street, street
number, city, state, post office box or route, and box address of the subject person as that
term is applied in definition number two above.

4.    The phrase "your family's dock" as used herein shall mean the dock on Smith Lake located at 680 County Road Highway 218, Bremen, Alabama 35033.

5.    The phrases "your family's lake home" and "your family's lake home property" as used herein shall mean the property on Smith Lake located at 680 County Road Highway 218, Bremen, Alabama 35033.

## INTERROGATORIES

1.    State your full name, date of birth, and current residential address.

2.    Please identify every cell phone number and provider that you had on July 5, 2014. For each account, please provide the cell phone number, the cell phone provider, the type of cell phone (e.g., iPhone 3, iPhone 4, Galaxy S, etc.), and state whether the account is still active.

3.    State the name, telephone number, and last known address of all persons who visited your family's lake home property on Saturday, July 5, 2014.

4.    State the name, telephone number, and last known address of all persons who visited your family's lake home property between 6:00 p.m. and 11:59 p.m. on Saturday, July 5, 2014.

5.    State the name, telephone number, and last known address of every person who was inside your family's lake home when Defendant Daniel B. Snyder and Albina ("Alya") Sharifullina departed your family's dock on Daniel Snyder's SeaDoo shortly after midnight on Sunday, July 6, 2014.

6.    State the name, telephone number, and last known address of every person who was on your family's lake home property when Defendant Daniel B. Snyder and Albina ("Alya") Sharifullina departed your family's dock on Daniel Snyder's SeaDoo shortly after midnight on Sunday, July 6, 2014.

7.      State the name, telephone number, and last known address of each and every person known to you, your agents, and/or your attorneys who have knowledge or claim to have knowledge of the events described in the Plaintiff's original Complaint and First Amended Complaint.

8.      Describe, in specific detail, the location where Defendant Daniel B. Snyder's SeaDoo was parked at your family's dock in the evening hours of July 5, 2014. In responding to this interrogatory, please identify the specific side of the dock where the SeaDoo was parked and the direction in which the SeaDoo was facing while parked. Please also state whether the SeaDoo was parked in a SeaDoo slip or boat slip.

9.      Describe, in specific detail, the location where Defendant Daniel B. Snyder's SeaDoo personal watercraft was parked at your family's dock when you accompanied Daniel B. Snyder and Albina ("Alya") Sharifullina to the dock shortly after midnight on July 6, 2014. In responding to this interrogatory, please identify the specific side of the dock where the SeaDoo was parked and the direction in which the SeaDoo was facing while parked. Please also state whether the SeaDoo was parked in a SeaDoo slip or boat slip.

10.     Did you consume or take any alcoholic beverages, drugs, or medications on July 5, 2014? If so, please identify the substance consumed and state the quantity of the substance consumed, the time(s) of consumption, and the location where the consumption took place.

11.     State whether any policy or policies of insurance (including any umbrellas or excess policies) exist which may provide coverage to you for any liability which may arise as a result of the incident described in the Plaintiff's First Amended Complaint. For each such policy, state the following:

(a)     The name and address of the insurer;

(b)     The policy number;

(c)     The amount of liability insurance coverage afforded by each such policy;

(d)     The name and address of each and every named insured under such policy; and

(e)     Whether any such insurer is defending you in this matter under a reservation of rights.

12.     Have you been a party to any other personal injury and/or wrongful death claims or lawsuits? If so, state the nature of the claim(s) and/or lawsuit(s), and provide the names of all claimants, parties, and persons involved in each claim and/or lawsuit.

13.     State the names and addresses of all of your relatives, by blood or marriage, who are over the age of eighteen (18) years and who reside in Cullman County, Alabama.

14.     Identify the person(s) who answered these interrogatories or who contributed any information used in answering these interrogatories. If more than one person provided the answers or contributed such information, identify the specific interrogatories answered by each person and the information provided.

/s/ Mark W. Lee
Mark W. Lee (LEE003)
Kendall A. Lee (LEE091)
Attorneys for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this <u>21st</u> day of November, 2018, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

Daniel S. Wolter, Esq.
**Daniel Wolter Law Firm, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

David R. Wells, Esq.
**Whitaker, Mudd, Luke & Wells, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

/s/ Mark W. Lee
OF COUNSEL

ELECTRONICALLY FILED
11/21/2018 10:21 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| as Administrator and Personal | ) | |
| Representative of the ESTATE | ) | |
| OF ALBINA AGDASOVNA | ) | |
| SHARIFULLINA, deceased, | ) | |
| | ) | **CIVIL ACTION NO.** |
| Plaintiff, | ) | **CV-2016-900001** |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL B. SNYDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JEFFERY HUNTER WHITLOCK

Comes now the Plaintiff, **MARINA STEWART-MAGEE, as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, pursuant to Rule 34 of the Alabama Rules of Civil Procedure, and submits the following Request for Production of Documents to Defendant Jeffery Hunter Whitlock:

1.      Produce a copy of all insurance policies and declarations page(s) for each policy (including any umbrella or excess policies) which may provide liability coverage to you for the claims asserted in the Plaintiff's First Amended Complaint.

2.      Produce a copy of your cell phone records, including all text messages that were sent and/or received by you, from July 5, 2014 to the present that relate in any way to the events described in the Plaintiff's First Amended Complaint. Please exclude all text messages that were sent and/or received exclusively between yourself and your attorney(s).

3.      Produce a copy of all e-mail communications that were sent and/or received by your personal e-mail address(es) from <u>July 5, 2014 to the present</u> that relate in any way to the events described in the Plaintiff's First Amended Complaint. Please exclude all e-mails that were sent and/or received exclusively between yourself and your attorney(s).

4.      Produce a copy of all electronic communications either sent or received by you through social networking sites, including, but not limited to, Facebook, Twitter, and Instagram, from <u>July 5, 2014 to the present</u> that relate in any way to the events described in the Plaintiff's First Amended Complaint. Please exclude all electronic communications that were sent and/or received exclusively between yourself and your attorney(s).

5.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and <u>Defendant Jeffery Howard Whitlock</u> regarding the events described in the Plaintiff's First Amended Complaint.

6.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and <u>Defendant Daniel B. Snyder</u> regarding the events described in the Plaintiff's First Amended Complaint.

7.      Produce a copy of the Facebook message you received from Defendant Daniel B. Snyder's brother, Aaron Snyder, regarding the events described in the Plaintiff's First Amended Complaint.

8.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and <u>Defendant Daniel B. Snyder's brother, Aaron Snyder</u>, regarding the events described in the Plaintiff's First Amended Complaint.

9.     Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and your sister, <u>Hollace Whitlock</u>, regarding the events described in the Plaintiff's First Amended Complaint.

10.     Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and your mother, <u>Marilyn Whitlock</u>, regarding the events described in the Plaintiff's First Amended Complaint.

11.     Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and <u>any person</u> regarding the events described in the Plaintiff's First Amended Complaint. Please exclude all communications that were sent and/or received exclusively between yourself and your attorney(s).

12.     Produce a copy of all photographs, video recordings, and audio recordings that were taken on your family's lake home property located at 680 County Road Highway 218, Bremen, Alabama 35033 on Saturday, July 5, 2014.

13.     Produce a copy of all photographs, video recordings, and audio recordings that were taken on your family's lake property located at 680 County Road Highway 218, Bremen, Alabama 35033 on Sunday, July 6, 2014.

14.     Produce a privilege log identifying all documents and materials being withheld from production on the basis of privilege.

/s/ Mark W. Lee
Mark W. Lee (LEE003)
Kendall A. Lee (LEE091)
Attorneys for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

---

## CERTIFICATE OF SERVICE

---

       I hereby certify that I have on this $\underline{21^{st}}$ day of November, 2018, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

Daniel S. Wolter, Esq.
**Daniel Wolter Law Firm, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

David R. Wells, Esq.
**Whitaker, Mudd, Luke & Wells, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

                              /s/ Mark W. Lee
                              OF COUNSEL

ELECTRONICALLY FILED
12/4/2018 10:41 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| MARINA STEWART-MAGEE, ) | |
| as Administrator and Personal ) | |
| Representative of the ESTATE ) | |
| OF ALBINA AGDASOVNA ) | |
| SHARIFULLINA, deceased, ) | |
| ) | **CIVIL ACTION NO.** |
| Plaintiff, ) | **CV-2016-900001** |
| ) | |
| v. ) | |
| ) | |
| DANIEL B. SNYDER, et al., ) | |
| ) | |
| Defendants. ) | |

### NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

Comes now the Plaintiff, **MARINA STEWART-MAGEE, as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, and gives notice of serving the following discovery documents on all counsel of record in the above-captioned lawsuit:

⊠ Plaintiff's First Set of Interrogatories to Defendant Jeffery Howard Whitlock; and

⊠ Plaintiff's First Request for Production to Defendant Jeffery Howard Whitlock.

/s/ Mark W. Lee
Mark W. Lee (LEE003)
Kendall A. Lee (LEE091)
Attorneys for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

## CERTIFICATE OF SERVICE

       I hereby certify that I have on this 4th day of December, 2018, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

Daniel S. Wolter, Esq.
**Daniel Wolter Law Firm, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

David R. Wells, Esq.
**Whitaker, Mudd, Luke & Wells, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

 

                     /s/ Mark W. Lee
                     OF COUNSEL

ELECTRONICALLY FILED
12/4/2018 10:41 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| MARINA STEWART-MAGEE, )<br>as Administrator and Personal )<br>Representative of the ESTATE )<br>OF ALBINA AGDASOVNA )<br>SHARIFULLINA, deceased, )<br> )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>DANIEL B. SNYDER, et al., )<br> )<br>    Defendants. ) | CIVIL ACTION NO.<br>CV-2016-900001 |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## TO DEFENDANT JEFFERY HOWARD WHITLOCK

Comes now the Plaintiff, **MARINA STEWART-MAGEE, as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, pursuant to Rule 33 of the Alabama Rules of Civil Procedure, and hereby propounds the following interrogatories to Defendant Jeffery Howard Whitlock:

### DEFINITIONS

1.    The terms "you" and "your" shall mean the Defendant, Jeffery Howard Whitlock.

2.    The term "person" shall mean any individual, partnership, firm, association, corporation, or other business, governmental, educational, legal, or other entity.

3.    The term "address" shall mean the complete street, street number, city, state, post office box or route, and box address of the subject person as that term is applied in definition number two above.

4.      The phrase "your dock" as used herein shall mean the dock on Smith Lake located at 680 County Road Highway 218, Bremen, Alabama 35033.

5.      The phrases "your lake home" and "your lake home property" as used herein shall mean the property on Smith Lake located at 680 County Road Highway 218, Bremen, Alabama 35033.

## INSTRUCTIONS

1.      These interrogatories are continuing in nature, requiring the Defendant to timely supplement his answers if and when required pursuant to the Alabama Rules of Civil Procedure.

2.      In the event any answer is withheld or limited on the basis of a claimed privilege, provide the reason for withholding or limiting your response, and state the factual basis for your claim of privilege.

3.      If an interrogatory cannot be answered in full, state the answer to the extent possible and specify the reasons for which you cannot respond fully.

## INTERROGATORIES

1.      State your full name, date of birth, current residential address, and social security number.

2.      State the name, telephone number, and last known address of each and every person who visited your lake home on Saturday, July 5, 2014.

3.      State the name, telephone number, and last known address of every person who was inside your lake home when Defendant Daniel B. Snyder and Albina ("Alya") Sharifullina departed your dock on Daniel Snyder's SeaDoo shortly after midnight on Sunday, July 6, 2014.

4.    State the name, telephone number, and last known address of every person who was <u>on your lake home property</u> when Defendant Daniel B. Snyder and Albina ("Alya") Sharifullina departed your dock on Daniel Snyder's SeaDoo shortly after midnight on Sunday, July 6, 2014.

5.    State the name, telephone number, and last known address of each and every person known to you, your agents, and/or your attorneys who have knowledge or claim to have knowledge of the events described in the Plaintiff's original Complaint and First Amended Complaint.

6.    Please identify every cell phone number and provider that you had on July 5, 2014. For each account, provide the cell phone number, the cell phone provider, the type of cell phone (e.g., iPhone 3, iPhone 4, Galaxy S, etc.), and state whether the account is still active.

7.    Please identify every cell phone number and provider that your spouse, Marilyn Whitlock, had on July 5, 2014. For each account, provide the cell phone number, the cell phone provider, the type of cell phone (e.g., iPhone 4, iPhone 5, Galaxy S, etc.), and state whether the account is still active.

8.    Describe, in specific detail, the location where Defendant Daniel B. Snyder's SeaDoo was parked at your dock in the evening hours of July 5, 2014. In responding to this interrogatory, please identify the specific side of the dock where the SeaDoo was parked and the direction in which the SeaDoo was facing while parked. Please also state whether the SeaDoo was parked in a SeaDoo slip or boat slip.

9.    Did you consume or take any alcoholic beverages, drugs, or medications on July 5, 2014? If so, please identify the substance consumed and state the quantity of

substance consumed, the time(s) of consumption, and the location where the consumption took place.

10.    State whether any policy or policies of insurance (including any umbrellas or excess policies) exist which may provide coverage to you for any liability which may arise as a result of the incident described in the Plaintiff's original Complaint and First Amended Complaint and, if so, for each such policy, state the following:

(a)    The name and address of the insurer;

(b)    The policy number;

(c)    The amount of liability insurance coverage afforded by each such policy;

(d)    The name and address of each and every named insured under such policy; and

(e)    Whether any such insurer is defending you in this matter under a reservation of rights.

11.    Have you ever been involved in any personal injury and/or wrongful death claims or lawsuits? If so, state the nature of the claim or lawsuit, including the time and place of the occurrence giving rise to the claim or lawsuit, and the name of the person or persons who were involved.

12.    State the names and addresses of all of your relatives, by blood or marriage, who are over the age of eighteen (18) years and who reside in Cullman County, Alabama.

13.    Identify the person(s) who answered these interrogatories or who contributed any information used in answering these interrogatories. If more than one person provided the answers or contributed such information, identify the specific interrogatories answered by each person and the information provided.

/s/ Mark W. Lee
Mark W. Lee (LEE003)
Kendall A. Lee (LEE091)
Attorneys for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

---

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 4th day of December, 2018, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

Daniel S. Wolter, Esq.
**Daniel Wolter Law Firm, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

David R. Wells, Esq.
**Whitaker, Mudd, Luke & Wells, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

/s/ Mark W. Lee
OF COUNSEL

ELECTRONICALLY FILED
12/4/2018 10:41 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| MARINA STEWART-MAGEE, ) | |
| as Administrator and Personal ) | |
| Representative of the ESTATE ) | |
| OF ALBINA AGDASOVNA ) | |
| SHARIFULLINA, deceased, ) | |
| ) | **CIVIL ACTION NO.** |
| **Plaintiff,** ) | **CV-2016-900001** |
| ) | |
| **v.** ) | |
| ) | |
| **DANIEL B. SNYDER, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

---

### PLAINTIFF'S FIRST REQUEST FOR PRODUCTION
### TO DEFENDANT JEFFERY HOWARD WHITLOCK

---

Comes now the Plaintiff, **MARINA STEWART-MAGEE, as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, pursuant to Rule 34 of the Alabama Rules of Civil Procedure, and submits the following Request for Production to Defendant Jeffery Howard Whitlock:

1.     Produce a copy of all insurance policies and declarations page(s) for each policy (including any umbrella or excess policies) which may provide liability coverage to you for the claims asserted in the Plaintiff's First Amended Complaint.

2.     Produce a copy of your cell phone records, including all text messages that were sent and/or received by you, from July 5, 2014 to the present that relate in any way to the events described in the Plaintiff's First Amended Complaint. Please exclude all text messages that were sent and/or received exclusively between yourself and your attorney(s).

3.      Produce a copy of all e-mail communications that were sent and/or received by your personal e-mail address(es) from <u>July 5, 2014 to the present</u> that relate in any way to the events described in the Plaintiff's First Amended Complaint. Please exclude all e-mails that were sent and/or received exclusively between yourself and your attorney(s).

4.      Produce a copy of all electronic communications either sent or received by you through social networking sites, including, but not limited to, Facebook, Twitter, and Instagram, from <u>July 5, 2014 to the present</u> that relate in any way to the events described in the Plaintiff's First Amended Complaint. Please exclude all electronic communications that were sent and/or received exclusively between yourself and your attorney(s).

5.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and <u>Defendant Jeffery Hunter Whitlock</u> regarding the events described in the Plaintiff's First Amended Complaint.

6.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and <u>Defendant Daniel B. Snyder</u> regarding the events described in the Plaintiff's First Amended Complaint.

7.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and <u>Defendant Daniel B. Snyder's brother, Aaron Snyder</u>, regarding the events described in the Plaintiff's First Amended Complaint.

8.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and your daughter, <u>Hollace Whitlock</u>, regarding the events described in the Plaintiff's First Amended Complaint.

9.    Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and your spouse, <u>Marilyn Whitlock</u>, regarding the events described in the Plaintiff's First Amended Complaint.

10.    Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and <u>any person</u> regarding the events described in the Plaintiff's First Amended Complaint. Please exclude all communications that were sent and/or received exclusively between yourself and your attorney(s).

11.    Produce a copy of all photographs, video recordings, and audio recordings that were taken on your lake home property located at 680 County Road Highway 218, Bremen, Alabama 35033 on Saturday, July 5, 2014.

12.    Produce a copy of all photographs, video recordings, and audio recordings that were taken on your lake property located at 680 County Road Highway 218, Bremen, Alabama 35033 on Sunday, July 6, 2014.

13.    Produce a privilege log identifying all documents and materials being withheld from production on the basis of privilege.

/s/ Mark W. Lee
Mark W. Lee (LEE003)
Kendall A. Lee (LEE091)
Attorneys for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

---

**CERTIFICATE OF SERVICE**

---

I hereby certify that I have on this <u>4th</u> day of December, 2018, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

Daniel S. Wolter, Esq.
**Daniel Wolter Law Firm, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

David R. Wells, Esq.
**Whitaker, Mudd, Luke & Wells, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

                                          /s/ Mark W. Lee
                                          OF COUNSEL

DOCUMENT 255

ELECTRONICALLY FILED
12/20/2018 5:08 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| as Administrator and Personal | ) | |
| Representative of the ESTATE | ) | |
| OF ALBINA AGDASOVNA | ) | |
| SHARIFULLINA, deceased, | ) | |
| | ) | **CIVIL ACTION NO.** |
| Plaintiff, | ) | **CV-2016-900001** |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL B. SNYDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF INTENT TO SERVE SUBPOENA
## ON NON-PARTY HUNTSVILLE HOSPITAL

**PLEASE TAKE NOTICE** that, upon the expiration of fifteen (15) days from the date of service of this notice, Plaintiff **MARINA STEWART-MAGEE,** by and through her attorneys, Kendall A. Lee and Mark W. Lee, will apply to the Clerk of this Court for issuance of the attached subpoena directed to **Huntsville Hospital, Attn: Medical Records Custodian, 101 Sivley Road, Huntsville, Alabama 35801,** to produce and certify copies of the documents, materials and/or electronically stored information specified in the attached subpoena.

/s/ Kendall A. Lee
**KENDALL A. LEE (LEE091)**
**MARK W. LEE (LEE003)**
Attorneys for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
klee@pljpc.com
mlee@pljpc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this <u>20th</u> day of December, 2018, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile electronic filing system, which will send notification of such filing to the following:

Daniel S. Wolter, Esq.
**Daniel Wolter Law Firm, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

David R. Wells, Esq.
**Whitaker, Mudd, Luke & Wells, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

/s/ Kendall A. Lee
OF COUNSEL

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARINA STEWART-MAGEE,** | ) | |
| **as Administrator and Personal** | ) | |
| **Representative of the ESTATE** | ) | |
| **OF ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA, deceased,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | **CV-2016-900001** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CIVIL SUBPOENA FOR PRODUCTION OF DOCUMENTS UNDER RULE 45

**TO:   Huntsville Hospital**
**Attn: Medical Records Custodian**
**101 Sivley Road**
**Huntsville, Alabama 35801**

Pursuant to Rule 45 of the Alabama Rules of Civil Procedure you are hereby commanded to do each of the following acts at the instance of the Plaintiff, **Marina Stewart-Magee,** within fifteen (15) days after service of this subpoena:

That you produce a certified, accurate, legible, and complete copy of original records and permit the Plaintiff to inspect and copy each of the following documents:

All medical records, including emergency room records, inpatient records, outpatient records, trauma flow sheets, reports, tests and test results, consultant reports, admit sheets, histories, x-rays, x-ray reports, radiographic reports, lab reports, nurses notes, physicians notes and orders, charts, graphs, discharge summaries, operative reports, correspondence, and any and all other records and materials pertaining to the following patient:

Daniel Benjamin Snyder
2024 2nd Avenue North, Apt. 1804
Birmingham, Alabama 35203
DOB: 8/26/1974
SSN: xxx-xx-6318

The produced documents shall include all documents in your possession regarding the above-named patient, regardless of whether or not said documents are considered to be part of the chart or medical record and regardless of whether or not said documents or records were originally generated by you or by some other health care provider. **Nothing in this subpoena permits disclosure of confidential communications, made for the purposes of diagnosis or treatment of a patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family. Nothing in this subpoena permits disclosure of records or information relating to HIV testing or sexually transmitted disease.**

In order to comply with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the party causing the issuance of this subpoena hereby provides satisfactory assurance to you that this party has made reasonable efforts to ensure that the individual who is the subject of the requested protected health information has been given written notice of this request, that such notice included sufficient information about the litigation to permit the individual to raise an objection, that the time allowed for the individual to object has now elapsed, and that no such objection has been raised. See 45 C.F.R., Subpart E, § 164.512(e)(1), and see accompanying documentation.

Plaintiff agrees to pay all reasonable expenses incurred by you in connection with the production of said documents. Such production and inspection is to take place at the place where the documents or things are regularly kept or at some other reasonable place designated by you. You are further advised that other parties to the action in which this subpoena has been issued have the right to be present at the time of such production or inspection.

You may mail a certified, accurate, legible and complete copy of the requested documents and records to **Kendall A. Lee, Parsons, Lee & Juliano, P.C., 600 Vestavia Parkway, Suite 300, Birmingham, Alabama 35216**, but you may condition such activity on your part upon the payment in advance by the party causing the issuance of this subpoena of the reasonable costs of the making of such copies. **PLEASE ATTACH A COPY OF THIS SUBPOENA TO YOUR RECORDS.**

You have the right to object at any time prior to the date set forth in this subpoena for compliance. Should you choose to object, you should communicate such objection in writing to the party causing the issuance of this subpoena and stating, with respect to any item or category to which objection is made, your reasons for such objection.

Rule 45 of the Alabama Rules of Civil Procedure provides, in relevant part, as follows:

**(c)    Protection of Persons Subject to Subpoenas.**

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing under undue burden or expense on a person subject to that subpoena. The court from which the

subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney fee.

(2)(A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person which is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

(3)(A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)      fails to allow reasonable time for compliance;

(ii)     requires a resident of this state who is not a party or an officer of a party to travel to a place more than one hundred (100) miles from the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)     subjects a person to undue burden.

(B)    If a subpoena

     (i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

     (ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

     (iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial,
the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d)    Duties in Responding to Subpoena.**

     (1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

     (2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Ala. R. Civ. P. 45(c)-(d)(1)(2).

     Dated this _____ day of _____, 2018.

                    /s/ Kendall A. Lee_____
                    Kendall A. Lee (LEE091)
                    Attorney for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
klee@pljpc.com

RETURN ON SERVICE:
Executed by leaving a copy with

_____

_____

on this the _____ day of _____,
2018.

BY:_____
   Deputy Sheriff or
   Process Server

_____

Clerk of the Court

By _____
   Deputy Clerk

ELECTRONICALLY FILED
12/20/2018 5:08 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| **MARINA STEWART-MAGEE,** ) | |
| **as Administrator and Personal** ) | |
| **Representative of the ESTATE** ) | |
| **OF ALBINA AGDASOVNA** ) | |
| **SHARIFULLINA, deceased,** ) | |
| ) | **CIVIL ACTION NO.** |
| **Plaintiff,** ) | **CV-2016-900001** |
| ) | |
| **v.** ) | |
| ) | |
| **DANIEL B. SNYDER, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

---

### NOTICE OF INTENT TO SERVE SUBPOENA
### ON NON-PARTY DAVID J. GRAY, M.D.

---

**PLEASE TAKE NOTICE** that, upon the expiration of fifteen (15) days from the date of service of this notice, Plaintiff **MARINA STEWART-MAGEE,** by and through her attorneys, Kendall A. Lee and Mark W. Lee, will apply to the Clerk of this Court for issuance of the attached subpoena directed to **David J. Gray, M.D., Attn: Medical Records Custodian, 4601 Whitesburg Drive SE, Suite 103, Huntsville, Alabama 35802,** to produce and certify copies of the documents, materials and/or electronically stored information specified in the attached subpoena.

/s/ Kendall A. Lee
**KENDALL A. LEE (LEE091)**
**MARK W. LEE (LEE003)**
Attorneys for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097

klee@pljpc.com
mlee@pljpc.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 20th day of December, 2018, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile electronic filing system, which will send notification of such filing to the following:

Daniel S. Wolter, Esq.
**Daniel Wolter Law Firm, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

David R. Wells, Esq.
**Whitaker, Mudd, Luke & Wells, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

/s/ Kendall A. Lee
OF COUNSEL

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARINA STEWART-MAGEE,** | ) | |
| **as Administrator and Personal** | ) | |
| **Representative of the ESTATE** | ) | |
| **OF ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA, deceased,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | **CV-2016-900001** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CIVIL SUBPOENA FOR PRODUCTION OF DOCUMENTS UNDER RULE 45

**TO:**   **David J. Gray, M.D.**
**Attn: Medical Records Custodian**
**4601 Whitesburg Drive SE, Suite 103**
**Huntsville, Alabama 35802**

Pursuant to Rule 45 of the Alabama Rules of Civil Procedure you are hereby commanded to do each of the following acts at the instance of the Plaintiff, **Marina Stewart-Magee,** within fifteen (15) days after service of this subpoena:

That you produce a certified, accurate, legible, and complete copy of original records and permit the Plaintiff to inspect and copy each of the following documents:

> All medical records, including emergency room records, inpatient records, outpatient records, reports, tests and test results, consultant reports, admit sheets, histories, x-rays, x-ray reports, radiographic reports, lab reports, nurses notes, physicians notes and orders, charts, graphs, discharge summaries, operative reports, correspondence, and any and all other records and materials pertaining to the following patient:

> Daniel Benjamin Snyder
> 2024 2nd Avenue North, Apt. 1804
> Birmingham, Alabama 35203
> <u>DOB:</u> 8/26/1974
> <u>SSN:</u> xxx-xx-6318

The produced documents shall include all documents in your possession regarding the above-named patient, regardless of whether or not said documents are considered to be part of the chart or medical record and regardless of whether or not said documents or records were originally generated by you or by some other health care provider. **Nothing in this subpoena permits disclosure of confidential communications, made for the purposes of diagnosis or treatment of a patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family. Nothing in this subpoena permits disclosure of records or information relating to HIV testing or sexually transmitted disease.**

In order to comply with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the party causing the issuance of this subpoena hereby provides satisfactory assurance to you that this party has made reasonable efforts to ensure that the individual who is the subject of the requested protected health information has been given written notice of this request, that such notice included sufficient information about the litigation to permit the individual to raise an objection, that the time allowed for the individual to object has now elapsed, and that no such objection has been raised. <u>See</u> 45 C.F.R., Subpart E, § 164.512(e)(1), and see accompanying documentation.

Plaintiff agrees to pay all reasonable expenses incurred by you in connection with the production of said documents. Such production and inspection is to take place at the place where the documents or things are regularly kept or at some other reasonable place designated by you. You are further advised that other parties to the action in which this subpoena has been issued have the right to be present at the time of such production or inspection.

You may mail a certified, accurate, legible and complete copy of the requested documents and records to **<u>Kendall A. Lee, Parsons, Lee & Juliano, P.C., 600 Vestavia Parkway, Suite 300, Birmingham, Alabama 35216</u>**, but you may condition such activity on your part upon the payment in advance by the party causing the issuance of this subpoena of the reasonable costs of the making of such copies. **<u>PLEASE ATTACH A COPY OF THIS SUBPOENA TO YOUR RECORDS</u>.**

You have the right to object at any time prior to the date set forth in this subpoena for compliance. Should you choose to object, you should communicate such objection in writing to the party causing the issuance of this subpoena and stating, with respect to any item or category to which objection is made, your reasons for such objection.

Rule 45 of the Alabama Rules of Civil Procedure provides, in relevant part, as follows:

**(c)      Protection of Persons Subject to Subpoenas.**

(1)      A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing under undue burden or expense on a person subject to that subpoena. The court from which the

subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney fee.

(2)(A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person which is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

(3)(A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)      fails to allow reasonable time for compliance;

(ii)     requires a resident of this state who is not a party or an officer of a party to travel to a place more than one hundred (100) miles from the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B)   If a subpoena

    (i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or

    (ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

    (iii)   requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial,
the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d)   Duties in Responding to Subpoena.**

    (1)   A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

    (2)   When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Ala. R. Civ. P. 45(c)-(d)(1)(2).

Dated this _____ day of _____, 2018.

                          /s/ Kendall A. Lee_____
                          Kendall A. Lee (LEE091)
                          Attorney for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
klee@pljpc.com

RETURN ON SERVICE:
Executed by leaving a copy with

_____

_____

on this the _____ day of _____,
2018.

BY:_____
   Deputy Sheriff or
   Process Server

_____
Clerk of the Court

By _____
   Deputy Clerk

ELECTRONICALLY FILED
12/20/2018 5:08 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| as Administrator and Personal | ) | |
| Representative of the ESTATE | ) | |
| OF ALBINA AGDASOVNA | ) | |
| SHARIFULLINA, deceased, | ) | |
| | ) | **CIVIL ACTION NO.** |
| Plaintiff, | ) | **CV-2016-900001** |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL B. SNYDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF INTENT TO SERVE SUBPOENA
## ON NON-PARTY AIR METHODS d/b/a LIFE SAVER

**PLEASE TAKE NOTICE** that, upon the expiration of fifteen (15) days from the date of service of this notice, Plaintiff **MARINA STEWART-MAGEE,** by and through her attorneys, Kendall A. Lee and Mark W. Lee, will apply to the Clerk of this Court for issuance of the attached subpoena directed to **Air Methods d/b/a Life Saver, Attn: Custodian of Records, 1822 Pineview Circle, Rainbow City, Alabama 35906,** to produce and certify copies of the documents, materials and/or electronically stored information specified in the attached subpoena.

/s/ Kendall A. Lee
**KENDALL A. LEE (LEE091)**
**MARK W. LEE (LEE003)**
Attorneys for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
klee@pljpc.com
mlee@pljpc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this <u>20th</u> day of December, 2018, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile electronic filing system, which will send notification of such filing to the following:

Daniel S. Wolter, Esq.
**Daniel Wolter Law Firm, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

David R. Wells, Esq.
**Whitaker, Mudd, Luke & Wells, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

/s/ Kendall A. Lee
OF COUNSEL

**IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA**

| | | |
|---|---|---|
| **MARINA STEWART-MAGEE,** | ) | |
| **as Administrator and Personal** | ) | |
| **Representative of the ESTATE** | ) | |
| **OF ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA, deceased,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | **CV-2016-900001** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**CIVIL SUBPOENA FOR PRODUCTION OF DOCUMENTS UNDER RULE 45**

---

**TO:   Air Methods d/b/a Life Saver**
**Attn: Custodian of Records**
**1822 Pineview Circle**
**Rainbow City, Alabama 35906**

Pursuant to Rule 45 of the Alabama Rules of Civil Procedure you are hereby commanded to do each of the following acts at the instance of the Plaintiff, **Marina Stewart-Magee,** within fifteen (15) days after service of this subpoena:

That you produce a certified, accurate, legible, and complete copy of original records and permit the Plaintiff to inspect and copy each of the following documents:

> All medical records, patient charts, patient care reports, logs, histories, notes, correspondence, flight information, and all other records and materials concerning the following patient/individual:

> Daniel Benjamin Snyder
> DOB: 8/26/1974
> SSN: xxx-xx-6318
> Date of Service: 7/6/2014

The produced documents shall include all documents in your possession regarding the above-named patient, regardless of whether or not said documents are considered to be part of the chart or medical record and regardless of whether or not said documents or records were originally generated by you or by some other health care provider. **Nothing in this subpoena permits disclosure of confidential communications, made for the purposes of diagnosis or treatment**

**of a patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family. Nothing in this subpoena permits disclosure of records or information relating to HIV testing or sexually transmitted disease.**

In order to comply with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the party causing the issuance of this subpoena hereby provides satisfactory assurance to you that this party has made reasonable efforts to ensure that the individual who is the subject of the requested protected health information has been given written notice of this request, that such notice included sufficient information about the litigation to permit the individual to raise an objection, that the time allowed for the individual to object has now elapsed, and that no such objection has been raised. See 45 C.F.R., Subpart E, § 164.512(e)(1), and see accompanying documentation.

Plaintiff agrees to pay all reasonable expenses incurred by you in connection with the production of said documents. Such production and inspection is to take place at the place where the documents or things are regularly kept or at some other reasonable place designated by you. You are further advised that other parties to the action in which this subpoena has been issued have the right to be present at the time of such production or inspection.

You may mail a certified, accurate, legible and complete copy of the requested documents and records to **Kendall A. Lee, Parsons, Lee & Juliano, P.C., 600 Vestavia Parkway, Suite 300, Birmingham, Alabama 35216**, but you may condition such activity on your part upon the payment in advance by the party causing the issuance of this subpoena of the reasonable costs of the making of such copies. **PLEASE ATTACH A COPY OF THIS SUBPOENA TO YOUR RECORDS.**

You have the right to object at any time prior to the date set forth in this subpoena for compliance. Should you choose to object, you should communicate such objection in writing to the party causing the issuance of this subpoena and stating, with respect to any item or category to which objection is made, your reasons for such objection.

Rule 45 of the Alabama Rules of Civil Procedure provides, in relevant part, as follows:

**(c)     Protection of Persons Subject to Subpoenas.**

(1)     A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing under undue burden or expense on a person subject to that subpoena. The court from which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney fee.

(2)(A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person which is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

(3)(A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a resident of this state who is not a party or an officer of a party to travel to a place more than one hundred (100) miles from the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)     requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial,
the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d)     Duties in Responding to Subpoena.**

(1)     A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)     When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Ala. R. Civ. P. 45(c)-(d)(1)(2).

Dated this _____ day of _____, 2018.

/s/ Kendall A. Lee_____
Kendall A. Lee (LEE091)
Attorney for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
klee@pljpc.com

RETURN ON SERVICE:

Executed by leaving a copy with

_____

_____

on this the _____ day of _____,
2018.

BY:_____

    Deputy Sheriff or
    Process Server

_____

Clerk of the Court

By _____

    Deputy Clerk

ELECTRONICALLY FILED
12/21/2018 8:19 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARINA STEWART-MAGEE,** | ) | |
| **Who sues as Administrator and** | ) | |
| **Personal Representative of the Estate of** | ) | |
| **ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA, Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.:  CV 16-900001** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## NOTICE TO CLERK OF FILING DISCOVERY

TO:   Circuit Clerk of Cullman County

Cullman County Courthouse

Please take notice that the following discovery document has been filed on behalf of defendant:

(X)   Deposition Notice-Trooper John Williams

*/s/* Daniel S. Wolter_____
Daniel S. Wolter (WOL012)
Attorney for Daniel B. Snyder

**OF COUNSEL:**
Daniel Wolter Law Firm, LLC
402 Office Park Drive, Ste 100
Birmingham, Alabama  35223
(205) 983-6440 Telephone
(205) 983-6334 Facsimile

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of December, 2018 the foregoing was electronically filed with the Clerk of this Court using the Court's electronic system, which will send notification of such filing to the following:

Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216

David R. Wells
MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203

/s/ Daniel S. Wolter_____
OF COUNSEL

2

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARINA STEWART-MAGGE,** | ) | |
| **Who sues as Administrator and** | ) | |
| **Personal Representative of the Estate of** | ) | |
| **ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA, Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.:  CV 16-900001** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### RULE 30 (B)(5) NOTICE OF TAKING DEPOSITION
### AND REQUEST FOR PRODUCTION OF DOCUMENTS

TO:    Kendall A. Lee
         PARSONS, LEE & JULIANO, P.C.
         600 Vestavia Parkway, Suite 300
         Birmingham, Alabama 35216

Please take notice that at the time, date and place indicated below, the defendant will take the testimony by deposition upon oral examination of that party named.  Such deposition shall be taken for the purpose of discovery or for use as evidence in this action pursuant to the Alabama Rules of Civil Procedure and shall be taken before a certified court reporter and notary public, or some other person who is authorized to administer oaths under the laws of the State of Alabama. The oral examination will continue from time to time until completed.


DATE:         January 24, 2019

TIME:          10:00 a.m.

DEPONENT:   Trooper John Williams

PLACE:        PARSONS, LEE & JULIANO, P.C.
                  600 Vestavia Parkway, Suite 300
                  Birmingham, Alabama 35216

Daniel Snyder request the following documents be produced at the deposition:

3

1.      Any and all documents, correspondence or reference of any type you have in your possession relating to Albina Sharifullina, Daniel Snyder, or the accident in which Sharifullina was killed on July 6, 2014.

2.      Any and all documents, correspondence or reference of any type you have in your possession relating to plaintiff lawyer's firm and correspondence relating to plaintiff lawyer's firm.

3.      Any and all reports prepared by you relating to any opinions you intend to give at the trial.

4.      Any and all books, manuals, procedures and policies you reviewed in preparation of your opinion.

5.      A listing of all cases in which you have provided expert testimony of any kind including deposition testimony or trial testimony.

6.      A listing of all attorneys that have ever retained you to provide an expert opinion of any kind including deposition testimony or trial testimony.

7.      A copy of the autopsy report relating to Albina Sharifullina.

8.      All documents, photographs or items of any type that you reviewed or that you relied upon in reaching your opinions.

9.      Your entire investigative file relating to the accident involved in this case.

10.     Any recordings of any witness statements taken in your investigation of the accident at issued in this case.


                                        /s/ Daniel S. Wolter_____
                                        Daniel S. Wolter (WOL012)
                                        Attorney for Daniel B. Snyder


**OF COUNSEL:**
Daniel Wolter Law Firm, LLC
402 Office Park Drive, Ste 100
Birmingham, Alabama 35223
(205) 983-6440 Telephone
(205) 900-8095 Facsimile

DOCUMENT 259

**CERTIFICATE OF SERVICE**

     I hereby certify that on this 21st day of December, 2018, the foregoing was electronically filed with the Clerk of this Court using the Court's electronic system, which will send notification of such filing to the following:

Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216

David R. Wells
MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203


                                         /s/ Daniel S. Wolter
                                         OF COUNSEL

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>**25-CV-2016-900001.00** |

**IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA**
**MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT**

**NOTICE TO:** JEFFREY HUNTER WHITLOCK, 4113 CLOVER LEAF DRIVE, BIRMINGHAM, AL 35243
*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S),
KENDALL A. LEE
*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: POST OFFICE BOX 661228, BIRMINGHAM, AL 35266
*[Address(es) of Plaintiff(s) or Attorney(s)]*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:**

[✓] You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

[ ] Service by certified mail of this Summons is initiated upon the written request of _____
pursuant to the Alabama Rules of the Civil Procedure.                                   *[Name(s)]*

| 9/26/2018 11:40:31 AM | /s/ LISA MCSWAIN | By: |
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

**FILED IN OFFICE**

[ ] Certified Mail is hereby requested.

*(Plaintiff's/Attorney's Signature)*

**JAN 02 2019**

**RETURN ON SERVICE**

LISA McSWAIN
CIRCUIT CLERK
CULLMAN COUNTY

[ ] Return receipt of certified mail received in this office on _____
*(Date)*

[✓] I certify that I personally delivered a copy of this Summons and Complaint or other document to _____
*Danielle Whitlock - Wife*    *Jeff Co* _____ County,
*(Name of Person Served)*  *rule 4.ci*     *(Name of County)*

Alabama on *11/30/18*
*(Date)*

*DS*
*(Type of Process Server)*

*(Server's Signature)*
*R. Moloy*
*(Server's Printed Name)*

*TCSO*
*(Address of Server)*

*(Phone Number of Server)*

**25-CV-2016-900001.00**
MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT

| C001 - ALBINA AGDASOVNA SHARIFULLINA, DECEASED  v.<br>MARINA STE | D003 - JEFFREY HUNTER WHITLOCK |
| *(Plaintiff)* | *(Defendant)* |

*18019565*

**: RETURN COPY**

*XAEX23679*
JEFFREY HUNTER WHITLOCK

ELECTRONICALLY FILED
1/7/2019 2:22 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

| State of Alabama<br>Unified Judicial System<br>Form C-13 (front)   Rev. 4/18 | ORDER TO APPEAR<br>(SUBPOENA) | Cas<br>25-C |
|---|---|---|

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

☐ **State of Alabama**

☐ **Municipality of** _____

☑ **MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT**

   **(For Juvenile cases only):**

☐ **In the Matter of** _____

HUNTSVILLE HOSPITAL

CUSTODIAN OF RECORD
101 SIVLEY ROAD
HUNTSVILLE, AL 35801

A.   Issued at the request of :

1. ☑ Plaintiff/State
2. ☐ Defendant
3. ☐ Grand Jury

B.   Special Instructions
   You are ordered to:

1. ☐ Appear at trial
2. ☑ Produce records or documents-See attached schedule(s)
3. ☐ Appear at deposition
4. ☐ Other _____

**You may contact:**   KENDALL A. LEE POST OFFICE BOX 661228 BIRMINGHAM, AL 35266 (205) 326-6600

**YOU ARE ORDERED TO APPEAR to give testimony before the court or by deposition; and/or produce and permit inspection and copying of books, documents, or tangible things; and/or permit inspection of premises as stated below until otherwise excused. Failure to obey this subpoena may be deemed a contempt of court from which the subpoena was issued.**

**ADDITIONAL INSTRUCTIONS**
Any inspection or production of documents or records
must be completed within 15 days

**DATE:**   01/22/2019 09:00 AM

**ROOM:**   _____

**ADDRESS:**   Parsons Lee & Juliano

   600 Vestavia Parkway Suite 300

   Birmingham, AL 35216

**DATE ISSUED:**   1/7/2019

Produce Documents Only
See Civil Subpoena Attached
No Appearance Required

/s/ LISA MCSWAIN

Signature of Court Clerk                    Deputy Clerk Initials

**TO ANY SHERIFF OF THE STATE OF ALABAMA**  You are ordered to serve this order on the above named person and make return to this
**OR ANY AUTHORIZED PERSON:**                court.

## RETURN ON SERVICE

I certify that I personally delivered a copy of this order

to

_____   on   _____

_____

_____

Signature and Title of Server

*(For Criminal cases only)*

☐ **Served By Mail**

_____

Date Mailed

Sheriff                                      Deputy Sheriff

| Form C-13 (back)   Rev.4/18 | ORDER TO APPEAR (SUBPOENA) |
| --- | --- |

**NOTICE**

With respect to a subpoena which seeks only a production of documents or tangible things or an inspection of premises, as provided in Ala.R.Civ.P 45(a) (3) (C), the production of documents or tangible things or the inspection of premises pursuant to this subpoena shall take place where the documents or tangible things are regularly kept or at some other reasonable place designated by the recipient of this subpoena. As recipient of this subpoena, you have the option to deliver or mail legible copies of the documents or things to the party causing issuance of this subpoena, and the preparation of copies may be conditioned on the payment in advance of the reasonable cost of making such copies. Other parties involved in this lawsuit have the right to be present at the time of the production or inspection. The recipient of this subpoena has the right to object to the production or inspection at any time prior to the date of production or inspection set forth in this subpoena. See Ala. R.Civ.P. 45(c) (2) (B), which is set out below.

Rule 45, Ala. R.Civ.P., Paragraphs (c) & (d)

(c) Protection of person subject to subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court from which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty on appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, document or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designed in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a resident of this state who is not a party or an officer of a party to travel to a place more than one hundred (100) miles form the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provision of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expenses to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) Duties in responding to subpoena.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(3) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(4) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(5) A person responding to a subpoena need not provide discovery of electronically stored information from sources the person identifies to the requesting party as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(B). The court may specify conditions regarding the production of the discovery.

(6) If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the person or party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. Any party or the producing person may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

ELECTRONICALLY FILED
1/7/2019 2:22 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE,<br>as Administrator and Personal<br>Representative of the ESTATE<br>OF ALBINA AGDASOVNA<br>SHARIFULLINA, deceased, | )<br>)<br>)<br>)<br>) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.<br>CV-2016-900001 |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL B. SNYDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## CIVIL SUBPOENA FOR PRODUCTION OF DOCUMENTS UNDER RULE 45

**TO:    Huntsville Hospital**
**Attn: Medical Records Custodian**
**101 Sivley Road**
**Huntsville, Alabama 35801**

Pursuant to Rule 45 of the Alabama Rules of Civil Procedure you are hereby commanded to do each of the following acts at the instance of the Plaintiff, **Marina Stewart-Magee**, within fifteen (15) days after service of this subpoena:

That you produce a certified, accurate, legible, and complete copy of original records and permit the Plaintiff to inspect and copy each of the following documents:

All medical records, including emergency room records, inpatient records, outpatient records, trauma flow sheets, reports, tests and test results, consultant reports, admit sheets, histories, x-rays, x-ray reports, radiographic reports, lab reports, nurses notes, physicians notes and orders, charts, graphs, discharge summaries, operative reports, correspondence, and any and all other records and materials pertaining to the following patient:

Daniel Benjamin Snyder
2024 2nd Avenue North, Apt. 1804
Birmingham, Alabama 35203
DOB: 8/26/1974
SSN: xxx-xx-6318

The produced documents shall include all documents in your possession regarding the above-named patient, regardless of whether or not said documents are considered to be part of the chart or medical record and regardless of whether or not said documents or records were originally generated by you or by some other health care provider. **Nothing in this subpoena permits disclosure of confidential communications, made for the purposes of diagnosis or treatment of a patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family. Nothing in this subpoena permits disclosure of records or information relating to HIV testing or sexually transmitted disease.**

In order to comply with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the party causing the issuance of this subpoena hereby provides satisfactory assurance to you that this party has made reasonable efforts to ensure that the individual who is the subject of the requested protected health information has been given written notice of this request, that such notice included sufficient information about the litigation to permit the individual to raise an objection, that the time allowed for the individual to object has now elapsed, and that no such objection has been raised. See 45 C.F.R., Subpart E, § 164.512(e)(1), and see accompanying documentation.

Plaintiff agrees to pay all reasonable expenses incurred by you in connection with the production of said documents. Such production and inspection is to take place at the place where the documents or things are regularly kept or at some other reasonable place designated by you. You are further advised that other parties to the action in which this subpoena has been issued have the right to be present at the time of such production or inspection.

You may mail a certified, accurate, legible and complete copy of the requested documents and records to **Kendall A. Lee, Parsons, Lee & Juliano, P.C., 600 Vestavia Parkway, Suite 300, Birmingham, Alabama 35216,** but you may condition such activity on your part upon the payment in advance by the party causing the issuance of this subpoena of the reasonable costs of the making of such copies. **PLEASE ATTACH A COPY OF THIS SUBPOENA TO YOUR RECORDS.**

You have the right to object at any time prior to the date set forth in this subpoena for compliance. Should you choose to object, you should communicate such objection in writing to the party causing the issuance of this subpoena and stating, with respect to any item or category to which objection is made, your reasons for such objection.

Rule 45 of the Alabama Rules of Civil Procedure provides, in relevant part, as follows:

    **(c)**    **Protection of Persons Subject to Subpoenas.**

        **(1)**    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing under undue burden or expense on a person subject to that subpoena. The court from which the

subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney fee.

(2)(A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)      Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person which is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

(3)(A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)      fails to allow reasonable time for compliance;

(ii)      requires a resident of this state who is not a party or an officer of a party to travel to a place more than one hundred (100) miles from the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)      requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)      subjects a person to undue burden.

(B)    If a subpoena

    (i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

    (ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

    (iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial,
the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)    **Duties in Responding to Subpoena.**

    (1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

    (2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Ala. R. Civ. P. 45(c)-(d)(1)(2).

Dated this 7th day of January, 2019.

                              /s/ Kendall A. Lee
                              Kendall A. Lee (LEE091)
                              Attorney for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
klee@pljpc.com

RETURN ON SERVICE:
Executed by leaving a copy with

_____

_____

on this the _____ day of _____,
2018.

BY:_____
  Deputy Sheriff or
  Process Server

_____
Clerk of the Court

By _____
  Deputy Clerk

10/19/2018 6:11 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA AGDASOVNA SHARIFULLINA, )
DECEASED MARINA STE, )
Plaintiff, )
)
V. )  Case No.:    CV-2016-900001.00
)
SNYDER DANIEL B., )
WHITLOCK JEFFREY HOWARD, )
WHITLOCK JEFFREY HUNTER, )
Defendants. )

## HIPAA ORDER IN CIVIL ACTION

Upon compliance with Rule 45 of the Alabama Rules of Civil Procedure, the attorneys for the parties are permitted to inspect and copy all health information relating to the medical treatment and physical condition of Daniel B. Snyder following the incident made the basis of this lawsuit, including all information relating to the provision of health care to Daniel B. Snyder as a result of the subject incident. Subject to the provisions of Rule 26 of the Alabama Rules of Civil Procedure pertaining to the scope and limits of discovery, the attorneys for the parties to this lawsuit may request an interview with any health care provider, health plan administrator, or other individual in connection with the aforementioned health information and payments therefore (such information collectively referred to hereafter as "Protected Health Information"). Such health care provider, health plan administrator, or other individual may grant or deny a request for an interview.

**This Order authorizes any third party who is provided with a subpoena requesting the production of documents or commanding attendance at deposition or trial to disclose Protected Health Information in response to such request or subpoena. This Order is intended to authorize such disclosures under Section 164.512(e)(1) of the privacy regulations issued pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA).**

Nothing in this Order shall be deemed to relieve any party or attorney of the requirements of the Alabama Rules of Civil Procedure. Nothing in this Order permits disclosure of confidential communications, made for the purposes of diagnosis or treatment of a patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family, nor does this Order permit disclosure of records or information relating to HIV testing or sexually transmitted disease.

.

Nothing in this Order shall be construed to authorize any party or any attorney for any party to release, exchange, submit or share any Protected Health Information with any other person or any other entity, other than an agent or employee of the attorney or party.  The parties are prohibited from using or disclosing the protected health information for any purpose other than this litigation or proceeding for which such information was requested" pursuant to the requirements of 45 C.F.R. § 164.512(e)(1)(v)(A).

At the immediate conclusion of this action and at the written request of an individual whose Protected Health Information has been disclosed, or such individual's authorized representative, all recipients of the Protected Health Information shall return to the requesting party the documents and all copies thereof containing Protected Health Information received by them pursuant to this Order.  If a written request is not made at the immediate conclusion of this action, all recipients of the Protected Health Information reserve the right to destroy such documents and any copies thereof containing Protected Health Information received by them pursuant to this Order. Such Protected Health Information received in an insurance claim file and law firm litigation file may be retained to allow compliance to the extent and for the period that such retention is required by Alabama insurance laws and the Alabama State Bar rules and regulations.

A photocopy of the Order shall be deemed as an original.

DONE this 19th day of October, 2018.

/s/ MARTHA E. WILLIAMS
CIRCUIT JUDGE

ELECTRONICALLY FILED
1/7/2019 2:25 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

| State of Alabama<br>Unified Judicial System<br>Form C-13 (front)   Rev. 4/18 | ORDER TO APPEAR<br>(SUBPOENA) | Cas<br>25-( |
|---|---|---|

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

☐ **State of Alabama**
☐ **Municipality of** _____
☑ **MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT**
  **(For Juvenile cases only):**
☐ **In the Matter of** _____

DR. DAVID J. GRAY

4601 WHITESBURG DRIVE SE
SUITE 103
HUNTSVILLE, AL 35802

A.  Issued at the request of :
1. ☑ Plaintiff/State
2. ☐ Defendant
3. ☐ Grand Jury
B.  Special Instructions
   You are ordered to:
1. ☐ Appear at trial
2. ☑ Produce records or documents-See attached schedule(s)
3. ☐ Appear at deposition
4. ☐ Other _____

**You may contact:**  KENDALL A. LEE POST OFFICE BOX 661228 BIRMINGHAM, AL 35266 (205) 326-6600

**YOU ARE ORDERED TO APPEAR to give testimony before the court or by deposition; and/or produce and permit inspection and copying of books, documents, or tangible things; and/or permit inspection of premises as stated below until otherwise excused. Failure to obey this subpoena may be deemed a contempt of court from which the subpoena was issued.**

**DATE:**  01/22/2019 09:00 AM
**ROOM:**
**ADDRESS:**  Parsons Lee & Juliano
  600 Vestavia Parkway Suite 300
  Birmingham, AL 35216
**DATE ISSUED:**  1/7/2019

/s/ LISA MCSWAIN
Signature of Court Clerk                    Deputy Clerk Initials

**ADDITIONAL INSTRUCTIONS**
Any inspection or production of documents or records
must be completed within 15 days

Produce Documents Only
See Civil Subpoena Attached
No Attendance Required

**TO ANY SHERIFF OF THE STATE OF ALABAMA** You are ordered to serve this order on the above named person and make return to this
**OR ANY AUTHORIZED PERSON:**                    court.

### RETURN ON SERVICE

I certify that I personally delivered a copy of this order
to
_____        on _____

_____

_____
Signature and Title of Server

*(For Criminal cases only)*
☐ **Served By Mail**

_____
Date Mailed

_____
Sheriff                                        Deputy Sheriff

| Form C-13 (back)   Rev.4/18 | ORDER TO APPEAR (SUBPOENA) |
| --- | --- |

**NOTICE**

With respect to a subpoena which seeks only a production of documents or tangible things or an inspection of premises, as provided in Ala.R.Civ.P 45(a) (3) (C), the production of documents or tangible things or the inspection of premises pursuant to this subpoena shall take place where the documents or tangible things are regularly kept or at some other reasonable place designated by the recipient of this subpoena. As recipient of this subpoena, you have the option to deliver or mail legible copies of the documents or things to the party causing issuance of this subpoena, and the preparation of copies may be conditioned on the payment in advance of the reasonable cost of making such copies. Other parties involved in this lawsuit have the right to be present at the time of the production or inspection. The recipient of this subpoena has the right to object to the production or inspection at any time prior to the date of production or inspection set forth in this subpoena. See Ala. R.Civ.P. 45(c) (2) (B), which is set out below.

Rule 45, Ala. R.Civ.P., Paragraphs (c) & (d)

(c) Protection of person subject to subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court from which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty on appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, document or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designed in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a resident of this state who is not a party or an officer of a party to travel to a place more than one hundred (100) miles form the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provision of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expenses to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) Duties in responding to subpoena.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(3) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(4) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(5) A person responding to a subpoena need not provide discovery of electronically stored information from sources the person identifies to the requesting party as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(B). The court may specify conditions regarding the production of the discovery.

(6) If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the person or party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. Any party or the producing person may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

ELECTRONICALLY FILED
1/7/2019 2:25 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARINA STEWART-MAGEE,** | ) | |
| **as Administrator and Personal** | ) | |
| **Representative of the ESTATE** | ) | |
| **OF ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA, deceased,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | **CV-2016-900001** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### CIVIL SUBPOENA FOR PRODUCTION OF DOCUMENTS UNDER RULE 45

**TO:**    **David J. Gray, M.D.**
    **Attn: Medical Records Custodian**
    **4601 Whitesburg Drive SE, Suite 103**
    **Huntsville, Alabama 35802**

Pursuant to Rule 45 of the Alabama Rules of Civil Procedure you are hereby commanded to do each of the following acts at the instance of the Plaintiff, **Marina Stewart-Magee,** within fifteen (15) days after service of this subpoena:

That you produce a certified, accurate, legible, and complete copy of original records and permit the Plaintiff to inspect and copy each of the following documents:

All medical records, including emergency room records, inpatient records, outpatient records, reports, tests and test results, consultant reports, admit sheets, histories, x-rays, x-ray reports, radiographic reports, lab reports, nurses notes, physicians notes and orders, charts, graphs, discharge summaries, operative reports, correspondence, and any and all other records and materials pertaining to the following patient:

Daniel Benjamin Snyder
2024 2nd Avenue North, Apt. 1804
Birmingham, Alabama 35203
<u>DOB:</u> 8/26/1974
<u>SSN:</u> xxx-xx-6318

The produced documents shall include all documents in your possession regarding the above-named patient, regardless of whether or not said documents are considered to be part of the chart or medical record and regardless of whether or not said documents or records were originally generated by you or by some other health care provider. **Nothing in this subpoena permits disclosure of confidential communications, made for the purposes of diagnosis or treatment of a patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family. Nothing in this subpoena permits disclosure of records or information relating to HIV testing or sexually transmitted disease.**

In order to comply with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the party causing the issuance of this subpoena hereby provides satisfactory assurance to you that this party has made reasonable efforts to ensure that the individual who is the subject of the requested protected health information has been given written notice of this request, that such notice included sufficient information about the litigation to permit the individual to raise an objection, that the time allowed for the individual to object has now elapsed, and that no such objection has been raised. See 45 C.F.R., Subpart E, § 164.512(e)(1), and see accompanying documentation.

Plaintiff agrees to pay all reasonable expenses incurred by you in connection with the production of said documents. Such production and inspection is to take place at the place where the documents or things are regularly kept or at some other reasonable place designated by you. You are further advised that other parties to the action in which this subpoena has been issued have the right to be present at the time of such production or inspection.

You may mail a certified, accurate, legible and complete copy of the requested documents and records to **Kendall A. Lee, Parsons, Lee & Juliano, P.C., 600 Vestavia Parkway, Suite 300, Birmingham, Alabama 35216**, but you may condition such activity on your part upon the payment in advance by the party causing the issuance of this subpoena of the reasonable costs of the making of such copies. **PLEASE ATTACH A COPY OF THIS SUBPOENA TO YOUR RECORDS.**

You have the right to object at any time prior to the date set forth in this subpoena for compliance. Should you choose to object, you should communicate such objection in writing to the party causing the issuance of this subpoena and stating, with respect to any item or category to which objection is made, your reasons for such objection.

Rule 45 of the Alabama Rules of Civil Procedure provides, in relevant part, as follows:

(c)     **Protection of Persons Subject to Subpoenas.**

(1)     A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing under undue burden or expense on a person subject to that subpoena. The court from which the

subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)     Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person which is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

(3)(A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)      fails to allow reasonable time for compliance;

(ii)      requires a resident of this state who is not a party or an officer of a party to travel to a place more than one hundred (100) miles from the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)     requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)     subjects a person to undue burden.

**(B)**    If a subpoena

    **(i)**    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

    **(ii)**    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

    **(iii)**    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d)**    **Duties in Responding to Subpoena.**

    **(1)**    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

    **(2)**    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Ala. R. Civ. P. 45(c)-(d)(1)(2).

Dated this 7th day of January, 2019.

                               /s/ Kendall A. Lee
                               Kendall A. Lee (LEE091)
                               Attorney for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
klee@pljpc.com

RETURN ON SERVICE:
Executed by leaving a copy with

_____

_____

on this the _____ day of _____,
2018.

BY:_____
    Deputy Sheriff or
    Process Server

_____
Clerk of the Court

By _____
    Deputy Clerk

ELECTRONICALLY FILED
10/19/2018 6:11 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA AGDASOVNA SHARIFULLINA,  )
DECEASED MARINA STE,                           )
Plaintiff,                                               )
                                                             )
V.                                                           )   Case No.:    CV-2016-900001.00
                                                             )
SNYDER DANIEL B.,                                )
WHITLOCK JEFFREY HOWARD,             )
WHITLOCK JEFFREY HUNTER,               )
Defendants.                                          )

## HIPAA ORDER IN CIVIL ACTION

Upon compliance with Rule 45 of the Alabama Rules of Civil Procedure, the attorneys for the parties are permitted to inspect and copy all health information relating to the medical treatment and physical condition of Daniel B. Snyder following the incident made the basis of this lawsuit, including all information relating to the provision of health care to Daniel B. Snyder as a result of the subject incident. Subject to the provisions of Rule 26 of the Alabama Rules of Civil Procedure pertaining to the scope and limits of discovery, the attorneys for the parties to this lawsuit may request an interview with any health care provider, health plan administrator, or other individual in connection with the aforementioned health information and payments therefore (such information collectively referred to hereafter as "Protected Health Information"). Such health care provider, health plan administrator, or other individual may grant or deny a request for an interview.

**This Order authorizes any third party who is provided with a subpoena requesting the production of documents or commanding attendance at deposition or trial to disclose Protected Health Information in response to such request or subpoena. This Order is intended to authorize such disclosures under Section 164.512(e)(1) of the privacy regulations issued pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA).**

Nothing in this Order shall be deemed to relieve any party or attorney of the requirements of the Alabama Rules of Civil Procedure. Nothing in this Order permits disclosure of confidential communications, made for the purposes of diagnosis or treatment of a patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family, nor does this Order permit disclosure of records or information relating to HIV testing or sexually transmitted disease.

Nothing in this Order shall be construed to authorize any party or any attorney for any party to release, exchange, submit or share any Protected Health Information with any other person or any other entity, other than an agent or employee of the attorney or party.  The parties are prohibited from using or disclosing the protected health information for any purpose other than this litigation or proceeding for which such information was requested" pursuant to the requirements of 45 C.F.R. § 164.512(e)(1)(v)(A).

At the immediate conclusion of this action and at the written request of an individual whose Protected Health Information has been disclosed, or such individual's authorized representative, all recipients of the Protected Health Information shall return to the requesting party the documents and all copies thereof containing Protected Health Information received by them pursuant to this Order.  If a written request is not made at the immediate conclusion of this action, all recipients of the Protected Health Information reserve the right to destroy such documents and any copies thereof containing Protected Health Information received by them pursuant to this Order. Such Protected Health Information received in an insurance claim file and law firm litigation file may be retained to allow compliance to the extent and for the period that such retention is required by Alabama insurance laws and the Alabama State Bar rules and regulations.

A photocopy of the Order shall be deemed as an original.

**DONE this 19th day of October, 2018.**

/s/ MARTHA E. WILLIAMS
**CIRCUIT JUDGE**

ELECTRONICALLY FILED
1/7/2019 2:28 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

| State of Alabama<br>Unified Judicial System<br>Form C-13 (front)   Rev. 4/18 | ORDER TO APPEAR<br>(SUBPOENA) | Cas<br>25-C |
|---|---|---|

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

☐ **State of Alabama**

☐ **Municipality of** _____

☑ **MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT**

 **(For Juvenile cases only):**

☐ **In the Matter of** _____

AIR METHODS D/B/A LIFE SAVER

CUSTODIAN OF RECORD
1822 PINEVIEW CIRCLE
RAINBOW CITY, AL 35906

A.  Issued at the request of :

1. ☑ Plaintiff/State

2. ☐ Defendant

3. ☐ Grand Jury

B.  Special Instructions
    You are ordered to:

1. ☐ Appear at trial

2. ☑ Produce records or documents-See attached schedule(s)

3. ☐ Appear at deposition

4. ☐ Other _____

**You may contact:**  KENDALL A. LEE POST OFFICE BOX 661228 BIRMINGHAM, AL 35266 (205) 326-6600

**YOU ARE ORDERED TO APPEAR to give testimony before the court or by deposition; and/or produce and permit inspection and copying of books, documents, or tangible things; and/or permit inspection of premises as stated below until otherwise excused. Failure to obey this subpoena may be deemed a contempt of court from which the subpoena was issued.**

**DATE:**  01/22/2019 09:00 AM

**ROOM:**  _____

**ADDRESS:**  Parsons Lee & Juliano

 600 Vestavia Parkway Suite 300

 Birmingham, AL 35216

**DATE ISSUED:**  1/7/2019

/s/ LISA MCSWAIN

Signature of Court Clerk            Deputy Clerk Initials

**ADDITIONAL INSTRUCTIONS**
Any inspection or production of documents or records
must be completed within 15 days

Produce Documents Only
See Civil Subpoena Attached
No Appearance Required

**TO ANY SHERIFF OF THE STATE OF ALABAMA** You are ordered to serve this order on the above named person and make return to this **OR ANY AUTHORIZED PERSON:**                  court.

### RETURN ON SERVICE

I certify that I personally delivered a copy of this order to

_____    on _____

_____

_____

Signature and Title of Server

*(For Criminal cases only)*

☐ **Served By Mail**

_____

Date Mailed

_____

Sheriff                          Deputy Sheriff

| Form C-13 (back)   Rev.4/18 | ORDER TO APPEAR (SUBPOENA) |
|---|---|

**NOTICE**

With respect to a subpoena which seeks only a production of documents or tangible things or an inspection of premises, as provided in Ala.R.Civ.P 45(a) (3) (C), the production of documents or tangible things or the inspection of premises pursuant to this subpoena shall take place where the documents or tangible things are regularly kept or at some other reasonable place designated by the recipient of this subpoena. As recipient of this subpoena, you have the option to deliver or mail legible copies of the documents or things to the party causing issuance of this subpoena, and the preparation of copies may be conditioned on the payment in advance of the reasonable cost of making such copies. Other parties involved in this lawsuit have the right to be present at the time of the production or inspection. The recipient of this subpoena has the right to object to the production or inspection at any time prior to the date of production or inspection set forth in this subpoena. See Ala. R.Civ.P. 45(c) (2) (B), which is set out below.

Rule 45, Ala. R.Civ.P., Paragraphs (c) & (d)

(c) Protection of person subject to subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court from which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty on appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, document or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designed in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a resident of this state who is not a party or an officer of a party to travel to a place more than one hundred (100) miles form the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provision of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expenses to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) Duties in responding to subpoena.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(3) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(4) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(5) A person responding to a subpoena need not provide discovery of electronically stored information from sources the person identifies to the requesting party as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(B). The court may specify conditions regarding the production of the discovery.

(6) If information in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the person or party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. Any party or the producing person may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

ELECTRONICALLY FILED
1/7/2019 2:28 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

# IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| as Administrator and Personal | ) | |
| Representative of the ESTATE | ) | |
| OF ALBINA AGDASOVNA | ) | |
| SHARIFULLINA, deceased, | ) | |
| | ) | **CIVIL ACTION NO.** |
| Plaintiff, | ) | **CV-2016-900001** |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL B. SNYDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CIVIL SUBPOENA FOR PRODUCTION OF DOCUMENTS UNDER RULE 45

**TO:**   **Air Methods d/b/a Life Saver**
**Attn: Custodian of Records**
**1822 Pineview Circle**
**Rainbow City, Alabama 35906**

Pursuant to Rule 45 of the Alabama Rules of Civil Procedure you are hereby commanded to do each of the following acts at the instance of the Plaintiff, **Marina Stewart-Magee**, within fifteen (15) days after service of this subpoena:

That you produce a certified, accurate, legible, and complete copy of original records and permit the Plaintiff to inspect and copy each of the following documents:

All medical records, patient charts, patient care reports, logs, histories, notes, correspondence, flight information, and all other records and materials concerning the following patient/individual:

Daniel Benjamin Snyder
DOB: 8/26/1974
SSN: xxx-xx-6318
Date of Service: 7/6/2014

The produced documents shall include all documents in your possession regarding the above-named patient, regardless of whether or not said documents are considered to be part of the chart or medical record and regardless of whether or not said documents or records were originally generated by you or by some other health care provider. **Nothing in this subpoena permits disclosure of confidential communications, made for the purposes of diagnosis or treatment**

of a patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family. Nothing in this subpoena permits disclosure of records or information relating to HIV testing or sexually transmitted disease.

In order to comply with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the party causing the issuance of this subpoena hereby provides satisfactory assurance to you that this party has made reasonable efforts to ensure that the individual who is the subject of the requested protected health information has been given written notice of this request, that such notice included sufficient information about the litigation to permit the individual to raise an objection, that the time allowed for the individual to object has now elapsed, and that no such objection has been raised. See 45 C.F.R., Subpart E, § 164.512(e)(1), and see accompanying documentation.

Plaintiff agrees to pay all reasonable expenses incurred by you in connection with the production of said documents. Such production and inspection is to take place at the place where the documents or things are regularly kept or at some other reasonable place designated by you. You are further advised that other parties to the action in which this subpoena has been issued have the right to be present at the time of such production or inspection.

You may mail a certified, accurate, legible and complete copy of the requested documents and records to **Kendall A. Lee, Parsons, Lee & Juliano, P.C., 600 Vestavia Parkway, Suite 300, Birmingham, Alabama 35216**, but you may condition such activity on your part upon the payment in advance by the party causing the issuance of this subpoena of the reasonable costs of the making of such copies. **PLEASE ATTACH A COPY OF THIS SUBPOENA TO YOUR RECORDS**.

You have the right to object at any time prior to the date set forth in this subpoena for compliance. Should you choose to object, you should communicate such objection in writing to the party causing the issuance of this subpoena and stating, with respect to any item or category to which objection is made, your reasons for such objection.

Rule 45 of the Alabama Rules of Civil Procedure provides, in relevant part, as follows:

(c)    **Protection of Persons Subject to Subpoenas.**

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing under undue burden or expense on a person subject to that subpoena. The court from which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney fee.

(2)(A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person which is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

(3)(A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a resident of this state who is not a party or an officer of a party to travel to a place more than one hundred (100) miles from the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d)    Duties in Responding to Subpoena.**

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Ala. R. Civ. P. 45(c)-(d)(1)(2).

Dated this 7th day of January, 2018. 9

/s/ Kendall A. Lee
Kendall A. Lee (LEE091)
Attorney for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
klee@pljpc.com

RETURN ON SERVICE:
Executed by leaving a copy with

_____

_____

on this the _____ day of _____,
2018.

BY: _____
   Deputy Sheriff or
   Process Server

_____
Clerk of the Court

By _____
   Deputy Clerk

ELECTRONICALLY FILED
10/19/2018 6:11 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA AGDASOVNA SHARIFULLINA,  )
DECEASED MARINA STE,               )
Plaintiff,                         )
                                   )
                                   )
V.                                 )  Case No.:    CV-2016-900001.00
                                   )
                                   )
SNYDER DANIEL B.,                  )
WHITLOCK JEFFREY HOWARD,           )
WHITLOCK JEFFREY HUNTER,           )
Defendants.                        )

## HIPAA ORDER IN CIVIL ACTION

Upon compliance with Rule 45 of the Alabama Rules of Civil Procedure, the attorneys for the parties are permitted to inspect and copy all health information relating to the medical treatment and physical condition of Daniel B. Snyder following the incident made the basis of this lawsuit, including all information relating to the provision of health care to Daniel B. Snyder as a result of the subject incident. Subject to the provisions of Rule 26 of the Alabama Rules of Civil Procedure pertaining to the scope and limits of discovery, the attorneys for the parties to this lawsuit may request an interview with any health care provider, health plan administrator, or other individual in connection with the aforementioned health information and payments therefore (such information collectively referred to hereafter as "Protected Health Information"). Such health care provider, health plan administrator, or other individual may grant or deny a request for an interview.

**This Order authorizes any third party who is provided with a subpoena requesting the production of documents or commanding attendance at deposition or trial to disclose Protected Health Information in response to such request or subpoena. This Order is intended to authorize such disclosures under Section 164.512(e)(1) of the privacy regulations issued pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA).**

Nothing in this Order shall be deemed to relieve any party or attorney of the requirements of the Alabama Rules of Civil Procedure. Nothing in this Order permits disclosure of confidential communications, made for the purposes of diagnosis or treatment of a patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family, nor does this Order permit disclosure of records or information relating to HIV testing or sexually transmitted disease.

Nothing in this Order shall be construed to authorize any party or any attorney for any party to release, exchange, submit or share any Protected Health Information with any other person or any other entity, other than an agent or employee of the attorney or party.  The parties are prohibited from using or disclosing the protected health information for any purpose other than this litigation or proceeding for which such information was requested" pursuant to the requirements of 45 C.F.R. § 164.512(e)(1)(v)(A).

At the immediate conclusion of this action and at the written request of an individual whose Protected Health Information has been disclosed, or such individual's authorized representative, all recipients of the Protected Health Information shall return to the requesting party the documents and all copies thereof containing Protected Health Information received by them pursuant to this Order.  If a written request is not made at the immediate conclusion of this action, all recipients of the Protected Health Information reserve the right to destroy such documents and any copies thereof containing Protected Health Information received by them pursuant to this Order. Such Protected Health Information received in an insurance claim file and law firm litigation file may be retained to allow compliance to the extent and for the period that such retention is required by Alabama insurance laws and the Alabama State Bar rules and regulations.

A photocopy of the Order shall be deemed as an original.

DONE this 19th day of October, 2018.

/s/ MARTHA E. WILLIAMS
CIRCUIT JUDGE

ELECTRONICALLY FILED
1/7/2019 5:04 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| MARINA STEWART-MAGEE, | ) |
| As Administrator and Personal | ) |
| Representative of the ESTATE OF | ) |
| ALBINA AGDASOVNA | ) |
| SHARFIFULLINA, deceased, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No.: CV 2016-900001 |
| | ) |
| DANIEL B. SNYDER, *et al.* | ) |
| | ) |
| Defendant. | ) |

## **DEFENDANTS MOTION TO CONTINUE**

COME NOW, the Defendants, Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock ("Whitlocks") and move this Court to enter an Order continuing the Trial of this case from its current setting and as grounds for such show unto the Court as follows:

1. This case is currently set for a jury Trial the week of February 11, 2009.

2. The Plaintiff filed an Amended Complaint on July 12, 2018 adding the Whitlocks as party Defendants in this case.

3. Jeffrey Howard Whitlock was served with the Amended Complaint on July 27, 2018 and an Answer was filed on his behalf on August 12, 2018.

4. Jeffery Hunter Whitlock was served with the Complaint on or about October 30, 2018 (Alacourt shows November 30, 2018) and an Answer was filed on his behalf on October 30, 2018.

5. Considerable discovery was completed, including the taking of several depositions, prior to the Whitlocks being added as parties to this lawsuit.

6. The Whitlocks have not had sufficient time to adequately prepare to defend themselves in this case and need time to conduct additional discovery.

7. No party will be prejudiced by a continuance of the Trial.

WHEREFORE, premises considered, Defendants Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock pray that this Court will enter an Order continuing the Trial of this case from its current setting for the foregoing reasons.


*/s/ David R. Wells*
DAVID R. WELLS (WEL016)
Attorney for the Defendant,
Jeffrey Hunter Whitlock

OF COUNSEL:

MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203
(205) 639-5300
(205) 639-5350 *facsimile*
dwells@wmslawfirm.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have served a complete copy of the foregoing instrument upon the following attorney of record via the electronic ALAFILE system, on this 7th day of January, 2019.

Mark W. Lee
Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway
Suite 300
Birmingham, AL 35216
(205)   326-6600
mlee@pljpc.com
klee@pljpc.com

Daniel S. Wolter
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive
Suite 100
Birmingham, AL 35223
dwolter@wolterlawfirm.com

*/s/ David R. Wells*
OF COUNSEL

| State of Alabama<br>Unified Judicial System<br>Form C-13 (front) Rev. 4/18 | ORDER TO APPEAR<br>(SUBPOENA) | Case Number:<br>25-CV-2016-900001.00 |

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

☐ State of Alabama
☐ Municipality of _____
☑ MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT
(For Juvenile cases only):
☐ In the Matter of _____

AIR METHODS D/B/A LIFE SAVER

CUSTODIAN OF RECORD
1822 PINEVIEW CIRCLE
RAINBOW CITY, AL 35906

W017

A. Issued at the request of :
1. ☑ Plaintiff/State
2. ☐ Defendant
3. ☐ Grand Jury
B. Special Instructions
You are ordered to:
1. ☐ Appear at trial
2. ☑ Produce records or documents-See attached schedule(s)
3. ☐ Appear at deposition
4. ☐ Other _____

You may contact: KENDALL A. LEE POST OFFICE BOX 661228 BIRMINGHAM, AL, 35266 (205) 326-6600

YOU ARE ORDERED TO APPEAR to give testimony before the court or by deposition; and/or produce and permit inspection and copying of books, documents, or tangible things; and/or permit inspection of premises as stated below until otherwise excused. Failure to obey this subpoena may be deemed a contempt of court from which the subpoena was issued.

**DATE:** 1/22/2019 9:00:00 AM
**ROOM:** _____
**ADDRESS:** Parsons Lee & Juliano
600 Vestavia Parkway Suite 300
Birmingham, AL 35216
**DATE ISSUED:** 1/7/2019

/s/ LISA MCSWAIN
Signature of Court Clerk              Deputy Clerk Initials

### ADDITIONAL INSTRUCTIONS
Any inspection or production of documents or records must be completed within 15 days

Produce Documents Only
See Civil Subpoena Attached
No Appearance Required

---

**TO ANY SHERIFF OF THE STATE OF ALABAMA** You are ordered to se...
**OR ANY AUTHORIZED PERSON:** court.

RETURN ON S

I certify that I personally delivered a copy of this order
to _____
_____ on _____
_____

Signature and Title of Server

25-CV-2016-900001.00-W017

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only
For delivery information, visit our website at www.usps.com®.

CV-16-900001  Subp.

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)       $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required          $
☐ Adult Signature Restricted Delivery $
Postage
$
Total Postage and Fees
$       7.09
Sent To  Air Methods d/b/a Life Saver
Street and Apt. No., or PO Box No.
City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047  See Reverse for Instructions

Postmark
Here

| State of Alabama<br>Unified Judicial System<br>Form C-13 (front)   Rev. 4/18 | ORDER TO APPEAR<br>(SUBPOENA) | Case Number:<br>25-CV-2016-900001.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

☐ State of Alabama
☐ Municipality of _____
☑ MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT
  (For Juvenile cases only):
☐ In the Matter of _____

DR. DAVID J. GRAY

4601 WHITESBURG DRIVE SE
SUITE 103
HUNTSVILLE, AL 35802

W016

A. Issued at the request of :
1. ☑ Plaintiff/State
2. ☐ Defendant
3. ☐ Grand Jury
B. Special Instructions
   You are ordered to:
1. ☐ Appear at trial
2. ☑ Produce records or documents-See attached schedule(s)
3. ☐ Appear at deposition
4. ☐ Other

**You may contact:**  KENDALL A. LEE POST OFFICE BOX 661228 BIRMINGHAM, AL 35266 (205) 326-6600

**YOU ARE ORDERED TO APPEAR** to give testimony before the court or by deposition; and/or produce and permit inspection and copying of books, documents, or tangible things; and/or permit inspection of premises as stated below until otherwise excused. Failure to obey this subpoena may be deemed a contempt of court from which the subpoena was issued.

| | | ADDITIONAL INSTRUCTIONS |
|---|---|---|

**DATE:** 1/22/2019 9:00:00 AM

**ROOM:**

**ADDRESS:** Parsons Lee & Juliano
600 Vestavia Parkway Suite 300
Birmingham, AL 35216

**DATE ISSUED:** 1/7/2019

/s/ LISA MCSWAIN
Signature of Court Clerk            Deputy Clerk Initials

ADDITIONAL INSTRUCTIONS
Any inspection or production of documents or records
must be completed within 15 days

Produce Documents Only
See Civil Subpoena Attached
No Attendance Required

**TO ANY SHERIFF OF THE STATE OF ALABAMA** You are ordered to ser
**OR ANY AUTHORIZED PERSON:** court.

RETURN ON S

I certify that I personally delivered a copy of this order
to _____
on _____

_____
Signature and Title of Server

25-CV-2016-900001.00-W016

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $
Postage
$
Total Postage and Fees
$
Sent To  Dr. David J. Gray
Street and Apt. No., or PO Box No.
City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047        See Reverse for Instructions

| State of Alabama<br>Unified Judicial System<br>Form C-13 (front)   Rev. 4/18 | ORDER TO APPEAR<br>(SUBPOENA) | Case Number:<br>25-CV-2016-900001.00 |

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

☐ State of Alabama
☐ Municipality of _____
☑ MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT
  (For Juvenile cases only):
☐ In the Matter of _____

HUNTSVILLE HOSPITAL

CUSTODIAN OF RECORD
101 SIVLEY ROAD
HUNTSVILLE, AL 35801

W015

A.  Issued at the request of :
1. ☑ Plaintiff/State
2. ☐ Defendant
3. ☐ Grand Jury
B.  Special Instructions
   You are ordered to:
1. ☐ Appear at trial
2. ☑ Produce records or documents-See attached schedule(s)
3. ☐ Appear at deposition
4. ☐ Other _____

You may contact:  KENDALL A. LEE POST OFFICE BOX 661228 BIRMINGHAM, AL 35266 (205) 326-6600

YOU ARE ORDERED TO APPEAR to give testimony before the court or by deposition; and/or produce and permit inspection and copying of books, documents, or tangible things; and/or permit inspection of premises as stated below until otherwise excused. Failure to obey this subpoena may be deemed a contempt of court from which the subpoena was issued.

| | | ADDITIONAL INSTRUCTIONS |
|---|---|---|
| | | Any inspection or production of documents or records<br>must be completed within 15 days |

DATE:  1/22/2019 9:00:00 AM
ROOM:
ADDRESS:  Parsons Lee & Juliano
          600 Vestavia Parkway Suite 300
          Birmingham, AL 35216
DATE ISSUED:  1/7/2019

Produce Documents Only
See Civil Subpoena Attached
No Appearance Required

/s/ LISA MCSWAIN
Signature of Court Clerk          Deputy Clerk Initials

TO ANY SHERIFF OF THE STATE OF ALABAMA You are ordered to serve
OR ANY AUTHORIZED PERSON:          court.

RETURN ON SER

I certify that I personally delivered a copy of this order
to _____
    _____ on _____
_____

_____
Signature and Title of Server

25-CV-2016-900001.00-W015

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ _____
☐ Return Receipt (electronic)      $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required          $ _____
☐ Adult Signature Restricted Delivery $ _____
Postage
$
Total Postage and Fees
$     7.89
Sent To  Huntsville Hospital
Street and Apt. No., or PO Box No.
City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

Postmark
Here

ELECTRONICALLY FILED
1/9/2019 9:37 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## MUDD, BOLVIG, LUKE & WELLS, LLC
ATTORNEYS AND COUNSELORS AT LAW

2011 4ᵀᴴ AVENUE NORTH
BIRMINGHAM, ALABAMA 35203

Tax id#26-1495518

(205) 639-5300
TELECOPIER (205) 639-5350

David R. Wells
dwells@wmslawfirm.com

January 9, 2019

Hon. Sibley G. Reynolds
19th Judicial Circuit
134 N. Court Street
Prattville, AL  36067

Hon. Bud Turner
7th Judicial Court
25th West 11th Street
Anniston, AL 36201

Hon. Martha E. Williams
32nd Judicial Circuit
500 2nd Avenue SW
Cullman, AL 35505

Re:    Marina Stewart-Magee, *et al*. v. Jeffrey Howard Whitlock, *et al*. (Williams)
In the Circuit Court of Cullman County, Alabama
Civil Action No.: CV-2016-900001

Walter Stoudemire v. Otis Tyus, *et al*. (Reynolds)
In the Circuit Court of Autauga County, Alabama
Civil Action No.:  CV 2017-900157

Patricia Ann Hancock v. Jermika Sheree Bradford (Turner)
In the Circuit Court of Calhoun County, Alabama;
Civil Action No.:        CV-2017-900451

Your Honors:

I currently have the above-captioned cases set for trial the week of **February 11, 2019.**

The purpose of this correspondence is not to suggest that any case take priority over any other case, nor I am requesting any action by the Courts at this time.

The purpose of this letter is merely to advise the Courts and opposing counsel of the potential conflict in accordance with the administrative rules of Court.

MUDD, BOLVIG, LUKE & WELLS, LLC
January 9, 2019
Page 2
_____

Yours truly,

*David R. Wells*

David R. Wells

DRW/saj

cc:     All counsel of record


ELECTRONICALLY FILED
1/10/2019 12:09 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

MARINA STEWART-MAGEE, WHO                    )
SUES AS ADMINISTRATOR AND                    )
PERSONAL REPRESENTATIVE OF                   )
THE ESTATE OF ALBINA                         )
AGDASOVNA SHARIFULLINA,                       )    CIVIL ACTION No. CV 2016-900001
DECEASED,                                    )
                                             )
    Plaintiff,                                )

v.

DANIEL B. SNYDER, ET AL.,

    Defendants.

---

### NOTICE OF INTENT TO SERVE SUBPOENA ON NON-PARTY

---

Take notice that upon expiration of fifteen (15) days from the date of service of this notice the plaintiff, Marina Stewart-Magee, will apply to the Clerk of this Court for issuance of the attached subpoena directed to AT&T NATIONAL COMPLAINCE CENTER who is not a party and whose address is 11760 U.S. Highway One, Suite 600, North Palm Beach, FL 33408 to produce copies of the documents specified in the attached subpoena.

                                      *s/Mark W. Lee*
                                        Mark W. Lee (LEE003)

OF COUNSEL:

PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL  35216
(205) 326-6600

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that I have on this <u>10th</u> day of <u>January</u>, 2019 electronically filed the foregoing pleading with the Clerk of the Court using the Alafile system which will send notification of such filing to the following counsel of record:

Daniel S. Wolter
Daniel Wolter Law Firm, LLC
402 Office Park Drive, Suite 100
Birmingham, AL  35223

David R. Wells, Esq.
Whitaker, Mudd, Luke & Wells, LLC
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

<u>*s/Mark W. Lee*</u>              
OF COUNSEL

IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENTATIVE OF THE ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, DECEASED, | ) ) ) ) ) ) ) | CIVIL ACTION No. CV 2016-900001 |
| Plaintiff, | ) ) ) | |
| v. | | |
| DANIEL B. SNYDER, ET AL., | | |
| Defendant. | | |

## CIVIL SUBPOENA FOR PRODUCTION OF DOCUMENTS UNDER RULE 45

TO:      Custodian of Records
         **AT&T NATIONAL COMPLAINCE CENTER**
         **11760 U.S. Highway One**
         **Suite 600**
         **North Palm Beach, FL  33408**

You are hereby commanded to do each of the following acts at the instance of the plaintiff, Marina Stewart-Magee, within fifteen (15) days after service of this subpoena, (no sooner than 15 days unless ordered by the Court).

That you produce and permit defendant to inspect and copy each of the following documents:

**Any and all usage with cell tower information for the cellular phone number (205) 901-2363, for the time period of July 5, 2014 through July 7, 2014.**

Such production and inspection is to take place at the place where the documents or things are regularly kept or at some other reasonable place designated by you.

You are further advised that other parties to the action in which this subpoena has been issued have the right to be present at the time of such production or inspection.

**You have the option to deliver or mail legible copies of documents or things to MARK W. LEE, PARSONS, LEE & JULIANO, P.C., P.O. BOX 661228, BIRMINGHAM, AL 35266-1228, but you may condition such activity on your part upon the payment in advance by Parsons, Lee & Juliano, P.C. of the reasonable costs of the making of such copies. PLEASE ATTACH A COPY OF THE SUBPOENA.**

You have the right to object at any time prior to the date set forth in this subpoena for compliance. Should you choose to object, you should communicate such objection in writing to the party causing the issuance of this subpoena and stating, with respect to any item or category to which objection is made, your reasons for such objection.

**In order to comply with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the party causing the issuance of this subpoena hereby provides satisfactory assurance to you that this party has made reasonable efforts to ensure that the individual who is the subject of the requested protected health information has been given written notice of this request, that such notice included sufficient information about the litigation to permit the individual to raise an objection, that the time allowed for the individual to object has now elapsed and that no such objection has been raised. See 45 CFR, Subpart E, § 164.512(e)(1), and see accompanying documentation.**

Rule 45 of the Alabama Rules of Civil Procedure provides, in part, as follows:

(c)     **Protection of Persons Subject to Subpoenas.**

(1)     A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court from which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney fee.

(2)(A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person which is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

3(A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

    (i)    fails to allow reasonable time for compliance;

    (ii)    requires a resident of this state who is not a party or an officer of a party to travel to a place more than one hundred (100) miles from the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(13)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

    (iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

    (iv)    subjects a person to undue burden.

(B)    If a subpoena

    (i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

    (ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

    (iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial,

the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

## (d)   Duties in Responding to Subpoena.

(1)   A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

DATED _____ , 2019            s/Lisa McSwain_____
                                      CLERK

                                      s/ Mark W. Lee_____
                                      Mark W. Lee (LEE003)

OF COUNSEL:
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL  35216
(205) 326-6600

RETURN ON SERVICE: Executed by leaving a copy with _____ on this

the _____day of_____, 2019.

                                      _____
                                      SHERIFF
                                      _____
                                      DEPUTY SHERIFF


ELECTRONICALLY FILED
7/10/2019 12:56 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA            AGDASOVNA
SHARIFULLINA, DECEASED MARINA)
STE,
Plaintiff,                          )
                                    )
V.                                  ) Case No.:    CV-2016-900001.00
                                    )
SNYDER DANIEL B.,                   )
WHITLOCK JEFFREY HOWARD,            )
WHITLOCK JEFFREY HUNTER,            )
Defendants.                         )

## ORDER of CONTINUANCE

The Court has received and reviewed the Motion To Continue filed herein on behalf of newly added Defendants, JEFFREY HOWARD WHITLOCK and JEFFREY HUNTER WHITLOCK, and the same is GRANTED for the reasons stated therein.

This matter is continued beyond its current 2/11/19 setting and shall be reset by the Clerk on the Court's next available Civil Jury Trial Docket thereafter.

**DONE this 10th day of January, 2019.**

**/s/ MARTHA E. WILLIAMS**
**CIRCUIT JUDGE**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Air Methods d/b/a Life
Saver
Cust. of Records
1822 Pineview Circle
Rainbow City, AL 35906
CV16-900001 subp.

9590 9402 4518 8278 5576 39

2. Article Number (Transfer from service label)

7018 0680 0001 3962 7763

PS Form **3811**, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____   ☐ Agent   ☒ Addressee

B. Received by (Printed Name)   C. Date of Delivery

Bryan Ramsey   1/10/19

FILED IN OFFICE

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

JAN 14 2019

LISA McSWAIN
CIRCUIT CLERK
CULLMAN COUNTY

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
   Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 4518 8278 5576 39

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

LISA McSWAIN, CIRCUIT CLERK
500 2ND AVE SW – ROOM 303
CULLMAN, AL 35055-4137

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Huntsville Hospital
Cust. of Records
101 Sivley Rd. AL 35801
Huntsville
CV# 900001   Subp.

9590 9402 4518 8278 5576 15

2. Article Number (Transfer from service label)

7018 0680 0001 3962 7787

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____   ☐ Agent
                   ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

HUNTSVILLE AL 3580[ ]

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt



USPS TRACKING #

9590 9402 0518 8278 5576 15

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

FILED IN OFFICE

JAN 1 4 2019
LISA McSWAIN
CIRCUIT CLERK
CULLMAN COUNTY

• Sender: Please print your name, address, and ZIP+4® in this box•

LISA McSWAIN, CIRCUIT CLERK
500 2ND AVE SW – ROOM 303
CULLMAN, AL 35055-4137

ELECTRONICALLY FILED
1/28/2019 12:17 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

| State of Alabama<br>Unified Judicial System<br>Form C-13 (front)   Rev. 4/18 | ORDER TO APPEAR<br>(SUBPOENA) | Cas<br>25-C |
|---|---|---|

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

☐ **State of Alabama**

☐ **Municipality of** _____

☑ **MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT**

   **(For Juvenile cases only):**

☐ **In the Matter of** _____

AT&T NATIONAL COMPLIANCE CENTER

11760 U.S. HIGHWAY ONE
SUITE 600
NORTH PALM BEACH, FL 33408

A.  Issued at the request of :

1. ☑ Plaintiff/State
2. ☐ Defendant
3. ☐ Grand Jury

B.  Special Instructions
    You are ordered to:

1. ☐ Appear at trial
2. ☑ Produce records or documents-See attached schedule(s)
3. ☐ Appear at deposition
4. ☐ Other _____

**You may contact:**   MARK W. LEE POST OFFICE BOX 661228 BIRMINGHAM, AL 35266 (205) 326-6600

**YOU ARE ORDERED TO APPEAR to give testimony before the court or by deposition; and/or produce and permit inspection and copying of books, documents, or tangible things; and/or permit inspection of premises as stated below until otherwise excused. Failure to obey this subpoena may be deemed a contempt of court from which the subpoena was issued.**

|  |  |
|---|---|
| **DATE:**  02/12/2019 09:00 AM | **ADDITIONAL INSTRUCTIONS**<br>Any inspection or production of documents or records<br>must be completed within 15 days |
| **ROOM:** | |
| **ADDRESS:**  Parsons, Lee & Juliano | Produce Documents Only |
| 600 Vestavia Parkway Suite 300 | See Civil Subpoena Attached |
| Birmingham, AL 35216 | No Attendance Required |
| **DATE ISSUED:**  1/28/2019 | |

/s/ LISA MCSWAIN

Signature of Court Clerk                          Deputy Clerk Initials

**TO ANY SHERIFF OF THE STATE OF ALABAMA** You are ordered to serve this order on the above named person and make return to this
**OR ANY AUTHORIZED PERSON:**                  court.

## RETURN ON SERVICE

I certify that I personally delivered a copy of this order
to _____

_____ on _____

_____

_____

Signature and Title of Server

*(For Criminal cases only)*

☐ **Served By Mail**

_____

Date Mailed

_____

Sheriff                                        Deputy Sheriff

| Form C-13 (back)    Rev.4/18 | ORDER TO APPEAR (SUBPOENA) |
|---|---|

**NOTICE**

With respect to a subpoena which seeks only a production of documents or tangible things or an inspection of premises, as provided in Ala.R.Civ.P 45(a) (3) (C), the production of documents or tangible things or the inspection of premises pursuant to this subpoena shall take place where the documents or tangible things are regularly kept or at some other reasonable place designated by the recipient of this subpoena. As recipient of this subpoena, you have the option to deliver or mail legible copies of the documents or things to the party causing issuance of this subpoena, and the preparation of copies may be conditioned on the payment in advance of the reasonable cost of making such copies. Other parties involved in this lawsuit have the right to be present at the time of the production or inspection. The recipient of this subpoena has the right to object to the production or inspection at any time prior to the date of production or inspection set forth in this subpoena. See Ala. R.Civ.P. 45(c) (2) (B), which is set out below.

Rule 45, Ala. R.Civ.P., Paragraphs (c) & (d)

(c) Protection of person subject to subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court from which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty on appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, document or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designed in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a resident of this state who is not a party or an officer of a party to travel to a place more than one hundred (100) miles form the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provision of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expenses to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) Duties in responding to subpoena.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(3) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(4) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(5) A person responding to a subpoena need not provide discovery of electronically stored information from sources the person identifies to the requesting party as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(B). The court may specify conditions regarding the production of the discovery.

(6) If information in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the person or party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. Any party or the producing person may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

ELECTRONICALLY FILED
7/28/2019 12:17 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

MARINA STEWART-MAGEE, WHO )
SUES AS ADMINISTRATOR AND )
PERSONAL REPRESENTATIVE OF )
THE ESTATE OF ALBINA )
AGDASOVNA SHARIFULLINA, )    CIVIL ACTION No. CV 2016-900001
DECEASED, )
                          )
    Plaintiff, )
                          )

v.

DANIEL B. SNYDER, ET AL.,

    Defendant.

---

## CIVIL SUBPOENA FOR PRODUCTION OF DOCUMENTS UNDER RULE 45

---

TO:     Custodian of Records
          **AT&T NATIONAL COMPLAINCE CENTER**
          **11760 U.S. Highway One**
          **Suite 600**
          **North Palm Beach, FL  33408**

You are hereby commanded to do each of the following acts at the instance of the plaintiff, Marina Stewart-Magee, within fifteen (15) days after service of this subpoena, (no sooner than 15 days unless ordered by the Court).

That you produce and permit defendant to inspect and copy each of the following documents:

**Any and all usage with cell tower information for the cellular phone number (205) 901-2363, for the time period of July 5, 2014 through July 7, 2014.**

Such production and inspection is to take place at the place where the documents or things are regularly kept or at some other reasonable place designated by you.

You are further advised that other parties to the action in which this subpoena has been issued have the right to be present at the time of such production or inspection.

**You have the option to deliver or mail legible copies of documents or things to MARK W. LEE, PARSONS, LEE & JULIANO, P.C., P.O. BOX 661228, BIRMINGHAM, AL 35266-1228, but you may condition such activity on your part upon the payment in advance by Parsons, Lee & Juliano, P.C. of the reasonable costs of the making of such copies. PLEASE ATTACH A COPY OF THE SUBPOENA.**

You have the right to object at any time prior to the date set forth in this subpoena for compliance. Should you choose to object, you should communicate such objection in writing to the party causing the issuance of this subpoena and stating, with respect to any item or category to which objection is made, your reasons for such objection.

**In order to comply with the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the party causing the issuance of this subpoena hereby provides satisfactory assurance to you that this party has made reasonable efforts to ensure that the individual who is the subject of the requested protected health information has been given written notice of this request, that such notice included sufficient information about the litigation to permit the individual to raise an objection, that the time allowed for the individual to object has now elapsed and that no such objection has been raised. See 45 CFR, Subpart E, § 164.512(e)(1), and see accompanying documentation.**

Rule 45 of the Alabama Rules of Civil Procedure provides, in part, as follows:

(c)     **Protection of Persons Subject to Subpoenas.**

(1)     A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court from which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person which is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

3(A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

    (i)    fails to allow reasonable time for compliance;

    (ii)    requires a resident of this state who is not a party or an officer of a party to travel to a place more than one hundred (100) miles from the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(13)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

    (iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

    (iv)    subjects a person to undue burden.

(B)    If a subpoena

    (i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

    (ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

    (iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial,

the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d)     Duties in Responding to Subpoena.**

(1)     A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

DATED _____ , 2019          s/Lisa McSwain_____
                                    CLERK

                                    s/ Mark W. Lee_____
                                    Mark W. Lee (LEE003)

OF COUNSEL:
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL  35216
(205) 326-6600

RETURN ON SERVICE: Executed by leaving a copy with _____ on this

the _____ day of _____ , 2019.

                                    _____
                                    SHERIFF

                                    _____
                                    DEPUTY SHERIFF

ELECTRONICALLY FILED
1/15/2018 6:11 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA AGDASOVNA SHARIFULLINA,, )
DECEASED MARINA STE, )
Plaintiff, )
     )
V.                         ) Case No.:    CV-2016-900001.00
     )
SNYDER DANIEL B., )
WHITLOCK JEFFREY HOWARD, )
WHITLOCK JEFFREY HUNTER, )
Defendants. )

## HIPAA ORDER IN CIVIL ACTION

Upon compliance with Rule 45 of the Alabama Rules of Civil Procedure, the attorneys for the parties are permitted to inspect and copy all health information relating to the medical treatment and physical condition of Daniel B. Snyder following the incident made the basis of this lawsuit, including all information relating to the provision of health care to Daniel B. Snyder as a result of the subject incident. Subject to the provisions of Rule 26 of the Alabama Rules of Civil Procedure pertaining to the scope and limits of discovery, the attorneys for the parties to this lawsuit may request an interview with any health care provider, health plan administrator, or other individual in connection with the aforementioned health information and payments therefore (such information collectively referred to hereafter as "Protected Health Information"). Such health care provider, health plan administrator, or other individual may grant or deny a request for an interview.

**This Order authorizes any third party who is provided with a subpoena requesting the production of documents or commanding attendance at deposition or trial to disclose Protected Health Information in response to such request or subpoena. This Order is intended to authorize such disclosures under Section 164.512(e)(1) of the privacy regulations issued pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA).**

Nothing in this Order shall be deemed to relieve any party or attorney of the requirements of the Alabama Rules of Civil Procedure. Nothing in this Order permits disclosure of confidential communications, made for the purposes of diagnosis or treatment of a patient's mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family, nor does this Order permit disclosure of records or information relating to HIV testing or sexually transmitted disease.

Nothing in this Order shall be construed to authorize any party or any attorney for any party to release, exchange, submit or share any Protected Health Information with any other person or any other entity, other than an agent or employee of the attorney or party.  The parties are prohibited from using or disclosing the protected health information for any purpose other than this litigation or proceeding for which such information was requested" pursuant to the requirements of 45 C.F.R. § 164.512(e)(1)(v)(A).

At the immediate conclusion of this action and at the written request of an individual whose Protected Health Information has been disclosed, or such individual's authorized representative, all recipients of the Protected Health Information shall return to the requesting party the documents and all copies thereof containing Protected Health Information received by them pursuant to this Order.  If a written request is not made at the immediate conclusion of this action, all recipients of the Protected Health Information reserve the right to destroy such documents and any copies thereof containing Protected Health Information received by them pursuant to this Order. Such Protected Health Information received in an insurance claim file and law firm litigation file may be retained to allow compliance to the extent and for the period that such retention is required by Alabama insurance laws and the Alabama State Bar rules and regulations.

A photocopy of the Order shall be deemed as an original.

DONE this 19th day of October, 2018.

/s/ MARTHA E. WILLIAMS
CIRCUIT JUDGE

ELECTRONICALLY FILED
1/28/2019 1:54 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARINA STEWART-MAGEE,** | ) | |
| **as Administrator and Personal** | ) | |
| **Representative of the ESTATE** | ) | |
| **OF ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA, deceased,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | **CV-2016-900001** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANTS JEFF AND HUNTER WHITLOCK

Comes now the Plaintiff, **MARINA STEWART-MAGEE, as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, pursuant to Rule 37 of the Alabama Rules of Civil Procedure, and respectfully requests this Honorable Court to enter an Order requiring Defendants Jeffery Hunter Whitlock ("Hunter Whitlock") and Jeffery Howard Whitlock ("Jeff Whitlock") to promptly respond to the Plaintiff's outstanding discovery requests. As grounds for said Motion, Plaintiff submits the following:

1.      On <u>November 21, 2018</u>, Plaintiff filed Interrogatories and a Request for Production of Documents to Defendant Hunter Whitlock. (Docs. 248-49). The deadline to respond to Plaintiff's discovery requests was <u>December 21, 2018</u>.

2.      Plaintiff filed a similar set of Interrogatories and Request for Production of Documents to Defendant Jeff Whitlock on <u>December 4, 2018</u>. (Doc. 252-53). The deadline to respond to Plaintiff's discovery requests was <u>January 3, 2019</u>.

3.      On January 3, 2019, Plaintiff's counsel sent an e-mail to counsel for Jeff and Hunter

Whitlock (David Wells) requesting Hunter Whitlock's discovery responses. <u>See</u> Ex. 1, E-mail from Kendall Lee to David Wells (Jan. 3, 2019). Mr. Wells responded to Plaintiff's counsel the following day, and stated that he was "working on th[em]." Ex. 2, E-mail from David Wells to Kendall Lee (Jan. 4, 2019).

4.      On <u>January 22, 2019</u>, more than two weeks later, Plaintiff's counsel sent a second e-mail to Mr. Wells, requesting that Jeff and Hunter Whitlock respond to the Plaintiff's outstanding discovery. <u>See</u> Ex. 3, E-mail from Kendall Lee to David Wells (Jan. 22, 2019). Plaintiff's counsel also asked Mr. Wells to send her the discovery responses by <u>January 24, 2019</u> to avoid the necessity of a motion to compel. <u>Id.</u> Mr. Wells did not respond to Plaintiff's counsel's e-mail, and the Whitlock defendants still have not responded to the Plaintiff's discovery requests.

5.      Based on the foregoing, Plaintiff respectfully requests this Honorable Court to enter an Order compelling Defendants Jeff and Hunter Whitlock to promptly respond to the Plaintiff's outstanding discovery requests.

Respectfully submitted this <u>28th</u> day of January, 2019.

/s/ Kendall A. Lee
**MARK W. LEE (LEE003)**
**KENDALL A. LEE (LEE091)**
Attorneys for Plaintiff
MARINA STEWART-MAGEE

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this <u>28th</u> day of January, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

David R. Wells, Esq.
**Whitaker, Mudd, Luke & Wells, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Daniel S. Wolter, Esq.
**Daniel Wolter Law Firm, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

/s/ Kendall A. Lee
OF COUNSEL

# Exhibit 1

## Kendall A. Lee

| | |
|---|---|
| **From:** | Kendall A. Lee |
| **Sent:** | Thursday, January 03, 2019 3:40 PM |
| **To:** | 'David Wells' |
| **Cc:** | Mark Lee; Dyan D. Wurm |
| **Subject:** | Hunter Whitlock's Discovery Responses - Marina Stewart-Magee (Albina Sharifullina) v. Daniel Snyder (1602-254) |

Dear David:

We filed Interrogatories and a Request for Production of Documents to Hunter Whitlock on November 21, 2018. Thus far, there has been no response. Please respond to this outstanding discovery without the necessity of a motion. Thanks so much.

**Kendall A. Lee** | Attorney
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
klee@pljpc.com



PARSONS, LEE & JULIANO, P.C.

NOTICE: This message is directed to and is for the use of the above-noted addressee only, and its contents may be legally privileged or confidential. If the reader of this message is not the intended recipient, you are hereby notified that any distribution, dissemination, or copy of this message is strictly prohibited. If you have received this message in error, please delete it immediately and notify the sender. This message is not intended to be an electronic signature nor to constitute an agreement of any kind under applicable law unless otherwise expressly indicated herein.

1

Exhibit 2

## Kendall A. Lee

| | |
|---|---|
| **From:** | David Wells <dwells@wmslawfirm.com> |
| **Sent:** | Friday, January 04, 2019 5:02 PM |
| **To:** | Kendall A. Lee |
| **Cc:** | Mark Lee; Dyan D. Wurm |
| **Subject:** | RE: Hunter Whitlock's Discovery Responses - Marina Stewart-Magee (Albina Sharifullina) v. Daniel Snyder (1602-254) |

Kendall,

I am working on these as well as the depositions dates you guys requested.  In light of the fact this case is set for Trial on February 11th do you have any opposition to me filing a Motion to Continue?

Thank you,

*David R. Wells*

## MUDD, BOLVIG, LUKE & WELLS, LLC

2011 4th Avenue North
Birmingham, AL 35203
(205) 639-5300 (Main)
(205) 639-5317 (Direct)
(205) 639-5350 (Facsimile)
*www.wmslawfirm.com*

This communication and all attachments may be subject to the attorney-client privilege and/or considered attorney work-product  and is intended solely for the use of the addressee.  If you are not the intended recipient, you should immediately stop reading this message and delete it from your system.  Any unauthorized reading, distribution, copying, or other use of this message, or its attachments, is strictly prohibited.  If you received this message in error, please notify me immediately at 205-639-5300.

1

Exhibit 3

## Kendall A. Lee

| | |
|---|---|
| **From:** | Kendall A. Lee |
| **Sent:** | Tuesday, January 22, 2019 5:44 PM |
| **To:** | 'David Wells' |
| **Cc:** | Mark Lee; Dyan D. Wurm |
| **Subject:** | Second Request for Discovery Responses - Marina Stewart-Magee (Albina Sharifullina) v. Daniel Snyder (1602-254) |

David:

Hunter and Jeff Whitlock's discovery responses are both overdue. Hunter's responses were due on December 21st and Jeff's responses were due on January 4th.

Please send me the responses by Thursday, January 24th. I will be filing a motion to compel if I do not receive them by then. Thanks so much.

**Kendall A. Lee** | Attorney
**Parsons, Lee & Juliano, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
klee@pljpc.com



PARSONS, LEE & JULIANO, P.C.

NOTICE: This message is directed to and is for the use of the above-noted addressee only, and its contents may be legally privileged or confidential. If the reader of this message is not the intended recipient, you are hereby notified that any distribution, dissemination, or copy of this message is strictly prohibited. If you have

1

| State of Alabama<br>Unified Judicial System<br>Form C-13 (front)   Rev. 4/18 | ORDER TO APPEAR<br>(SUBPOENA) | Case Number:<br>25-CV-2016-900001.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

☐ State of Alabama
☐ Municipality of _____

☑ MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT
(For Juvenile cases only):
☐ In the Matter of _____

AT&T NATIONAL COMPLIANCE CENTER

11760 U.S. HIGHWAY ONE
SUITE 600
NORTH PALM BEACH, FL 33408

W018

A.  Issued at the request of :
1. ☑ Plaintiff/State
2. ☐ Defendant
3. ☐ Grand Jury
B.  Special Instructions
You are ordered to:
1. ☐ Appear at trial
2. ☑ Produce records or documents-See attached schedule(s)
3. ☐ Appear at deposition
4. ☐ Other _____

You may contact:  MARK W. LEE POST OFFICE BOX 661228 BIRMINGHAM, AL 35266 (205) 326-6600

**YOU ARE ORDERED TO APPEAR** to give testimony before the court or by deposition; and/or produce and permit inspection and copying of books, documents, or tangible things; and/or permit inspection of premises as stated below until otherwise excused. Failure to obey this subpoena may be deemed a contempt of court from which the subpoena was issued.

DATE:  2/12/2019 9:00:00 AM
ROOM:
ADDRESS:  Parsons, Lee & Juliano
600 Vestavia Parkway Suite 300
Birmingham, AL 35216
DATE ISSUED:  1/28/2019

/s/ LISA MCSWAIN
Signature of Court Clerk          Deputy Clerk Initials

ADDITIONAL INSTRUCTIONS
Any inspection or production of documents or records must be completed within 15 days

Produce Documents Only
See Civil Subpoena Attached
No Attendance Required

**TO ANY SHERIFF OF THE STATE OF ALABAMA** You are ordered to serve this order on the above named person and make return to this OR ANY AUTHORIZED PERSON:          court.

RETURN ON SE

I certify that I personally delivered a copy of this order
to _____
_____ on _____
_____

Signature and Title of Server

25-CV-2016-900001.00-W018

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

Certified Mail Fee
$
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)      $
☐ Return Receipt (electronic)    $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required       $
☐ Adult Signature Restricted Delivery  $
Postage
$
Total Postage and Fees
$
Sent To
Street and Apt. No., or PO Box No.
City, State, ZIP+4®

Postmark
Here

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

DOCUMENT 291

LISA McSWAIN, CIRCUIT CLERK
ROOM 303 COURTHOUSE
500 2ND AVENUE S.W.
CULLMAN, ALABAMA 35055

To: DR. DAVID J. GRAY
4601 WHITESBURG DRIVE SE
SUITE 103
HUNTSVILLE, AL, 35802

35802516428

7018 0680 0001 3962 7770

CERTIFIED MAIL

U.S. POSTAGE >PITNEY BOWES

$ 007.09°

NIXIE        352   DE 1        0001/16/19

RETURN TO SENDER
UNCLAIMED
UNABLE TO FORWARD

BC: 35055415599        *1339-09395-02-37

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dr. David J. Gray
460 Whitesburg Dr SE
#103
Huntsville, AL 35802
CM6-90001 swap

9590 9402 4518 8278 5576 22

2. Article Number (Transfer from service label)

7018 0680 0001 3962 7770

PS Form 3811, July 2015 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X ☐ Agent
  ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   ($500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

DOCUMENT 292

ELECTRONICALLY FILED
2/4/2019 1:37 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| as Administrator and Personal | ) | |
| Representative of the ESTATE | ) | |
| OF ALBINA AGDASOVNA | ) | |
| SHARIFULLINA, deceased, | ) | |
| | ) | **CIVIL ACTION NO.** |
| Plaintiff, | ) | **CV-2016-900001** |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL B. SNYDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

Comes now the Plaintiff, **MARINA STEWART-MAGEE**, **as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, and gives notice of serving the following discovery documents on all counsel of record in the above-captioned lawsuit:

☒    Plaintiff's Notice of Deposition of Defendant Jeff Whitlock; and

☒    Plaintiff's Notice of Deposition of Defendant Hunter Whitlock.

/s/ Mark W. Lee
Mark W. Lee (LEE003)
Kendall A. Lee (LEE091)
Attorneys for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 4th day of February, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

David R. Wells, Esq.
**WHITAKER, MUDD, LUKE & WELLS, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Daniel S. Wolter, Esq.
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

/s/ Mark W. Lee_____
OF COUNSEL

DOCUMENT 293

ELECTRONICALLY FILED
2/4/2019 1:37 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

|  |  |  |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| as Administrator and Personal | ) | |
| Representative of the ESTATE | ) | |
| OF ALBINA AGDASOVNA | ) | |
| SHARIFULLINA, deceased, | ) | |
| | ) | **CIVIL ACTION NO.** |
| Plaintiff, | ) | **CV-2016-900001** |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL B. SNYDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S NOTICE OF DEPOSITION
## OF DEFENDANT JEFF WHITLOCK

**TO:**   David R. Wells, Esq.
WHITAKER, MUDD, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

**PLEASE TAKE NOTICE** that, pursuant to Rule 30 of the Alabama Rules of Civil

Procedure, Plaintiff Marina Stewart-Magee, by and through her attorneys, Mark W. Lee and

Kendall A. Lee, will take the deposition upon oral examination of Defendant Jeffery Howard

Whitlock ("Jeff Whitlock") for the purpose of discovery and/or for use as evidence in the above-

captioned lawsuit.

| | |
|---|---|
| **Deponent's Name:** | Jeff Whitlock |
| **Date:** | April 1, 2019 |
| **Time:** | 9:00 a.m. |
| **Location:** | Parsons, Lee & Juliano, P.C. |
| | 600 Vestavia Parkway, Suite 300 |
| | Birmingham, Alabama 35216 |

**Court Reporter:**        Freedom Reporting

/s/ Mark W. Lee
**MARK W. LEE (LEE003)**
**KENDALL A. LEE (LEE091)**
Attorneys for Plaintiff
MARINA STEWART-MAGEE

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

---

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 4th day of February, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

David R. Wells, Esq.
**WHITAKER, MUDD, LUKE & WELLS, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Daniel S. Wolter, Esq.
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

/s/ Mark W. Lee
OF COUNSEL

2

ELECTRONICALLY FILED
2/4/2019 1:37 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| as Administrator and Personal | ) | |
| Representative of the ESTATE | ) | |
| OF ALBINA AGDASOVNA | ) | |
| SHARIFULLINA, deceased, | ) | |
| | ) | **CIVIL ACTION NO.** |
| Plaintiff, | ) | **CV-2016-900001** |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL B. SNYDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S NOTICE OF DEPOSITION
## OF DEFENDANT HUNTER WHITLOCK

**TO:**  David R. Wells, Esq.
WHITAKER, MUDD, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

**PLEASE TAKE NOTICE** that, pursuant to Rule 30 of the Alabama Rules of Civil Procedure, Plaintiff Marina Stewart-Magee, by and through her attorneys, Mark W. Lee and Kendall A. Lee, will take the deposition upon oral examination of Defendant Jeffery Hunter Whitlock ("Hunter Whitlock") for the purpose of discovery and/or for use as evidence in the above-captioned lawsuit.

| | |
|---|---|
| **Deponent's Name:** | Hunter Whitlock |
| **Date:** | April 1, 2019 |
| **Time:** | 1:00 p.m. |
| **Location:** | Parsons, Lee & Juliano, P.C. |
| | 600 Vestavia Parkway, Suite 300 |
| | Birmingham, Alabama 35216 |

**Court Reporter:**    Freedom Reporting

/s/ Mark W. Lee
**MARK W. LEE (LEE003)**
**KENDALL A. LEE (LEE091)**
Attorneys for Plaintiff
MARINA STEWART-MAGEE

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

---

## CERTIFICATE OF SERVICE

I hereby certify that I have on this $\underline{4^{th}}$ day of February, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

David R. Wells, Esq.
**WHITAKER, MUDD, LUKE & WELLS, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Daniel S. Wolter, Esq.
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

/s/ Mark W. Lee
OF COUNSEL

2

ELECTRONICALLY FILED
2/4/2019 2:11 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

| State of Alabama<br>Unified Judicial System<br>Form C-13 (front)   Rev. 4/18 | ORDER TO APPEAR<br>(SUBPOENA) | Cas<br>25-0 |
|---|---|---|

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

☐ **State of Alabama**

☐ **Municipality of** _____

☑ **MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT**

   **(For Juvenile cases only):**

☐ **In the Matter of** _____

MARILYN WHITLOCK

2250 BEAVER CREEK ROAD
COLUMBIANA, AL 35051

A.  Issued at the request of :
1. ☑ Plaintiff/State
2. ☐ Defendant
3. ☐ Grand Jury

B.  Special Instructions
   You are ordered to:
1. ☐ Appear at trial
2. ☐ Produce records or documents-See attached schedule(s)
3. ☑ Appear at deposition
4. ☐ Other _____

**You may contact:**   MARK W. LEE POST OFFICE BOX 661228 BIRMINGHAM, AL 35266 (205) 326-6600

**YOU ARE ORDERED TO APPEAR** to give testimony before the court or by deposition; and/or produce and permit inspection and copying of books, documents, or tangible things; and/or permit inspection of premises as stated below until otherwise excused. Failure to obey this subpoena may be deemed a contempt of court from which the subpoena was issued.

| | | ADDITIONAL INSTRUCTIONS |
|---|---|---|
| **DATE:** | 03/08/2019 09:00 AM | Any inspection or production of documents or records must be completed within 15 days |
| **ROOM:** | Large Conference Room | |
| **ADDRESS:** | Parsons, Lee & Juliano, P.C. | |
| | 600 Vestavia Parkway, Suite 300 | |
| | Birmingham, AL 35216 | |
| **DATE ISSUED:** | 2/4/2019 | |

/s/ LISA MCSWAIN

Signature of Court Clerk                    Deputy Clerk Initials

**TO ANY SHERIFF OF THE STATE OF ALABAMA** You are ordered to serve this order on the above named person and make return to this **OR ANY AUTHORIZED PERSON:** court.

### RETURN ON SERVICE

I certify that I personally delivered a copy of this order to

_____ on _____

_____

_____

Signature and Title of Server

*(For Criminal cases only)*

☐ **Served By Mail**

_____
Date Mailed

_____          _____
Sheriff                                        Deputy Sheriff

| **Form C-13 (back)     Rev.4/18** | **ORDER TO APPEAR (SUBPOENA)** |
|---|---|

**NOTICE**

With respect to a subpoena which seeks only a production of documents or tangible things or an inspection of premises, as provided in Ala.R.Civ.P 45(a) (3) (C), the production of documents or tangible things or the inspection of premises pursuant to this subpoena shall take place where the documents or tangible things are regularly kept or at some other reasonable place designated by the recipient of this subpoena. As recipient of this subpoena, you have the option to deliver or mail legible copies of the documents or things to the party causing issuance of this subpoena, and the preparation of copies may be conditioned on the payment in advance of the reasonable cost of making such copies. Other parties involved in this lawsuit have the right to be present at the time of the production or inspection. The recipient of this subpoena has the right to object to the production or inspection at any time prior to the date of production or inspection set forth in this subpoena. See Ala. R.Civ.P. 45(c) (2) (B), which is set out below.

Rule 45, Ala. R.Civ.P., Paragraphs (c) & (d)

(c) Protection of person subject to subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court from which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty on appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, document or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designed in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a resident of this state who is not a party or an officer of a party to travel to a place more than one hundred (100) miles form the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provision of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expenses to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) Duties in responding to subpoena.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(3) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(4) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(5) A person responding to a subpoena need not provide discovery of electronically stored information from sources the person identifies to the requesting party as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(B). The court may specify conditions regarding the production of the discovery.

(6) If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the person or party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. Any party or the producing person may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

ELECTRONICALLY FILED
2/4/2019 2:21 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

| State of Alabama<br>Unified Judicial System<br>Form C-13 (front)   Rev. 4/18 | ORDER TO APPEAR<br>(SUBPOENA) | Cas<br>25-C |
|---|---|---|

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

☐ **State of Alabama**
☐ **Municipality of** _____
☑ **MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT**
  **(For Juvenile cases only):**
☐ **In the Matter of** _____

MARY HOLLACE WHITLOCK

713 SAULTER LANE
BIRMINGHAM, AL 35209

A.   Issued at the request of :
1. ☑ Plaintiff/State
2. ☐ Defendant
3. ☐ Grand Jury
B.   Special Instructions
    You are ordered to:
1. ☐ Appear at trial
2. ☐ Produce records or documents-See attached schedule(s)
3. ☑ Appear at deposition
4. ☐ Other _____

**You may contact:**   MARK W. LEE POST OFFICE BOX 661228 BIRMINGHAM, AL 35266 (205) 326-6600

**YOU ARE ORDERED TO APPEAR** to give testimony before the court or by deposition; and/or produce and permit inspection and copying of books, documents, or tangible things; and/or permit inspection of premises as stated below until otherwise excused. Failure to obey this subpoena may be deemed a contempt of court from which the subpoena was issued.

|  |  |
|---|---|
| **DATE:**   03/08/2019 01:00 PM | **ADDITIONAL INSTRUCTIONS**<br>Any inspection or production of documents or records<br>must be completed within 15 days |
| **ROOM:**   Large Conference Room | |
| **ADDRESS:**   Parsons, Lee & Juliano, P.C. | |
| 600 Vestavia Parkway, Suite 300 | |
| Birmingham, AL 35216 | |
| **DATE ISSUED:**   2/4/2019 | |

/s/ LISA MCSWAIN
_____
Signature of Court Clerk              Deputy Clerk Initials

**TO ANY SHERIFF OF THE STATE OF ALABAMA**  You are ordered to serve this order on the above named person and make return to this
**OR ANY AUTHORIZED PERSON:**                        court.

### RETURN ON SERVICE

I certify that I personally delivered a copy of this order
to
_____      on  _____
_____

_____
Signature and Title of Server

*(For Criminal cases only)*
☐ **Served By Mail**

_____
Date Mailed

_____
Sheriff                                    Deputy Sheriff

| Form C-13 (back)   Rev.4/18 | ORDER TO APPEAR (SUBPOENA) |
| --- | --- |

**NOTICE**

With respect to a subpoena which seeks only a production of documents or tangible things or an inspection of premises, as provided in Ala.R.Civ.P 45(a) (3) (C), the production of documents or tangible things or the inspection of premises pursuant to this subpoena shall take place where the documents or tangible things are regularly kept or at some other reasonable place designated by the recipient of this subpoena. As recipient of this subpoena, you have the option to deliver or mail legible copies of the documents or things to the party causing issuance of this subpoena, and the preparation of copies may be conditioned on the payment in advance of the reasonable cost of making such copies. Other parties involved in this lawsuit have the right to be present at the time of the production or inspection. The recipient of this subpoena has the right to object to the production or inspection at any time prior to the date of production or inspection set forth in this subpoena. See Ala. R.Civ.P. 45(c) (2) (B), which is set out below.

Rule 45, Ala. R.Civ.P., Paragraphs (c) & (d)

(c) Protection of person subject to subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court from which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty on appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, document or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designed in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a resident of this state who is not a party or an officer of a party to travel to a place more than one hundred (100) miles form the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provision of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expenses to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) Duties in responding to subpoena.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(3) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(4) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(5) A person responding to a subpoena need not provide discovery of electronically stored information from sources the person identifies to the requesting party as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(B). The court may specify conditions regarding the production of the discovery.

(6) If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the person or party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. Any party or the producing person may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.



ELECTRONICALLY FILED
2/5/2019 11:02 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| ALBINA AGDASOVNA SHARIFULLINA, DECEASED MARINA) STE,<br>Plaintiff, | )<br>) |
| V. | ) Case No.:    CV-2016-900001.00 |
| | ) |
| SNYDER DANIEL B.,<br>WHITLOCK JEFFREY HOWARD,<br>WHITLOCK JEFFREY HUNTER,<br>Defendants. | )<br>)<br>)<br>) |

### ORDER

The Court has received and reviewed the Motion To Compel filed herein on behalf of Plaintiff.  To the extent that Defendants JEFFREY HOWARD WHITLOCK and JEFFREY HUNTER WHITLOCK have not fully responded to all outstanding Discovery, they shall do so within 30 days of this Order.

**DONE this 5th day of February, 2019.**

**/s/ MARTHA E. WILLIAMS**
**CIRCUIT JUDGE**

ELECTRONICALLY FILED
2/6/2019 7:55 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

MARINA STEWART-MAGEE,                    )
As Administrator and Personal            )
Representative of the ESTATE OF          )
ALBINA AGDASOVNA                         )
SHARFIFULLINA, deceased,                 )
                                         )
    Plaintiff,                         )
                                         )
v.                                       )        Civil Action No.: CV 2016-900001
                                         )
DANIEL B. SNYDER, *et al.*               )
                                         )
    Defendant.                         )

## <u>MOTION FOR SUMMARY JUDGMENT</u>

**COME NOW** the Defendants, Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock, and

pursuant to Rule 56 of the Alabama Rules of Civil Procedure, move this Honorable Court to enter

an Order granting summary judgment in their favor and dismiss all claims asserted against these

Defendants (Count One-Negligence and Wantonness), on the ground that the Plaintiffs' First

Amended Complaint substituting Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock for

fictitious plaintiffs is barred by the statute of limitations.  This motion is based upon the following:

1.    The **Complaint** of the plaintiff, **Marina Stewart-Magee**, attached hereto as
Exhibit "**A**";

2.    The **First Amended Complaint** of the plaintiff, **Marina Stewart-Magee**, attached
hereto as Exhibit "**B**";

3.    The sworn **deposition testimony** of the Defendant, **Daniel Snyder**, a copy of
which are attached hereto as Exhibit "**C**"

4.    The sworn **deposition testimony** of the Defendant, **Jeffrey Howard Whitlock**, a
copy of which are attached hereto as Exhibit "**D**";

5.    The sworn **deposition testimony** of Defendant, **Jeffrey Hunter Whitlock**, a copy
of which are attached hereto as Exhibit "**E.**"

**WHEREFORE**, **PREMISES CONSIDERED**, Defendants, Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock move this Honorable Court to enter an Order granting Summary Judgment in their favor and to make same final pursuant to Rule 54(b) of the Alabama Rules of Civil Procedure, as there is no just reason for delay.

*/s/ David R. Wells*
DAVID R. WELLS (WEL016)
Attorney for the Defendants,
Jeffrey Howard Whitlock and Jeffrey Hunter
Whitlock

OF COUNSEL:

MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203
(205) 639-5300
(205) 639-5350 *facsimile*
dwells@wmslawfirm.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have served a complete copy of the foregoing instrument upon the following attorney of record via the electronic ALAFILE system, on this 6th day of February, 2019.

Mark W. Lee
Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway
Suite 300
Birmingham, AL 35216
(205)326-6600
mlee@pljpc.com
klee@pljpc.com

Daniel S. Wolter
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive
Suite 100
Birmingham, AL 35223
dwolter@wolterlawfirm.com

*/s/ David R. Wells*
OF COUNSEL

IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| As Administrator and Personal | ) | |
| Representative of the ESTATE OF | ) | |
| ALBINA AGDASOVNA | ) | |
| SHARFIFULLINA, deceased, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: CV 2016-900001 |
| | ) | |
| DANIEL B. SNYDER, *et al.* | ) | |
| | ) | |
|     Defendant. | ) | |

## <u>DEFENDANTS MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

COME NOW, the Defendants, Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock (hereinafter "the Whitlocks"), by and through its undersigned counsel and file this memorandum brief in support of their Motion for Summary Judgment and pursuant to Rule 56 of the Alabama Rules of Civil Procedure, move this Honorable Court to enter an Order granting judgment as a matter of law in their favor and dismissing the claims against them, with prejudice.

## <u>INTRODUCTION</u>

This case arises from a Sea Doo collision on Smith Lake that occurred on or about July 5, 2014. The Plaintiff filed her Complaint on January 5, 2016. In the Complaint, the Plaintiff alleged causes of action for negligence and wantonness action against Defendant Daniel Snyder as well as various fictitiously named Defendants.

Since the Plaintiff filed her Complaint, numerous depositions have been taken including the depositions of Daniel Snyder, Jeffrey Hunter Whitlock, and Jeffrey Howard Whitlock. Despite the Whitlocks' depositions being taken prior to the statute of limitations expiring, the Plaintiff's

Complaint adding the Whitlocks as party Defendants was not filed until July 12, 2018, after the two-year statute of limitations had expired.

## NARRATIVE STATEMENT OF UNDISPUTED FACTS

Daniel Snyder was deposed by the Plaintiff's attorney at that time, Stephen D. Heninger, on June 14, 2016. (See Deposition of Daniel Snyder). During Snyder's deposition he identified both Jeff and Hunter Whitlock and testified that he had been at their home the evening of July 5, 2014. (See Deposition of Daniel Snyder, pages 31-39). In fact, during the deposition Mr. Heninger repeatedly referred to the statements both Jeff and Hunter Whitlock gave law enforcement personnel during their investigation of the Sea Doo collision (See Deposition of Daniel Snyder, pages 37-39). Subsequently, Mr. Heninger deposed Jeff and Hunter Whitlock on August 1, 2017. (See Depositions of Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock).

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show first, that there is no genuine issue as to any material fact and second, that the moving party is entitled to judgment as a matter of law. *See* Ala. R. Civ. P. 56(c)(3); *Accord King v. Winn-Dixie of Montgomery, Inc.*, 565 So. 2d 12, 13 (Ala. 1990). Initially, the moving party bears the burden of demonstrating the two prongs of this standard. *See Maharry v. City of Gadsden*, 587 So. 2d 966, 968 (Ala. 1991). Once this showing is made, however, the burden shifts to the non-moving party to rebut the showing. *See Id*., at 968. In order to rebut the moving party's showing, the non-moving party must present substantial evidence in support of each element of his or her claims that creates a genuine issue of material fact. *See McAfee v. Shredders, Inc.*, 650 So. 2d 871, 872 (Ala. 1994). Substantial evidence is "evidence of

such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." *See West v. Founders Life Assurance Co.*, 547 So. 2d 870, 871 (Ala. 1989). Mere speculation and conclusory allegations are not sufficient to create a genuine issue of material fact for trial. *See Riggs v. Bell*, 564 So. 2d 882 (Ala. 1990). "If the burden of proof at trial is on the nonmovant, the movant may satisfy Rule 56 burden of production either by submitting affirmative evidence that negates an essential element in the nonmovant's claim, or assuming discovery has been completed, by demonstrating to the trial court that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's clam . . . ." *Carraway v. Kurtis*, 987 So. 2d 512, 515 (Ala. 2007).

## ARGUMENT

**I.    Plaintiff's Amended Complaint substituting Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock for fictitiously named defendants does not relate back and is barred by the statute of limitations because the Plaintiff did not act with due diligence in discovering the Whitlocks' identity.**

The Plaintiff's Amended Complaint was filed on July 12, 2018, more than two years after the accident giving rise to the Plaintiff's claims.  The Plaintiff's Amended Complaint alleges causes of action against the Whitlocks for negligence, wantonness and recklessness.  The Plaintiff's claims against the Whitlocks is governed by a two-year statute of limitations.  §6-2-38(l) ALA CODE 1975; Booker v. United American Ins. Co., 700 So. 2d 1333, 1340 (Ala. 1997).

Because the Plaintiff added Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock as Defendants more than two years after the accident giving rise to the Plaintiff's claims, the Plaintiff can only avoid the statute of limitations bar only if she complied with the relation back rule provided in Rule 15(c)(4) of the Alabama Rules of Civil Procedure.  That Rule states that an amended complaint relates back to the date of the original complaint when "relation back is

3

permitted by principles applicable to fictitious party practice pursuant to Rule 9(h)."

In turn, Rule 9(h) provides:

When a party is ignorant of the name of an opposing party and so alleges in the party's pleading, the opposing party may be designated by any name, and when that party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.

Thus, Rule 9(h) and Rule 15(c) allow a plaintiff to avoid the bar of a statute of limitations by fictitiously naming defendants for which actual parties can later be substituted. *Ex parte Chemical Lime of Alabama, Inc.*, 916 So. 2d 594, 597 (Ala. 2005).

However, to take advantage of Rule 9(h), a plaintiff must use due diligence in determining the true identity of the fictitiously named defendant. *Fulmer v. Clark Equipment Co.*, 654 So. 2d 45, 46 (Ala. 1995). "The correct standard for determining whether a party exercised due diligence in attempting to ascertain the identity of the factiously named defendant 'is whether the plaintiff knew, or should have known, or was on notice, that the substituted defendants were in fact the parties described fictitiously." *Ex parte Nationwide Ins. Co.*, 991 So. 2d 1287 (Ala. 2008). "It is incumbent upon the plaintiff to exercise due diligence both *before* and after the filing of the complaint.  Only if the plaintiff has acted with due diligence in discovering the true identity of a fictitiously named defendant will an amendment substituting such a party relate back to the filing of the original complaint." *Ex parte Nicholson Manufacturing Ltd.*, 182 So. 3d 510, 514 (Ala. 2015)(emphasis in original).

Additionally, the Alabama Supreme Court has established that in order to avoid the bar of a statute of limitations when a plaintiff amends a complaint to identify a fictitiously named defendant, the plaintiff

(1) must state a cause of action against the party named fictitiously in the body of the original complaint and (2) must be ignorant of the identity of the fictitiously

4

named party, in the sense of having no knowledge at the time of the filing that the later-named party was in fact the party intended to be sued.

*Crawford v. Sundback*, 678 So.2d 1057, 1059 (Ala. 1996).

Moreover, for a plaintiff to be deemed ignorant of the identity of a fictitiously named defendant, the plaintiff must have exercised due diligence to identify the party intended to be sued:

A plaintiff is ignorant of the identity of a fictitiously named defendant when, after exercising due diligence to ascertain the identity of the party intended to be sued, he lacks knowledge at the time of the filing of the complaint of facts indicating to him that the substituted party was the party intended to be sued. Likewise, to invoke the relation-back principle of Rule 15(c), a plaintiff, after filing suit, must proceed in a reasonably diligent manner to determine the true identity of a fictitiously named defendant and to amend his complaint accordingly.

*Ex parte FMC Corp.*, 599 So.2d 592, 593–94 (Ala. 1992).

In *Ex parte Integra LifeSciences Corp.*, the Alabama Supreme Court granted mandamus relief where the plaintiff failed to name a substitution for a fictitiously named defendant within the statute of limitations period even though its identity was discoverable by reasonable diligence. *Ex parte Integra LifeSciences Corp.*, *(In re Brooks v. Outlaw, MD, et al.)*, No. 1170692, 2018 WL 4090569, at *1 (Ala. August 24, 2018). In that case, Tawni Brooks underwent double mastectomy and breast reconstruction surgery at Springhill Memorial Hospital in Mobile. *Id.* Brooks experienced complications from the surgery that were later revealed to potentially be related to surgical mesh implanted in her body. *Id.*

In March 2016, Brooks requested a copy of her medical records from Springhill and stated on the form that the reason she was requesting her medical records was to determine "what kind of mesh" had been used in her procedure. *Id.* In March 2016, Brooks sued the doctor who performed the surgery and various fictitiously named defendants. *Id.* In January 2017, Brooks amended her complaint to substitute two surgical mesh manufacturers for the fictitiously named

defendants. *Id*.  Those defendants informed Ms. Brooks that her medical records indicated that the mesh used in Ms. Brooks' surgery had been manufactured by a company that had been acquired by Integra LifeSciences Corporation ("Integra") in 2015 and by Atrium Medical Corporation ("Atrium"). *Id*.  In March 2017, Brooks filed her second amended complaint substituting Integra and Atrium for the fictitiously named defendants *Id*.

Integra moved for summary judgment on the grounds that Brooks' claims were barred by the applicable statute of limitations and that the second amended complaint did not relate back to the original complaint because, Brooks had been provided documents that specifically identified SurgiMend, an Integra product, as the mesh used in her procedure. *Id*. at *2.  In finding that Brooks' claim against Integra was barred, the Alabama Supreme Court reasoned if Brooks had made a reasonable inquiry into what kind of mesh was used in her surgery, it would have resulted in the discovery of Integra's identity. *Id*. at *4.  The Court provided a specific example of how such an inquiry would have resulted in discovering the identity of Integra. *Id*.  In its example, the Court stated that at all relevant times, information about SurgiMend, including SurgiMend's manufacturer, could be found on SurgiMend's website as well as Integra's website. *Id*.  The Alabama Supreme Court found that because the plaintiff in the *Integra* case did not make a reasonable inquiry as to what SurgiMend was, the plaintiff had not acted with due diligence in discovering the identity of Integra. *Id*. at *5.

Additionally, in May 2014, two separate accidents occurred on a bridge near Mobile when a vehicle struck a "buffer vehicle" behind an American Sweeping, Inc. street sweeper.  *Ex parte American Sweeping, Inc. (In re: Ala. Dept. of Transportation v. T&S Trucking, LLC)*, No. 1170461 27 ALW 36-6, at *5 (*Bald. Cty. Cir. Ct*. August 31, 2018).  The second accident happened when

6

a tractor trailer driven by William McRae and owned by T&S Trucking, LLC collided with a truck operated by Robert Sanders. *Id.* Both trucks exploded, killing McRae, injuring Sanders, and damaging the bridge. *Id.* In August 2015, ALDOT filed a complaint against T&S and the estate of McRae, seeking to recover the costs of repairs to the bridge required by the explosion. *Id.*

In December 2015 and April 2016, Sanders and his wife filed complaints in intervention against the same defendants. *Id.* at *7. Neither complaint included fictitious defendants. *Id.* In May 2016, the Sanderses amended their complaint to add fictitiously named defendants. *Id.* In August 2017, the Sanderses amended their complaints again to substitute ASI for a fictitiously named defendant. *Id.* ASI then motioned the Court to dismiss the claims against them on the ground that they were barred by the applicable statute of limitations. *Id.* The trial court denied the motion, ASI petitioned for a writ of mandamus, and the Alabama Supreme Court issued the writ of mandamus. *Id.*

The test applied by the Alabama Supreme Court in determining whether the plaintiff had exercised due diligence in that case was whether the plaintiff knew, should have known, or was on notice that the substituted defendants were in fact the parties described fictitiously. *Id.* The Court found that the plaintiffs had made little to no effort to determine the identity of ASI. *Id.* The Court presented three examples of how the plaintiffs had made little to no effort. *Id.* First, the accident report listed ASI as the owner of the buffer vehicle that was struck. *Id.* Second, ASI's identity could have easily been discovered from ALDOT. *Id.* Third, a witness from the accident testified in his deposition that a week after the accident he telephoned the Sanderses and they all talked about the accident that caused the Sanders' accident. *Id.* The Alabama Supreme Court reasoned that because the plaintiffs made little to no effort in determining the identity of the AIS, they failed

to exercise due diligence. *Id*. And because the plaintiffs had not exercised due diligence, the substitution of the fictitious defendant did not relate back to the original complaint. *Id*. Thus, the substitution of AIS for the fictitiously named defendant was barred by the statute of limitations. *Id*.

In this case, the Plaintiff had actual knowledge of the identity of Jeff and Hunter Whitlock no later than June 14, 2016 when Daniel Snyder was deposed. In Snyder's deposition, the Plaintiff's attorney questioned Snyder about statements the Whitlocks had given to investigators following the accident made the basis of the Plaintiff's Complaint (See Deposition of Daniel Snyder, pages 37-39). Additionally Snyder identified both Jeff and Hunter Whitlock and testified that he had been at their home the evening of July 5, 2014. (See Deposition of Daniel Snyder, pages 31-39). Subsequently, Mr. Heninger deposed Jeff and Hunter Whitlock on August 1, 2017. (See Depositions of Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock).

The undisputed evidence has shown that the Plaintiff, and her attorneys, not only knew the identity of Jeff and Hunter Whitlock but also knew of any alleged involvement the Whitlocks had in this matter by June 14, 2016 at the absolute latest. Despite having that information, the Plaintiff waited more than two years after Snyder's deposition to file an Amended Complaint on July 12, 2018 adding the Whitlocks as Defendants in this case, which was also more than two years after the statute of limitations expired. Therefore, the undisputed evidence is clear that the Plaintiff did not exercise due diligence and the claims against Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock do not relate back to the filing of the Plaintiff's Complaint in this case.

## **CONCLUSION**

Based upon the undisputed evidence in this case, Defendants Jeffrey Howard Whitlock and

Jeffrey Hunter Whitlock are entitled to judgment as a matter of law on all counts of the Plaintiff's

Amended Complaint and pray that that this Honorable Court enters an Order dismissing the

Plaintiff's claims against them, with prejudice, with costs taxed as paid.

/s/ David R. Wells
DAVID R. WELLS (WEL016)
Attorney for the Defendants,
Jeffrey Howard Whitlock and Jeffrey Hunter
Whitlock

OF COUNSEL:

MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203
(205) 639-5300
(205) 639-5350 facsimile
dwells@wmslawfirm.com

9

## CERTIFICATE OF SERVICE

I hereby certify that I have served a complete copy of the foregoing instrument upon the following attorney of record via the electronic ALAFILE system, on this 6th day of February, 2019.

Mark W. Lee
Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway
Suite 300
Birmingham, AL 35216
(205)   326-6600
mlee@pljpc.com
klee@pljpc.com

Daniel S. Wolter
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive
Suite 100
Birmingham, AL 35223
dwolter@wolterlawfirm.com

/s/ David R. Wells
OF COUNSEL

10

# EXHIBIT A

DOCUMENT 303

ELECTRONICALLY FILED
1/5/2016 8:53 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| **MARINA STEWART-MAGEE,** )<br>who sues as Administrator and )<br>Personal Representative of the Estate )<br>of **ALBINA AGDASOVNA** )<br>**SHARIFULLINA, Deceased,** )<br> )<br>Plaintiff, )<br> )<br>vs. )<br> )<br>**DANIEL B. SNYDER;**Defendant No. )<br>1, being that person who was operating )<br>the Sea Doo described in the Complaint )<br>at the time set forth in the Complaint; )<br>Defendants No. 2 & 3, being that )<br>person or entity which caused or )<br>contributed to cause the incident )<br>described in the Complaint; Defendants )<br>No. 4 & 5, being that person or entity )<br>which provided alcoholic beverages to )<br>the named Defendant in the hours )<br>preceding the incident described in the )<br>Complaint; All of whose true and )<br>correct names are otherwise unknown )<br>to Plaintiff at this time but will be )<br>added by amendment when properly )<br>ascertained. )<br> )<br>Defendants. ) | CIVIL ACTION: _____ |

## **COMPLAINT**

1.     Plaintiff, Marina Stewart-Magee is the duly appointed Administrator and
Personal Representative of the Estate of Albina Agdasovna Sharifullina, deceased.

2.     On or about, July 5, 2014, the Plaintiff's decedent was a passenger on a Sea
Doo watercraft owned and operated by Defendant, Daniel B. Snyder. Plaintiff's decedent

1

had been the invited guest of Defendant to come to Smith Lake and visited the house of Defendant's friend on that lake that evening. Defendant had been drinking alcoholic beverages and had a blood alcohol level of 0.152 immediately after the incident made the basis of this suit and was greatly in excess of the level of legal intoxication.

3.     Defendant had visited the lake house of one of his friends, Jeffrey Hunter Whitlock, where he stayed from 6:30 p.m. until after 10:00 p.m. When the Defendant was about to leave on his Sea Doo with Plaintiff's decedent, Jeffrey Hunter Whitlock (along with others) told Defendant that it was dangerous and illegal to ride his Sea Doo at night under the dark conditions at Smith Lake. Whitlock offered to drive Defendant and Plaintiff's decedent to Defendant's cabin cruiser boat he kept at another location to sleep for the night. Defendant declined that offer and advice and told Whitlock "It's not very far and I have lights I can put on my Sea Doo." Defendant then left on the Sea Doo into the dark night on that lake in an intoxicated and impaired condition with Plaintiff's decedent as his passenger.

4.     At some point near midnight, the Defendant's Sea Doo was seen by John Barnes by its lights travelling in an erratic fashion at a high rate of speed. It then came to an abrupt stop with a loud noise as it struck a dock in the slew. Defendant was found slumped over a stabilizing cable for the dock. The body of the Plaintiff's decedent was not found until sometime later. Plaintiff's decedent died on July 6, 2014, from the injuries suffered in this collision of Defendant's Sea Doo with the dock.

5.     Plaintiff avers that Defendant, Snyder, was negligent in the operation of the Sea Doo in an intoxicated, impaired condition on a dark night on Smith Lake when

2

visibility would be difficult for even a completely sober operator. Defendant was negligent in operating her Sea Doo in this situation and at erratic and high speed under an impaired condition and in severe darkness. Defendant's negligence placed the life of plaintiff's decedent in risk and that risk became reality when the Sea Doo struck the dock as described above. As a proximate consequence of Defendant, Snyder's negligence, the Plaintiff's decedent was so injured that she died on July 6, 2014.

6.      Plaintiff further avers that at the same time and place set forth above, Defendant Synder was guilty of wanton misconduct which proximately caused the death of Plaintiff's decedent. Defendant consciously and callously declined offers to be driven to his boat with the Plaintiff's decedent and despite good advice to the contrary decided to operate his Sea Doo in an intoxicated and impaired condition on an extremely dark night and at erratic movements and high speed while Plaintiff's decedent was his passenger. Such conduct was willful and conscious even though impaired by alcohol and poor judgment under all of these attendant circumstances as set forth above. As a proximate consequence thereof, Plaintiff's decedent was so injured that she died on July 6, 2014.

Wherefore, Plaintiff demands judgment against Defendants, separately and severally, in such sums as a jury may assess after a full and fair consideration of the facts.

                              _____
                              Stephen D. Heninger (HEN007)


                              /s/ Stephen D. Heninger
                              STEPHEN D. HENINGER (HEN007)

                              Attorney for Plaintiff

3

**Plaintiff demands trial by struck jury on all issues raised herein.**

Stephen D. Heninger (HEN007)

**OF COUNSEL:**

**HENINGER GARRISON DAVIS, LLC**
2224 1ˢᵗ Avenue North
Birmingham, Alabama  35203
Telephone:     (205) 326-3336
Facsimile:     (205) 326-3332
E-mail:          Steve@hgdlawfirm.com

**Plaintiff's Address:**

4104 Melanie Drive
Moody, Alabama  35004


**Serve Defendant via Certified Mail**

DANIEL B. SNYDER
84 Blue Sky Drive
Lacey Springs, Alabama 35754

**EXHIBIT B**

ELECTRONICALLY FILED
7/12/2018 10:28 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| as Administrator and Personal | ) | |
| Representative of the ESTATE | ) | **CIVIL ACTION NO.** |
| OF ALBINA AGDASOVNA | ) | **CV-2016-900001** |
| SHARFIFULLINA, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | <u>**JURY DEMAND**</u> |
| | ) | <u>**REQUESTED**</u> |
| v. | ) | |
| | ) | |
| DANIEL B. SNYDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Comes now the Plaintiff, **MARINA STEWART-MAGEE, as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARFIFULLINA, deceased**, pursuant to this Honorable Court's Order entered on December 27, 2017 (Doc. 103), and hereby amends her original Complaint (Doc. 2) to substitute and add Defendants Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock for Fictitious Defendants "2" through "5" as follows:

1.      Plaintiff adopts and re-alleges all allegations, claims, and demands in her original Complaint (Doc. 2) as if fully set forth herein.

2.      Defendant Jeffrey Howard Whitlock is an individual over the age of 19 years and a resident of Shelby County, Alabama.

3.      Defendant Jeffrey Hunter Whitlock is an individual over the age of 19 years and a resident of Jefferson County, Alabama.

4.     Venue is proper in Cullman County, Alabama pursuant to Ala. Code § 6-3-2 (1975) because the accident made the basis of this lawsuit occurred in Cullman County, Alabama.

5.     Jurisdiction is proper in the Circuit Court of Cullman County, Alabama pursuant to Ala. Code § 12-11-30 (1975) because the matter in controversy exceeds ten thousand dollars ($10,000.00), exclusive of interest and costs. See Ala. Code § 12-11-30(1) (1975).

6.     On or about July 5, 2014, Defendants Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock hosted a social dinner gathering at their private lake home located at 680 County Road Highway 218, Bremen, Alabama 35033.

7.     Defendant Daniel B. Snyder and the Plaintiff's decedent, Albina Agdasovna Sharfifullina, attended the aforementioned dinner gathering hosted by the Defendants, Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock.

8.     Upon information and belief, Defendants Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock provided and/or allowed to be provided alcoholic beverages to Defendant Daniel B. Snyder during the social dinner gathering, and Daniel B. Snyder became intoxicated while attending said dinner gathering.

9.     At approximately 10:00 p.m. on July 5, 2014, Defendant Daniel B. Snyder, while intoxicated, left the aforementioned dinner gathering on a SeaDoo personal watercraft (hereinafter "SeaDoo"), and with the Plaintiff's decedent as his passenger, drove said SeaDoo into the dark and ultimately collided it into a dock nearby. As a result of the collision, the Plaintiff's decedent suffered fatal injuries and died.

10.    Defendants Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock knew or should have known that it was unsafe and illegal for Daniel B. Snyder to operate his

SeaDoo in the dark and while under the influence of alcohol.

11.     Defendants Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock knew or should have known that it was unsafe for the Plaintiff's decedent to travel as a passenger on a SeaDoo being driven by Daniel B. Snyder under the conditions described in paragraph 10.

12.     Upon information and belief, Defendants Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock told Daniel B. Snyder that it was "dangerous and illegal" to operate a SeaDoo at night, and offered to take Daniel B. Snyder to his cabin cruiser boat at Ryan Creek Marina, where Daniel B. Snyder and the Plaintiff's decedent could stay for the night.

13.     Upon information and belief, Defendant Daniel B. Snyder initially accepted a ride from the Defendants to Ryan Creek Marina, but subsequently changed his mind.

14.     Defendants Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock, through their own actions, voluntarily assumed and undertook a duty to protect the Plaintiff's decedent from the negligent, reckless, and wanton conduct of Daniel B. Snyder and to warn the Plaintiff's decedent of the risks associated with traveling on a SeaDoo with Daniel B. Snyder in the dark.

15.     Defendants Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock negligently, recklessly, and wantonly breached their duty of care to the Plaintiff's decedent by:

> (a)  failing to warn the Plaintiff's decedent of the risks associated with riding a SeaDoo in the dark;
>
> (b)  failing to provide and/or secure an alternative and safer means of transportation for the Plaintiff's decedent;

(c)  failing to take sufficient and reasonable steps to prevent Daniel B. Snyder from operating his SeaDoo in the dark and while under the influence of alcohol, despite their actual or constructive knowledge that serious injury and/or death would likely or probably result; and

(d)  failing to take sufficient and reasonable steps to prevent the Plaintiff's decedent from riding as a passenger on the aforementioned SeaDoo under the conditions described in subsection (c), despite their actual or constructive knowledge that serious injury and/or death would likely or probably result.

16.     As a direct and proximate result of the Defendants' negligent, reckless, and wanton conduct, Plaintiff's decedent, Albina Agdasovna Sharfifullina, suffered fatal injuries and died.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands judgment against the Defendants, Daniel B. Snyder, Jeffrey Howard Whitlock, and Jeffrey Hunter Whitlock, in an amount deemed appropriate by a jury which will adequately reflect the enormity of the Defendants' wrongful conduct, in the form of punitive damages, plus interest and costs of this proceeding.

Respectfully submitted this 12th day of July, 2018.

/s/ Mark W. Lee
Mark W. Lee (LEE003)
Kendall A. Lee (LEE091)
Attorneys for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

**JURY DEMAND**

Plaintiff demands a trial by struck jury on all issues raised herein.

/s/ Mark W. Lee
OF COUNSEL

**SERVE VIA CERTIFIED MAIL**

Mr. Jeffrey Howard Whitlock
2250 Beaver Creek Road
Columbiana, Alabama 35051

Mr. Jeffrey Hunter Whitlock
4113 Clover Leaf Drive
Birmingham, Alabama 35243

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this 12th day of July, 2018, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile electronic filing system which will effect service of such filing on the following:

Daniel S. Wolter, Esq.
**Daniel Wolter Law Firm, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

/s/ Mark W. Lee
OF COUNSEL

5

**<u>EXHIBIT C</u>**

Page 1

1       IN THE CIRCUIT COURT
2       OF CULLMAN COUNTY, ALABAMA
3
4    MARINA STEWART-MAGEE, )
5    who sues as          )
6    Administrator and    ) UNDER SEAL
7    Personal Representative)
8    of the Estate of ALBINA)
9    AGDASOVNA sharifullina,)
10   Deceased,            )
11       Plaintiffs, ) CIVIL ACTION NO:
12              ) CV 16-900001
13   VS.       ) DEPOSITION OF:
14   DANIEL B. SNYDER,    ) DANIEL B. SNYDER
15       Defendant.  )
16
17      S T I P U L A T I O N S
18      IT IS STIPULATED AND AGREED, by and
19   between the parties through their
20   respective counsel, that the deposition of:
21       DANIEL B. SNYDER
22   may be taken before Karen Hinch, Licensed
23   Court Reporter and Notary Public, State at

Page 2

1    Large, at the Law Offices of Heninger,
2    Garrison & Davis, 2224 1st Avenue North,
3    Birmingham, Alabama 35203, on the 14th day
4    of June, 2016, commencing at approximately
5    10:09 a.m.
6
7       IT IS FURTHER STIPULATED AND AGREED
8    that the signature to and reading of the
9    deposition by the witness is waived, the
10   deposition to have the same force and
11   effect as if full compliance had been had
12   with all laws and rules of Court relating
13   to the taking of depositions.
14
15      IT IS FURTHER STIPULATED AND AGREED
16   that it shall not be necessary for any
17   objections to be made by counsel to any
18   questions, except as to form or leading
19   questions, and that counsel for the parties
20   may make objections and assign grounds at
21   the time of the trial, or at the time said
22   deposition is offered in evidence, or prior
23   thereto.

Page 3

1       A P P E A R A N C E S
2
3    ON BEHALF OF THE PLAINTIFF:
4       Stephen D. Heninger
5       Attorney at Law
6       Heninger, Garrison & Davis, LLC
7       2224 1st Avenue North
8       Birmingham, AL 35203
9
10   ON BEHALF OF THE DEFENDANT:
11       Daniel S. Wolter
12       Attorney at Law
13       Daniel Wolter Law Firm, LLC
14       402 Office Park Drive, Suite 100
15       Birmingham, AL 35223
16
17   ALSO APPEARING:
18       Floyd Gaines
19
20
21
22
23

Page 4

1          I N D E X
2                    Page
3    Examination by:
4    Mr. Heninger            5
5
6
7       EXHIBIT INDEX
8                  MAR
9    Plaintiff's Exhibit
10   1   Photo - lake        15
11   2   Photo - Daniel and Alya    16
12   3   Photo - boat        22
13   4   Photo - boat        22
14   5   Photo - boat        23
15   6   Photo - Sea-Doo after incident   28
16   7   Photo - Sea-Doo     29
17   8   Photo - Sea-Doo     29
18   9   Photo - light       30
19   10  Photo - light       30
20   11  Photo           46
21   12  Photo - dock        47
22   13  Photo - dock        48
23   14  Photo - dock        49

Page 5

1   15  Photo - house          49
2   16  Photo - dock           50
3   17  Diagram                51
4   18  Facebook post              59
5   19  Facebook post              59
6   20  Texts                  60
7   21  Texts                  61
8   22  Texts                  61
9   23  Witness diagram            72

Page 6

1        I, Karen Hinch, a Court Reporter of
2   Birmingham, Alabama, and a Notary Public for
3   the State of Alabama at Large, acting as
4   Commissioner, certify that on this date,
5   pursuant to Rule 30 of the Alabama Rules of
6   Civil Procedure and the foregoing
7   stipulation of counsel, there came before me
8   on the 14th day of June, 2016, at the law
9   offices of Heninger, Garrison & Davis, 2224
10  1st Avenue North, Birmingham, Alabama,
11  35203, commencing at approximately
12  10:09 a.m., Daniel B. Snyder, witness in the
13  above cause, for oral examination, whereupon
14  the following proceedings were had:
15        DANIEL B. SNYDER,
16  being first duly sworn, was examined and
17  testified as follows:
18        MR. WOLTER:  Just so we're all
19  in agreement that this deposition is being
20  taken under seal pursuant to the order
21  entered by the judge in Cullman County and
22  that the deposition cannot be used or
23  presented to the district attorney for any

Page 7

1   use and it's sealed except for use in this
2   civil case.
3        MR. HENINGER:  Agreed.
4   EXAMINATION BY MR. HENINGER:
5   Q      Daniel, give me your full name
6   for the record, please.
7   A      Daniel Benjamin Snyder.
8   Q      How old are you?
9   A      I am 41.
10  Q      What is your residence address?
11  A      2024 2nd Avenue North, Unit 1804,
12  Birmingham, Alabama 35203.
13  Q      Are you married?
14  A      I am not.
15  Q      Have you ever been married?
16  A      Never been married.
17  Q      Where are you currently employed?
18  A      I am self-employed of counsel
19  with Gaines, LLC.
20  Q      As an attorney?
21  A      Yes.
22  Q      How long have you been licensed?
23  A      I have been -- I was licensed in

Page 8

1   Alabama in 2010.
2   Q      Were you licensed elsewhere
3   previously?
4   A      Yes.  I had a kind of convoluted
5   educational background.  I was licensed
6   in -- I went to an unaccredited school,
7   passed the bar exam in California and in
8   Wisconsin.  Alabama wouldn't recognize it.
9   Ended up going back to the University of
10  Alabama to law school so that I could sit
11  for the Alabama bar exam and didn't really
12  practice until I went back to law school at
13  Alabama.  I know that's kind of confusing.
14  Q      That's all right.  So what years
15  were you at the University of Alabama?
16  A      I was at University of Alabama
17  2007 through 2009.
18  Q      And then you sat for the Alabama
19  bar and passed it in 2010?
20  A      Right, after my clerkship.
21  Q      And then you were employed at
22  Burr & Forman for a while?
23  A      Yes, sir.

**Daniel B. Snyder** 3

---

Page 9

1  Q        How long were you at Burr &
2  Forman?
3  A        From 2010 until the end of 2015.
4  I guess I should say from September 2010.
5  Q        You know why we're here?
6  A        Yes, sir.
7  Q        And you will not be surprised to
8  learn that the family has many questions,
9  and we're going to go through this.  I know
10 it may be difficult for both of us, but we
11 will get through it the best we can.  All
12 right?
13 A        Yes, sir.
14 Q        Have you reviewed anything to
15 prepare yourself for today's deposition?
16 A        No, sir.
17 Q        Do you feel like you have a good
18 recollection of what happened?
19 A        I have a recollection of certain
20 parts.  We can go through that.
21 Q        Now, were you and Alya friends?
22 A        Yes.
23 Q        How long had you been friends?

---

Page 10

1  A        We met the weekend of the
2  Kentucky Derby that same year.
3  Q        2014?
4  A        Yes.
5  Q        Where did you meet her?
6  A        I actually -- she actually came
7  to my condo with a friend.
8  Q        On 2nd Avenue?
9  A        Yes.  I had been -- I was in the
10 middle of a campaign raising money for kids
11 with leukemia in memory of my brother who
12 died of leukemia.  And she has a friend
13 named Yadi.  Adya has a friend named Yadi
14 who was at a fundraiser that I was doing,
15 and Yadi and some of the people who helped
16 with the fundraiser, I invited back to my
17 condo after the fundraiser.  And Yadi asked
18 if she could bring a friend and I said sure,
19 and that friend was Alya.  And that's how I
20 met Alya.
21 Q        Now, Alya is A-l-y-a, I believe,
22 isn't it?
23 A        Yes.  That's what I knew her by.

---

Page 11

1  That was the name that --
2  Q        Of course, her name was much
3  longer.  It was --
4  A        Alabina or something like that.
5  Q        Sharifulimina,
6  S-h-a-r-i-f-u-l-i-m-i-n-a, Albina,
7  A-l-b-i-n-a.
8  A        I never heard her use that full
9  name.
10 Q        And is Yadi, Y-a-d-i?
11 A        I honestly don't know how to
12 spell her name.  I think she's Puerto Rican.
13 I'm not sure.
14 Q        Where did you know her from?
15 A        That's a good question.  I'm not
16 sure where we first met.  Probably from a
17 young professional's event, something like
18 that.  I can't remember where we first met.
19 Q        Well, the Kentucky Derby is
20 usually run in May, isn't it?  Does that
21 sound right?
22 A        Yes, I think so.
23 Q        How many people were at your

---

Page 12

1  condo that day for the derby?
2  A        Well, the fundraiser was actually
3  not at my condo.  The fundraiser was at
4  Innisfree.  And then the number of people --
5  and for that there were, gosh, probably a
6  hundred, two hundred people.
7  Q        How many people ended up at your
8  condo afterwards?
9  A        There were probably five or six.
10 All that I can remember right now is four,
11 but it seems like there was some others that
12 I can't remember.
13 Q        Did you and Alya ever date
14 formally?
15 A        No.  We went on one double date
16 mainly just because I had a friend whose
17 girlfriend was Russian and I thought it
18 would be cool if they met.  And so we went
19 on a double date to a baseball game, me and
20 Alya and my friend, Eric, and his
21 girlfriend.  And, you know, it was more like
22 a friend date, like, nothing like a real
23 date, I guess.

---

**Tyler Eaton Morgan Nichols & Pritchett**                    **877-373-3660**

**Daniel B. Snyder**

4

---

Page 13

1 Q        Were the two of you romantically
2 involved?
3 A        No.
4 Q        At no time?
5 A        No.
6 Q        What's the girl's name that Eric
7 was with at that Barron's game?
8 A        He called her "Alex." I think
9 she had a long Russian name also that I
10 don't know. She doesn't live in Birmingham.
11 She lives somewhere else.
12 Q        Now, this incident happened over
13 the 4th of July weekend, didn't it?
14 A        Correct.
15 Q        And I've seen text messages.
16 Have you also seen text messages between you
17 and Alya?
18 A        I have not. I was -- lost my
19 phone.
20 Q        In this incident?
21 A        In the accident, yes. I think
22 maybe the police have it, but I don't know
23 for sure.

---

Page 14

1 Q        Have you made any attempt to find
2 out or recover it?
3 A        I have not.
4 Q        Have you seen the official report
5 that the State of Alabama did on this
6 incident?
7 A        No, sir.
8 Q        And you haven't seen any of the
9 text messages or Facebook postings --
10 A        No, sir.
11 Q        -- from yourself or from Alya?
12 A        From myself? Not in recent
13 years. I'm sure I saw them -- if I posted
14 them, I saw them, you know, back when I
15 posted them.
16 Q        Let me show you what I'm going to
17 mark as Exhibit 1. Can you tell me what
18 this photograph shows?
19        (Plaintiff's Exhibit
20        Number 1 was marked
21        for identification.)
22 A        Sure. That is a small private
23 lake that my friend, Robert Thuston, has --

---

Page 15

1 his family has a lake house there and
2 that was -- on Friday, he had a big lake
3 party and cookout at that lake house and I
4 invited -- of course, I was there with a lot
5 of friends, and I invited Alya to come join
6 us if she wanted to. And she drove up after
7 I was already there and joined us at that
8 location.
9 Q        Is Robert Thuston Lee's son?
10 A        His nephew.
11 Q        What's the private lake that is
12 shown in that photograph?
13 A        I don't know the name of it, but
14 it's in the Trussville area.
15 Q        Did you have your Sea-Doo that
16 day?
17 A        I did not.
18 Q        Did you have your boat that day?
19 A        I did not.
20 Q        How did you get to that location?
21 A        By car.
22 Q        And how did Alya get there?
23 A        By separate car.

---

Page 16

1 Q        Did she spend the night with you
2 that night?
3 A        No, she did not.
4 Q        And that was on Friday, which
5 would have been July the 4th?
6 A        I think so, yes.
7 Q        Then let me show you what I'm
8 marking as Exhibit 2, which appears to be a
9 photograph of you and Alya.
10        (Plaintiff's Exhibit
11        Number 2 was marked
12        for identification.)
13        Do you pronounce it Alya or Alia?
14 A        I always pronounced it Alya.
15 That's the way her friends that I knew
16 pronounced it. I don't know if that's
17 proper.
18 Q        That says it's dated June 22nd.
19 Does that look familiar to you?
20 A        Yes. That -- yes.
21 Q        Is that you?
22 A        That is me.
23 Q        And is that Alya?

---

**Daniel B. Snyder**                                                      **5**

Page 17

1  A       Yes.
2  Q       Is that on your boat?
3  A       Yes.
4  Q       And that boat is called the
5  Valhalla?
6  A       Yes.
7  Q       Where was that taken, if you
8  know?
9  A       That was taken on Smith Lake.
10 Q       Do you think the date of that is
11 probably as shown?
12 A       Probably.
13 Q       Now, further into the weekend of
14 July 4th in 2014, you told us that you and
15 she were at a party at Robert Thuston's
16 house at the lake in Trussville.
17 A       Yes.
18 Q       Did you go back to Birmingham
19 that evening?
20 A       Yes.
21 Q       Did she go with you?
22 A       She drove separately, but we
23 ended up at the same place.

Page 18

1  Q       Where was that?
2  A       That was the rooftop balcony of
3  the penthouse in the City Federal Building.
4  Q       Is your condominium in the City
5  Federal Building?
6  A       Yes.
7  Q       Did she spend the night there?
8  A       She did not.  She did not.
9  Q       Then what happened on the next
10 day, July 5th?  Walk me through that as best
11 you can.
12 A       So that morning -- well, the
13 night before we'd been up on the rooftop
14 watching fireworks.  I decided I wanted to
15 go to bed.  I was worn out.  It wasn't just
16 us.  There were other people up there
17 watching fireworks too.  She wanted to keep
18 partying and so she -- so she stayed up
19 there, and I went to bed.  I got up the next
20 morning.  Of course, I had gone to bed
21 earlier than most of my friends so I was
22 ready to go to the lake.  I started texting
23 people.  And I had invited everyone who was

Page 19

1  at this lake party on the day before to come
2  out to Smith Lake if they wanted to the next
3  day.  And I invited -- Alya was one of the
4  people I invited.  She was the only one who
5  showed up.  Everyone else was too wiped out,
6  you know, too exhausted I guess or hung over
7  or whatever.  And she was the only one who
8  made it.  And so we got in her car and --
9  Q       Where did you meet?
10 A       We met on 2nd Avenue.
11 Q       At El Barrio?
12 A       No.  In front of City Federal
13 just on the street.
14 Q       About what time?
15 A       Probably around noon maybe.
16 Q       And this is Saturday, July 5th?
17 A       Correct.
18 Q       Had she been drinking the night
19 before?
20 A       I assume so.  I went to bed, like
21 I said, so I don't know, but I assume so.
22 Q       Do you know if she was
23 intoxicated the night before?

Page 20

1  A       I don't know.
2  Q       Were you?
3  A       I was not.
4  Q       Then on that Saturday, July 5th,
5  did you drive together to Smith Lake?
6  A       Yes.
7  Q       In whose car?
8  A       Her car.
9  Q       What kind of car was that?
10 A       A Jetta.
11 Q       And you left Birmingham somewhere
12 after noon?
13 A       Sometime around noon.  I don't
14 remember the exact time.
15 Q       Then did you go directly to Smith
16 Lake?
17 A       As far as I know, yes.  Sometimes
18 I would make a stop at Wal-Mart or, you
19 know, a gas station or something on the way
20 to pick up something, but I don't remember
21 stopping that day.
22 Q       Where did you go at Smith Lake?
23 A       We went to the marina where I

**Daniel B. Snyder**                                                                    **6**

---

Page 21

1  kept my boat and Sea-Doo.
2  Q       Is that Ryan's Creek?
3  A       That's what it was called then.
4  Q       What's it called now?
5  A       I don't know.  It got bought out
6  later.  I can't remember what the new name
7  is.
8  Q       So how did you store your Sea-Doo
9  at the marina?
10  A       The Sea-Doo was in dry storage.
11  So I would call ahead, and they would put it
12  in the water for me and have it waiting in
13  the water when I got there.
14  Q       Let me show you what I'm marking
15  as Exhibit 3 and ask you if this is a
16  photograph of your boat in the slip at
17  Ryan's Marina or Ryan's Creek, the white
18  one.
19          (Plaintiff's Exhibit
20          Number 3 was marked
21          for identification.)
22  A       I think so.  It's easier to tell
23  from the back end, but I think that's it.

---

Page 22

1  Q       Let me show you Exhibit 4, which
2  is the back end.
3          (Plaintiff's Exhibit
4          Number 4 was marked
5          for identification.)
6  A       Yes.
7  Q       Is that your boat that's marked
8  the Valhalla?
9  A       Yes.
10  Q       Did you name it that?
11  A       No.  It had that name when I got
12  it.
13  Q       And then Exhibit 5 is just
14  another view of the side of your boat,
15  correct?
16          (Plaintiff's Exhibit
17          Number 5 was marked
18          for identification.)
19  A       Yes.
20  Q       Did you keep your boat in that
21  mooring in the water during the summer?
22  A       Yes.
23  Q       So it wasn't in dry storage?

---

Page 23

1  A       Correct.
2  Q       What about during the winter?
3  A       During the winter I would usually
4  pull it out and take it to my dad's farm.
5  Q       Where is that?
6  A       In the Huntsville area.
7  Q       What's the size of that boat?
8  A       Twenty-eight and a half feet.
9  Q       Does it sleep six?
10  A       Yes.
11  Q       How long have you owned it?
12  A       I've owned it since 2013.
13  Q       Alone?
14  A       Yes.
15  Q       Have you ever moored it at a lake
16  other than Smith Lake?
17  A       Since the accident?
18  Q       No, before.
19  A       Before, no.
20  Q       But since accident you have?
21  A       Yes.
22  Q       Where is it now?
23  A       It's at Lake Martin now.

---

Page 24

1  Q       Why there?
2  A       Because the marinas are so much
3  nicer.
4  Q       Did you and Alya have anything to
5  drink in the car on the way up to Smith
6  Lake?
7  A       No.
8  Q       Did you have something to drink
9  that day?
10  A       Yes.
11  Q       By drink, I mean alcohol.
12  A       Yes.
13  Q       What did you drink during the
14  day?
15  A       I drank at the -- well, I drank
16  Jack Daniels Honey and Gray Goose vodka.
17  Q       Did you mix them with something?
18  A       Yes.  The Jack Daniels Honey I
19  think I mixed with Coke.  That's what I
20  usually would mix it with.  The vodka I
21  would usually -- the vodka I might not have.
22  Vodka, I might have just done a shot.  I
23  can't remember for sure.

---

**Daniel B. Snyder**

Page 25

¹ Q       Did Alya have anything to drink
² during the day on Saturday?
³ A       Yes.
⁴ Q       What was she drinking?
⁵ A       She was drinking the same.  This
⁶ was liquor she brought so she was drinking
⁷ that same thing.  I don't know if that's
⁸ all, but she was definitely drinking those
⁹ things.
¹⁰ Q       So who mixed the drinks when the
¹¹ two of you would have drinks that Saturday?
¹² A       I don't remember.  I think she
¹³ was -- when we were at the pool party, she
¹⁴ was kind of acting like the bartender a
¹⁵ little bit trying to get people to try
¹⁶ these -- she's a liquor salesman so these
¹⁷ were alcohols that she's -- she's a promoter
¹⁸ for and so she was kind of promoting them I
¹⁹ guess a little bit.  But I don't remember if
²⁰ I mixed my own or if she mixed mine.
²¹ Q       Were they miniatures?
²² A       No.  These were bottles.  She had
²³ a cushion case in her trunk that was made

Page 26

¹ for carrying big bottles of liquor, and so
² she had a -- she just kept these things in
³ her trunk.
⁴ Q       Because you said her job was to
⁵ promote those liquors, among others?
⁶ A       Yes.
⁷ Q       You mentioned a pool party.
⁸ Where was the pool party?
⁹ A       It was at a house I'd never been
¹⁰ to before.  It was like a friend of a
¹¹ friend, and I'm not even sure I could get
¹² back there now.  We went by water, and I'd
¹³ never been there before.  I can't remember
¹⁴ the name of the family that owned it.
¹⁵ Q       Was it Whitlock?
¹⁶ A       No.  It's not the Whitlocks.
¹⁷ This was friends of the Whitlocks.
¹⁸ Q       So when you got to Smith Lake,
¹⁹ you drove to your boat, correct?
²⁰ A       Correct.
²¹ Q       Did you change at the boat?
²² A       I can't remember if we were
²³ already dressed for the lake or if we

Page 27

¹ changed.  I honestly don't remember.
² Q       Did you have anything to drink at
³ the boat?
⁴ A       No.
⁵ Q       Then did you have them drop your
⁶ Sea-Doo in the water for you?
⁷ A       Yes.
⁸ Q       Does the name Billy Kosper, III
⁹ mean anything to you?
¹⁰ A       I don't recognize that name.
¹¹ Q       He says he was the guy at Ryan's
¹² Creek that put the Sea-Doo in the water for
¹³ you around 2:00 in the afternoon.
¹⁴ A       Okay.
¹⁵ Q       You think that sounds about
¹⁶ right?
¹⁷ A       That's probably about right.  I
¹⁸ don't remember him -- that name
¹⁹ specifically.  Oh, wait.  I knew him as
²⁰ Trey.  That's why.  I just didn't know his
²¹ name was Billy.
²² Q       He had a coworker named Travis.
²³ Do you remember Travis?

Page 28

¹ A       I remember Travis.
² Q       Let me show you Exhibit 6.  Is
³ that a photograph of your Sea-Doo after this
⁴ incident?
⁵         (Plaintiff's Exhibit
⁶         Number 6 was marked
⁷         for identification.)
⁸ A       I don't know when this photo was
⁹ taken, but that does look like my Sea-Doo.
¹⁰ Q       Let me show you Exhibit 7.  Maybe
¹¹ having the license on the bow gives you some
¹² help in identifying it.
¹³         (Plaintiff's Exhibit
¹⁴         Number 7 was marked
¹⁵         for identification.)
¹⁶ A       I never saw the Sea-Doo after the
¹⁷ accident, but that's the right coloring for
¹⁸ my Sea-Doo.
¹⁹ Q       Same way with 8, that's the other
²⁰ side with the license.  It's the right
²¹ coloring and appears to be your Sea-Doo?
²²         (Plaintiff's Exhibit
²³         Number 8 was marked

**Daniel B. Snyder**

Page 29

1    for identification.)
2  A      Yes.
3  Q      Did that Sea-Doo have headlights
4  on it?
5  A      No.
6  Q      Did it have any lights?
7  A      It did have a suction cup light
8  that I would put on there at night.
9  Q      Did you keep that in like a
10 console?
11 A      Yes.
12 Q      Let me show you what I'm marking
13 as Exhibit 9 and ask you if this is what
14 you're talking about, the light that had a
15 suction cup on it that you would keep in the
16 console.
17        (Plaintiff's Exhibit
18        Number 8 was marked
19        for identification.)
20 A      No, sir.  That's the second
21 light.  That's the white all around light.
22 The other light was a red and green light.
23 Q      Let me show you Exhibit 10.  Is

Page 30

1  this the one you're talking about?
2        (Plaintiff's Exhibit
3        Number 10 was marked
4        for identification.)
5  A      Yes.
6  Q      Now, that wouldn't illuminate
7  anything for your path of direction at
8  night, would it?
9  A      No.  It's -- well, I mean, maybe
10 a little, but it's mainly so other beats can
11 see you.
12 Q      And tell me again what Exhibit 9
13 shows.
14 A      That's a white all around light.
15 Q      What would you do with that?
16 A      That's just facing up so that,
17 again, other boats can see you.
18 Q      It's not used to illuminate your
19 path?
20 A      No.  These are the lights that
21 the state requires to be out at night, as
22 far as I know.
23 Q      Did you often take the Sea-Doo

Page 31

1  out at night at Smith Lake?
2  A      Not often, but if I was somewhere
3  else and it got dark, then I might come home
4  by Sea-Doo after dark.
5  Q      Did you go to Smith Lake a good
6  bit back in 2014?
7  A      I hadn't been a lot because of
8  the fundraiser I was involved with so my
9  summer was starting a little bit late
10 because of other responsibilities, but I
11 would go there as often as I could get away.
12 Q      So what time do you think you
13 left the marina on your Sea-Doo that
14 Saturday?
15 A      I think we got out there -- got
16 out pretty quick so it probably was around
17 2:00 if that's what time he put it in the
18 water.
19 Q      Where did you go?
20 A      We went to the Whitlocks' house,
21 and they were not home when we first got
22 there.
23        How far was it by water from

Page 32

1  where you put in the Sea-Doo and got to the
2  Whitlocks' house?
3  A      Probably five minutes or less.
4  It's really close.  By land it's walking
5  distance.
6  Q      Had you done that trip by water
7  before?
8  A      Yes, many times.
9  Q      So you went to the Whitlocks' and
10 they were not home?
11 A      Correct.
12 Q      Then what did you do?
13 A      There's a house that everyone on
14 Smith Lake knows as the castle that's on a
15 very prominent point.  It's very close to
16 their house.  You can probably even see it
17 from their house.  So I took Alya over to
18 show her the castle, and we just kind of --
19 I was kind of showing her this close to
20 their house when -- so we went to see the
21 castle.  We went over this little cove kind
22 of across from the Whitlocks' house kind of
23 in that same general area still.  And I

**Daniel B. Snyder**                                                                                      **9**

Page 33

1 can't remember whether the Whitlocks texted
2 me or called me or if I just saw them pull
3 up, but I saw them pull up by boat to their
4 house and so we went over to say "hi."
5 Q        Had you planned on going to the
6 Whitlocks'?
7 A        Not like an organized plan, but I
8 had texted them, either Hollis or Hunter or
9 both, and let them know I was on my way up
10 to the lake.  They were kind of like lake
11 family.  It was usual for me to see them
12 when I was at the lake.
13 Q        And how long did you stay at the
14 Whitlocks' at that time?
15 A        Not very long.
16 Q        Had you had anything to drink by
17 that point?
18 A        No.
19 Q        Had Alya?
20 A        No.
21 Q        So what time of day are we
22 talking about, do you think?
23 A        This has only been a few minutes,

Page 34

1 maybe like, I don't know, 20 minutes, 15
2 minutes after 2:00.
3 Q        Then where did you go from there?
4 A        So then Hollis, which is the
5 Whitlocks' -- one of their daughters, she
6 was going over to this pool party and her
7 boyfriend and her brother, Hunter, were
8 already there.  And I asked if we could tag
9 along or she invited me to tag along.  I
10 can't remember which.  So Alya -- she was on
11 their Jet Ski, and I followed her on mine to
12 this pool party.
13 Q        So were you alone on your Jet Ski
14 at that time?
15 A        No.  Alya was with me.
16 Q        On your Jet Ski?
17 A        Yes.
18 Q        Did you ever let her drive it or
19 operate it?
20 A        Yes.
21 Q        When?
22 A        Later on she said she wanted to
23 try it so I let her drive it later on.

Page 35

1 Q        When was that?
2 A        That was after we got back from
3 the pool party.  We went -- we went back to
4 her -- she wanted to get some liquor from
5 her car to give to the -- the Whitlocks had
6 invited us for dinner, and she wanted to go
7 back to the marina to get some liquor to
8 share with the Whitlocks at dinner.  And so
9 we went back to the marina from the
10 Whitlocks' and on the way -- we picked up
11 the liquor.  She also decided at that point
12 in time that she wanted to jump off the
13 bridge that was next to the marina.  I told
14 her I was not doing that.  I would video
15 her.  I don't know where her phone ended up,
16 but there should be a video of that on her
17 phone.  So I videoed her jumping off the
18 bridge.  She got -- she got more bottles of
19 liquor from her car and then she drove on
20 the way back.
21 Q        To the Whitlocks'?
22 A        Yeah.
23 A        That's just a short distance you

Page 36

1 said, right?
2 A        Yeah.  It's not super long.
3 Maybe, I don't know, it's hard to measure on
4 water, but a mile or two.
5 Q        Did you have dinner at the
6 Whitlocks'?
7 A        Yes.
8 Q        So how long were you at the
9 Whitlocks' that day?
10 A        Well, are we counting time around
11 the water with them or just at their house?
12 Q        At the house.
13 A        In the house probably -- we went
14 wakeboarding.  We got back from wakeboarding
15 it was probably, I don't know, maybe 7:30,
16 8:00.  So maybe from 7:30, 8:00, until we
17 left.
18 Q        What time do you think you ate
19 dinner?
20 A        Probably 8:30, 9:00.
21 Q        When did you have your first
22 alcoholic drink?
23 A        Around 8:30 or 9:00.  No.  I had

**Daniel B. Snyder**

Page 37

1 drinks at the pool party earlier.  My first
2 drink at the Whitlocks' house was probably
3 around 8:30 or 9:00.
4 Q        When did Alya have her first
5 drink?
6 A        Probably around that same time,
7 but I wasn't keeping tabs.
8 Q        Have you read the statement that
9 Jeffrey Whitlock gave to the authorities?
10 A        I don't think so.
11 Q        Who is Jeffrey Whitlock?
12 A        He's the father.  He's the one
13 that owns the house.
14 Q        Well, there's a father and a son
15 with the same name.
16 A        I know the son as "Hunter," so I
17 don't know.  So Jeff is the father, at least
18 the way I knew their names.
19 Q        Hunter has said that you and Alya
20 were at the Whitlock house on that Saturday,
21 July 5th, from around 6:30 p.m. until
22 10:00 p.m.
23 A        I think he's counting the time we

Page 38

1 were wakeboarding.
2 Q        Right.  But do you recall you
3 left there around 10:00 that night?
4 A        I don't remember leaving,
5 honestly.
6 Q        Were you intoxicated when you
7 left the Whitlocks' house?
8 A        I don't remember leaving so I
9 don't know.  I don't remember being
10 intoxicated at all that day.
11 Q        Do you remember Alya being
12 impaired or intoxicated?
13 A        No.
14 Q        Well, Hunter says that at 10:00,
15 that he told you that it was dangerous and
16 illegal to ride a Sea-Doo at night, and he
17 offered to drive you back to Ryan's Creek
18 Marina and that you agreed.  And then went
19 down to the dock where the Sea-Doo was and
20 changed your mind, decided you were going to
21 take the Sea-Doo.  Do you remember any of
22 that?
23 A        If he says it, you know, I

Page 39

1 don't -- I'm not disputing it.  I just don't
2 remember it.
3 Q        He says that you told him it's
4 not very far and I have lights and I can put
5 on -- put them on my Sea-Doo, and that as
6 you left he could see the green light turned
7 on.  You don't remember that, right?
8 A        Correct.
9 Q        But you have no reason to think
10 he's mistaken?
11 A        I have no reason.
12 Q        He also said that Alya remembered
13 she didn't have her cell phone and went back
14 up to the house to get it to get on the
15 Sea-Doo with you when you left the
16 Whitlocks'.  Do you remember that?
17 A        I don't remember that either.
18 Q        Who was driving when you left the
19 Whitlocks'?
20 A        I don't remember leaving the
21 Whitlocks', so I can't say.
22 Q        So you don't have a specific
23 memory of you driving the Jet Ski when you

Page 40

1 left the Whitlocks'?
2 A        No.
3 Q        In all likelihood, were you the
4 one driving?
5        MR. WOLTER:  Object to the form.
6 A        I don't have any way to guess.
7 Q        Well, would you let Alya drive at
8 night when she had just driven that Sea-Doo
9 that afternoon?
10 A        Yes.
11 Q        You would have?
12 A        I would have, yes.
13 Q        So I don't know any way to ask it
14 other than this way:  Do you think there's a
15 possibility that Alya was driving when the
16 incident happened?
17 A        Yes.
18 Q        Do you think it's a possibility
19 that you were driving when this incident
20 happened?
21        MR. WOLTER:  Object to the form.
22 A        Based on the physical evidence I
23 know, no.

**Daniel B. Snyder** 11

Page 41

1 Q      Why not?
2 A      My injuries, I had no frontal
3 injuries. All of my injuries were side and
4 back. And I also always rode with the kill
5 switch attached to me, and I was told
6 afterwards that the kill switch was found in
7 the Sea-Doo, the Sea-Doo still running in
8 circles. So those are the main reasons that
9 I don't see how I possibly could have been
10 driving.
11 Q      Well, if you had let Alya drive,
12 wouldn't you have insisted that she attach
13 the kill switch to her wrist?
14 A      I would have told her to.
15 Q      Do you think she would have
16 disregarded that instruction?
17      MR. WOLTER: Object to the form.
18 A      I don't know. I can't speak to
19 that.
20 Q      Earlier that afternoon when she
21 drove that short distance, was that the
22 first time she had driven your Sea-Doo?
23 A      Yes.

Page 42

1 Q      Do you know if she had ever
2 driven a Sea-Doo before or any Jet Ski?
3 A      She had been on Sea-Doos before,
4 which I took to mean that she had driven
5 them. I specifically asked her about that.
6 But I have no -- I don't know any details.
7 Q      Do you think she told you that
8 she had driven a Jet Ski or something like
9 that before?
10 A      She told me she had been on Jet
11 Skis before, which maybe I misinterpreted,
12 but I took that to mean she had been the
13 driver.
14 Q      Had she ever been on your Jet Ski
15 with you before that Saturday?
16 A      No. The previous time we had had
17 a bigger group and we took the boat out, not
18 the Jet Ski.
19 Q      Do you know what your blood
20 alcohol was that night? Has anyone shown
21 you your records?
22 A      I have seen the hospital records.
23 Q      It was .152. You remember that?

Page 43

1 A      I did see that in the records.
2 Q      Do you know that's above the
3 legal limit?
4 A      I do know that.
5 Q      Have you seen Alya's blood
6 alcohol level?
7 A      I have not.
8 Q      It was .058. No one had told you
9 that before?
10 A      No.
11 Q      Was anyone smoking marijuana at
12 the Whitlocks' or anywhere else that day?
13 A      I didn't see anyone smoking.
14 Q      Did you have any marijuana?
15 A      No.
16 Q      Did Alya?
17 A      I didn't see her if she did.
18 Q      And you didn't see anybody else?
19 A      No, that I have a memory of.
20 Q      Was your memory pretty good up
21 until leaving the Whitlocks'?
22 A      It's good up until dinner.
23 Q      Which is at 8:30?

Page 44

1 A      Which was like somewhere around
2 there. But that's where it's solid or
3 pretty solid.
4 Q      Well, do you think it's not good
5 from that point forward because of alcohol
6 or injuries or what?
7      MR. WOLTER: Object to the form.
8 A      I don't know. I know I had a
9 concussion. I had my side of my face -- my
10 ear was ripped off. I had plastic surgery
11 twice. See?
12 Q      I've seen it. I've also seen
13 some photographs. Who took the photographs
14 of you right after the hospital?
15 A      The police did.
16 Q      Where did they take those
17 photographs?
18 A      My parents' house.
19 Q      With your consent?
20 A      I don't remember. I was pretty
21 drugged up at the time. I don't remember if
22 I consented or if they had a subpoena. I
23 just don't remember how that happened.

**Daniel B. Snyder**                                                                    **12**

Page 45

¹ Q      How long were you in the hospital
² at Huntsville Hospital?
³ A      I don't know exactly.  I just
⁴ remember waking up in the hospital.  I don't
⁵ know.
⁶ Q      Do you remember your dad being
⁷ there?
⁸ A      I do remember my dad at a certain
⁹ point.
¹⁰ Q      Have you been back on the lake
¹¹ since this happened at Smith Lake?
¹² A      Just one time.
¹³ Q      Did you go to look at the scene?
¹⁴ A      Yes.
¹⁵ Q      Who were you with?
¹⁶ A      I was with Tommy Spina.
¹⁷ Q      On your boat?
¹⁸ A      No.  I don't know whose boat it
¹⁹ was.  It was not mine.
²⁰ Q      Let me show you what we've marked
²¹ as Exhibit 11.  Does that photograph show an
²² area that you're familiar with?
²³      (Plaintiff's Exhibit

Page 46

¹      Number 11 was marked
²      for identification.)
³ A      I can't tell from this picture.
⁴ Q      Can you tell if that picture
⁵ shows somewhere you would pass by going from
⁶ the Whitlocks' house to the marina where
⁷ your boat was kept at Ryan's Creek?
⁸ A      I don't remember.  It's been a
⁹ couple of years since I've been there, maybe
¹⁰ a year, year and a half.  I just don't --
¹¹ nothing here looks familiar to me right now.
¹² Q      Exhibit 12 is a photograph of the
¹³ dock that your Jet Ski struck that night.
¹⁴ Does that look familiar to you?
¹⁵      (Plaintiff's Exhibit
¹⁶      Number 12 was marked
¹⁷      for identification.)
¹⁸ A      Only from seeing it in pictures
¹⁹ and when Tommy -- when I went out there that
²⁰ one time.
²¹ Q      Well, do you remember ever seeing
²² that dock while you were out on Smith Lake
²³ on your Sea-Doo or in your boat on any

Page 47

¹ occasion?
² A      No.
³ Q      So you don't know if that's on
⁴ the way to Ryan's Creek from the Whitlocks'?
⁵ A      Well, I know that it's -- I know
⁶ from my general knowledge of the lake and
⁷ what I have learned after the fact that it's
⁸ not, but showing me this picture in the
⁹ abstract, I wouldn't be able to tell you
¹⁰ where this was on the lake.
¹¹ Q      But you know now that would not
¹² be located where you would be expected to be
¹³ traveling from the Whitlocks' back to your
¹⁴ boat --
¹⁵ A      Correct.
¹⁶ Q      -- at Ryan's Creek?
¹⁷ A      Yes.
¹⁸ Q      Which is where you were headed
¹⁹ that night; is that right?
²⁰ A      Again, I don't have a memory of
²¹ leaving, but I would -- I mean, that would
²² be a guess.
²³ Q      And Exhibit 13, that's the same

Page 48

¹ dock.  Have you seen it since this incident?
²      (Plaintiff's Exhibit
³      Number 13 was marked
⁴      for identification.)
⁵ A      Yes.
⁶ Q      When you went out there with
⁷ Tommy?
⁸ A      Yes.
⁹ Q      Number 14 shows the area where,
¹⁰ and I'm going to circle it, where the
¹¹ Sea-Doo hit.  Has anyone identified that for
¹² you?
¹³      (Plaintiff's Exhibit
¹⁴      Number 14 was marked
¹⁵      for identification.)
¹⁶ A      No.  You're the first one.
¹⁷ Q      Did you ever pay any damage to
¹⁸ the owner for that?
¹⁹ A      No.
²⁰ Q      Has anyone asked you to?
²¹ A      No.
²² Q      Let me ask you if this
²³ photograph, Number 15, shows an area that

**Page 49**

1 you're familiar with.  It seems to have a
2 pretty prominent house with flags flying, a
3 pretty point.  Does that strike you with any
4 recollection about having ever seen it while
5 you were out on Smith Lake?
6       (Plaintiff's Exhibit
7       Number 15 was marked
8       for identification.)
9 A     Not that I recall.
10 Q     Then if you look at Exhibit
11 Number 11, it shows the prominent point
12 that's in Exhibit Number 15, and then over
13 to its right is the dock that your Jet Ski
14 hit.  Does that look familiar to you at all
15 from any time you've been on Smith Lake?
16 A     I don't recall.  No.
17 Q     Let me show you Exhibit 16.  Can
18 you tell me if you recall the dock that your
19 Jet Ski hit, when you were out there with
20 Tommy Spina and saw it, if this was the way
21 it looked?
22       (Plaintiff's Exhibit
23       Number 16 was marked

**Page 50**

1       for identification.)
2 A     I don't remember this stuff being
3 stacked on the left.  I can't say for sure.
4 I don't remember that stuff being stacked
5 there.
6 Q     Have you ever talked to the owner
7 of that dock?
8 A     I have not.
9 Q     No contact whatsoever?
10 A     No.
11 Q     Exhibit 17 is a diagram that the
12 Department of Conservation and Natural
13 Resources did in its official investigation,
14 and it shows what they believe was the path
15 of the Jet Ski.  Have you seen the diagram
16 before?
17       (Plaintiff's Exhibit
18       Number 17 was marked
19       for identification.)
20 A     It looks vaguely familiar, maybe.
21 I'm not sure if I've seen it or not.
22 Q     Do you have any recollection of
23 that path?

**Page 51**

1 A     No.
2 Q     Or striking the dock that night?
3 A     No.
4 Q     Do you remember the paramedics
5 talking to you?
6 A     No.
7 Q     Or the flight by helicopter to
8 Huntsville Hospital?
9 A     No.
10 Q     Has anyone told you that the
11 paramedics asked you if anyone else was on
12 the Jet Ski with you and you said, "Yes,
13 several people"?
14       MR. WOLTER:  I object to the form
15 to the extent --
16       Just make sure that -- you can
17 tell him what you recall being told as long
18 as it's not by one of your lawyers.
19 A     I know that I had a friend
20 contact me after the accident and said the
21 police called him and that I had told the
22 police that I -- or paramedics, somebody,
23 that he was on the Jet Ski with me.  And

**Page 52**

1 they woke him up in bed in Birmingham.  And
2 he was someone who was helping me with the
3 fundraiser.
4 Q     Who was that?
5 A     His name is Joseph Newman, I
6 think is his last name.  But I didn't know I
7 had mentioned other people.  But he's the
8 one I knew that had -- he had told me that I
9 had told the paramedics he was with me or
10 the cops or someone.
11 Q     Daniel, Smith Lake at night gets
12 very dark, doesn't it?
13       MR. WOLTER:  Object to the form.
14 A     It can.
15 Q     Why would you be on your Jet Ski
16 after 10:00 at night with no lights?
17 A     In general or this specific time?
18 Q     In general.  And let me clarify,
19 no lights for illumination.
20 A     I would -- the night -- the lake
21 at night was beautiful and peaceful, it
22 could be.  And I had been out there, and
23 because there were no city lights, the way

**Daniel B. Snyder**                                                                    **14**

Page 53

1 the stars and moon would shine on the water
2 it -- I assume that's why the state doesn't
3 require illumination lights on boats at
4 night because the stars and moon provide
5 quite a bit of reflection off the glassy
6 surface of the water because the water is a
7 lot like glass at night.  And I had several
8 times before traveled at night.
9 Q       Had you ever gone from your
10 marina at Ryan's Creek to the Whitlocks' at
11 night?
12 A       I don't think I'd ever been
13 there, going to there at night, but I think
14 I had been going back at night.
15 Q       You'd done that before?
16 A       I think so, yeah.  If I was
17 traveling at night, it was usually because I
18 had been somewhere and it got dark and I was
19 just going home.
20 Q       But you think you've done that
21 before?
22 A       I think so.
23 Q       And it's just a few minutes to

Page 54

1 get from the Whitlocks' to your boat at
2 Ryan's Creek Marina?
3 A       Yes.
4 Q       Have you been told that this
5 incident happened after midnight?
6 A       I have been told that.
7 Q       If you left the Whitlocks' at
8 10:00, how can you account for those two
9 hours?
10 A       I can't.
11 Q       Have you tried to remember?
12 A       I have absolutely tried to
13 remember.  Yes.
14 Q       You don't have a clue?
15 A       I don't know.  I have tried to
16 make sense of it, and I don't know what was
17 happening.
18 Q       So you don't remember who was
19 driving your Jet Ski, correct?
20 A       Correct.
21 Q       When you left the Whitlocks' to
22 go back to your boat?
23 A       Correct.

Page 55

1 Q       And do you think it's likely that
2 when you left the Whitlocks' you were
3 intending to go back to your boat?
4       MR. WOLTER:  Object to the form.
5 A       I don't know.  I mean, if we had
6 made it back, I would say yes; but the fact
7 that we were out there two hours, you know,
8 I don't know.
9 Q       And if you were headed back to
10 your boat at Ryan's Creek from the Whitlocks'
11 that night, you'd have no reason to be in
12 the area where this collision with the pier
13 occurred, would you?
14 A       No.
15 Q       And you don't know how you got
16 there?
17 A       No.
18 Q       Or why you were there?
19 A       I do not.
20 Q       What's the top-end speed for that
21 Sea-Doo?
22 A       It's over 60.
23 Q       Have you had it that high before?

Page 56

1 A       Yes.
2 Q       You think you've ever had it that
3 speed before at night?
4 A       Oh, no, never.
5 Q       Why not?
6 A       Because I'm -- when I travel at
7 night I recognize the lower visibility and
8 travel slow.  You know, usually there's not
9 a rush.  There's no reason.  And I probably
10 wouldn't go -- it probably wouldn't even go
11 that fast with two people on it.
12 Q       How fast do you think you've had
13 it with two people on it?
14 A       I'm not sure.  Maybe 45, 50.
15 Q       Did it have a speedometer?
16 A       I think so.  It's been a while
17 since I looked at it, but I'm pretty sure --
18 yeah, it had a speedometer.  Yes.  The
19 police have it.
20 Q       It's still in custody?
21 A       As far as I know, unless they did
22 something with it.
23 Q       What's the first thing you

**Daniel B. Snyder**                                                                    **15**

Page 57

1  remember after this incident?
2  A        Waking up in the hospital --
3  waking up and not knowing where I was or how
4  I got there, what had happened.  And my dad
5  was there and he told me that I'd been
6  brought in by helicopter, that I'd hit a
7  pier or dock or something.  And I just
8  remember feeling like just completely lost.
9  I didn't know -- I couldn't make sense of it
10  because I remembered sitting down to dinner
11  and then waking up in the hospital.  And my
12  dad told me they were prepping me for
13  surgery, and I said, "Why do I need
14  surgery?"  And he said, "Your ear got ripped
15  off."  And I reached up and felt the side of
16  my face, and they had this plastic cup thing
17  covering the side of my head to protect what
18  was left of my ear.
19  Q        Did he tell you at that time that
20  Alya was dead?
21  A        I don't remember.  At some -- the
22  days and hours, like it's kind of blurry,
23  but I know at some point I asked about Alya

Page 58

1  and they told me.  I was afraid she was
2  still in the water somewhere.  And they told
3  me that she had died already, and I just --
4  I couldn't even wrap my mind around it.
5  Q        Is Aaron your brother?
6  A        He is.
7  Q        Do you remember making a post
8  after you found out that Alya had died?
9  A        Yes.  I remember probably about a
10  week or so after the accident.
11  Q        Let me show you what I'm marking
12  as Exhibit 18.  See if this looks like a
13  post that you made on Facebook.
14          (Plaintiff's Exhibit
15              Number 18 was marked
16              for identification.)
17  A        Yes.  That was like the first --
18  maybe the only post I made.
19  Q        Exhibit 19 is another post, and
20  it shows some of your friends.  And you
21  mentioned a name earlier, Yadi, and I think
22  it's Yari, Y-a-r-i.  Does that sound like
23  it?

Page 59

1          (Plaintiff's Exhibit
2              Number 19 was marked
3              for identification.)
4  A        That's probably right.
5  Q        But this shows Alya and Yari as
6  friends and also looks to have a photograph
7  of you at the top.  Is that you?
8  A        That is me.
9  Q        What is the sash you're wearing?
10  A        That was the fundraiser that I
11  told you about.  I was -- the Leukemia and
12  Lymphoma Society does a fundraiser called
13  Man and Woman of the Year for over a
14  ten-week campaign to raise as much money as
15  you can for leukemia and lymphoma research.
16  And I was running in memory of my brother,
17  and I won Man of the Year, and that's
18  what some of these people had been helping
19  me with.  And that was the sash they gave me
20  when I won.  They gave me like a plaque or
21  something.  But anyway, my brother, David,
22  died of leukemia so I was doing that in
23  memory of him.  So this all happened right

Page 60

1  after that campaign ended.  So that was the
2  Man of the Year sash.
3  Q        Are you confident you didn't meet
4  Alya at El Barrio that Saturday instead of
5  at your condo?  The reason I ask, there's a
6  text.  I'll go ahead and mark this as
7  Exhibit 20.
8          (Plaintiff's Exhibit
9              Number 20 was marked
10              for identification.)
11  A        I don't remember meeting her at
12  El Barrio.  So that's on 2nd Avenue so that
13  may have been the point of reference I gave
14  her.  I just don't remember.  Maybe we
15  decided to eat something before we went out
16  of town.  I just don't remember it.
17  Q        See if any of that looks
18  familiar.
19  A        Yeah.  I really don't remember
20  that, but maybe I was eating at -- I eat
21  brunch there sometimes on Saturdays.  They
22  have a really good breakfast burrito that I
23  like.  Maybe I was there eating brunch when

**Daniel B. Snyder**                                                        **16**

Page 61

1  we met.
2  Q      Well, let me show you what I'm
3  going to go ahead and mark as 21 and 22,
4  which gives it context.  See if this helps
5  you.  It also dates it as starting on
6  Saturday at 10:52 a.m.
7          (Plaintiff's Exhibit
8          Numbers 21 and 22 were marked
9          for identification.)
10 A      The green is her or the -- I'm a
11 little confused.
12 Q      Looks like it.
13 A      This address is my address for
14 City Federal.
15 Q      Right.  Then 23 seems to be the
16 end of that chain of texts where she tells
17 you she's already in a swimsuit with a white
18 dress over it and you say you're in a
19 swimsuit too.
20 A      Yeah.  I didn't remember.
21 Q      I was trying to see if that helps
22 you remember anything.
23 A      That's consistent with what I

Page 62

1  remember, that we didn't spend much time at
2  the marina when we got there.  I didn't
3  remember us changing clothes or anything so
4  that makes sense.  I didn't remember being
5  at El Barrio eating, but maybe I was in
6  there eating a burrito before we left.  I do
7  remember us taking her car.
8  Q      Daniel, who owned the Sea-Doo
9  that you had that July 5th night?
10 A      I did.
11 Q      You can see how it would be I'm
12 just going to say careless to go out on
13 Smith Lake after 10:00 at night after
14 drinking without illumination of your path
15 and being in an area you're unfamiliar with,
16 if that's what happened, can't you?
17         MR. WOLTER:  Object to the form.
18 A      I can see how that would be a
19 problem.
20 Q      And you can see how it would be
21 careless if you as the owner let Alya drive
22 the Jet Ski in the dark without illumination
23 and being in an area you were unfamiliar

Page 63

1  with --
2          MR. WOLTER:  Object to the form.
3  Q      -- as well, can't you?
4          MR. WOLTER:  Same objection.
5  Q      If that's what happened?
6  A      If I was -- if I was in a
7  condition where I could make that decision.
8  I just don't remember.
9  Q      Do you think you could have been
10 so intoxicated you couldn't make a good
11 decision?
12 A      I don't know.  I have no memory
13 of what happened, how she ended up driving,
14 how we even ended up on the Sea-Doo at all.
15 I've spent most of the last year and a half,
16 almost two years now, trying to piece that
17 together.
18 Q      Have you talked to Hunter
19 Whitlock about what happened that night?
20 A      I haven't talked to him.
21 Q      So he hasn't told you what he
22 remembers about telling you that he would
23 drive you and Alya back to your boat?

Page 64

1  A      He has not told me anything.
2  Q      You haven't talked to his father?
3  A      I have not talked to his father.
4  Well, I take that back.  I talked to his
5  father one time where someone was there
6  saying that they knew me, and he wanted to
7  confirm with me that it was somebody that I
8  really knew.  And that was the extent of the
9  conversation.
10 Q      Have you seen the statement of
11 the guy named Jack Horner that was outside
12 on his property that night around midnight,
13 said he heard the Sea-Doo and he watched it
14 and it was traveling at a high rate of speed
15 and it hit the dock?
16 A      I remember something from him.  I
17 remember him saying -- I remember a
18 statement from him.
19 Q      Have you ever spoken with him?
20 A      I have not.
21 Q      So you don't know if what he is
22 saying is accurate or not?
23 A      I don't.

**Daniel B. Snyder** 17

---

Page 65

1  Q       You have no memory?

2  A       I don't.

3  Q       Have you made any effort to reach

4  out to the family of Alya?

5  A       I did.

6  Q       What did you do?

7  A       When I realized -- when the drugs

8  wore off enough and the concussion, I went

9  to the grave site.  And again, my days are

10 mixed up so I don't know exactly what day

11 this was in relation to when the funeral

12 was, but I think it was either that day or

13 the next day.  And I bought flowers and a

14 note and I sent that to -- sent that to them

15 and said on the note, I want you to -- you

16 know, if you need anything, then, please

17 reach out to me.  I didn't have their

18 number.  Yari was my connection to the

19 family.  I had never met the family.  And I

20 called her and I missed her and I left a

21 voice mail and I said, you know, if they

22 want to talk, please let me know.  And then

23 not I guess a few weeks after that I got a

---

Page 66

1  letter from a lawyer saying not to contact

2  them anymore.  So I didn't try to do

3  anything else after that.

4  Q       Do you still have contact with

5  Yari?

6  A       I don't.

7  Q       Why not?

8  A       I don't know.

9  Q       Did she break it off or did you?

10 A       I mean, it wasn't -- I kind of --

11 after the accident I was -- I wasn't really

12 reaching out and communicating with anyone.

13 Unless someone reached out to me, for the

14 most part, I just didn't see a lot of people

15 for several months afterwards.  And then

16 when I started getting back out a little bit

17 more, you know, I saw her in passing once or

18 twice at events but, you know, by that

19 point, I learned that the -- that everyone

20 was blaming me for this and that -- not

21 everyone, but that certain people were

22 blaming me, and I felt like she -- you know,

23 if she wanted to talk to me, she knew where

---

Page 67

1  I was.  I was there, available.  And I had

2  called her and told her that previously, and

3  so I kind of left the ball in her court

4  because I didn't want to be -- I didn't know

5  what her state of mind was, I guess.

6  Q       Would Alya have known how to get

7  from the Whitlocks' house to Ryan's Creek,

8  where your boat was moored, on her own at

9  night?

10 A       Probably not by herself, if she

11 was on the Sea-Doo by herself.

12 Q       When you let her drive for that

13 one part that afternoon on Saturday, July

14 5th, how fast did she drive?

15 A       She didn't open it all the way

16 up.  I mean, we were kind of going -- I

17 couldn't really see the speedometer.  I was

18 behind her.  But I would guess kind of maybe

19 25, 30.  I'm not really -- I'm just guessing

20 though.

21 Q       Were both of you wearing your

22 jackets at that time?

23 A       Yes.  Yeah.  I didn't let anyone

---

Page 68

1  get on the Sea-Doo without putting a jacket

2  on.

3  Q       Has anyone told you if you had

4  your jackets on when you left the Whitlocks'

5  that night?

6  A       No.  I don't -- no one's told me.

7  Q       Well, as you've struggled trying

8  to remember this incident, does it make any

9  sense to you that after drinking you would

10 get on that Sea-Doo that late at night

11 rather than accepting a ride home?

12       MR. WOLTER:  Object to the form.

13 A       From what I understand, we were

14 both sober when we left the Whitlocks.

15 Q       Why do you understand that?

16 A       From what I've been told by --

17       MR. WOLTER:  Don't tell them

18 anything you've talked to lawyers about.

19 A       I mean, so --

20 Q       Have you been told that by any

21 friends or people that were actually at the

22 Whitlocks'?

23 A       No.  I haven't had any direct

---

**Daniel B. Snyder**                                                                 **18**

---

Page 69

1 contact.
2 Q        Well, does it make any sense
3 either that it being that late, you having
4 been drinking, and having been offered a
5 ride, that you would have Alya drive the Jet
6 Ski back to your marina?
7 A        Again, I don't remember the
8 decision-making process, but I think that in
9 a normal night, when you're -- I always
10 traveled slow on the Sea-Doo, and with the
11 moon and stars reflecting off the water it
12 was beautiful at night.
13 Q        Was it that night?
14 A        As far as I remember, yes.  I
15 mean, I don't -- you know, I don't know that
16 there were no clouds or anything, but I
17 remember that the day was beautiful, the
18 night was beautiful.  And the marina was so
19 close.  We both had our phones on us in
20 case, you know, we needed to use GPS if
21 there was an issue.  You know, would I do
22 things differently now?  Absolutely.  Would
23 I take that ride?  Yes.

Page 70

1 Q        Would you what?
2 A        Take that ride?  Yes.
3 Q        In the dark after drinking?
4         MR. WOLTER:  I think he's talking
5 about the ride that was offered to him.
6         THE WITNESS:  Right, yeah.
7 Q        You would take the ride that was
8 offered to you?
9 A        Yeah.  I mean, knowing what I
10 know now, yes, I would have taken that ride
11 from Hunter.
12 Q        So I want to ask you a very broad
13 question, and I know you're a lawyer and
14 lawyers rely on evidence.  But I want to ask
15 you as a man, as you've tried to piece this
16 together, what do you think happened that
17 night?
18         MR. WOLTER:  Object to the form.
19 A        You know, I have tried to make
20 sense of it.  I can't make sense of the fact
21 that there's a two-hour gap.  I don't
22 know -- I mean, there's no way it would have
23 taken us two hours to get to the marina or

Page 71

1 two hours to get to the spot where the
2 accident happened, even putting along at a
3 really slow pace.
4 Q        Well, let me interrupt you there.
5 How far is the place where this collision
6 with the dock happened from Ryan's Creek
7 Marina?
8 A        It's farther than the Whitlocks'
9 house I think, but it's kind of -- trying to
10 describe it.  So, like, the Whitlocks' house
11 is here, and then Ryan's Creek Marina, you
12 leave their house and go off kind of this
13 way and that part splits off that way where
14 the accident happened.  So if you were going
15 from the marina to where the accident
16 happened, you wouldn't actually cross the
17 Whitlocks' house directly, but you would
18 kind of take the other part of the "Y."
19 Again, I'm going from memory.
20 Q        Well, let me show you Exhibit 24.
21 Just diagram what you're saying for the
22 directions so we have an idea.  You were
23 telling me where the marina would be, where

Page 72

1 the Whitlocks' would be and where this dock
2 was that was hit.
3         (Plaintiff's Exhibit
4         Number 24 was marked
5         for identification.)
6 A        (Witness drawing.)  So, you know,
7 you would take the left side of the fork to
8 go back to the marina and you take the right
9 to go to where the accident is.
10 Q        And how many minutes or miles,
11 however you would characterize it, would you
12 put between the Whitlock house and the
13 marina, in your estimation?
14 A        Probably five minutes or less
15 maybe.  I'm not sure.
16 Q        And how many minutes would it
17 take to get from --
18 A        Maybe if you were -- I mean,
19 traveling at night probably, maybe take you
20 ten minutes.
21 Q        So I'll put ten at night.  And
22 how long or how far would it be from the
23 Whitlocks' to the accident dock?

---

**Daniel B. Snyder**                                                                                      **19**

Page 73

1  A        Probably less.  It's probably a
2  shorter distance from the Whitlocks'.
3  Again, I'm just estimating.  I don't know
4  for sure.
5  Q        This is lake area here right?
6  A        Yes.
7  Q        And this is what?
8  A        That's land there.
9  Q        This would be land down here?
10  A        Yes.
11  Q        All right.  I interrupted you.
12  Was there anything else you want to say
13  about what you think happened?
14        MR. WOLTER:  Object to the form.
15  A        I have tried to figure it out and
16  I -- I don't know.  I just don't know.  It
17  doesn't make sense to me.  I mean, not just
18  for her family's sake, for my own sake, I
19  would love to know.
20  Q        That's all I have.
21
22      (Deposition concluded at 11:28 a.m.)
23

Page 74

1        C E R T I F I C A T E
2
3  STATE OF ALABAMA )
4
5        I hereby certify that the above
6  and foregoing deposition was taken down
7  by me in stenotype, and the questions and
8  answers thereto were reduced to computer
9  print under my supervision, and that the
10  foregoing represents a true and correct
11  transcript of the deposition given by
12  said witness upon said hearing.
13
14        I further certify that I am
15  neither of counsel nor of kin to the
16  parties to the action, nor am I in
17  anywise interested in the result of said
18  cause.
19
20
21     Karen Hinch, Commissioner
        ACCR #96
22
23

**Daniel B. Snyder**

**WORD INDEX**

**< 0 >**
**058** 43:8

**< 1 >**
**1** 4:10  14:17, 20
**10** 4:19  29:23
30:3
**10:00** 37:22  38:3,
14  52:16  54:8
62:13
**10:09** 2:5  6:12
**10:52** 61:6
**100** 3:14
**11** 4:20  45:21
46:1  49:11
**11:28** 73:22
**12** 4:21  46:12, 16
**13** 4:22  47:23
48:3
**14** 4:23  48:9, 14
**14th** 2:3  6:8
**15** 4:10  5:1  34:1
48:23  49:7, 12
**152** 42:23
**16** 4:11  5:2  49:17,
23
**16-900001** 1:12
**17** 5:3  50:11, 18
**18** 5:4  58:12, 15
**1804** 7:11
**19** 5:5  58:19  59:2
**1st** 2:2  3:7  6:10

**< 2 >**
**2** 4:11  16:8, 11
**2:00** 27:13  31:17
34:2
**20** 5:6  34:1  60:7,
9
**2007** 8:17
**2009** 8:17
**2010** 8:1, 19  9:3, 4
**2013** 23:12
**2014** 10:3  17:14
31:6
**2015** 9:3
**2016** 2:4  6:8

**2024** 7:11
**21** 5:7  61:3, 8
**22** 4:12, 13  5:8
61:3, 8
**2224** 2:2  3:7  6:9
**22nd** 16:18
**23** 4:14  5:9  61:15
**24** 71:20  72:4
**25** 67:19
**28** 4:15
**29** 4:16, 17
**2nd** 7:11  10:8
19:10  60:12

**< 3 >**
**3** 4:12  21:15, 20
**30** 4:18, 19  6:5
67:19
**35203** 2:3  3:8
6:11  7:12
**35223** 3:15

**< 4 >**
**4** 4:13  22:1, 4
**402** 3:14
**41** 7:9
**45** 56:14
**46** 4:20
**47** 4:21
**48** 4:22
**49** 4:23  5:1
**4th** 13:13  16:5
17:14

**< 5 >**
**5** 4:4, 14  22:13, 17
**50** 5:2  56:14
**51** 5:3
**59** 5:4, 5
**5th** 18:10  19:16
20:4  37:21  62:9
67:14

**< 6 >**
**6** 4:15  28:2, 6
**6:30** 37:21
**60** 5:6  55:22
**61** 5:7, 8

**< 7 >**
**7** 4:16  28:10, 14
**7:30** 36:15, 16
**72** 5:9

**< 8 >**
**8** 4:17  28:19, 23
29:18
**8:00** 36:16, 16
**8:30** 36:20, 23
37:3  43:23

**< 9 >**
**9** 4:18  29:13
30:12
**9:00** 36:20, 23  37:3
**96** 74:21

**< A >**
**a.m** 2:5  6:12  61:6
73:22
**Aaron** 58:5
**able** 47:9
**absolutely** 54:12
69:22
**abstract** 47:9
**accepting** 68:11
**accident** 13:21
23:17, 20  28:17
51:20  58:10  66:11
71:2, 14, 15  72:9,
23
**account** 54:8
**ACCR** 74:21
**accurate** 64:22
**acting** 6:3  25:14
**ACTION** 1:11
74:16
**address** 7:10
61:13, 13
**Administrator** 1:6
**Adya** 10:13
**afraid** 58:1
**afternoon** 27:13
40:9  41:20  67:13
**AGDASOVNA** 1:9
**AGREED** 1:18
2:7, 15  7:3  38:18
**agreement** 6:19

**ahead** 21:11  60:6
61:3
**AL** 3:8, 15
**ALABAMA** 1:2
2:3  6:2, 3, 5, 10
7:12  8:1, 8, 10, 11,
13, 15, 16, 18  14:5
74:3
**Alabina** 11:4
**ALBINA** 1:8  11:6
**A-l-b-i-n-a** 11:7
**alcohol** 24:11
42:20  43:6  44:5
**alcoholic** 36:22
**alcohols** 25:17
**Alex** 13:8
**Alia** 16:13
**Alya** 4:11  9:21
10:19, 20, 21  12:13,
20  13:17  14:11
15:5, 22  16:9, 13,
14, 23  19:3  24:4
25:1  32:17  33:19
34:10, 15  37:4, 19
38:11  39:12  40:7,
15  41:11  43:16
57:20, 23  58:8
59:5  60:4  62:21
63:23  65:4  67:6
69:5
**A-l-y-a** 10:21
**Alya's** 43:5
**answers** 74:8
**anybody** 43:18
**anymore** 66:2
**anyway** 59:21
**anywise** 74:17
**APPEARING** 3:17
**appears** 16:8  28:21
**approximately** 2:4
6:11
**area** 15:14  23:6
32:23  45:22  48:9,
23  55:12  62:15, 23
73:5
**asked** 10:17  34:8
42:5  48:20  51:11
57:23
**assign** 2:20

**Daniel B. Snyder** **76**

assume 19:*20*, *21*
53:*2*
ate 36:*18*
attach 41:*12*
attached 41:*5*
attempt 14:*1*
Attorney 3:5, *12*
6:*23* 7:*20*
authorities 37:*9*
available 67:*1*
Avenue 2:*2* 3:*7*
6:*10* 7:*11* 10:*8*
19:*10* 60:*12*

< B >
back 8:*9*, *12* 10:*16*
14:*14* 17:*18* 21:*23*
22:*2* 26:*12* 31:*6*
35:*2*, *3*, *7*, *9*, *20*
36:*14* 38:*17* 39:*13*
41:*4* 45:*10* 47:*13*
53:*14* 54:*22* 55:*3*,
*6*, *9* 63:*23* 64:*4*
66:*16* 69:*6* 72:*8*
background 8:*5*
balcony 18:*2*
ball 67:*3*
bar 8:*7*, *11*, *19*
Barrio 19:*11* 60:*4*,
*12* 62:*5*
Barron's 13:*7*
bartender 25:*14*
baseball 12:*19*
Based 40:*22*
beats 30:*10*
beautiful 52:*21*
69:*12*, *17*, *18*
bed 18:*15*, *19*, *20*
19:*20* 52:*1*
BEHALF 3:3, *10*
believe 10:*21*
50:*14*
Benjamin 7:*7*
best 9:*11* 18:*10*
big 15:*2* 26:*1*
bigger 42:*17*
Billy 27:*8*, *21*
Birmingham 2:*3*
3:*8*, *15* 6:*2*, *10*

7:*12* 13:*10* 17:*18*
20:*11* 52:*1*
bit 25:*15*, *19* 31:*6*,
*9* 53:*5* 66:*16*
blaming 66:*20*, *22*
blood 42:*19* 43:*5*
blurry 57:*22*
boat 4:*12*, *13*, *14*
15:*18* 17:*2*, *4* 21:*1*,
*16* 22:*7*, *14*, *20*
23:*7* 26:*19*, *21*
27:*3* 33:*3* 42:*17*
45:*17*, *18* 46:*7*, *23*
47:*14* 54:*1*, *22*
55:*3*, *10* 63:*23*
67:*8*
boats 30:*17* 53:*3*
bottles 25:*22* 26:*1*
35:*18*
bought 21:*5* 65:*13*
bow 28:*11*
boyfriend 34:*7*
break 66:*9*
breakfast 60:*22*
bridge 35:*13*, *18*
bring 10:*18*
broad 70:*12*
brother 10:*11*
34:*7* 58:*5* 59:*16*,
*21*
brought 25:*6* 57:*6*
brunch 60:*21*, *23*
Building 18:*3*, *5*
Burr 8:*22* 9:*1*
burrito 60:*22* 62:*6*

< C >
California 8:*7*
call 21:*11*
called 13:*8* 17:*4*
21:*3*, *4* 33:*2* 51:*21*
59:*12* 65:*20* 67:*2*
campaign 10:*10*
59:*14* 60:*1*
car 15:*21*, *23* 19:*8*
20:*7*, *8*, *9* 24:*5*
35:*5*, *19* 62:*7*
careless 62:*12*, *21*
carrying 26:*1*

case 7:*2* 25:*23*
69:*20*
castle 32:*14*, *18*, *21*
cause 6:*13* 74:*18*
cell 39:*13*
certain 9:*19* 45:*8*
66:*21*
certify 6:*4* 74:*5*, *14*
chain 61:*16*
change 26:*21*
changed 27:*1*
38:*20*
changing 62:*3*
characterize 72:*11*
circle 48:*10*
circles 41:*8*
CIRCUIT 1:*1*
City 18:*3*, *4* 19:*12*
52:*23* 61:*14*
CIVIL 1:*11* 6:*6*
7:*2*
clarify 52:*18*
clerkship 8:*20*
close 32:*4*, *15*, *19*
69:*19*
clothes 62:*3*
clouds 69:*16*
clue 54:*14*
Coke 24:*19*
collision 55:*12*
71:*5*
coloring 28:*17*, *21*
come 15:*5* 19:*1*
31:*3*
commencing 2:*4*
6:*11*
Commissioner 6:*4*
74:*20*
communicating
66:*12*
completely 57:*8*
compliance 2:*11*
computer 74:*8*
concluded 73:*22*
concussion 44:*9*
65:*8*
condition 63:*7*
condo 10:*7*, *17*
12:*1*, *3*, *8* 60:*5*

condominium 18:*4*
confident 60:*3*
confirm 64:*7*
confused 61:*11*
confusing 8:*13*
connection 65:*18*
consent 44:*19*
consented 44:*22*
Conservation 50:*12*
consistent 61:*23*
console 29:*10*, *16*
contact 50:*9* 51:*20*
66:*1*, *4* 69:*1*
context 61:*4*
conversation 64:*9*
convoluted 8:*4*
cookout 15:*3*
cool 12:*18*
cops 52:*10*
Correct 13:*14*
19:*17* 22:*15* 23:*1*
26:*19*, *20* 32:*11*
39:*8* 47:*15* 54:*19*,
*20*, *23* 74:*10*
counsel 1:*20* 2:*17*,
*19* 6:*7* 7:*18* 74:*15*
counting 36:*10*
37:*23*
COUNTY 1:*2* 6:*21*
couple 46:*9*
course 11:*2* 15:*4*
18:*20*
COURT 1:*1*, *23*
2:*12* 6:*1* 67:*3*
cove 32:*21*
covering 57:*17*
coworker 27:*22*
Creek 21:*2*, *17*
27:*12* 38:*17* 46:*7*
47:*4*, *16* 53:*10*
54:*2* 55:*10* 67:*7*
71:*6*, *11*
cross 71:*16*
CULLMAN 1:*2*
6:*21*
cup 29:*7*, *15* 57:*16*
currently 7:*17*
cushion 25:*23*
custody 56:*20*

**CV** 1:*12*

**< D >**
**dad** 45:*6, 8* 57:*4, 12*
**dad's** 23:*4*
**damage** 48:*17*
**dangerous** 38:*15*
**DANIEL** 1:*14, 14, 21* 3:*11, 13* 4:*11* 6:*12, 15* 7:*5, 7* 52:*11* 62:*8*
**Daniels** 24:*16, 18*
**dark** 31:*3, 4* 52:*12* 53:*18* 62:*22* 70:*3*
**date** 6:*4* 12:*13, 15, 19, 22, 23* 17:*10*
**dated** 16:*18*
**dates** 61:*5*
**daughters** 34:*5*
**David** 59:*21*
**Davis** 2:*2* 3:*6* 6:*9*
**day** 2:*3* 6:*8* 12:*1* 15:*16, 18* 18:*10* 19:*1, 3* 20:*21* 24:*9, 14* 25:*2* 33:*21* 36:*9* 38:*10* 43:*12* 65:*10, 12, 13* 69:*17*
**days** 57:*22* 65:*9*
**dead** 57:*20*
**Deceased** 1:*10*
**decided** 18:*14* 35:*11* 38:*20* 60:*15*
**decision** 63:*7, 11*
**decision-making** 69:*8*
**Defendant** 1:*15* 3:*10*
**definitely** 25:*8*
**Department** 50:*12*
**DEPOSITION** 1:*13, 20* 2:*9, 10, 22* 6:*19, 22* 9:*15* 73:*22* 74:*6, 11*
**depositions** 2:*13*
**Derby** 10:*2* 11:*19* 12:*1*
**describe** 71:*10*
**details** 42:*6*

**Diagram** 5:*3, 9* 50:*11, 15* 71:*21*
**died** 10:*12* 58:*3, 8* 59:*22*
**differently** 69:*22*
**difficult** 9:*10*
**dinner** 35:*6, 8* 36:*5, 19* 43:*22* 57:*10*
**direct** 68:*23*
**direction** 30:*7*
**directions** 71:*22*
**directly** 20:*15* 71:*17*
**disputing** 39:*1*
**disregarded** 41:*16*
**distance** 32:*5* 35:*23* 41:*21* 73:*2*
**district** 6:*23*
**dock** 4:*21, 22, 23* 5:*2* 38:*19* 46:*13, 22* 48:*1* 49:*13, 18* 50:*7* 51:*2* 57:*7* 64:*15* 71:*6* 72:*1, 23*
**doing** 10:*14* 35:*14* 59:*22*
**double** 12:*15, 19*
**drank** 24:*15, 15*
**drawing** 72:*6*
**dress** 61:*18*
**dressed** 26:*23*
**drink** 24:*5, 8, 11, 13* 25:*1* 27:*2* 33:*16* 36:*22* 37:*2, 5*
**drinking** 19:*18* 25:*4, 5, 6, 8* 62:*14* 68:*9* 69:*4* 70:*3*
**drinks** 25:*10, 11* 37:*1*
**Drive** 3:*14* 20:*5* 34:*18, 23* 38:*17* 40:*7* 41:*11* 62:*21* 63:*23* 67:*12, 14* 69:*5*
**driven** 40:*8* 41:*22* 42:*2, 4, 8*
**driver** 42:*13*

**driving** 39:*18, 23* 40:*4, 15, 19* 41:*10* 54:*19* 63:*13*
**drop** 27:*5*
**drove** 15:*6* 17:*22* 26:*19* 35:*19* 41:*21*
**drugged** 44:*21*
**drugs** 65:*7*
**dry** 21:*10* 22:*23*
**duly** 6:*16*

**< E >**
**ear** 44:*10* 57:*14, 18*
**earlier** 18:*21* 37:*1* 41:*20* 58:*21*
**easier** 21:*22*
**eat** 60:*15, 20*
**eating** 60:*20, 23* 62:*5, 6*
**educational** 8:*5*
**effect** 2:*11*
**effort** 65:*3*
**either** 33:*8* 39:*17* 65:*12* 69:*3*
**El** 19:*11* 60:*4, 12* 62:*5*
**employed** 7:*17* 8:*21*
**Ended** 8:*9* 12:*7* 17:*23* 35:*15* 60:*1* 63:*13, 14*
**entered** 6:*21*
**Eric** 12:*20* 13:*6*
**Estate** 1:*8*
**estimating** 73:*3*
**estimation** 72:*13*
**evening** 17:*19*
**event** 11:*17*
**events** 66:*18*
**evidence** 2:*22* 40:*22* 70:*14*
**exact** 20:*14*
**exactly** 45:*3* 65:*10*
**exam** 8:*7, 11*
**Examination** 4:*3* 6:*13* 7:*4*
**examined** 6:*16*
**exhausted** 19:*6*
**EXHIBIT** 4:*7, 9* 14:*17, 19* 16:*8, 10*

21:*15, 19* 22:*1, 3, 13, 16* 28:*2, 5, 10, 13, 22* 29:*13, 17, 23* 30:*2, 12* 45:*21, 23* 46:*12, 15* 47:*23* 48:*2, 13* 49:*6, 10, 12, 17, 22* 50:*11, 17* 58:*12, 14, 19* 59:*1* 60:*7, 8* 61:*7* 71:*20* 72:*3*
**expected** 47:*12*
**extent** 51:*15* 64:*8*

**< F >**
**face** 44:*9* 57:*16*
**Facebook** 5:*4, 5* 14:*9* 58:*13*
**facing** 30:*16*
**fact** 47:*7* 55:*6* 70:*20*
**familiar** 16:*19* 45:*22* 46:*11, 14* 49:*1, 14* 50:*20* 60:*18*
**family** 9:*8* 15:*1* 26:*14* 33:*11* 65:*4, 19, 19*
**family's** 73:*18*
**far** 20:*17* 30:*22* 31:*23* 39:*4* 56:*21* 69:*14* 71:*5* 72:*22*
**farm** 23:*4*
**farther** 71:*8*
**fast** 56:*11, 12* 67:*14*
**father** 37:*12, 14, 17* 64:*2, 3, 5*
**Federal** 18:*3, 5* 19:*12* 61:*14*
**feel** 9:*17*
**feeling** 57:*8*
**feet** 23:*8*
**felt** 57:*15* 66:*22*
**figure** 73:*15*
**find** 14:*1*
**fireworks** 18:*14, 17*
**Firm** 3:*13*
**first** 6:*16* 11:*16, 18* 31:*21* 36:*21*

37:*1, 4*  41:*22*
48:*16*  56:*23*  58:*17*
**five**  12:*9*  32:*3*
72:*14*
**flags**  49:*2*
**flight**  51:*7*
**flowers**  65:*13*
**Floyd**  3:*18*
**flying**  49:*2*
**followed**  34:*11*
**following**  6:*14*
**follows**  6:*17*
**force**  2:*10*
**foregoing**  6:*6*  74:*6,*
*10*
**fork**  72:*7*
**form**  2:*18*  40:*5, 21*
41:*17*  44:*7*  51:*14*
52:*13*  55:*4*  62:*17*
63:*2*  68:*12*  70:*18*
73:*14*
**formally**  12:*14*
**Forman**  8:*22*  9:*2*
**forward**  44:*5*
**found**  41:*6*  58:*8*
**four**  12:*10*
**Friday**  15:*2*  16:*4*
**friend**  10:*7, 12, 13,*
*18, 19*  12:*16, 20, 22*
14:*23*  26:*10, 11*
51:*19*
**friends**  9:*21, 23*
15:*5*  16:*15*  18:*21*
26:*17*  58:*20*  59:*6*
68:*21*
**front**  19:*12*
**frontal**  41:*2*
**full**  2:*11*  7:*5*  11:*8*
**fundraiser**  10:*14,*
*16, 17*  12:*2, 3*  31:*8*
52:*3*  59:*10, 12*
**funeral**  65:*11*
**FURTHER**  2:*7, 15*
17:*13*  74:*14*

**< G >**
**Gaines**  3:*18*  7:*19*
**game**  12:*19*  13:*7*
**gap**  70:*21*

**Garrison**  2:*2*  3:*6*
6:*9*
**gas**  20:*19*
**general**  32:*23*  47:*6*
52:*17, 18*
**getting**  66:*16*
**girlfriend**  12:*17, 21*
**girl's**  13:*6*
**give**  7:*5*  35:*5*
**given**  74:*11*
**gives**  28:*11*  61:*4*
**glass**  53:*7*
**glassy**  53:*5*
**go**  9:*9, 20*  17:*18,*
*21*  18:*15, 22*  20:*15,*
*22*  31:*5, 11, 19*
34:*3*  35:*6*  45:*13*
54:*22*  55:*3*  56:*10,*
*10*  60:*6*  61:*3*
62:*12*  71:*12*  72:*8,*
*9*
**going**  8:*9*  9:*9*
14:*16*  33:*5*  34:*6*
38:*20*  46:*5*  48:*10*
53:*13, 14, 19*  61:*3*
62:*12*  67:*16*  71:*14,*
*19*
**good**  9:*17*  11:*15*
31:*5*  43:*20, 22*
44:*4*  60:*22*  63:*10*
**Goose**  24:*16*
**gosh**  12:*5*
**GPS**  69:*20*
**grave**  65:*9*
**Gray**  24:*16*
**green**  29:*22*  39:*6*
61:*10*
**grounds**  2:*20*
**group**  42:*17*
**guess**  9:*4*  12:*23*
19:*6*  25:*19*  40:*6*
47:*22*  65:*23*  67:*5,*
*18*
**guessing**  67:*19*
**guy**  27:*11*  64:*11*

**< H >**
**half**  23:*8*  46:*10*
63:*15*

**happened**  9:*18*
13:*12*  18:*9*  40:*16,*
*20*  44:*23*  45:*11*
54:*5*  57:*4*  59:*23*
62:*16*  63:*5, 13, 19*
70:*16*  71:*2, 6, 14,*
*16*  73:*13*
**happening**  54:*17*
**hard**  36:*3*
**head**  57:*17*
**headed**  47:*18*  55:*9*
**headlights**  29:*3*
**heard**  11:*8*  64:*13*
**hearing**  74:*12*
**helicopter**  51:*7*
57:*6*
**help**  28:*12*
**helped**  10:*15*
**helping**  52:*2*  59:*18*
**helps**  61:*4, 21*
**Heninger**  2:*1*  3:*4,*
*6*  4:*4*  6:*9*  7:*3, 4*
**hi**  33:*4*
**high**  55:*23*  64:*14*
**Hinch**  1:*22*  6:*1*
74:*20*
**hit**  48:*11*  49:*14, 19*
57:*6*  64:*15*  72:*2*
**Hollis**  33:*8*  34:*4*
**home**  31:*3, 21*
32:*10*  53:*19*  68:*11*
**honestly**  11:*11*
27:*1*  38:*5*
**Honey**  24:*16, 18*
**Horner**  64:*11*
**hospital**  42:*22*
44:*14*  45:*1, 2, 4*
51:*8*  57:*2, 11*
**hours**  54:*9*  55:*7*
57:*22*  70:*23*  71:*1*
**house**  5:*1*  15:*1, 3*
17:*16*  26:*9*  31:*20*
32:*2, 13, 16, 17, 20,*
*22*  33:*4*  36:*11, 12,*
*13*  37:*2, 13, 20*
38:*7*  39:*14*  44:*18*
46:*6*  49:*2*  67:*7*
71:*9, 10, 12, 17*
72:*12*

**hundred**  12:*6, 6*
**hung**  19:*6*
**Hunter**  33:*8*  34:*7*
37:*19*  38:*14*  63:*18*
70:*11*
**Hunter,**  37:*16*
**Huntsville**  23:*6*
45:*2*  51:*8*

**< I >**
**idea**  71:*22*
**identification**  14:*21*
16:*12*  21:*21*  22:*5,*
*18*  28:*7, 15*  29:*1,*
*19*  30:*4*  46:*2, 17*
48:*4, 15*  49:*8*  50:*1,*
*19*  58:*16*  59:*3*
60:*10*  61:*9*  72:*5*
**identified**  48:*11*
**identifying**  28:*12*
**III**  27:*8*
**illegal**  38:*16*
**illuminate**  30:*6, 18*
**illumination**  52:*19*
53:*3*  62:*14, 22*
**impaired**  38:*12*
**incident**  4:*15*
13:*12, 20*  14:*6*
28:*4*  40:*16, 19*
48:*1*  54:*5*  57:*1*
68:*8*
**INDEX**  4:*7*
**injuries**  41:*2, 3, 3*
44:*6*
**Innisfree**  12:*4*
**insisted**  41:*12*
**instruction**  41:*16*
**intending**  55:*3*
**interested**  74:*17*
**interrupt**  71:*4*
**interrupted**  73:*11*
**intoxicated**  19:*23*
38:*6, 10, 12*  63:*10*
**investigation**  50:*13*
**invited**  10:*16*  15:*4,*
*5*  18:*23*  19:*3, 4*
34:*9*  35:*6*
**involved**  13:*2*  31:*8*
**issue**  69:*21*

**its**  49:*13*  50:*13*

**< J >**
**Jack**  24:*16, 18*
  64:*11*
**jacket**  68:*1*
**jackets**  67:*22*  68:*4*
**Jeff**  37:*17*
**Jeffrey**  37:*9, 11*
**Jet**  34:*11, 13, 16*
  39:*23*  42:*2, 8, 10,*
  *14, 18*  46:*13*  49:*13,*
  *19*  50:*15*  51:*12, 23*
  52:*15*  54:*19*  62:*22*
  69:*5*
**Jetta**  20:*10*
**job**  26:*4*
**join**  15:*5*
**joined**  15:*7*
**Joseph**  52:*5*
**judge**  6:*21*
**July**  13:*13*  16:*5*
  *17:14*  18:*10*  19:*16*
  20:*4*  37:*21*  62:*9*
  67:*13*
**jump**  35:*12*
**jumping**  35:*17*
**June**  2:*4*  6:*8*
  16:*18*

**< K >**
**Karen**  1:*22*  6:*1*
  74:*20*
**keep**  18:*17*  22:*20*
  29:*9, 15*
**keeping**  37:*7*
**Kentucky**  10:*2*
  11:*19*
**kept**  21:*1*  26:*2*
  46:*7*
**kids**  10:*10*
**kill**  41:*4, 6, 13*
**kin**  74:*15*
**kind**  8:*4, 13*  20:*9*
  25:*14, 18*  32:*18, 19,*
  *21, 22*  33:*10*  57:*22*
  66:*10*  67:*3, 16, 18*
  71:*9, 12, 18*

**knew**  10:*23*  16:*15*
  27:*19*  37:*18*  52:*8*
  64:*6, 8*  66:*23*
**know**  8:*13*  9:*5, 9*
  11:*11, 14*  12:*21*
  13:*10, 22*  14:*14*
  15:*13*  16:*16*  17:*8*
  19:*6, 21, 22*  20:*1,*
  *17, 19*  21:*5*  25:*7*
  27:*20*  28:*8*  30:*22*
  33:*9*  34:*1*  35:*15*
  36:*3, 15*  37:*16, 17*
  38:*9, 23*  40:*13, 23*
  41:*18*  42:*1, 6, 19*
  43:*2, 4*  44:*8, 8*
  45:*3, 5, 18*  47:*3, 5,*
  *5, 11*  51:*19*  52:*6*
  54:*15, 16*  55:*5, 7, 8,*
  *15*  56:*8, 21*  57:*9,*
  *23*  63:*12*  64:*21*
  65:*10, 16, 21, 22*
  66:*8, 17, 18, 22*
  67:*4*  69:*15, 15, 20,*
  *21*  70:*10, 13, 19, 22*
  72:*6*  73:*3, 16, 16,*
  *19*
**knowing**  57:*3*  70:*9*
**knowledge**  47:*6*
**known**  67:*6*
**knows**  32:*14*
**Kosper**  27:*8*

**< L >**
**lake**  4:*10*  14:*23*
  15:*1, 2, 3, 11*  17:*9,*
  *16*  18:*22*  19:*1, 2*
  20:*5, 16, 22*  23:*15,*
  *16, 23*  24:*6*  26:*18,*
  *23*  31:*1, 5*  32:*14*
  33:*10, 10, 12*  45:*10,*
  *11*  46:*22*  47:*6, 10*
  49:*5, 15*  52:*11, 20*
  62:*13*  73:*5*
**land**  32:*4*  73:*8, 9*
**Large**  2:*1*  6:*3*
**late**  31:*9*  68:*10*
  69:*3*
**Law**  2:*1*  3:*5, 12,*
  *13*  6:*8*  8:*10, 12*

**laws**  2:*12*
**lawyer**  66:*1*  70:*13*
**lawyers**  51:*18*
  68:*18*  70:*14*
**leading**  2:*18*
**learn**  9:*8*
**learned**  47:*7*  66:*19*
**leave**  71:*12*
**leaving**  38:*4, 8*
  39:*20*  43:*21*  47:*21*
**Lee's**  15:*9*
**left**  20:*11*  31:*13*
  36:*17*  38:*3, 7*  39:*6,*
  *15, 18*  40:*1*  50:*3*
  54:*7, 21*  55:*2*
  57:*18*  62:*6*  65:*20*
  67:*3*  68:*4, 14*  72:*7*
**legal**  43:*3*
**letter**  66:*1*
**leukemia**  10:*11, 12*
  59:*11, 15, 22*
**level**  43:*6*
**license**  28:*11, 20*
**Licensed**  1:*22*
  7:*22, 23*  8:*2, 5*
**light**  4:*18, 19*  29:*7,*
  *14, 21, 21, 22, 22*
  30:*14*  39:*6*
**lights**  29:*6*  30:*20*
  39:*4*  52:*16, 19, 23*
  53:*3*
**likelihood**  40:*3*
**limit**  43:*3*
**liquor**  25:*6, 16*
  26:*1*  35:*4, 7, 11, 19*
**liquors**  26:*5*
**little**  25:*15, 19*
  30:*10*  31:*9*  32:*21*
  61:*11*  66:*16*
**live**  13:*10*
**lives**  13:*11*
**LLC**  3:*6, 13*  7:*19*
**located**  47:*12*
**location**  15:*8, 20*
**long**  7:*22*  9:*1, 23*
  13:*9*  23:*11*  33:*13,*
  *15*  36:*2, 8*  45:*1*
  51:*17*  72:*22*
**longer**  11:*3*

**look**  16:*19*  28:*9*
  45:*13*  46:*14*  49:*10,*
  *14*
**looked**  49:*21*  56:*17*
**looks**  46:*11*  50:*20*
  58:*12*  59:*6*  60:*17*
  61:*12*
**lost**  13:*18*  57:*8*
**lot**  15:*4*  31:*7*  53:*7*
  66:*14*
**love**  73:*19*
**lower**  56:*7*
**Lymphoma**  59:*12,*
  *15*

**< M >**
**mail**  65:*21*
**main**  41:*8*
**making**  58:*7*
**Man**  59:*13, 17*
  60:*2*  70:*15*
**MAR**  4:*8*
**marijuana**  43:*11,*
  *14*
**MARINA**  1:*4*
  20:*23*  21:*9, 17*
  31:*13*  35:*7, 9, 13*
  38:*18*  46:*6*  53:*10*
  54:*2*  62:*2*  69:*6, 18*
  70:*23*  71:*7, 11, 15,*
  *23*  72:*8, 13*
**marinas**  24:*2*
**mark**  14:*17*  60:*6*
  61:*3*
**marked**  14:*20*
  16:*11*  21:*20*  22:*4,*
  *7, 17*  28:*6, 14, 23*
  29:*18*  30:*3*  45:*20*
  46:*1, 16*  48:*3, 14*
  49:*7, 23*  50:*18*
  58:*15*  59:*2*  60:*9*
  61:*8*  72:*4*
**marking**  16:*8*
  21:*14*  29:*12*  58:*11*
**married**  7:*13, 15,*
  *16*
**Martin**  23:*23*
**mean**  24:*11*  27:*9*
  30:*9*  42:*4, 12*
  47:*21*  55:*5*  66:*10*

67:16  68:19  69:15
70:9, 22  72:18
73:17
**measure**  36:3
**meet**  10:5  19:9
60:3
**meeting**  60:11
**memory**  10:11
39:23  43:19, 20
47:20  59:16, 23
63:12  65:1  71:19
**mentioned**  26:7
52:7  58:21
**messages**  13:15, 16
14:9
**met**  10:1, 20  11:16,
18  12:18  19:10
61:1  65:19
**middle**  10:10
**midnight**  54:5
64:12
**mile**  36:4
**miles**  72:10
**mind**  38:20  58:4
67:5
**mine**  25:20  34:11
45:19
**miniatures**  25:21
**minutes**  32:3
33:23  34:1, 2
53:23  72:10, 14, 16,
20
**misinterpreted**
42:11
**missed**  65:20
**mistaken**  39:10
**mix**  24:17, 20
**mixed**  24:19  25:10,
20, 20  65:10
**money**  10:10  59:14
**months**  66:15
**moon**  53:1, 4  69:11
**moored**  23:15  67:8
**mooring**  22:21
**morning**  18:12, 20

**< N >**
**name**  7:5  11:1, 2,
9, 12  13:6, 9  15:13
21:6  22:10, 11

26:14  27:8, 10, 18,
21  37:15  52:5, 6
58:21
**named**  10:13, 13
27:22  64:11
**names**  37:18
**Natural**  50:12
**necessary**  2:16
**need**  57:13  65:16
**needed**  69:20
**neither**  74:15
**nephew**  15:10
**Never**  7:16  11:8
26:9, 13  28:16
56:4  65:19
**new**  21:6
**Newman**  52:5
**nicer**  24:3
**night**  16:1, 2  18:7,
13  19:18, 23  29:8
30:8, 21  31:1  38:3,
16  40:8  42:20
46:13  47:19  51:2
52:11, 16, 20, 21
53:4, 7, 8, 11, 13, 14,
17  55:11  56:3, 7
62:9, 13  63:19
64:12  67:9  68:5,
10  69:9, 12, 13, 18
70:17  72:19, 21
**noon**  19:15  20:12,
13
**normal**  69:9
**North**  2:2  3:7
6:10  7:11
**Notary**  1:23  6:2
**note**  65:14, 15
**number**  12:4
14:20  16:11  21:20
22:4, 17  28:6, 14,
23  29:18  30:3
46:1, 16  48:3, 9, 14,
23  49:7, 11, 12, 23
50:18  58:15  59:2
60:9  65:18  72:4
**Numbers**  61:8

**< O >**
**Object**  40:5, 21
41:17  44:7  51:14

52:13  55:4  62:17
63:2  68:12  70:18
73:14
**objection**  63:4
**objections**  2:17, 20
**occasion**  47:1
**occurred**  55:13
**offered**  2:22  38:17
69:4  70:5, 8
**Office**  3:14
**Offices**  2:1  6:9
**official**  14:4  50:13
**Oh**  27:19  56:4
**Okay**  27:14
**old**  7:8
**once**  66:17
**one's**  68:6
**open**  67:15
**operate**  34:19
**oral**  6:13
**order**  6:20
**organized**  33:7
**outside**  64:11
**owned**  23:11, 12
26:14  62:8
**owner**  48:18  50:6
62:21
**owns**  37:13

**< P >**
**p.m**  37:21, 22
**pace**  71:3
**Page**  4:2
**paramedics**  51:4,
11, 22  52:9
**parents**  44:18
**Park**  3:14
**part**  66:14  67:13
71:13, 18
**parties**  1:19  2:19
74:16
**parts**  9:20
**party**  15:3  17:15
19:1  25:13  26:7, 8
34:6, 12  35:3  37:1
**partying**  18:18
**pass**  46:5
**passed**  8:7, 19
**passing**  66:17

**path**  30:7, 19
50:14, 23  62:14
**pay**  48:17
**peaceful**  52:21
**penthouse**  18:3
**people**  10:15
11:23  12:4, 6, 7
18:16, 23  19:4
25:15  51:13  52:7
56:11, 13  59:18
66:14, 21  68:21
**Personal**  1:7
**phone**  13:19  35:15,
17  39:13
**phones**  69:19
**Photo**  4:10, 11, 12,
13, 14, 15, 16, 17, 18,
19, 20, 21, 22, 23
5:1, 2  28:8
**photograph**  14:18
15:12  16:9  21:16
28:3  45:21  46:12
48:23  59:6
**photographs**  44:13,
13, 17
**physical**  40:22
**pick**  20:20
**picked**  35:10
**picture**  46:3, 4
47:8
**pictures**  46:18
**piece**  63:16  70:15
**pier**  55:12  57:7
**place**  17:23  71:5
**PLAINTIFF**  3:3
**Plaintiffs**  1:11
**Plaintiff's**  4:9
14:19  16:10  21:19
22:3, 16  28:5, 13,
22  29:17  30:2
45:23  46:15  48:2,
13  49:6, 22  50:17
58:14  59:1  60:8
61:7  72:3
**plan**  33:7
**planned**  33:5
**plaque**  59:20
**plastic**  44:10  57:16
**please**  7:6  65:16,
22

**Daniel B. Snyder**                                                                81

point 32:*15* 33:*17*
35:*11* 44:*5* 45:*9*
49:*3, 11* 57:*23*
60:*13* 66:*19*
police 13:*22* 44:*15*
51:*21, 22* 56:*19*
pool 25:*13* 26:*7, 8*
34:*6, 12* 35:*3* 37:*1*
possibility 40:*15, 18*
possibly 41:*9*
post 5:*4, 5* 58:*7,*
*13, 18, 19*
posted 14:*13, 15*
postings 14:*9*
practice 8:*12*
prepare 9:*15*
prepping 57:*12*
presented 6:*23*
pretty 31:*16* 43:*20*
44:*3, 20* 49:*2, 3*
56:*17*
previous 42:*16*
previously 8:*3*
67:*2*
print 74:*9*
prior 2:*22*
private 14:*22*
15:*11*
Probably 11:*16*
12:*5, 9* 17:*11, 12*
19:*15* 27:*17* 31:*16*
32:*3, 16* 36:*13, 15,*
*20* 37:*2, 6* 56:*9, 10*
58:*9* 59:*4* 67:*10*
72:*14, 19* 73:*1, 1*
problem 62:*19*
Procedure 6:*6*
proceedings 6:*14*
process 69:*8*
professional's 11:*17*
prominent 32:*15*
49:*2, 11*
promote 26:*5*
promoter 25:*17*
promoting 25:*18*
pronounce 16:*13*
pronounced 16:*14,*
*16*
proper 16:*17*

property 64:*12*
protect 57:*17*
provide 53:*4*
Public 1:*23* 6:*2*
Puerto 11:*12*
pull 23:*4* 33:*2, 3*
pursuant 6:*5, 20*
put 21:*11* 27:*12*
29:*8* 31:*17* 32:*1*
39:*4, 5* 72:*12, 21*
putting 68:*1* 71:*2*

< Q >
question 11:*15*
70:*13*
questions 2:*18, 19*
9:*8* 74:*7*
quick 31:*16*
quite 53:*5*

< R >
raise 59:*14*
raising 10:*10*
rate 64:*14*
reach 65:*3, 17*
reached 57:*15*
66:*13*
reaching 66:*12*
read 37:*8*
reading 2:*8*
ready 18:*22*
real 12:*22*
realized 65:*7*
really 8:*11* 32:*4*
60:*19, 22* 64:*8*
66:*11* 67:*17, 19*
71:*3*
reason 39:*9, 11*
55:*11* 56:*9* 60:*5*
reasons 41:*8*
recall 38:*2* 49:*9,*
*16, 18* 51:*17*
recognize 8:*8*
27:*10* 56:*7*
recollection 9:*18,*
*19* 49:*4* 50:*22*
record 7:*6*
records 42:*21, 22*
43:*1*

recover 14:*2*
red 29:*22*
reduced 74:*8*
reference 60:*13*
reflecting 69:*11*
reflection 53:*5*
relating 2:*12*
relation 65:*11*
rely 70:*14*
remember 11:*18*
12:*10, 12* 20:*14, 20*
21:*6* 24:*23* 25:*12,*
*19* 26:*13, 22* 27:*1,*
*18, 23* 28:*1* 33:*1*
34:*10* 38:*4, 8, 9, 11,*
*21* 39:*2, 7, 16, 17,*
*20* 42:*23* 44:*20, 21,*
*23* 45:*4, 6, 8* 46:*8,*
*21* 50:*2, 4* 51:*4*
54:*11, 13, 18* 57:*1,*
*8, 21* 58:*7, 9* 60:*11,*
*14, 16, 19* 61:*20, 22*
62:*1, 3, 4, 7* 63:*8*
64:*16, 17, 17* 68:*8*
69:*7, 14, 17*
remembered 39:*12*
57:*10*
remembers 63:*22*
report 14:*4*
Reporter 1:*23* 6:*1*
Representative 1:*7*
represents 74:*10*
require 53:*3*
requires 30:*21*
research 59:*15*
residence 7:*10*
Resources 50:*13*
respective 1:*20*
responsibilities
31:*10*
result 74:*17*
reviewed 9:*14*
Rican 11:*12*
ride 38:*16* 68:*11*
69:*5, 23* 70:*2, 5, 7,*
*10*
right 8:*14, 20* 9:*12*
11:*21* 12:*10* 27:*16,*
*17* 28:*17, 20* 36:*1*
38:*2* 39:*7* 44:*14*

46:*11* 47:*19* 49:*13*
59:*4, 23* 61:*15*
70:*6* 72:*8* 73:*5, 11*
ripped 44:*10* 57:*14*
Robert 14:*23* 15:*9*
17:*15*
rode 41:*4*
romantically 13:*1*
rooftop 18:*2, 13*
Rule 6:*5*
rules 2:*12* 6:*5*
run 11:*20*
running 41:*7*
59:*16*
rush 56:*9*
Russian 12:*17* 13:*9*
Ryan's 21:*2, 17, 17*
27:*11* 38:*17* 46:*7*
47:*4, 16* 53:*10*
54:*2* 55:*10* 67:*7*
71:*6, 11*

< S >
sake 73:*18, 18*
salesman 25:*16*
sash 59:*9, 19* 60:*2*
sat 8:*18*
Saturday 19:*16*
20:*4* 25:*2, 11*
31:*14* 37:*20* 42:*15*
60:*4* 61:*6* 67:*13*
Saturdays 60:*21*
saw 14:*13, 14*
28:*16* 33:*2, 3*
49:*20* 66:*17*
saying 64:*6, 17, 22*
66:*1* 71:*21*
says 16:*18* 27:*11*
38:*14, 23* 39:*3*
scene 45:*13*
school 8:*6, 10, 12*
Sea-Doo 4:*15, 16,*
*17* 15:*15* 21:*1, 8,*
*10* 27:*6, 12* 28:*3, 9,*
*16, 18, 21* 29:*3*
30:*23* 31:*4, 13*
32:*1* 38:*16, 19, 21*
39:*5, 15* 40:*8* 41:*7,*
*7, 22* 42:*2* 46:*23*
48:*11* 55:*21* 62:*8*

63:14  64:13  67:11
68:1, 10  69:10
**Sea-Doos**  42:3
**SEAL**  1:6  6:20
**sealed**  7:1
**second**  29:20
**see**  30:11, 17
32:16, 20  33:11
39:6  41:9  43:1, 13,
17, 18  44:11  58:12
60:17  61:4, 21
62:11, 18, 20  66:14
67:17
**seeing**  46:18, 21
**seen**  13:15, 16
14:4, 8  42:22  43:5
44:12, 12  48:1
49:4  50:15, 21
64:10
**self-employed**  7:18
**sense**  54:16  57:9
62:4  68:9  69:2
70:20, 20  73:17
**sent**  65:14, 14
**separate**  15:23
**separately**  17:22
**September**  9:4
**share**  35:8
**Sharifulimina**  11:5
**S-h-a-r-i-f-u-l-i-m-i-
n-a**  11:6
**sharifullina**  1:9
**shine**  53:1
**short**  35:23  41:21
**shorter**  73:2
**shot**  24:22
**show**  14:16  16:7
21:14  22:1  28:2,
10  29:12, 23  32:18
45:20, 21  49:17
58:11  61:2  71:20
**showed**  19:5
**showing**  32:19
47:8
**shown**  15:12
17:11  42:20
**shows**  14:18  30:13
46:5  48:9, 23
49:11  50:14  58:20
59:5

**side**  22:14  28:20
41:3  44:9  57:15,
17  72:7
**signature**  2:8
**sir**  8:23  9:6, 13, 16
14:7, 10  29:20
**sit**  8:10
**site**  65:9
**sitting**  57:10
**six**  12:9  23:9
**size**  23:7
**Ski**  34:11, 13, 16
39:23  42:2, 8, 14,
18  46:13  49:13, 19
50:15  51:12, 23
52:15  54:19  62:22
69:6
**Skis**  42:11
**sleep**  23:9
**slip**  21:16
**slow**  56:8  69:10
71:3
**small**  14:22
**Smith**  17:9  19:2
20:5, 15, 22  23:16
24:5  26:18  31:1, 5
32:14  45:11  46:22
49:5, 15  52:11
62:13
**smoking**  43:11, 13
**SNYDER**  1:14, 14,
21  6:12, 15  7:7
**sober**  68:14
**Society**  59:12
**solid**  44:2, 3
**somebody**  51:22
64:7
**son**  15:9  37:14, 16
**sound**  11:21  58:22
**sounds**  27:15
**speak**  41:18
**specific**  39:22
52:17
**specifically**  27:19
42:5
**speed**  55:20  56:3
64:14
**speedometer**  56:15,
18  67:17
**spell**  11:12

**spend**  16:1  18:7
62:1
**spent**  63:15
**Spina**  45:16  49:20
**splits**  71:13
**spoken**  64:19
**spot**  71:1
**stacked**  50:3, 4
**stars**  53:1, 4  69:11
**started**  18:22
66:16
**starting**  31:9  61:5
**State**  1:23  6:3
14:5  30:21  53:2
67:5  74:3
**statement**  37:8
64:10, 18
**station**  20:19
**stay**  33:13
**stayed**  18:18
**stenotype**  74:7
**Stephen**  3:4
**STEWART-MAGE
E**  1:4
**STIPULATED**
1:18  2:7, 15
**stipulation**  6:7
**stop**  20:18
**stopping**  20:21
**storage**  21:10
22:23
**store**  21:8
**street**  19:13
**strike**  49:3
**striking**  51:2
**struck**  46:13
**struggled**  68:7
**stuff**  50:2, 4
**subpoena**  44:22
**suction**  29:7, 15
**sues**  1:5
**Suite**  3:14
**summer**  22:21
31:9
**super**  36:2
**supervision**  74:9
**sure**  10:18  11:13,
16  13:23  14:13, 22
24:23  26:11  50:3,

21  51:16  56:14, 17
72:15  73:4
**surface**  53:6
**surgery**  44:10
57:13, 14
**surprised**  9:7
**swimsuit**  61:17, 19
**switch**  41:5, 6, 13
**sworn**  6:16

**< T >**
**tabs**  37:7
**tag**  34:8, 9
**take**  23:4  30:23
38:21  44:16  64:4
69:23  70:2, 7
71:18  72:7, 8, 17,
19
**taken**  1:22  6:20
17:7, 9  28:9  70:10,
23  74:6
**talk**  65:22  66:23
**talked**  50:6  63:18,
20  64:2, 3, 4  68:18
**talking**  29:14  30:1
33:22  51:5  70:4
**tell**  14:17  21:22
30:12  46:3, 4  47:9
49:18  51:17  57:19
68:17
**telling**  63:22  71:23
**tells**  61:16
**ten**  72:20, 21
**ten-week**  59:14
**testified**  6:17
**text**  13:15, 16  14:9
60:6
**texted**  33:1, 8
**texting**  18:22
**Texts**  5:6, 7, 8
61:16
**thereto**  2:23  74:8
**thing**  25:7  56:23
57:16
**things**  25:9  26:2
69:22
**think**  11:12, 22
13:8, 21  16:6
17:10  21:22, 23
24:19  25:12  27:15

**Daniel B. Snyder**

31:*12, 15*  33:22
36:*18*  37:*10, 23*
39:*9*  40:*14, 18*
41:*15*  42:*7*  44:*4*
52:*6*  53:*12, 13, 16,
20, 22*  55:*1*  56:*2,
12, 16*  58:*21*  63:*9*
65:*12*  69:*8*  70:*4,
16*  71:*9*  73:*13*
**thought**  12:*17*
**Thuston**  14:*23*
15:*9*
**Thuston's**  17:*15*
**time**  2:*21, 21*  13:*4*
19:*14*  20:*14*  31:*12,
17*  33:*14, 21*  34:*14*
35:*12*  36:*10, 18*
37:*6, 23*  41:*22*
42:*16*  44:*21*  45:*12*
46:*20*  49:*15*  52:*17*
57:*19*  62:*1*  64:*5*
67:*22*
**times**  32:*8*  53:*8*
**today's**  9:*15*
**told**  17:*14*  35:*13*
38:*15*  39:*3*  41:*5,
14*  42:*7, 10*  43:*8*
51:*10, 17, 21*  52:*8,
9*  54:*4, 6*  57:*5, 12*
58:*1, 2*  59:*11*
63:*21*  64:*1*  67:*2*
68:*3, 6, 16, 20*
**Tommy**  45:*16*
46:*19*  48:*7*  49:*20*
**top**  59:*7*
**top-end**  55:*20*
**town**  60:*16*
**transcript**  74:*11*
**travel**  56:*6, 8*
**traveled**  53:*8*
69:*10*
**traveling**  47:*13*
53:*17*  64:*14*  72:*19*
**Travis**  27:*22, 23*
28:*1*
**Trey**  27:*20*
**trial**  2:*21*
**tried**  54:*11, 12, 15*
70:*15, 19*  73:*15*

**trip**  32:*6*
**true**  74:*10*
**trunk**  25:*23*  26:*3*
**Trussville**  15:*14*
17:*16*
**try**  25:*15*  34:*23*
66:*2*
**trying**  25:*15*  61:*21*
63:*16*  68:*7*  71:*9*
**turned**  39:*6*
**Twenty-eight**  23:*8*
**twice**  44:*11*  66:*18*
**two**  12:*6*  13:*1*
25:*11*  36:*4*  54:*8*
55:*7*  56:*11, 13*
63:*16*  70:*23*  71:*1*
**two-hour**  70:*21*

< U >
**unaccredited**  8:*6*
**understand**  68:*13,
15*
**unfamiliar**  62:*15,
23*
**Unit**  7:*11*
**University**  8:*9, 15,
16*
**use**  7:*1, 1*  11:*8*
69:*20*
**usual**  33:*11*
**usually**  11:*20*  23:*3*
24:*20, 21*  53:*17*
56:*8*

< V >
**vaguely**  50:*20*
**Valhalla**  17:*5*  22:*8*
**video**  35:*14, 16*
**videoed**  35:*17*
**view**  22:*14*
**visibility**  56:*7*
**vodka**  24:*16, 20, 21,
22*
**voice**  65:*21*
**VS**  1:*13*

< W >
**wait**  27:*19*
**waiting**  21:*12*
**waived**  2:*9*

**wakeboarding**
36:*14, 14*  38:*1*
**waking**  45:*4*  57:*2,
3, 11*
**Walk**  18:*10*
**walking**  32:*4*
**Wal-Mart**  20:*18*
**want**  65:*15, 22*
67:*4*  70:*12, 14*
73:*12*
**wanted**  15:*6*  18:*14,
17*  19:*2*  34:*22*
35:*4, 6, 12*  64:*6*
66:*23*
**watched**  64:*13*
**watching**  18:*14, 17*
**water**  21:*12, 13*
22:*21*  26:*12*  27:*6,
12*  31:*18, 23*  32:*6*
36:*4, 11*  53:*1, 6, 6*
58:*2*  69:*11*
**way**  16:*15*  20:*19*
24:*5*  28:*19*  33:*9*
35:*10, 20*  37:*18*
40:*6, 13, 14*  47:*4*
49:*20*  52:*23*  67:*15*
70:*22*  71:*13, 13*
**wearing**  59:*9*
67:*21*
**week**  58:*10*
**weekend**  10:*1*
13:*13*  17:*13*
**weeks**  65:*23*
**Well**  11:*19*  12:*2*
18:*12*  24:*15*  30:*9*
36:*10*  37:*14*  38:*14*
40:*7*  41:*11*  44:*4*
46:*21*  47:*5*  61:*2*
63:*3*  64:*4*  68:*7*
69:*2*  71:*4, 20*
**went**  8:*6, 12*  12:*15,
18*  18:*19*  19:*20*
20:*23*  26:*12*  31:*20*
32:*9, 20, 21*  33:*4*
35:*3, 3, 9*  36:*13*
38:*18*  39:*13*  46:*19*
48:*6*  60:*15*  65:*8*
**we're**  6:*18*  9:*5, 9*
**we've**  45:*20*
**whatsoever**  50:*9*

**white**  21:*17*  29:*21*
30:*14*  61:*17*
**Whitlock**  26:*15*
37:*9, 11, 20*  63:*19*
72:*12*
**Whitlocks**  26:*16,
17*  31:*20*  32:*2, 9,
22*  33:*1, 14*  34:*5*
35:*5, 8, 10*  36:*9*
37:*2*  38:*7*  39:*21*
43:*12*  46:*6*  47:*13*
53:*10*  54:*1, 7, 21*
55:*2, 10*  67:*7*  68:*4,
14*  71:*8, 10, 17*
72:*1, 23*
**Whitlocks'**  33:*6*
35:*21*  36:*6*  39:*16,
19*  40:*1*  43:*21*
47:*4*  68:*22*  73:*2*
**winter**  23:*2, 3*
**wiped**  19:*5*
**Wisconsin**  8:*8*
**witness**  2:*9*  5:*9*
6:*12*  70:*6*  72:*6*
74:*12*
**woke**  52:*1*
**Wolter**  3:*11, 13*
6:*18*  40:*5, 21*
41:*17*  44:*7*  51:*14*
52:*13*  55:*4*  62:*17*
63:*2, 4*  68:*12, 17*
70:*4, 18*  73:*14*
**Woman**  59:*13*
**won**  59:*17, 20*
**wore**  65:*8*
**worn**  18:*15*
**wrap**  58:*4*
**wrist**  41:*13*

< Y >
**Yadi**  10:*13, 13, 15,
17*  11:*10*  58:*21*
**Y-a-d-i**  11:*10*
**Yari**  58:*22*  59:*5*
65:*18*  66:*5*
**Y-a-r-i**  58:*22*
**Yeah**  35:*22*  36:*2*
53:*16*  56:*18*  60:*19*
61:*20*  67:*23*  70:*6,
9*

**Daniel B. Snyder**

**year** 10:*2* 46:*10,
10* 59:*13, 17* 60:*2*
63:*15*
**years** 8:*14* 14:*13*
46:*9* 63:*16*
**young** 11:*17*

**<u>EXHIBIT D</u>**

Page 1

1    IN THE CIRCUIT COURT OF
2    CULLMAN COUNTY, ALABAMA
3
4  CASE NUMBER:  CV-16-900001
5
6  MARINA STEWART-MAGEE, who
7  sues as Administrator and
8  Personal Representative of
9  the Estate of Albina
10 Agdasovna Sharifullina,
11 Deceased,
12       Plaintiff,
13       vs.
14 DANIEL B. SNYDER,
15       Defendant.
16    DEPOSITION OF JEFFREY WHITLOCK
17       In accordance with Rule 5 (d) of
18 the Alabama Rules of Civil Procedure, as
19 amended, effective May 15, 1988, I, MICHELLE
20 L. PARVIN, am hereby delivering to Stephen D.
21 Heninger the original transcript of the oral
22 testimony taken on the 1st day of August,
23 2017, along with exhibits.

Page 2

1       Please be advised that this is
2  the same and not retained by the Court
3  Reporter, nor filed with the Court.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Page 3

1    IN THE CIRCUIT COURT OF
2    CULLMAN COUNTY, ALABAMA
3
4  CASE NUMBER:  CV-16-900001
5
6  MARINA STEWART-MAGEE, who
7  sues as Administrator and
8  Personal Representative of
9  the Estate of Albina
10 Agdasovna Sharifullina,
11 Deceased,
12       Plaintiff,
13       vs.
14 DANIEL B. SNYDER,
15       Defendant.
16    S T I P U L A T I O N
17       IT IS STIPULATED AND AGREED,
18 by and between the parties through their
19 respective counsel, that the deposition of
20 JEFFREY WHITLOCK may be taken before Michelle
21 L. Parvin, Commissioner, at the offices of
22 Knight & Knight, 210 Second Street, SE,
23 Cullman, Alabama, 35055, on the 1st day of

Page 4

1  August, 2017.
2       IT IS FURTHER STIPULATED AND
3  AGREED that the signature to and the reading
4  of the deposition by the witness is waived,
5  the deposition to have the same force and
6  effect as if full compliance had been had
7  with all laws and rules of Court relating to
8  the taking of depositions.
9       IT IS FURTHER STIPULATED AND
10 AGREED that it shall not be necessary for any
11 objections to be made by counsel to any
12 questions, except as to form or leading
13 questions, and that counsel for the parties
14 may make objections and assign grounds at the
15 time of trial, or at the time said deposition
16 is offered in evidence, or prior thereto.
17       IT IS FURTHER STIPULATED AND
18 AGREED that notice of filing of the
19 deposition by the Commissioner is waived.
20
21
22
23

Page 5

1          I N D E X
2
3  EXAMINATION BY:          PAGE NUMBER:
4  Mr. Heninger          8
5  Mr. Wolter          31
6  Mr. Heninger          31
7
8  EXHIBITS:
9  Plaintiff's 1          23
10   Drawing
11  Plaintiff's 2          29
12   Written statement
13
14
15
16
17
18
19
20
21
22
23

Page 6

1      IN THE CIRCUIT COURT OF
2      CULLMAN COUNTY, ALABAMA
3
4  CASE NUMBER:  CV-16-900001
5
6  MARINA STEWART-MAGEE, who
7  sues as Administrator and
8  Personal Representative of
9  the Estate of Albina
10  Agdasovna Sharifullina,
11  Deceased,
12          Plaintiff,
13      vs.
14  DANIEL B. SNYDER,
15          Defendant.
16
17  BEFORE:
18      Michelle L. Parvin, Certified
19  Court Reporter
20  APPEARANCES:
21      HENINGER GARRISON DAVIS, LLC, by
22  Mr. Stephen D. Heninger, 2224 First Avenue
23  North, Birmingham, Alabama, 35203, appearing

Page 7

1  on behalf of the Plaintiff.
2      DANIEL WOLTER LAW FIRM by Mr.
3  Daniel S. Wolter, 402 Office Park Drive,
4  Suite 100, Mountain Brook, Alabama, 35223,
5  appearing on behalf of the Defendant.
6      KNIGHT & KNIGHT, LLC, by Mr.
7  Jason P. Knight, 210 Second Street, SE,
8  Cullman, Alabama, 35055, appearing on behalf
9  of the Witness.
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Page 8

1      I, Michelle L. Parvin, a Court
2  Reporter of Birmingham, Alabama, acting as
3  Commissioner, certify that on this date, as
4  provided by the Alabama Rules of Civil
5  Procedure and the foregoing stipulation of
6  counsel, there came before me at 210 Second
7  Street, SE, Cullman, Alabama, 35055,
8  beginning at 1:32 p.m., JEFFREY WHITLOCK,
9  witness in the above cause, for oral
10  examination, whereupon the following
11  proceedings were had:
12
13      JEFFREY WHITLOCK,
14  being first duly sworn, was examined and
15  testified as follows:
16
17      THE COURT REPORTER:  Okay.  Usual
18  stipulations?
19      MR. HENINGER:  That's fine.
20
21  EXAMINATION BY MR. HENINGER:
22
23      Q.   Mr. Whitlock, would you give us

Page 9

1 your full name?
2     A.   Jeffrey Howard Whitlock.
3     Q.   Are you Hunter Whitlock's father?
4     A.   Correct.
5     Q.   So, you have Hunter and Hollis.
6 Any other children?
7     A.   Haley.
8     Q.   Do you own a lake house --
9     A.   I do.
10     Q.   -- at Smith Lake?
11        Do you know the address for that
12 lake house?
13     A.   I do.
14     Q.   What is it?
15     A.   680 County Road Highway 218,
16 Bremen, 35033.
17     Q.   How long have you owned that
18 place?
19     A.   You know, a good question.  I
20 built it.  I might have finished it in 2005
21 or 6, something like that.
22     Q.   And what is your permanent
23 residence address?

Page 10

1     A.   Columbiana.
2     Q.   Can you give me the address?
3     A.   2250 Beaver Creek Road,
4 Columbiana, 35051.
5     Q.   Do you still work at Alabama
6 Plate Cutting?
7     A.   You know, they're trying to run
8 me off, but I'm still there.
9     Q.   What is your position there?
10     A.   Chairman, CEO, president.
11     Q.   Do you own it?
12     A.   It owns me.  I need to be there
13 now.
14     Q.   Well, we're going to get you back
15 soon.
16     A.   There you go.
17     Q.   Do you know who Daniel Snyder is?
18     A.   Yes.
19     Q.   How long have you known Daniel
20 Snyder?
21     A.   Met him about four times.
22     Q.   Every time you have seen him,
23 would it have been at your lake house?

Page 11

1     A.   With the exception of one.
2     Q.   All right.  What was the
3 exception?
4     A.   Some fund-raiser.
5     Q.   In Birmingham?
6     A.   In Birmingham.
7     Q.   How did you first meet him?
8     A.   My daughter, Hollis, showed up
9 one weekend with a boyfriend and four or five
10 attorneys.  He was one of them.
11     Q.   Was her boyfriend a lawyer?
12     A.   No, he was a producer at Channel
13 6 maybe.
14     Q.   Well, good, then, she's got good
15 taste, I guess.
16     A.   Well, she got rid of him and just
17 got married to another one, got married.
18     Q.   Well, I'm here to ask you some
19 questions about the 4th of July holiday back
20 in 2014.  And do you remember Daniel Snyder
21 and a young lady named Albina or Alya being
22 with him?
23     A.   Well, I knew he had a girl with

Page 12

1 him.  I don't really know her name.
2     Q.   Did you ever talk with her?
3     A.   Yeah, shortly, briefly.  Not
4 long.
5     Q.   Did you talk with him?
6     A.   A little bit.
7     Q.   Now, we've been told they had
8 dinner at your place that night.
9     A.   You know, I don't know if they
10 did or not.  They were there.  Now, whether
11 they had dinner or not, I don't know.
12     Q.   Did you cook that night?
13     A.   I did.
14     Q.   What did you -- what did you
15 cook?
16     A.   I smoked -- I smoked barbecue.
17     Q.   Did you have a lot of people at
18 the house that night?
19     A.   I had my kids, all three kids,
20 and some of their friends.
21     Q.   Was Daniel drinking alcohol while
22 he was at your house?
23     A.   You know, I never really did see

Page 13

1  that. I was down at the dock, 2:00, 3:00
2  o'clock in the afternoon. He came by. He
3  asked where Hollis, Hunter was. I told him
4  they wasn't there. He left, came back about
5  6:30.
6          He did ask -- I had -- I had a
7  beer. He did ask for one. I said I didn't
8  have any. Bought for me. He left, came
9  back. And she told me she worked for a
10 distributor and gave out free drinks. She
11 brought back three bottles. Two of them were
12 still on the outside table outside where she
13 set them down the next morning, and one of
14 them was empty. And that one got emptied by
15 shots.
16      Q.   Who was taking the shots?
17      A.   Not me. Truthfully, not me.
18 But -- I don't know, just these kids.
19      Q.   Not just Daniel and her?
20      A.   I mean, I don't -- I didn't
21 really see Daniel do it. She was the one
22 that brought the bottle up, got everybody.
23 Somebody went in the house, came out with

Page 14

1  Solo cups. Two rounds of it, and it was
2  gone.
3      Q.   What was it?
4      A.   Don't know.
5      Q.   Do you know what any of the three
6  bottles were?
7      A.   I remember one was some Tequila
8  that had a horseshoe on it. I kept it for a
9  year, threw it away. I thought the police
10 would probably want it, somebody. There was
11 another one, either a vodka or a rum, that
12 was still full. And the empty one that --
13 like I said, it literally just got -- two
14 rounds, about ten people, and it was gone.
15      Q.   Do you remember about what time
16 they left your house that night?
17      A.   You know, I started telling him
18 he needed to leave right before dark. He
19 was --
20      Q.   Why?
21      A.   He was on the Sea-Doo. And I was
22 telling him to leave because it -- you know,
23 it's illegal to run them, and he said, no, it

Page 15

1  wasn't. Yes, it is. I've owned them since
2  '95. He said, well, I've read the law. The
3  law says if I've got lights, I'm good to go.
4  You're the attorney. I guess you know. So,
5  then, I started telling him he needed to
6  leave, because I honestly think it's
7  dangerous to do it.
8      Q.   What, being on the lake when it's
9  dark like that?
10      A.   I think, yeah. You know, I'd get
11 on the lake in the pontoon boat, but I'm not
12 going to get on a Sea-Doo. And I think you
13 don't need to be on a Sea-Doo after dark.
14      Q.   What was the weather like that
15 night?
16      A.   I don't remember.
17      Q.   But you do recall it was dark
18 when he left?
19      A.   I started telling him right
20 before -- probably right before 9:00 o'clock.
21 And he probably left about thirty minutes
22 thereafter or so.
23      Q.   Did you know that Hunter had

Page 16

1  offered to take them back to Ryan's Creek
2  Marina?
3      A.   I negotiated the deal. I told
4  him, got Hunter out there, and said, Hunter,
5  you need to take him back. He didn't want to
6  do it. That's why it took thirty minutes for
7  him to leave.
8      Q.   Who, Daniel?
9      A.   Daniel.
10      Q.   At one point, was he willing to
11 let Hunter take them back?
12      A.   When he finally -- when he
13 finally left, he -- I'm sitting over here by
14 my smoker (indicating). A table was there,
15 I'm in the corner here, stairs going
16 downstairs is right there (indicating). And
17 he said, all right. I'll let Hunter do it.
18 I said, good. Hunter came back up later and
19 said, got down there and Daniel said, I've
20 got this. The marina wasn't that far away
21 from our house.
22      Q.   Daniel told us it's only about
23 five minutes by water; does that sound right?

Page 17

1    A.    It's probably less than that.
2    Q.    Did you see he and the girl,
3  Alya, leave?
4    A.    No.  I saw them leave at the top
5  of the steps, yes.
6    Q.    Saw them going down?
7    A.    Saw them -- when he told me, she
8  was with him.  And she heard everything I
9  told him, you know, it's dangerous.  You hit
10 a log, you know, you've got to get on a
11 plane.
12   Q.    Did you hear her have any
13 conversation about whether Daniel should
14 listen to you and Hunter or not?
15   A.    Huh-uh.
16   Q.    She didn't pitch in at all?
17   A.    Not that I remember.  If she did,
18 I mean -- you know, I'm sure she did.  She
19 seemed to be -- I had a hard time
20 understanding her.  She had an accent.
21   Q.    Did she ever appear intoxicated
22 to you?
23   A.    No.

Page 18

1    Q.    Did he?
2    A.    No.
3    Q.    Could you tell --
4    A.    In fact, nobody --
5    Q.    -- he had been drinking?
6    A.    -- nobody there that night looked
7  to me to be intoxicated.
8    Q.    Are you familiar with where the
9  Sea-Doo hit that night and this young lady
10 lost her life?
11   A.    I went and looked at it later.
12   Q.    Do you know whose property that
13 is?
14   A.    No, I don't.
15   Q.    Let me show you what was marked
16 as Exhibit 11 to Danny Snyder's deposition.
17 Does that property on the lake look familiar
18 to you?
19   A.    That's not what I was told where
20 it was hit.  No, I don't know where that's
21 at.
22   Q.    Let's try some others.  How about
23 Number 12 to his deposition?

Page 19

1    A.    That kind of looked like it.
2  Yeah, that's it (indicating).  That's where I
3  was told it happened at, right there
4  (indicating).  In fact, if you look -- I just
5  looked at it this past weekend because it's
6  not far from my place either, and you can
7  still see a dent in that dock right there
8  (indicating).
9    Q.    Yeah, I think I'll show you
10 Exhibit 13, and you can see it more up close.
11   A.    Uh-huh.
12   Q.    And Exhibit 14, right there
13 (indicating).
14   A.    Yeah, that's right there
15 (indicating).  That's what I saw.
16   Q.    So, that --
17   A.    And I assume that's where it got
18 hit.  I'm not real sure.
19   Q.    Do you know whose property that
20 is?
21   A.    No, I have no clue.
22   Q.    What is the name of that section
23 of the lake?

Page 20

1    A.    You know, I think that may be
2  Sulphur Creek.
3    Q.    Sulphur Creek?
4    A.    I think so.
5    Q.    How far is this location shown on
6  Plaintiff's Exhibit 14 to the Snyder
7  deposition from your lake house?
8    A.    Closer than the marina.
9    Q.    Would you go past this location
10 that's shown in Exhibit 14?
11   A.    You would have to make a right
12 and go up in there.
13   Q.    I mean, if you were headed back
14 to Ryan's Creek Marina from your place on
15 this Sea-Doo, would you go by this
16 location --
17   A.    No.
18   Q.    -- in Exhibit 14?
19   A.    No.  You leave my house right
20 here and go around the bend and go right
21 around like that to the marina (indicating).
22 Right where you make this bend, this goes way
23 up in here, and it splits out this way and it

Page 21

1  splits this way (indicating).  And that is
2  sitting right there (indicating).
3      Q.   So we'll have an idea about what
4  you just showed us with your fingers, can you
5  draw that?  Show your lake house and orient
6  us for the Ryan's Creek and then for the
7  Sulphur Creek.
8      A.   The main thing I can remember
9  is -- I didn't draw that right.  It's
10 probably right here (indicating).  There's
11 a -- this is where the kids always went
12 wakeboarding (indicating).  And this dead
13 ends up in here and dead ends up in here
14 (indicating).  And there may be a little path
15 this, that, and the other.
16     Q.   Okay.  Which square is your lake
17 house?
18     A.   Right here (indicating).
19     Q.   Okay.  With the X in it?
20     A.   Right around here (indicating).
21     Q.   Okay.  And put a -- put an M by
22 the marina where Daniel's Sea-Doo would be.
23     A.   (Witness complies.)

Page 22

1           Okay.  That's basically it.
2      Q.   Is this one where the collision
3  with the dock occurred (indicating)?
4      A.   I believe so.
5      Q.   Okay.  Let me clarify that.
6      A.   Similar to that, you know, close
7  to what I believe.
8      Q.   And these circles, you say, are
9  dead ends?
10     A.   Yeah, just back in the back, back
11 of the slough.
12     Q.   Where the slough ends?
13     A.   Right.
14     Q.   And what'd you say about
15 wakeboarding?
16     A.   The kids, when I bought them a
17 wakeboard, they'd go back in that slough and
18 wakeboard.
19     Q.   Which one or both of them?
20     A.   Not that one, the other one.
21     Q.   This one (indicating)?
22     A.   Yeah, which is more the main
23 drag.

Page 23

1      Q.   I'm going to put wakeboarding.
2      A.   Probably hadn't been in that
3  slough maybe twice in my life myself, maybe
4  three times.
5      Q.   Is that a narrow slough?
6      A.   It's pretty wide where that house
7  is. It's shallow.  It's not very deep back
8  in -- you know, it doesn't go very far back
9  in there.  I mean, I rode in there after the
10 accident happened.  Somebody told me where it
11 was.  I went and looked.  And then, I think I
12 Googled and saw a picture on the Internet.
13     Q.   I'm going to mark this as Exhibit
14 1 to your deposition.
15
16          (Whereupon, Plaintiff's Exhibit 1
17          was marked for identification and
18          copy of same is attached hereto.)
19
20     Q.   (BY MR. HENINGER)  Do you go by
21 Jeffrey or Jeff?
22     A.   Jeff.
23          MR. HENINGER:  I'm going to put

Page 24

1  Jeff Hunter at the bottom so we can know the
2  difference, Michelle.
3          THE WITNESS:  Yeah, I don't know
4  if Hunter's ever -- if he knows -- I know he
5  knows the slough, but I don't know if he
6  knows that dock.  He may have.  I've never
7  talked to him about it.
8      Q.   He said it didn't look familiar
9  to him.
10     A.   You wouldn't see it unless you
11 went in it.
12     Q.   Into the slough?
13     A.   Right.  I'm assuming he had to be
14 going that way because there's dirt and an
15 island coming out of it, you know.  If you
16 went back in the back and turned -- he had to
17 hit it coming in, which showed the mark on
18 the dock.  That's the only reason I think he
19 hit it there.
20     Q.   I'm not sure I understand what
21 you're saying.
22     A.   I said, the only reason I think
23 he hit it there is because I saw the damage

Page 25

1 to the dock.
2     Q.   Right.
3     A.   I don't know if they repaired it
4 or -- I'm assuming that what you had circled,
5 I saw Sunday.
6     Q.   Uh-huh.  Now, if Daniel Snyder
7 left your lake house at around 10:00 and this
8 collision occurred --
9     A.   Probably 9:30 and 10:00,
10 somewhere in that neighborhood.
11     Q.   If so, when this collision
12 happened around midnight, have you got any
13 idea or information about what happened in
14 that two or two-and-a-half-hour period?
15     A.   I'm assuming they went back to
16 his cruiser.
17     Q.   Where was that, at the marina?
18     A.   Ryan Creek, uh-huh.
19     Q.   What makes you assume that?
20     A.   Because that's where they were
21 headed.
22     Q.   That's what he said?
23     A.   Yeah.

Page 26

1     Q.   He actually told you that's where
2 he was going?
3     A.   Good question.  We talked about
4 going by car.  And it's a circle at my house.
5 We had to move too many cars to get out.  Run
6 him back to the marina, Hunter taking him to
7 the marina.
8     Q.   In the boat?
9     A.   Yeah.  So, I mean, that's the
10 only way I can say that the marina is, that
11 that's what we talked about was taking him by
12 car first, come back and get his Sea-Doo
13 tomorrow.  And the next day -- the next thing
14 was Hunter taking him by boat to the marina.
15     Q.   And that was clear in the
16 conversation that's what the plan was?
17     A.   Oh, definitely clear.  That part
18 was definitely clear.
19     Q.   And you never heard him say that
20 he was going to go anywhere else?
21     A.   No.
22     Q.   Do you know who was driving the
23 Sea-Doo when they left?

Page 27

1     A.   I didn't know.  I didn't see it.
2 I saw them at the top of the stairs.
3     Q.   During the day at all, did you
4 see who was driving that Sea-Doo?
5     A.   Saw him one time.  The first time
6 that afternoon when I was down on my dock, he
7 came by and he was driving and she was on the
8 back.  That's the only time I ever saw him on
9 the Sea-Doo.
10     Q.   Has anyone given you any
11 information or have you overheard anything
12 about what went on during that two or
13 two-and-a-half-hour period before this
14 collision?
15     A.   Huh-uh.  I tried to contact him
16 to see if he was okay.  Never heard a word
17 from him.
18     Q.   Have you talked to him since?
19     A.   Never heard a word from him.
20     Q.   Have you talked to his brother or
21 anyone in his family?
22     A.   His brother did.  I believe his
23 brother called and asked some questions.  And

Page 28

1 it was something about taking the boat back
2 to Guntersville.  And somewhere along the
3 line -- I don't know if it was his brother or
4 somebody made mention that they found her
5 with the Sea-Doo key on her vest, but, you
6 know, that's just not -- hearsay, I guess.
7 And I don't know if that was the brother or
8 somebody else made mention of that.
9     Q.   Did you ever talk to any
10 investigators?
11     A.   Oh, yeah.
12     Q.   See, I've seen -- have you seen
13 the written investigation?
14     A.   No.
15     Q.   There's no mention of any key to
16 the Sea-Doo being on her vest.
17     A.   No, I have not seen it.
18     Q.   Did you know any of the
19 investigators?
20     A.   Oh, yeah, I know John Williams.
21     Q.   How do you know John?
22     A.   Know his ordinance, tickets.
23 Boat, not hell raising in my house.  Boats.

Page 29

1    Q.   Anything else that you think
2  might be of benefit to us to understand how
3  this happened?
4    A.   No, I mean, you know, the day
5  that they came up and took -- John and the
6  sheriff --
7        THE WITNESS:  You were there.
8    A.   -- the statement and talked to me
9  about it, all they said was, basically,
10 they -- he was hanging on the dock, and she
11 was face down across a wire in the water.
12   Q.   I think I've got a written
13 statement from you, It's very short, Jeff,
14 I'm going to mark as Exhibit 2.  Just ask you
15 if you can confirm this is the written
16 statement you gave to the investigators on
17 the 14th of July, 2014.
18
19        (Whereupon, Plaintiff's Exhibit 2
20        was marked for identification and
21        copy of same is attached hereto.)
22
23   A.   Yeah, that's what I gave him,

Page 30

1  but, you know, I did -- they did come by
2  around 6:00, left about 6:20, and came back
3  about probably 7:30 or so, 7:45, left
4  probably 9:30 or 10:00, somewhere in that
5  neighborhood.
6        Now, when I saw him at 3:00 --
7  2:00 or 3:00 or somewhere in there, it was
8  down on the dock on the Sea-Doo.
9    Q.   (BY MR. HENINGER)  At your dock?
10   A.   My dock.  When I saw him the
11 second time, I'm sitting up there by myself,
12 and he and her walked up, which is a hundred
13 and ten steps.
14   Q.   A hundred and ten?
15   A.   A hundred and ten.
16   Q.   And it's a hundred and ten down,
17 too, isn't it?
18   A.   A hundred and ten down.  Those
19 are easy.  It's the hundred and ten up that's
20 the problem.
21        MR. HENINGER:  That's all I have.
22 Thank you.
23

Page 31

1  EXAMINATION BY MR. WOLTER:
2
3    Q.   Mr. Whitlock, I'm Danny Wolter,
4  and I represent Daniel Snyder.  Just a couple
5  of questions.
6    A.   Okay.
7    Q.   You don't know who was driving
8  the Sea-Doo when it left that night, correct?
9    A.   Didn't look, didn't see, no, sir.
10   Q.   And you don't have any idea who
11 was driving the Sea-Doo when this accident
12 occurred, do you?
13   A.   I have no idea.
14   Q.   And nobody has given you an
15 opinion as to who was driving at the time of
16 the accident?
17   A.   Nobody gave me an opinion.
18        MR. WOLTER:  Thank you.  That's
19 all I have.
20
21 FURTHER EXAMINATION BY MR. HENINGER:
22
23   Q.   Just this:  While Daniel and Alya

Page 32

1  were at your lake house that night, did you
2  ever see them argue?
3    A.   No.
4    Q.   Did they seem to be getting along
5  just fine?
6    A.   She seemed to be a happy-go --
7  you know, a happy-go-lucky girl.  You know, I
8  was told that she worked for a distributor
9  giving away free drinks.  When he found out I
10 didn't really have any booze, he said, hey,
11 you know -- she piped up and said, hey, I've
12 got a trunk loaded.  I've got a trunk full of
13 it.  And I actually told her, I don't need
14 it.
15        My oldest daughter, Haley and my
16 two grandkids was there, and there was not
17 going to be a dadgum hoedown, okay?  She
18 would have picked herself up with my
19 grandkids and left.
20        MR. HENINGER:  Thanks.  That's
21 all I have.
22        MR. WOLTER:  Thank you.
23        FURTHER DEPONENT SAITH NOT.

Page 33

1          C E R T I F I C A T E

2

3  STATE OF ALABAMA    )

4  JEFFERSON COUNTY    )

5          I hereby certify that the above

6  and foregoing deposition was taken down by me

7  in stenotype, and the questions and answers

8  thereto were transcribed by means of

9  computer-aided transcription, and that the

10  foregoing represents a true and correct

11  transcript of the testimony given by said

12  witness upon said hearing.

13          I further certify that I am

14  neither of counsel, nor of kin to the parties

15  to the action, nor am I an anywise interested

16  in the result of said cause.

17

18          s/s Michelle L. Parvin

19             MICHELLE L. PARVIN

20          Certified Court Reporter

21             License Number 126

22          Commission expires 9/30/17

23          Notary Public expires 1/26/18

**<u>EXHIBIT E</u>**

Page 1

1      IN THE CIRCUIT COURT OF

2      CULLMAN COUNTY, ALABAMA

3

4   CASE NUMBER:  CV-16-900001

5

6   MARINA STEWART-MAGEE, who

7   sues as Administrator and

8   Personal Representative of

9   the Estate of Albina

10   Agdasovna Sharifullina,

11   Deceased,

12          Plaintiff,

13          vs.

14   DANIEL B. SNYDER,

15          Defendant.

16      DEPOSITION OF HUNTER WHITLOCK

17      In accordance with Rule 5 (d) of

18   the Alabama Rules of Civil Procedure, as

19   amended, effective May 15, 1988, I, MICHELLE

20   L. PARVIN, am hereby delivering to STEPHEN D.

21   HENINGER the original transcript of the oral

22   testimony taken on the 1st day of August,

23   2017, along with exhibits.

Page 2

1      Please be advised that this is

2   the same and not retained by the Court

3   Reporter, nor filed with the Court.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Page 3

1      IN THE CIRCUIT COURT OF

2      CULLMAN COUNTY, ALABAMA

3

4   CASE NUMBER:  CV-16-900001

5

6   MARINA STEWART-MAGEE, who

7   sues as Administrator and

8   Personal Representative of

9   the Estate of Albina

10   Agdasovna Sharifullina,

11   Deceased,

12          Plaintiff,

13          vs.

14   DANIEL B. SNYDER,

15          Defendant.

16      S T I P U L A T I O N

17      IT IS STIPULATED AND AGREED,

18   by and between the parties through their

19   respective counsel, that the deposition of

20   HUNTER WHITLOCK may be taken before Michelle

21   L. Parvin, Commissioner, at the offices of

22   Knight & Knight, 210 Second Street, SE,

23   Cullman, Alabama, 35055, on the 1st day of

Page 4

1   August, 2017.

2      IT IS FURTHER STIPULATED AND

3   AGREED that the signature to and the reading

4   of the deposition by the witness is waived,

5   the deposition to have the same force and

6   effect as if full compliance had been had

7   with all laws and rules of Court relating to

8   the taking of depositions.

9      IT IS FURTHER STIPULATED AND

10   AGREED that it shall not be necessary for any

11   objections to be made by counsel to any

12   questions, except as to form or leading

13   questions, and that counsel for the parties

14   may make objections and assign grounds at the

15   time of trial, or at the time said deposition

16   is offered in evidence, or prior thereto.

17      IT IS FURTHER STIPULATED AND

18   AGREED that notice of filing of the

19   deposition by the Commissioner is waived.

20

21

22

23

Page 5

1          I N D E X

2

3  EXAMINATION BY:          PAGE NUMBER:

4  Mr. Heninger          9

5  Mr. Wolter          35

6

7  EXHIBITS:

8  Plaintiff's 1          18

9      Written statement

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Page 6

1          IN THE CIRCUIT COURT OF

2          CULLMAN COUNTY, ALABAMA

3

4  CASE NUMBER:  CV-16-900001

5

6  MARINA STEWART-MAGEE, who

7  sues as Administrator and

8  Personal Representative of

9  the Estate of Albina

10  Agdasovna Sharifullina,

11  Deceased,

12          Plaintiff,

13      vs.

14  DANIEL B. SNYDER,

15          Defendant.

16

17  BEFORE:

18      Michelle L. Parvin, Certified

19  Court Reporter

20  APPEARANCES:

21      HENINGER GARRISON DAVIS, LLC, by

22  Mr. Stephen D. Heninger, 2224 First Avenue

23  North, Birmingham, Alabama, 35203, appearing

Page 7

1  on behalf of the Plaintiff.

2      DANIEL WOLTER LAW FIRM by Mr.

3  Daniel S. Wolter, 402 Office Park Drive,

4  Suite 100, Mountain Brook, Alabama, 35223,

5  appearing on behalf of the Defendant.

6      KNIGHT & KNIGHT, LLC, by Mr.

7  Jason P. Knight, 210 Second Street, SE,

8  Cullman, Alabama, 35055, appearing on behalf

9  of the Witness.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Page 8

1      I, Michelle L. Parvin, a Court

2  Reporter of Birmingham, Alabama, acting as

3  Commissioner, certify that on this date, as

4  provided by the Alabama Rules of Civil

5  Procedure and the foregoing stipulation of

6  counsel, there came before me at 210 Second

7  Street, SE, Cullman, Alabama, 35055,

8  beginning at 1:04 p.m., HUNTER WHITLOCK,

9  witness in the above cause, for oral

10  examination, whereupon the following

11  proceedings were had:

12

13      HUNTER WHITLOCK,

14  being first duly sworn, was examined and

15  testified as follows:

16

17      THE COURT REPORTER:  Okay.  Usual

18  stipulations?

19      MR. WOLTER:  Sure.

20      MR. HENINGER:  That's fine.

21

22

23

Page 9

1  EXAMINATION BY MR. HENINGER:
2
3      Q.   Hunter, I'm Steve Heninger, and I
4  represent the mother of Albina that was
5  killed that's involved in this case.  Would
6  you give us your full name for the record?
7      A.   Jeffrey Hunter Whitlock.
8      Q.   What is your residence address?
9      A.   4113 Clover Leaf Drive,
10 Birmingham, Alabama.
11     Q.   Are you married?
12     A.   No, sir.
13     Q.   Have you been married?
14     A.   No, sir.
15     Q.   Do you live by yourself?
16     A.   I have a roommate.
17     Q.   Where are you employed?
18     A.   Alabama Plate Cutting.
19     Q.   Is your father also employed
20 there?
21     A.   Yes.
22     Q.   What is your position with that
23 company?

Page 10

1      A.   Manager.
2      Q.   All right.  Do you or your family
3  have a lake house at Smith Lake?
4      A.   They do.  My father does.
5      Q.   Is there an address for that?
6      A.   I don't know it.  I think it's
7  680 County Road 118 maybe.
8          THE WITNESS:  Is that right?
9      A.   I don't really know, to be honest
10 with you.  I've never needed to know.
11     Q.   How old are you?
12     A.   Twenty-nine.
13     Q.   Do you know Daniel Snyder?
14     A.   He's -- yes.  Not very well.
15     Q.   When did you first meet Daniel
16 Snyder?
17     A.   I couldn't -- maybe -- I couldn't
18 really tell you when.  2010ish maybe.  He was
19 a friend of my sister's and that's how I met
20 him.
21     Q.   Is your sister named Hollis?
22     A.   Uh-huh.
23     Q.   Is that a yes?

Page 11

1      A.   Yes.
2      Q.   Where does Hollis work?
3      A.   I don't know.
4      Q.   Is she younger or older than you?
5      A.   Older.
6      Q.   Now, I'm here to ask you some
7  questions about the 4th of July weekend and
8  Holiday in 2014.  We have taken the
9  deposition of Mr. Snyder, and I want to ask
10 you some questions to see if he is correct in
11 some of his recollection or incorrect.  And
12 there's some things he doesn't recollect, and
13 I want to see if you do have a memory about
14 it.  Have you read his deposition?
15     A.   No, sir.
16     Q.   Have you spoken to Daniel Snyder
17 about this incident?
18     A.   No, sir.  I haven't seen him
19 since that day he left the dock.  That was
20 the last time I spoke to him.
21     Q.   When Alya or Albina was still
22 alive?
23     A.   Yes, sir.

Page 12

1          MR. HENINGER:  And that's
2  A-l-y-a, Michelle.
3      Q.   Was Daniel invited to come to
4  your parents' lake house?
5      A.   No, sir, he just showed up that
6  day.
7      Q.   Do you know what time he showed
8  up?
9      A.   I couldn't tell you.  It was
10 evening.  It was probably around 6:00
11 o'clock, 6:30 when he got there.
12     Q.   Was Hollis there as well?
13     A.   I believe she was.
14     Q.   Did she have any friends with
15 her?
16     A.   I don't recall.  I don't believe
17 she did.
18     Q.   Daniel Snyder has told us that
19 when he and Alya got to Smith Lake, they got
20 on his Sea-Doo and went to your parents' lake
21 house, but that it was not -- it was probably
22 open but nobody was home.  Do you know
23 anything about that?

Page 13

1    A.   I believe he stopped by and we
2  were gone.  All the young people had gone out
3  on the boat.  I don't know for certain, but I
4  believe my dad was there.  I think he talked
5  to them and told him we weren't there.
6      Q.   Did you go to the pool party that
7  he says he went to?
8    A.   Yes, sir.
9    Q.   Whose house was that?
10   A.   Bill Kepsil.
11      MR. WOLTER:  That last name?
12      THE WITNESS:  Kepsil.
13      MR. WOLTER:  Kepsil.
14   Q.   (BY MR. HENINGER)  Do you know
15  how to spell that?
16   A.   No, sir.
17   Q.   Was Hollis also there?
18   A.   Yes, sir.
19   Q.   Had you met Alya, the girl that
20  was with Daniel that day, before that day?
21   A.   No, sir.
22   Q.   So, that was the first day you'd
23  met her?

Page 14

1    A.   Yes, sir.
2    Q.   Have you ever been on the Sea-Doo
3  that he had at that time?
4    A.   No, sir.
5    Q.   Have you seen him on it?
6    A.   Yes, sir.
7    Q.   Had you seen him on it before
8  that day?
9    A.   Yes, sir.
10   Q.   Did you ever see Alya drive that
11  Sea-Doo that day?
12   A.   No, sir.
13   Q.   And did you see Daniel drive it?
14   A.   Yes, sir.
15   Q.   Now, he has described the place
16  where he would keep his Sea-Doo as being
17  about five minutes by water away from your
18  parents' house at the lake; is that about
19  right?
20   A.   Yes, sir.
21   Q.   Had you ever been to the marina
22  where he kept his Sea-Doo?
23   A.   Yes, sir.

Page 15

1    Q.   And I think they call that Ryan's
2  Creek, don't they?
3    A.   It seems to change every year.
4      MR. KNIGHT:  Yeah.
5    A.   I don't know what it's called
6  now.
7      MR. KNIGHT:  Trident Marina.
8      THE WITNESS:  Yeah, that's
9  correct.
10   Q.   (BY MR. HENINGER)  Were you at
11  the lake house all day except for times when
12  you might be out on the boat or at the pool
13  party?
14   A.   Yes, sir.
15   Q.   Did someone invite Daniel and
16  Alya to come back to your house for dinner?
17   A.   No, sir.
18   Q.   Did they show up for dinner?
19   A.   I don't know if they were there
20  for dinner or not.  They just were there.  I
21  don't know if -- but, no, the answer is,
22  they -- I don't believe they were invited to
23  the house for dinner, no.

Page 16

1    Q.   Do you remember Daniel bringing
2  liquor --
3    A.   I didn't --
4    Q.   -- as a thank you for that?
5    A.   I didn't personally invite him.
6  My sister, who was, you know, his friend, she
7  may have said come on, but I don't recall
8  ever hearing that.
9    Q.   I understand.  Do you remember
10  Daniel bringing some liquor back just before
11  dinner as a thank you for the invitation?
12   A.   I don't believe it was any -- I
13  don't believe he brought it as a gift or
14  anything.  He just had it.
15   Q.   Was he intoxicated that night?
16   A.   In my opinion, no, when I left
17  him, when he left me.
18   Q.   Was he drinking?
19   A.   I couldn't answer that to --
20  truthfully.  I never actually witnessed him
21  drinking.
22   Q.   Was Alya, the girl he was with,
23  intoxicated?

Page 17

1      A.   In my opinion, no, but there
2  again, I never witnessed her drinking.
3      Q.   Well, how much time did you
4  actually spend with Daniel or Alya at the
5  lake house before they left that night?
6      A.   I mean, it seems like they were
7  only there maybe three hours.  It seems like
8  they got there around 6:30 and left somewhere
9  around 9:00.
10     Q.   Well, were they in your presence
11 that whole time or moving around with other
12 people?
13     A.   Moving around.
14     Q.   What do you recall them doing
15 during that three-hour period?
16     A.   Talking with people.
17     Q.   Were they both drinking alcoholic
18 beverages?
19     A.   I told you I can't answer that.
20 I don't know.  I didn't personally witness
21 them pour a drink and consume it.  I didn't
22 see that.
23     Q.   Were you?

Page 18

1      A.   No, sir.
2      Q.   There was a witness statement
3  taken from you by the investigating
4  authorities about this death.  Do you
5  remember that?
6      A.   Uh-huh.
7      Q.   Let me show you what I'm going to
8  mark as Plaintiff's Exhibit 1.
9
10          (Whereupon, Plaintiff's Exhibit 1
11          was marked for identification and
12          copy of same is attached hereto.)
13
14     Q.   (BY MR. HENINGER)  Have you had a
15 chance to see that before the deposition?
16     A.   I just saw it before I walked in
17 here.
18     Q.   Is that your handwriting?
19     A.   It is.
20     Q.   On both pages?
21     A.   Yes, that's mine.
22     Q.   When you gave that statement, was
23 that to the best of your honest recollection?

Page 19

1      A.   Yes, sir.
2      Q.   Is it still true?
3      A.   Let me read through it.  The only
4  thing I don't specifically recall is the
5  times, but from what I see here, it sounds
6  about accurate.
7      Q.   That's your best judgment?
8      A.   Yes.
9      Q.   Now, how did it arise that when
10 Daniel was about to leave that you approached
11 him about not taking his Sea-Doo?
12     A.   What do you -- what do you mean?
13     Q.   Well, what caused you to even
14 make him the offer to drive him back to the
15 marina rather than have him go out on the
16 Sea-Doo that late at night?
17     A.   It was dark and I was under the
18 impression that it was illegal to ride a
19 Sea-Doo at night even with or without lights
20 on it.  I didn't know the law, but that's
21 what I thought it was.  So, that's why I told
22 him he didn't need to ride it.
23     Q.   And what was his response?

Page 20

1      A.   He said -- I guess he agreed to
2  let me drive him in the boat.  We walked down
3  to the dock.  We get down to the dock, and he
4  said, I'm good.  I've got these lights.  You
5  know, it's legal.  It's fine.  It's only five
6  minutes.  I'm good.
7      Q.   Well, do you recall -- and he has
8  told us under oath that the Sea-Doo had no
9  headlights; do you remember that?
10     A.   Correct, it does not have
11 headlights.
12     Q.   And it didn't have any rear
13 lights.  It just had that little pole that
14 sticks up that's got a small light at the
15 top?
16     A.   Negative.  He had a stick-on red
17 and green light with a suction cup to stick
18 that on, and then, he had a three hundred and
19 sixty degree kind of like a Coleman lantern,
20 small lantern, three hundred and sixty
21 degree, whoever, I saw it being held up in
22 the -- in the air.
23     Q.   Who was holding that?

Page 21

1    A.   I couldn't tell you.
2    Q.   But it had to be hand held?
3    A.   Yes.
4    Q.   And that -- you saw that as the
5  Sea-Doo was leaving your dock?
6    A.   Correct.
7    Q.   So, your offer was to take Daniel
8  and Alya back to his marina in your father's
9  boat?
10   A.   Correct.
11   Q.   And that was a short distance, I
12 take it?
13   A.   Correct.
14   Q.   By water anyway?
15   A.   (Witness nods head.)
16   Q.   How far would that be if you had
17 to drive it in a car?
18   A.   Probably the same, five minutes.
19   Q.   And as I understand it, he
20 initially agreed to that?
21   A.   Correct.
22   Q.   But, then, changed his mind?
23   A.   Correct.

Page 22

1    Q.   Did you see Daniel and/or Alya
2  put on their life jackets?
3    A.   I did.
4    Q.   Did they have them on before they
5  were going to get into your boat for you to
6  drive them?
7    A.   No.
8    Q.   But you saw them on before they
9  got on the Sea-Doo?
10   A.   I believe I wrote it right here,
11 I saw them -- I then saw him and his friend
12 putting on life jackets.  When they were
13 putting on the life jackets, I walked -- I
14 walked away.  I was done.  So, I was going
15 upstairs.  I walked across the bridge.  I
16 started up the stairs.  I heard the Sea-Doo
17 start up.  I turned around, I saw a green
18 light and the white light being held up.
19   Q.   The lantern being held up?
20   A.   (Witness nods head.)
21   Q.   Was the Sea-Doo moving at that
22 time when you noticed that?
23   A.   It must have been.  I heard the

Page 23

1  throttle.
2    Q.   Was the lantern that you
3  described being hand held pretty bright?
4    A.   Relative to what?  I mean, yeah,
5  it was bright, I guess.
6    Q.   I don't know.  I wasn't there.
7  Just asking your perception.
8    A.   My perception was, yes, it was a
9  fairly bright light.
10   Q.   Could you tell who was driving
11 the Sea-Doo?
12   A.   No, sir.
13   Q.   Do you have an opinion?
14   A.   No, sir.
15       MR. WOLTER:  Object to the form.
16   Q.   (BY MR. HENINGER)  But I believe
17 you told me earlier, you'd seen Daniel
18 driving it earlier that day?
19   A.   Correct.
20   Q.   Not Alya?
21   A.   Correct.
22   Q.   Had you seen her on it as a
23 passenger behind him?

Page 24

1    A.   Correct.
2    Q.   Anyone else behind him as a
3  passenger during the day that you saw it?
4    A.   No, sir.
5    Q.   Did you ever see anyone else
6  operate the Sea-Doo that day?
7    A.   No, sir.
8    Q.   What do you remember about Alya
9  saying that she'd forgotten her cell phone
10 and had to go up to the house to get it
11 before they left?
12   A.   That's it.  I remember she forgot
13 her cell phone and she went up to the house
14 to get it.  Daniel and I sat down on the
15 stairs and waited for her.
16   Q.   As far as you know, did she get
17 it?
18   A.   As far as I know, I believe she
19 did.  I think Daniel sent her a -- Daniel
20 called her -- Daniel called it to see if it
21 was in her bag.  It wasn't.  She went
22 upstairs to get it.  So, I mean, that'll tell
23 you when they left my dock, because they left

Page 25

1  within five minutes after that phone call.
2       Q.   Do you remember how the two of
3  them were dressed that night when they left?
4       A.   Couldn't tell you.
5       Q.   Do you know a person named Joseph
6  Newman?
7       A.   No, sir.
8       Q.   How did you first learn about
9  this terrible tragedy where Alya lost her
10 life?
11      A.   I believe the next morning, I had
12 a Facebook message from Daniel's brother.
13      Q.   Do you remember what it said?
14      A.   Not specifically, no.
15      Q.   Were you told that it happened
16 close to midnight?
17      A.   I believe I recall someone saying
18 that.  I couldn't tell you who.
19      Q.   Now, from your recollection,
20 especially the statement which you wrote,
21 Exhibit 1, which is pretty close in time to
22 when this happened, you indicated that they
23 probably left your parents' place by 10:00

Page 26

1  o'clock?
2       A.   To be honest with you, I don't
3  recall specific times, but, like I said, if
4  you want to know that, you can look at the
5  cell phone record.  Whenever that call was
6  made, that's -- they left within five or ten
7  minutes of that.
8       Q.   You're talking about the one
9  where Daniel called Alya's cell phone?
10      A.   Uh-huh.
11      Q.   Is that a yes?
12      A.   Yes, sir.  I'm sorry.  Excuse me.
13      Q.   That's all right.
14           Are you familiar now with where
15 the Sea-Doo hit this dock?
16      A.   No, sir.
17      Q.   Let me show you what is marked as
18 Plaintiff's Exhibit 11 to Daniel Snyder's
19 deposition.  Does that look familiar to you?
20      A.   Yes, sir.
21      Q.   Do you know whose property that
22 is?
23      A.   No, sir.

Page 27

1       Q.   Have you been in that area of the
2  lake before on water?
3       A.   Yes, sir.
4       Q.   How far is that from your
5  parents' lake house?
6       A.   It's between there and Ryan Creek
7  Marina.  So, less than five minutes.
8       Q.   Do you think that if you left
9  your parents' lake house by boat or Sea-Doo
10 and were headed to Ryan's Creek Marina where
11 Daniel moored his Sea-Doo, you would go by
12 this location that's shown in Exhibit 11?
13      A.   Yes.
14      Q.   See, he told me you would not.
15 I'm trying to figure out why he would say
16 that.
17      A.   I mean, first of all, you're
18 showing me a picture of the lake.  I mean, it
19 could be anywhere.  But, in my opinion, I
20 think this is the point.  I know that green
21 boat right there, just right around that
22 curve is the marina right there (indicating).
23           THE WITNESS:  Isn't it?

Page 28

1           MR. KNIGHT:  (Counsel nods head.)
2       Q.   (BY MR. HENINGER)  Ryan's Creek
3  Marina?
4       A.   Uh-huh.
5       Q.   Is that a yes?
6       A.   Yes.  Excuse me.
7       Q.   Let me see if these other
8  pictures help you at all.  There's Number 12
9  from the Snyder deposition, 13.  Do you still
10 think it looks familiar to you?
11      A.   I don't recognize that dock, no.
12 That's a different dock than what you showed
13 me.
14      Q.   It's a different dock?
15      A.   Yeah.
16      Q.   But it's near the one I showed
17 you in Number 11?
18      A.   I don't recognize that dock.  I
19 couldn't tell you what it's near.
20      Q.   How about that one, which is
21 Exhibit 14 to Snyder's deposition?
22      A.   I don't recognize that dock.
23      Q.   Do you know Billy Cosper that

Page 29

1  worked at the marina?
2      A.   No, sir.
3      Q.   Well, do you have any information
4  that can shed any light for us on how Daniel
5  went from around 10:00 o'clock leaving your
6  parents' lake house and being at this
7  location that you're familiar with in Exhibit
8  11 at midnight?
9      A.   I do not.  I haven't seen or
10  spoken to Daniel -- I take that back.  I saw
11  him out in public at a football game and
12  wouldn't speak to him.  But I haven't spoken
13  to him since that night when I walked away
14  and they were putting on life jackets.  So, I
15  couldn't tell you what he did after he left
16  my dock.
17      Q.   You don't know and no one has
18  given you any information on what was going
19  on during that two-hour period?
20      A.   No, sir, nobody's ever told me
21  anything.
22          Do you mind if I stand up?  I've
23  got a back injury.

Page 30

1      Q.   No problem.  I'm almost finished,
2  too.  I'm just trying to find something to
3  help you know the location.
4          Did you know the investigator
5  that took your statement that is Exhibit
6  Number 1?
7      A.   What was his name?
8      Q.   It may have been Sweatman or
9  Jonathan Newbanks.
10          MR. KNIGHT:  John Williams was
11  the conservation guy.  The investigator with
12  the sheriff's office that was with him was
13  Scott Clay.
14      Q.   (BY MR. HENINGER)  Have you ever
15  spoken with anyone that was at the property
16  where the collision occurred about what they
17  saw that night?
18      A.   No, sir.
19      Q.   Has anyone told you --
20      A.   No, sir.
21      Q.   -- what they saw?
22          Have you received any text
23  messages from Daniel Snyder since this

Page 31

1  happened?
2      A.   I told you the last time I talked
3  to him.
4      Q.   And you told me his brother was
5  the one that texted you about the collision?
6      A.   Yes.
7      Q.   In that text, did he let you know
8  there was a death?
9      A.   I don't recall.
10      Q.   Do you have any reason to hide
11  any information for Daniel Snyder's benefit?
12      A.   No, sir, not at all.
13      Q.   He has never indicated to you
14  that he wishes he had taken your advice and
15  let you drive him home?
16      A.   I've already told you several
17  times, the last time I spoke to him was on
18  the dock that night, so, no.
19      Q.   Have you talked to his brother?
20      A.   I spoke to him that next day.  I
21  may -- it was three years ago.  I may have
22  spoken to him the next following day or
23  something, but I don't recall the

Page 32

1  conversation.
2      Q.   Well, even if you don't recall
3  the specifics, did it seem to you that he had
4  any information on what had happened?
5      A.   I don't recall.  I don't -- I
6  don't know.
7      Q.   Have you spoken to his parents?
8      A.   No, sir.
9      Q.   Anyone else in his family?
10      A.   Like I said, it's been three
11  years ago.  I don't know if his dad -- it
12  seems like I may have spoken to his dad on
13  the phone, but I don't recall any of the
14  conversation.
15      Q.   I asked Daniel at his deposition
16  about what lights he had on that Sea-Doo, and
17  what he told me was -- I'm going to read it
18  to you.
19          Question:  Did the Sea-Doo have
20  headlights on it?
21          Answer:  No.
22          Question:  Did it have any
23  lights?

Page 33

1    Answer:  It did have a suction
2  cup light that I would put on there at night.
3    Question:  Did you keep that in
4  like a console?
5    Answer:  Yes.  And that was the
6  red and green light.
7    And I think this photograph
8  Number 10 is supposed to show it, and he
9  confirmed that.  Does that look familiar to
10  you?  That's Exhibit 10 --
11    A.   It does.
12    Q.   -- to his deposition.
13    That's what you were talking
14  about being the red and green light, right?
15    A.   Yes, sir.
16    Q.   Then, he said that Exhibit 9 to
17  his deposition is the all around three sixty
18  light that you mentioned earlier could be
19  held.  Does that look familiar to you?
20    A.   Yes, it does.  I said a Coleman
21  camp light, but I just remember a three
22  hundred and sixty degree light.
23    Q.   And I asked him what was the

Page 34

1  purpose of that, and he said it -- that's
2  just facing up so other boats can see you.
3  And I said, it's not used to illuminate your
4  path?  And he said, no.  These are the lights
5  that the state requires to be out at night as
6  far as I know.
7    Do you know if there's any law
8  that's any different than that?
9    A.   Not to my knowledge.
10    Q.   Have you operated a light like
11  this on the water with a boat or Sea-Doo
12  before?
13    A.   I've never been on a Sea-Doo at
14  night, no, sir.
15    Q.   So, I take it, you wouldn't know
16  if that type light shown in Exhibit 9 in his
17  deposition gives any light for your pathway
18  as opposed to just being ambient lighting
19  that alerts others that you're out on the
20  water?
21    A.   What was the question?
22    Q.   Do you know if that light
23  projects any light forward for your pathway?

Page 35

1    A.   I've never held that light.  I
2  don't know.  But, in my opinion, no, it's
3  just an illumination.  It's a marker that
4  people can see you.  That's why it's got to
5  be three hundred and sixty degrees.
6    Q.   So, it doesn't help you see, it
7  helps other people see you?
8    A.   Correct.
9    MR. HENINGER:  That's all I have.
10
11  EXAMINATION BY MR. WOLTER:
12
13    Q.   Hunter, I'm Danny Wolter, and I
14  represent Daniel Snyder and just have very
15  few questions.
16    You don't know who was driving
17  the Sea-Doo when they left your dock that
18  night, correct?
19    A.   Correct.
20    Q.   And you obviously don't know who
21  was driving the Sea-Doo when this unfortunate
22  accident happened, do you?
23    A.   Correct.

Page 36

1    Q.   And nobody has given you an
2  opinion as to who was driving the Sea-Doo at
3  the time of the accident, have they?
4    A.   No, sir.
5    MR. WOLTER:  That's all I have.
6  Thank you.
7    THE WITNESS:  All right.  Thank
8  you.
9    MR. HENINGER:  Thanks.
10    FURTHER DEPONENT SAITH NOT.
11
12
13
14
15
16
17
18
19
20
21
22
23

Page 37

1       C E R T I F I C A T E

2

3    STATE OF ALABAMA    )

4    JEFFERSON COUNTY    )

5        I hereby certify that the above

6    and foregoing deposition was taken down by me

7    in stenotype, and the questions and answers

8    thereto were transcribed by means of

9    computer-aided transcription, and that the

10   foregoing represents a true and correct

11   transcript of the testimony given by said

12   witness upon said hearing.

13        I further certify that I am

14   neither of counsel, nor of kin to the parties

15   to the action, nor am I an anywise interested

16   in the result of said cause.

17

18        s/s Michelle L. Parvin

19           MICHELLE L. PARVIN

20       Certified Court Reporter

21          License Number 126

22       Commission expires 9/30/17

23       Notary Public expires 1/26/18



ELECTRONICALLY FILED
2/6/2019 11:38 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

# IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA                     AGDASOVNA
SHARIFULLINA, DECEASED MARINA)
STE,
Plaintiff,                              )
                                        )
V.                                      ) Case No.:    CV-2016-900001.00
                                        )
SNYDER DANIEL B.,                       )
WHITLOCK JEFFREY HOWARD,                )
WHITLOCK JEFFREY HUNTER,                )
Defendants.                             )

## ORDER

Defendants', JEFFREY HOWARD WHITLOCK and JEFFREY HUNTER WHITLOCK, Motion for Summary Judgment is set on May 22, 2019, Civil Motion Docket at 9:00 a.m. The attorneys shall provide this Court with hard copies of Motions, Briefs (up to 20 pages), and arguments in support thereof, and any exhibits which are essential to support the argument no later than May 15, 2019.

**DONE this 6th day of February, 2019.**

                              **/s/ MARTHA E. WILLIAMS**
                              **CIRCUIT JUDGE**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**1. Article Addressed to:**

AT&T National Compliance Ctr.
11760 US. Hwy. One ste.600
North Palm Beach. FL 33408
CN16-900001 Subp.

9590 9402 4518 8278 5584 38

**2. Article Number** *(Transfer from service label)*

7018 0680 0001 3962 8333

PS Form **3811**, July 2015 PSN 7530-02-000-9053

**A. Signature**

AT&T Mobility
11760 US Hwy 1 Suite 600
North Palm Beach, FL, 33408

☐ Agent
☐ Addressee

**B. Received by (Printed Name)** **C. Date of Delivery**

**D. Is delivery address different from item 1?** ☐ Yes
If YES, enter delivery address below: ☐ No

**FILED IN OFFICE**

**FEB 07 2019**

LISA McSWAIN
CIRCUIT CLERK
HOULMAN COUNTY

**3. Service Type**
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

DOCUMENT 307

USPS TRACKING #

9590 9402 4518 8278 5584 38

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

LISA McSWAIN, CIRCUIT CLERK
500 2ND AVE SW – ROOM 303
CULLMAN, AL 35055-4137

5-413778

ELECTRONICALLY FILED
2/12/2019 3:25 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARINA STEWART-MAGEE,** | ) | |
| **Who sues as Administrator and** | ) | |
| **Personal Representative of the Estate of** | ) | |
| **ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA, Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.:  CV 16-900001** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## NOTICE TO CLERK OF FILING DISCOVERY

TO:     Circuit Clerk of Cullman County

Cullman County Courthouse

Please take notice that the following discovery document has been filed on behalf of

defendant:

(X)      Deposition Re-Notice-Trooper John Williams

_/s/ Daniel S. Wolter_
Daniel S. Wolter (WOL012)
Attorney for Daniel B. Snyder

**OF COUNSEL:**
Daniel Wolter Law Firm, LLC
402 Office Park Drive, Ste 100
Birmingham, Alabama  35223
(205) 983-6440 Telephone
(205) 983-6334 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February, 2019 the foregoing was electronically filed with the Clerk of this Court using the Court's electronic system, which will send notification of such filing to the following:

Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216

David R. Wells
MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203

/s/ Daniel S. Wolter_____
OF COUNSEL

**IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA**

| | |
|---|---|
| **MARINA STEWART-MAGGE,** | ) |
| **Who sues as Administrator and** | ) |
| **Personal Representative of the Estate of** | ) |
| **ALBINA AGDASOVNA** | ) |
| **SHARIFULLINA, Deceased,** | ) |
| | ) |
| **Plaintiff,** | )   **Case No.:  CV 16-900001** |
| | ) |
| **v.** | ) |
| | ) |
| **DANIEL B. SNYDER,** | ) |
| | ) |
| **Defendant.** | ) |

<u>**RULE 30 (B)(5) RE-NOTICE OF TAKING DEPOSITION**</u>
<u>**AND REQUEST FOR PRODUCTION OF DOCUMENTS**</u>

TO:    Kendall A. Lee
       PARSONS, LEE & JULIANO, P.C.
       600 Vestavia Parkway, Suite 300
       Birmingham, Alabama 35216

       Please take notice that at the time, date and place indicated below, the defendant will take the testimony by deposition upon oral examination of that party named.  Such deposition shall be taken for the purpose of discovery or for use as evidence in this action pursuant to the Alabama Rules of Civil Procedure and shall be taken before a certified court reporter and notary public, or some other person who is authorized to administer oaths under the laws of the State of Alabama. The oral examination will continue from time to time until completed.

DATE:        April 4, 2019

TIME:        10:00 a.m.

DEPONENT:   Trooper John Williams

PLACE:       PARSONS, LEE & JULIANO, P.C.
             600 Vestavia Parkway, Suite 300
             Birmingham, Alabama 35216

       Daniel Snyder request the following documents be produced at the deposition:

1.      Any and all documents, correspondence or reference of any type you have in your possession relating to Albina Sharifullina, Daniel Snyder, or the accident in which Sharifullina was killed on July 6, 2014.

2.      Any and all documents, correspondence or reference of any type you have in your possession relating to plaintiff lawyer's firm and correspondence relating to plaintiff lawyer's firm.

3.      Any and all reports prepared by you relating to any opinions you intend to give at the trial.

4.      Any and all books, manuals, procedures and policies you reviewed in preparation of your opinion.

5.      A listing of all cases in which you have provided expert testimony of any kind including deposition testimony or trial testimony.

6.      A listing of all attorneys that have ever retained you to provide an expert opinion of any kind including deposition testimony or trial testimony.

7.      A copy of the autopsy report relating to Albina Sharifullina.

8.      All documents, photographs or items of any type that you reviewed or that you relied upon in reaching your opinions.

9.      Your entire investigative file relating to the accident involved in this case.

10.     Any recordings of any witness statements taken in your investigation of the accident at issued in this case.

/s/ Daniel S. Wolter
Daniel S. Wolter (WOL012)
Attorney for Daniel B. Snyder

**OF COUNSEL:**
Daniel Wolter Law Firm, LLC
402 Office Park Drive, Ste 100
Birmingham, Alabama 35223
(205) 983-6440 Telephone
(205) 900-8095 Facsimile

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of February, 2019, the foregoing was electronically filed with the Clerk of this Court using the Court's electronic system, which will send notification of such filing to the following:

Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216

David R. Wells
MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203

/s/ Daniel S. Wolter
OF COUNSEL

DOCUMENT 310

ELECTRONICALLY FILED
2/27/2019 11:07 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARINA STEWART-MAGEE,** | ) | |
| **as Administrator and Personal** | ) | |
| **Representative of the ESTATE** | ) | |
| **OF ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA, deceased,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | **CV-2016-900001** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## NOTICE OF SERVICE OF DISCOVERY DOCUMENT

Comes now the Plaintiff, **MARINA STEWART-MAGEE**, **as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, and gives notice of serving the following discovery document on all counsel of record in the above-captioned lawsuit:

☒   Plaintiff's Notice of Deposition of Lieutenant Daniel Cummings.

/s/ Kendall A. Lee
Mark W. Lee (LEE003)
Kendall A. Lee (LEE091)
Attorneys for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 27th day of February, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

David R. Wells, Esq.
**WHITAKER, MUDD, LUKE & WELLS, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Daniel S. Wolter, Esq.
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

/s/ Kendall A. Lee
OF COUNSEL

ELECTRONICALLY FILED
2/27/2019 11:07 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

MARINA STEWART-MAGEE,      )
as Administrator and Personal      )
Representative of the ESTATE      )
OF ALBINA AGDASOVNA      )
SHARIFULLINA, deceased,      )
     )      **CIVIL ACTION NO.**
     Plaintiff,      )      **CV-2016-900001**
     )
v.      )
     )
DANIEL B. SNYDER, et al.,      )
     )
     Defendants.      )

## PLAINTIFF'S NOTICE OF DEPOSITION
## OF LIEUTENANT DANIEL CUMMINGS

**TO:**     David R. Wells, Esq.
     WHITAKER, MUDD, LUKE & WELLS, LLC
     2011 4th Avenue North
     Birmingham, Alabama 35203

     Daniel S. Wolter, Esq.
     DANIEL WOLTER LAW FIRM, LLC
     402 Office Park Drive, Suite 100
     Birmingham, Alabama 35223

**PLEASE TAKE NOTICE** that, pursuant to Rule 30 of the Alabama Rules of Civil Procedure, Plaintiff Marina Stewart-Magee, by and through her attorneys, Mark W. Lee and Kendall A. Lee, will take the deposition upon oral examination of Lieutenant Daniel Cummings for the purpose of discovery and/or for use as evidence in the above-captioned lawsuit.

     **Deponent's Name:**      Lieutenant Daniel Cummings

     **Date:**      April 10, 2019

     **Time:**      10:00 a.m.

     **Location:**      Cullman County Sheriff's Office
     1910 Beech Ave SE

Cullman, Alabama 35055

**Court Reporter:**     Freedom Reporting

/s/ Kendall A. Lee
**MARK W. LEE (LEE003)**
**KENDALL A. LEE (LEE091)**
Attorneys for Plaintiff
MARINA STEWART-MAGEE

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

---

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 27th day of February, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

David R. Wells, Esq.
**WHITAKER, MUDD, LUKE & WELLS, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Daniel S. Wolter, Esq.
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

/s/ Kendall A. Lee
OF COUNSEL

ELECTRONICALLY FILED
3/4/2019 11:09 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARINA STEWART-MAGEE,** | ) | |
| **as Administrator and Personal** | ) | |
| **Representative of the ESTATE** | ) | |
| **OF ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA, deceased,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | **CV-2016-900001** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## NOTICE OF SERVICE OF DISCOVERY DOCUMENT

Comes now the Plaintiff, **MARINA STEWART-MAGEE**, **as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, and gives notice of serving the following discovery document on all counsel of record in the above-captioned lawsuit:

☒    Plaintiff's Notice of Deposition of Marilyn Whitlock.

/s/ Kendall A. Lee
Mark W. Lee (LEE003)
Kendall A. Lee (LEE091)
Attorneys for Plaintiff

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

---

## CERTIFICATE OF SERVICE

---

I hereby certify that I have on this 4th day of March, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

David R. Wells, Esq.
**WHITAKER, MUDD, LUKE & WELLS, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Daniel S. Wolter, Esq.
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

/s/ Kendall A. Lee
OF COUNSEL

2

ELECTRONICALLY FILED
3/4/2019 11:09 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARINA STEWART-MAGEE,** | ) | |
| **as Administrator and Personal** | ) | |
| **Representative of the ESTATE** | ) | |
| **OF ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA, deceased,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | **CV-2016-900001** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## NOTICE OF DEPOSITION OF MARILYN WHITLOCK

**TO:**   David R. Wells, Esq.
WHITAKER, MUDD, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, Alabama 35203

Daniel S. Wolter, Esq.
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223

**PLEASE TAKE NOTICE** that, pursuant to Rule 30 of the Alabama Rules of Civil

Procedure, Plaintiff Marina Stewart-Magee, by and through her attorneys, Mark W. Lee and

Kendall A. Lee, will take the deposition upon oral examination of Marilyn Whitlock for the

purpose of discovery and/or for use as evidence in the above-captioned lawsuit.

| | |
|---|---|
| **Deponent's Name:** | Marilyn Whitlock |
| **Date:** | March 22, 2019 |
| **Time:** | 10:00 a.m. |
| **Location:** | Cullman County Courthouse |
| | 500 2nd Ave SW, Room 306 |
| | Cullman, Alabama 35055 |

**Court Reporter:**      Freedom Reporting

/s/ Kendall A. Lee
**MARK W. LEE (LEE003)**
**KENDALL A. LEE (LEE091)**
Attorneys for Plaintiff
MARINA STEWART-MAGEE

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

---

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 4th day of March, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile electronic filing system, and have served a copy of the foregoing pleading by placing the same in the United States Mail, properly addressed and first class postage prepaid to the following:

Ms. Marilyn Whitlock (via U.S. mail only)
2250 Beaver Creek Road
Columbiana, Alabama 35051

David R. Wells, Esq.
**WHITAKER, MUDD, LUKE & WELLS, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Daniel S. Wolter, Esq.
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

/s/ Kendall A. Lee
OF COUNSEL

ELECTRONICALLY FILED
3/8/2019 12:45 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| MARINA STEWART-MAGEE, ) | |
| As Administrator and Personal ) | |
| Representative of the ESTATE OF ) | |
| ALBINA AGDASOVNA ) | |
| SHARFIFULLINA, deceased, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: CV 2016-900001 |
| ) | |
| DANIEL B. SNYDER, *et al.* ) | |
| ) | |
|     Defendant. ) | |

## <u>NOTICE OF SERVICE OF DISCOVERY DOCUMENTS</u>

COME NOW the Defendants, Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock, by and through counsel, and gives notice to the Clerk of this Court that the following discovery documents have been served upon opposing counsel in the above-styled cause.

1.    Defendant Jeffrey Howard Whitlock's Responses to Plaintiff's Interrogatories;

2.    Defendant Jeffrey Howard Whitlock's Responses to Plaintiff's Request for Production;

3.    Defendant Jeffrey Hunter Whitlock's Responses to Plaintiff's Interrogatories; and

4.    Defendant Jeffrey Hunter Whitlock's Responses to Plaintiff's Request for Production.

*/s/ David R. Wells*
DAVID R. WELLS (WEL016)
Attorney for the Defendants,
Jeffrey Howard Whitlock and Jeffrey Hunter
Whitlock

OF COUNSEL:

MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203
(205) 639-5300
(205) 639-5350 *facsimile*
dwells@wmslawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a complete copy of the foregoing instrument upon the following attorney of record via the electronic ALAFILE system, on this 8th day of March, 2019.

Mark W. Lee
Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway
Suite 300
Birmingham, AL 35216
(205)   326-6600
mlee@pljpc.com
klee@pljpc.com

Daniel S. Wolter
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive
Suite 100
Birmingham, AL 35223
dwolter@wolterlawfirm.com

*/s/ David R. Wells*
OF COUNSEL

IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| MARINA STEWART-MAGEE, | ) |
| As Administrator and Personal | ) |
| Representative of the ESTATE OF | ) |
| ALBINA AGDASOVNA | ) |
| SHARFIFULLINA, deceased, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No.: CV 2016-900001 |
| | ) |
| DANIEL B. SNYDER, *et al.* | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT JEFFREY HOWARD WHITLOCK'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

COMES NOW, the Defendant, Jeffrey Howard Whitlock, and for Response to the Plaintiff's First Set of Interrogatories, states as follows:

### GENERAL OBJECTIONS

This Defendant objects to the instructions and the definitions made a part of the Plaintiff's Interrogatories to this Defendant. This Defendant does not agree to comply with the Plaintiff's instructions or definitions to the extent that those impose a greater burden or conflict with the requirements of the *Alabama Rules of Civil Procedure*. This Defendant will respond to this discovery in accordance with the applicable *Alabama Rules of Civil Procedure* and not instructions or definitions imposed by the Plaintiff's attorney.

1.    State your full name, date of birth, current residential address, and social security number.

**RESPONSE:**    Jeffrey Howard Whitlock; 9-11-52; 2250 Beaver Creek Road, Columbiana, Alabama 35051; XXX-XX-2541.

2.      State the name, telephone number, and last known address of each and every person who visited your lake home on Saturday, July 5, 2014.

**RESPONSE:**  This Defendant objects to this Interrogatory on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the trial of this case.  Without waiving said objection, the Defendant states he does not know the phone number and address of the individuals who were at his lake home on Saturday, July 5, 2014.  However, the following are the individuals he recalls being there: This Defendant's wife, Hunter Whitlock, Hollace Whitlock, Haylie Henley, Nick Sproul and his girlfriend, Matthew Devine, Jackson Abram, Chad Henley, Aaron Friece, Jug Twit and his girlfriend, Jug Twit's girlfriend's daughter and her husband and children, Daniel Snyder and Albina Sharifullina.

3.      State the name, telephone number, and last known address of every person who was inside your lake home when Defendant Daniel B. Snyder and Albina ("Alya") Sharifullina departed your dock on Daniel Snyder's SeaDoo shortly after midnight on Sunday, July 6, 2014.

**RESPONSE:**  I am not sure who was inside my home when Daniel Snyder and Albina Sharifullina left my home on Saturday, July 5, 2014.

4.      State the name, telephone number, and last known address of every person who was on your lake home property when Defendant Daniel B. Snyder and Albina ("Alya") Sharifullina departed your dock on Daniel Snyder's SeaDoo shortly after midnight on Sunday, July 6, 2014.

**RESPONSE:**  I do not know who was still was on my property when Daniel Snyder and Albina Sharifullina left my home on Saturday, July 5, 2014.

5.      State the name, telephone number, and last known address of each and every person known to you, your agents, and/or your attorneys who have knowledge or claim to have knowledge of the events described in the Plaintiff's original Complaint and First Amended Complaint.

**RESPONSE:** This Defendant objects to this Interrogatory on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the trial of this case.  This Defendant further objects to this Interrogatory to the extent it seeks information invasive of the attorney-client privilege and work product doctrine.  Without waiving said objection, the Defendant states he is not certain who may have knowledge of the events described in the Plaintiff's Complaint or Amended Complaint, other than the parties to this litigation and individuals at home, assuming they were still present.

6.      Please identify every cell phone number and provider that you had on July 5, 2014. For each account, provide the cell phone number, the cell phone provider, the type of cell phone (e.g., iPhone 3, iPhone 4, Galaxy S, etc.), and state whether the account is still active.

**RESPONSE:** AT&T, iPhone, (205) 531-3000, active.

7.      Please identify every cell phone number and provider that your spouse, Marilyn Whitlock, had on July 5, 2014. For each account, provide the cell phone number, the cell phone provider, the type of cell phone (e.g., iPhone 4, iPhone 5, Galaxy S, etc.), and state whether the account is still active.

**RESPONSE:** AT&T, iPhone, (205) 601-4256 and active.

8.       Describe, in specific detail, the location where Defendant Daniel B. Snyder's SeaDoo was parked at your dock in the evening hours of July 5, 2014. In responding to this

interrogatory, please identify the specific side of the dock where the SeaDoo was parked and the direction in which the SeaDoo was facing while parked. Please also state whether the SeaDoo was parked in a SeaDoo slip or boat slip.

**RESPONSE:** I do not know because I never saw Daniel Snyder's SeaDoo parked at the dock.

9.    Did you consume or take any alcoholic beverages, drugs, or medications on July 5, 2014? If so, please identify the substance consumed and state the quantity of substance consumed, the time(s) of consumption, and the location where the consumption took place.

**RESPONSE:** Yes, I had three or four beers during the course of the day. I also took my prescribed blood pressure medication.

10.    State whether any policy or policies of insurance (including any umbrellas or excess policies) exist which may provide coverage to you for any liability which may arise as a result of the incident described in the Plaintiff's original Complaint and First Amended Complaint and, if so, for each such policy, state the following:

(a)    The name and address of the insurer;

(b)    The policy number;

(c)    The amount of liability insurance coverage afforded by each such policy;

(d)    The name and address of each and every named insured under such policy; and

(e)    Whether any such insurer is defending you in this matter under a reservation of rights.

**RESPONSE:** Produced.

11.    Have you ever been involved in any personal injury and/or wrongful death claims or lawsuits? If so, state the nature of the claim or lawsuit, including the time and place of the