occurrence giving rise to the claim or lawsuit, and the name of the person or persons who were involved.

**RESPONSE:** No.

12.    State the names and addresses of all of your relatives, by blood or marriage, who are over the age of eighteen (18) years and who reside in Cullman County, Alabama.

**RESPONSE:** None.  *To my Knowledge at this time*

13.    Identify the person(s) who answered these interrogatories or who contributed any information used in answering these interrogatories. If more than one person provided the answers or contributed such information, identify the specific interrogatories answered by each person and the information provided.

**RESPONSE:** My attorney and myself.


JEFFREY HOWARD WHITLOCK


Sworn to and subscribed before me,

_____
Notary Public

My commissions expires:  3/23/21


AS TO OBJECTIONS:

*/s/ David R. Wells*
DAVID R. WELLS (WEL016)
Attorney for the Defendants,
Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock

OF COUNSEL:

MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203
(205) 639-5300
dwells@wmslawfirm.com


## CERTIFICATE OF SERVICE

I hereby certify that I have served a complete copy of the foregoing instrument upon the following attorney of record via the electronic ALAFILE system, on this 8th day of March, 2019.

Mark W. Lee
Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway
Suite 300
Birmingham, AL 35216
(205)   326-6600
mlee@pljpc.com
klee@pljpc.com

Daniel S. Wolter
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive
Suite 100
Birmingham, AL 35223
dwolter@wolterlawfirm.com

*/s/ David R. Wells*
OF COUNSEL

IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| As Administrator and Personal | ) | |
| Representative of the ESTATE OF | ) | |
| ALBINA AGDASOVNA | ) | |
| SHARFIFULLINA, deceased, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: CV 2016-900001 |
| | ) | |
| DANIEL B. SNYDER, *et al.* | ) | |
| | ) | |
|     Defendant. | ) | |

## <u>DEFENDANT JEFFREY HOWARD WHITLOCK'S RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION</u>

COMES NOW, the Defendant, Jeffrey Howard Whitlock, and for Response to the Plaintiff's First Request for Production, states as follows:

1.    Produce a copy of all insurance policies and declarations page(s) for each policy (including any umbrella or excess policies) which may provide liability coverage to you for the claims asserted in the Plaintiff's First Amended Complaint.

**RESPONSE:** Produced.

2.    Produce a copy of your cell phone records, including all text messages that were sent and/or received by you, from July 5, 2014 to the present that relate in any way to the events described in the Plaintiff's First Amended Complaint. Please exclude all text messages that were sent and/or received exclusively between yourself and your attorney(s).

**RESPONSE:** This Defendant objects to this Request on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the

trial of this case.  Without waiving said objection, the Defendant states he does not have any documents responsive to this Request.

3.     Produce a copy of all e-mail communications that were sent and/or received by your personal e-mail address(es) from July 5, 2014 to the present that relate in any way to the events described in the Plaintiff's First Amended Complaint. Please exclude all e-mails that were sent and/or received exclusively between yourself and your attorney(s).

**RESPONSE:**  This Defendant objects to this Request on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the trial of this case.  Without waiving said objection, the Defendant states he does not have any documents responsive to this Request.

4.     Produce a copy of all electronic communications either sent or received by you through social networking sites, including, but not limited to, Facebook, Twitter, and Instagram, from July 5, 2014 to the present that relate in any way to the events described in the Plaintiff's First Amended Complaint. Please exclude all electronic communications that were sent and/or received exclusively between yourself and your attorney(s).

**RESPONSE:**  This Defendant objects to this Request on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the trial of this case.  Without waiving said objection, the Defendant states he does not have any documents responsive to this Request.

5.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and Defendant Jeffery Hunter Whitlock regarding the events described in the Plaintiff's First Amended Complaint.

**RESPONSE:**  This Defendant objects to this Request on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the trial of this case.  Without waiving said objection, the Defendant states he does not have any documents responsive to this Request.

6.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and Defendant Daniel B. Snyder regarding the events described in the Plaintiff's First Amended Complaint.

**RESPONSE:**  This Defendant objects to this Request on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the trial of this case.  Without waiving said objection, the Defendant states he does not have any documents responsive to this Request.

7.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and Defendant Daniel B. Snyder's brother, Aaron Snyder, regarding the events described in the Plaintiff's First Amended Complaint.

**RESPONSE:**  This Defendant objects to this Request on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the

trial of this case.  Without waiving said objection, the Defendant states he does not have any documents responsive to this Request.

8.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and your daughter, Hollace Whitlock, regarding the events described in the Plaintiff's First Amended Complaint.

**RESPONSE:**  This Defendant objects to this Request on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the trial of this case.  Without waiving said objection, the Defendant states he does not have any documents responsive to this Request.

9.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and your spouse, Marilyn Whitlock, regarding the events described in the Plaintiff's First Amended Complaint.

**RESPONSE:**  This Defendant objects to this Request on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the trial of this case.  Without waiving said objection, the Defendant states he does not have any documents responsive to this Request.

10.     Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and any person regarding the events described in the Plaintiff's First Amended Complaint. Please exclude all communications that were sent and/or received exclusively between yourself and your attorney(s).

**RESPONSE:** This Defendant objects to this Request on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the trial of this case. Without waiving said objection, the Defendant states he does not have any documents responsive to this Request.

11.     Produce a copy of all photographs, video recordings, and audio recordings that were taken on your lake home property located at 680 County Road Highway 218, Bremen, Alabama 35033 on Saturday, July 5, 2014.

**RESPONSE:** This Defendant objects to this Request on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the trial of this case. Without waiving said objection, the Defendant states he does not have any documents responsive to this Request.

12.     Produce a copy of all photographs, video recordings, and audio recordings that were taken on your lake property located at 680 County Road Highway 218, Bremen, Alabama 35033 on Sunday, July 6, 2014.

**RESPONSE:** This Defendant objects to this Request on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the trial of this case. Without waiving said objection, the Defendant states he does not have any documents responsive to this Request.

13.     Produce a privilege log identifying all documents and materials being withheld from production on the basis of privilege.

**RESPONSE:** Not applicable.

/s/ David R. Wells
DAVID R. WELLS (WEL016)
Attorney for the Defendants,
Jeffrey Howard Whitlock and Jeffrey Hunter
Whitlock

OF COUNSEL:

MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203
(205) 639-5300
dwells@wmslawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a complete copy of the foregoing instrument upon the following attorney of record via the electronic ALAFILE system, on this 8th day of March, 2019.

Mark W. Lee
Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway
Suite 300
Birmingham, AL 35216
(205)   326-6600
mlee@pljpc.com
klee@pljpc.com

Daniel S. Wolter
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive
Suite 100
Birmingham, AL 35223
dwolter@wolterlawfirm.com

/s/ David R. Wells
OF COUNSEL



**FARMERS**

**INSURANCE**

Farmers Insurance
PO Box 2602
Grand Rapids MI
49501-2602

November 28, 2018

Insured: JEFF WHITLOCK
Policy Number: 947504860
Claim Number: 3011310502-1-1
Loss Date: 7/4/2014
Policy Term: 12    Months

☐ Attached is a certified true copy of the original information sent to the insured.

☐ Attached is a certified true copy of the original declarations page, policyback and endorsements.

☒ Attached is a certified true copy of the original declaration page. The attached policyback and endorsements did not mail with this declaration page, but are included as requested.

☐ Attached is a certified true copy of the original declaration page only.

☐ Attached is a certified reconstructed copy of the declaration page only.

☐ Attached is a certified reconstructed copy of the declaration page, policyback and endorsements.

☐ Attached is a certified reconstructed copy of the cancellation.

☐ Attached is a certified true copy of the original cancellation.

Any additional Declaration Sheet(s) included with these documents labeled as "change or change-misc." may reflect a mid-term change in the policy and therefore a time period of less than the original policy term, however the dates reflect the most current policy information on file, up to and including the date of loss for the above-referenced claim.

 **FARMERS**

## FARMERS NEXT GENERATION HOMEOWNERS POLICY
FARMERS INSURANCE EXCHANGE, LOS ANGELES, CALIFORNIA
A Reciprocal Company

**DECLARATIONS**
HOMEOWNERS
Replaces all prior Declarations, if any

**TRANSACTION TYPE:** REINSTATEMENT EFF: 05/30/2014
The Policy Period is effective as shown below and after the time for which applied.

| POLICY NUMBER | POLICY PERIOD | | | POLICY EDITION |
|---|---|---|---|---|
| | FROM: | TO: | STANDARD TIME | |
| 94750-48-60 | 05-30-2014 | 04-30-2015 | 12:00 NOON | 02 |

**ISSUING OFFICE:**
P.O. BOX 149044
AUSTIN, TX 78714

**This policy will continue for successive policy periods, if:** (1) we elect to continue this insurance, and (2) if you pay the renewal premium for each successive policy period as required by our rates, rules, forms and premium plans then in effect.

**NAMED INSURED AND MAILING ADDRESS:**
JEFF WHITLOCK

680 COUNTY ROAD 218
BREMEN AL  35033-3136

**LOCATION OR DESCRIPTION OF RESIDENCE PREMISES:**
(Same as mailing address unless otherwise stated.)

**COVERAGES -** We insure you for the coverages and limits indicated as covered by a specific limit or other notation. Those Section I - Extensions of Coverage and Section II - Liability Extensions of Coverage that are not shown below apply as described in the policy.

| SECTION I - PROPERTY | | | | SECTION II - LIABILITY | |
|---|---|---|---|---|---|
| A - DWELLING | B - SEPARATE STRUCTURES | C - PERSONAL PROPERTY | D - LOSS OF USE | E - PERSONAL LIABILITY | F - MEDICAL PAYMENTS TO OTHERS |
| | | | | Each Occurrence | Each Person |
| $808,000 | $80,800 | $606,000 | $323,200 | $1,000,000 | $5,000 |

| SECTION I - EXTENSIONS OF COVERAGE | | | | SECTION II - LIABILITY EXTENSIONS OF COVERAGE | | ANNUAL PREMIUM |
|---|---|---|---|---|---|---|
| EXTENDED REPLACEMENT COST - COVERAGE A | CONTENTS REPLACEMENT COST - COVERAGE C | BUILDING ORDINANCE OR LAW | IDENTITY FRAUD COVERAGE | PERSONAL INJURY | LOSS ASSESSMENT | |
| $202,000 | COVERED | 10% | $30,000 | NOT COVERED | NOT COVERED | $3,181.77 |

**ENDORSEMENTS**

| ENDORSEMENT NUMBER | EDITION NUMBER | DESCRIPTION |
|---|---|---|
| AL023A | 1ED | FARMERS NGHO POLICY AMENDATORY ENDORSEMENT |
| H6104A | 2ED | ENDORSEMENT AMENDING LOSSES NOT INSURED |
| J6898A | 1ED | ENDORSEMENT AMENDING GENERAL CONDITIONS |

**DISCOUNTS**

NEW HOME DISCOUNT HAS BEEN APPLIED TO YOUR POLICY.

**DEDUCTIBLES**

Deductible applicable to each covered loss:

$5,000    except Windstorm/Hail loss
$16,160   Windstorm/Hail loss
          (2% of Cov. A limit)

Percent Deductibles adjust with changes to Cov. A limit

**POLICY ACTIVITY** Do not pay - invoice sent separately

| $ | | |
|---|---|---|
| | Previous Balance | |
| 2,920.87 | Premium | ANY "TOTAL" BALANCE OR CREDIT $7.00 OR LESS WILL BE APPLIED TO YOUR NEXT BILLING. BALANCES OVER $7.00 ARE DUE UPON RECEIPT. |
| 25.00 | Fees * | |
| | Payments or Credits | |
| $ | Total * | INSURED PAYS |

**SEE ADDITIONAL FEE INFORMATION BELOW*

This Declarations page is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

**AGENT:** CARL JONES
**AGENT PHONE:** (256) 775-3607          **AGENT NUMBER:** 50 03 309

Countersignature

Authorized Representative

56-5479  5TH EDITION  10-11   94750-48-60       *(Continued on the Reverse Side)*          06-03-2014          CS47951I

**Important Notice to Policyholders**
**Regarding Changes to Your Policy Provisions**

Dear Valued Customer;

Endorsement AL 023 1st edition, entitled Farmers Next Generation® Homeowners Policy Amendatory Endorsement has been added to your policy.

This AL 023 1st edition endorsement makes the following change to the policy contract under Section I - UNINSURED LOSS OR DAMAGE and EXCLUDED CAUSES OF LOSS OR DAMAGE, B. Excluded Causes of Loss or Damage #26 Windstorm or hail:

- Part b, an "or" is placed at the end of the section;
- Part c, the following terms have been removed: "and their frames, fences, seawalls, property lines and other similar walls, hot houses, slathouses, trellises, pergolas, cabanas and outdoor equipment pertaining to the service of the residence premises"; and
- Part d has been removed in its entirety

In other words, when the AL 023 1st edition endorsement becomes effective, the policy will offer more coverage by no longer excluding windstorm or hail damage to:

- Fences;
- Hot houses, trellises, pergolas, and cabanas; and
- Wharves, docks, piers, boathouses, and bulkheads

This Important Notice is not a part of your insurance policy contract. It is designed only to alert you to revisions of the insurance policy contract. You should read your policy contract. If there is any conflict between this Important Notice and your policy contract (including its endorsements) the provisions of the policy contract (including its endorsements) take precedence.

If you have any questions about these changes, please contact your Farmers® agent.

---

## FARMERS NEXT GENERATION® HOMEOWNERS POLICY AMENDATORY ENDORSEMENT

### AL**023A**
**ALABAMA**
**1st Edition**

It is agreed that coverage provided by this policy is modified as follows:

In **SECTION I - UNINSURED LOSS OR DAMAGE and EXCLUDED CAUSES OF LOSS OR DAMAGE, B. Excluded Causes of Loss or Damage,**

**26. Windstorm or hail.**

We do not insure loss or damage directly or indirectly caused by, arising out of or resulting from windstorm or hail:

a. To personal property covered under this policy contained in a **building structure** caused by sand or dust unless the direct force of wind or hail first damaged the **building structure** causing an opening in a roof or outside wall and then sand or dust enters through this opening and causes the loss or damage to the personal property;

b. To watercraft and windsurfers, including their trailers, furnishings, equipment and outboard motors, unless inside a fully enclosed **building structure** at the time of loss or damage; or

c. To cloth awnings, greenhouses and their contents, radio and television towers, masts and antennas, including lead-in wiring, and wind chargers and windmills.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

Dear Valued Customer:

Endorsement H6104A, second edition, has been added to your policy. **THE CHANGES TO YOUR POLICY MADE BY THIS ENDORSEMENT, AND DESCRIBED BELOW, <u>REDUCE</u> COVERAGE PROVIDED BY YOUR POLICY. Endorsement H6104A, second edition, applies to both the Protector Plus Package Policy and the Special Form Homeowners Package Policy. Please carefully read this notice, endorsement H6104A, second edition, and your policy to determine how the endorsement changes your policy and the exact coverages now provided.**

Endorsement H6104A, second edition, makes the following changes to both the Protector Plus Package Policy and the Special Form Homeowners Package Policy:

1. THE DEFINITION OF **WATER** HAS BEEN CHANGED. Under **DEFINITIONS,** item 18., the definition of **Water** is changed so that water is now defined to expressly include, but not be limited to, "dampness, vapor, condensation, moisture, steam and humidity."

2. THE DEFINITION OF **WATER DAMAGE** HAS BEEN CHANGED. Under **DEFINITIONS,** the definition of **Water Damage,** item 19. is expanded to include item 19.(e), "**water** which seeps, leaks, drips, escapes or is released out of any plumbing, heating or air conditioning system, or from within a household appliance, other than a sudden and accidental release of **water**."

3. THE WORD "STEAM" IS DELETED IN **SECTION I - LOSSES INSURED, Coverage C - Personal Property,** ITEM 13. The expanded definition of **water** now expressly references "steam."

4. THE **WATER DAMAGE** EXCLUSION, **WATER DAMAGE,** ITEM 2. UNDER **SECTION I - LOSSES NOT INSURED,** IS CHANGED. Previously, Endorsement H6104, first edition, was attached to your policy. Endorsement H6104, first edition, is no longer attached to your policy. Instead, Endorsement H6104A, second edition, replaces Endorsement H6104, first edition. The changes are summarized as follows:

   • The references to **mobile home** are deleted.
   • Endorsement H6104A, second edition, adds language to the **water damage** exclusion specifying that, "we never, under any circumstances, cover rust, mold, fungus, or wet or dry rot, even if resulting from exceptions 1, 2 or 3 above."
   • Endorsement H6104A, second edition, also changes **EXAMPLE 2** of the **water damage** exclusion by adding the words "suddenly and accidentally."

5. ITEM 4. UNDER **SECTION I - LOSSES NOT INSURED** HAS BEEN CHANGED. This Exclusion has been changed three ways. First, the clause "maintenance repair materials" is changed by Endorsement H6104A, second edition, to "maintenance, repairs, or materials." Second, Endorsement H6104A, second edition, adds the words "whether used in" before the phrase "construction, remodeling or maintenance." Third, Endorsement H6104A, second edition, adds language to the exclusion to expressly state that "rust, mold, fungus, or wet or dry rot" are never covered under this policy, however caused.

6. ITEM 13. UNDER **SECTION I - LOSSES NOT INSURED** IS CHANGED. The word "steam," and the phrase "or steam" is deleted from this exclusion. The definition of **water** has been changed to expressly include "steam."

7. THE EXCLUSION OF LOSSES FOR RUST, MOLD, OR WET OR DRY ROT IS BROADENED. Previously, Item 13.d. under **SECTION I - LOSSES NOT INSURED** provided an exclusion against loss caused by or consisting of rust, mold, wet or dry rot, subject to the last three paragraphs of Item 13. under **SECTION I - LOSSES NOT INSURED.** Endorsement H6104A, second edition, deletes reference to "rust, mold, or wet or dry rot" from Item 13. and adds Item 14. under **SECTION I - LOSSES NOT INSURED.** Item 14. expressly adds the word "fungus" to the exclusion so that loss caused by or consisting of "rust, mold, fungus, or wet or dry rot" is always excluded under your policy, however caused. Losses caused by or consisting of rust, mold, fungus, or wet or dry rot, now excluded under Item 14., are no longer subject to the last three paragraphs of Item 13.

8. NEW LANGUAGE IS ADDED TO ITEM 13. UNDER **SECTION I - LOSSES NOT INSURED.** Item 13.g. now excludes loss consisting of, or caused directly or indirectly by "pressure from the presence of (1) any trees, shrubs, plants or lawn, or (2) any root system from any trees, shrubs, plants or lawn," while previously, as Item 13.h., the exclusion applied to "pressure from any root system to a foundation, patio, pavement, driveway, or fence."

Endorsement H6104A, second edition, makes these additional changes only to the Protector Plus Package Policy:

1. UNDER **SECTION I - LOSSES NOT INSURED,** ITEM 2., **EXAMPLE 3** OF THE **WATER DAMAGE** EXCLUSION IS CHANGED BY THE ADDITION OF THE WORDS, "REGARDLESS OF THE CAUSE OR CAUSES OF SUCH **WATER DAMAGE.**"

2. UNDER **SECTION I - LOSSES INSURED, Coverage C - Personal Property,** ITEM 13., THE PHRASE IN THE LAST SENTENCE OF THE FIRST PARAGRAPH, "BUT NOT FOR DETERIORATION, RUST, MOLD, WET OR DRY ROT DUE TO THE PRESENCE OF **WATER** OVER A PERIOD OF TIME", IS DELETED.

Endorsement H6104A, second edition, makes these additional changes only to the Special Form Homeowners Package Policy:

1. UNDER **SECTION I - LOSSES NOT INSURED,** ITEM 13. NOW SPECIFIES THAT "**EARTH MOVEMENT** IS NEVER COVERED UNDER THIS POLICY, HOWEVER CAUSED."

2. UNDER **SECTION I - LOSSES INSURED, Coverage C - Personal Property,** ITEM 13, THE PHRASE IN THE LAST SENTENCE OF THE FIRST PARAGRAPH, "BUT NOT FOR DETERIORATION, RUST, MOLD, WET OR DRY ROT DUE TO THE PRESENCE OF **WATER,**" IS DELETED.

If you have any questions, please contact your Farmers® agent who will be happy to assist you.

## ENDORSEMENT AMENDING DEFINITIONS, SECTION I - LOSSES INSURED AND SECTION I - LOSSES NOT INSURED     H**6104A**

**2nd Edition**

Under **DEFINITIONS,** item 18. **Water** is deleted in its entirety and replaced by the following:

18. **Water** - means water (H2O) alone, whether frozen or not or any liquid or sludge which contains **water,** whether or not combined with other chemicals or impurities. It includes, but is not limited to, snow, sleet, slush, ice, dampness, vapor, condensation, moisture, steam and humidity.

Under **DEFINITIONS,** item 19. **Water damage,** the following paragraph is added:

(e) **water** which seeps, leaks, drips, escapes or is released out of any plumbing, heating or air conditioning system, or from within a household appliance, other than a sudden and accidental release of **water.**

Under **SECTION I - LOSSES INSURED, Coverage C - Personal Property,** item 13. is deleted in its entirety and replaced by the following:

13. Sudden and accidental discharge or overflow of **water** from within a plumbing, heating or air conditioning system, or from within a household appliance.

This peril does not include loss:

   a. to the system or appliance from which the **water** escaped;

   b. caused by or resulting from freezing;

   c. to personal property on the **residence premises** when the sudden and accidental discharge or overflow occurs away from the **residence premises;**

   d. caused by sudden and accidental discharge or overflow from roof gutters, downspouts, sump-pumps, sump-pump wells, leach fields, seepage pits, septic tanks, drainage channels or any other device used to drain **water** away from the **residence premises.**

Under **SECTION I - LOSSES NOT INSURED,** item 2. **Water damage** is deleted in its entirety and replaced by the following:

2. **Water damage.**

Acts or omissions of **persons** can cause, contribute to or aggravate **water damage.** Also **water damage** can occur naturally to cause loss or combine with acts or omissions of **persons** to cause loss. Whenever **water damage** occurs, the resulting loss is always excluded under this policy, however caused; except we do cover:

   1. Direct physical loss to the dwelling or separate structures caused by **water damage** resulting from build-up of ice on portions of the roof or roof gutters.

   2. Loss or damage to the interior of any dwelling or separate structures, or to personal property inside the dwelling or separate structures caused by **water damage** if the dwelling or separate structures first sustain loss or damage caused by a peril described under **SECTION I - LOSSES INSURED - Coverage C - Personal Property.**

   3. Direct loss to the dwelling or separate structures or personal property if caused by fire or explosion resulting from **water damage.**

We never, under any circumstances, cover rust, mold, fungus, or wet or dry rot, even if resulting from exceptions 1, 2, or 3 above.

*(Continued Next Page)*

The following examples are set forth to help you understand this exclusion and are not meant to be all-inclusive.

**EXAMPLE 1:**

Rain **water** collects on or soaks into the ground surface. Because of faulty design, construction or maintenance of the **residence premises,** your neighbor's property or **water** diversion devices, the **water** causes loss to the dwelling, separate structures, or personal property. Such loss is not covered by this policy.

**EXAMPLE 2:**

A pipe under your sink breaks suddenly and accidentally, and **water** damages your wallpaper, carpeting and personal property. The **water** also gets under the dwelling or separate structures causing **earth movement** which results in cracking of the foundation and walls. The loss to the wallpaper, carpeting and personal property is covered, but the loss to the foundation and walls is not covered by this policy.

**EXAMPLE 3:**

**Water** which has backed up through sewers or drains, or **water** below ground level causes loss to the dwelling, separate structures or personal property. Such loss is not covered by this policy, regardless of the cause or causes of such **water damage.**

Under **SECTION I - LOSSES NOT INSURED,** item 4. is deleted in its entirety and replaced with the following:

4. Faulty, inadequate or defective planning, zoning, development, surveying, siting, design, specifications, workmanship, construction, grading, compaction, maintenance, repairs, or materials, whether used in construction, remodeling, maintenance or repair of part of or **all** of any property (including land, structures or any improvements) whether on or off the **residence premises.** However, we do cover ensuing loss by fire, explosion or sudden and accidental discharge of **water. Earth movement,** rust, mold, fungus, or wet or dry rot are never covered under this policy, however caused.

Under **SECTION I - LOSSES NOT INSURED,** item 13. is deleted in its entirety and replaced by the following :

13.
a. wear and tear, marring, deterioration;
b. mechanical breakdown;
c. birds, insects, vermin, rodents, or domestic animals;
d. smog, smoke from agricultural smudging or industrial operations;
e. release, discharge or dispersal of contaminants, pollutants, insecticides, or hazardous gasses or chemicals;
f. any settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
g. pressure from or presence of (1) any trees, shrubs, plants or lawn, or (2) any root system from any trees, shrubs, plants or lawn;
h. soil conditions, including but not limited to corrosion, erosion, chemicals, compounds, elements, suspensions or gels in the soil or the formation of crystals in the soil.

If any of the perils listed in a-h above cause **water** to escape suddenly and accidentally from a plumbing, heating, or air conditioning system or household appliance, we cover loss not otherwise excluded to the dwelling or separate structure caused by **water.** If loss is caused by **water** not otherwise excluded, we will cover the cost of tearing out and replacing any part of the dwelling or separate structure necessary to repair the system or appliance. We do not cover the system or appliance from which the **water** escaped.

If any of the perils listed in a-h above cause a fire or explosion, we cover direct loss by such fire or explosion.

*(Continued Next Page)*

**Earth Movement** is never covered under this policy, however caused.

Under **SECTION I- LOSSES NOT INSURED,** the following item, item 14. Rust, mold, fungus, or wet or dry rot, is added:

14. Rust, mold, fungus, or wet or dry rot.

Acts or omissions of **persons** can cause, contribute to or aggravate rust, mold, fungus, or wet or dry rot. Also, rust, mold, fungus, or wet or dry rot can occur naturally to cause a loss or combine with acts or omissions of **persons** to cause loss. Whenever rust, mold, fungus, or wet or dry rot occurs, the rust, mold, fungus, or wet or dry rot and any resulting loss is always excluded under this policy, however caused.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

92-6204 2ND EDITION  8-00

H6204205

**IMPORTANT INFORMATION ABOUT YOUR POLICY**

The new **ENDORSEMENT AMENDING GENERAL CONDITIONS** J6898A 1st Edition (J6898A) is now part of your policy. Please carefully read this notice, this endorsement, and your policy to determine how this endorsement modifies your policy. Please keep this endorsement with your other insurance papers.

There are two additions to the **GENERAL CONDITIONS APPLYING TO THE ENTIRE POLICY (FARMERS NEXT GENERATION ®HOMEOWNERS POLICY** 1st Edition) and **GENERAL CONDITIONS - APPLYING TO THE ENTIRE POLICY (FARMERS NEXT GENERATION HOMEOWNERS POLICY** 2nd Edition) as follows:

- **Additional Benefits and Services** is added and generally provides that we may work with independent merchants for enhanced value for replacement of your property and for other services, discounts or benefits. We may introduce you to these merchants. If you are interested in any of the services, discounts, or benefits that they may offer, you may use them at your option. You are under no obligation to use them. We don't make any representation regarding the suitability of any such services, discounts or benefits for your specific needs and we are not obligated to expand or continue to make available any such services, discounts or benefits.

- **Policy Notices** is added and provides, generally, that we will address policy notices to you at your last mailing address known to us. These notices will be mailed, or when allowed by law, may be electronically delivered. We may mail or deliver policy notices to mortgagees as well. When policy notices are mailed, we or our vendors may forward such notices to an updated address per any change of address filed with the United States Postal Service. Additionally, we may update our policy records to reflect this updated address and/or address future policy notices to this address.

Since the policy with all of its endorsements (including the one below) is your contract with us, it takes precedence over any other explanatory supplement, including this opening notice. If you have any questions about these changes or other insurance needs please contact your Farmers® agent.

---

## ENDORSEMENT AMENDING GENERAL CONDITIONS

### J6898A
#### 1st Edition

In the **FARMERS NEXT GENERATION® HOMEOWNERS POLICY** 1st Edition under **GENERAL CONDITIONS APPLYING TO THE ENTIRE POLICY** and in the **FARMERS NEXT GENERATION HOMEOWNERS POLICY** 2nd Edition under **GENERAL CONDITIONS - APPLYING TO THE ENTIRE POLICY**, it is agreed that the following are added:

**Additional Benefits and Services.**

We may work with independent merchants for enhanced value for replacement of your property. We may also work with independent merchants for other services, discounts or benefits. We may introduce you to these merchants and if you are interested in any of the services, discounts, or benefits that they may offer, you will have to deal directly with them. You do not have to use their services. You do not have to accept any discounts or benefits that they may offer to you. We do not make any representation regarding the suitability of any such services, discounts or benefits for your specific needs. We are not obligated to expand or continue to make available any such services, discounts or benefits.

93-6899 1ST EDITION 1-11                          *(Continued Next Page)*                          J6899101

**Policy Notices.**

Notwithstanding any policy provision which states where a policy notice will be addressed, we will address policy notices to you at your last mailing address known to us. We may mail or, unless prohibited by law, deliver such notices to you. If a mortgagee is named in this policy, any notices we give to the mortgagee may be mailed or delivered.

However, when mailed, we or vendors we retain may forward or address such notices to an updated address per any change of address presented to or filed with the United States Postal Service. In addition, we may update our policy records to reflect this updated address and/or address future policy notices to this address.

Except where prohibited by law, a policy notice under this Policy Notices condition will be deemed "mailed" or "delivered" if it is delivered by electronic transmittal or facsimile.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

93-6899 1ST EDITION 1-11                                                                J6899102

IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| MARINA STEWART-MAGEE, | ) |
| As Administrator and Personal | ) |
| Representative of the ESTATE OF | ) |
| ALBINA AGDASOVNA | ) |
| SHARFIFULLINA, deceased, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No.: CV 2016-900001 |
| | ) |
| DANIEL B. SNYDER, *et al.* | ) |
| | ) |
|     Defendant. | ) |

## DEFENDANT JEFFREY HUNTER WHITLOCK'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

COMES NOW, the Defendant, Jeffrey Hunter Whitlock, and for Response to the Plaintiff's First Set of Interrogatories, states as follows:

GENERAL OBJECTIONS

This Defendant objects to the instructions and the definitions made a part of the Plaintiff's Interrogatories to this Defendant. This Defendant does not agree to comply with the Plaintiff's instructions or definitions to the extent that those impose a greater burden or conflict with the requirements of the *Alabama Rules of Civil Procedure*. This Defendant will respond to this discovery in accordance with the applicable *Alabama Rules of Civil Procedure* and not instructions or definitions imposed by the Plaintiff's attorney.

1.    State your full name, date of birth, and current residential address.

**RESPONSE:** Jeffrey Hunter Whitlock; 4-6-88; 4113 Cloverleaf Drive, Birmingham, Alabama 35243.

2.    Please identify every cell phone number and provider that you had on July 5, 2014. For each account, please provide the cell phone number, the cell phone provider, the type

of cell phone (e.g., iPhone 3, iPhone 4, Galaxy S, etc.), and state whether the account is still active.

**RESPONSE:**  (205) 616-9729, AT&T, Galaxy and active.

3.      State the name, telephone number, and last known address of all persons who visited your family's lake home property on Saturday, July 5, 2014.

**RESPONSE:**  I am not sure who was inside my home when Daniel Snyder and Albina Sharifullina left my family's lake home on Saturday, July 5, 2014.

4.      State the name, telephone number, and last known address of all persons who visited your family's lake home property between 6:00 p.m. and 11:59 p.m. on Saturday, July 5, 2014.

**RESPONSE:**  I am not sure who was inside my home when Daniel Snyder and Albina Sharifullina left my family's lake home on Saturday, July 5, 2014.

5.      State the name, telephone number, and last known address of every person who was inside your family's lake home when Defendant Daniel B. Snyder and Albina ("Alya") Sharifullina departed your family's dock on Daniel Snyder's SeaDoo shortly after midnight on Sunday, July 6, 2014.

**RESPONSE:**  I do not know who was inside the lake home when Daniel Snyder and Albina Sharifullina left my family's lake home on Saturday, July 5, 2014.

6.      State the name, telephone number, and last known address of every person who was on your family's lake home property when Defendant Daniel B. Snyder and Albina ("Alya") Sharifullina departed your family's dock on Daniel Snyder's SeaDoo shortly after midnight on Sunday, July 6, 2014.

**RESPONSE:**  I do not know who was present at my family's lake home property when Daniel Snyder and Albina Sharifullina left the house on Saturday, July 5, 2014.

7.      State the name, telephone number, and last known address of each and every person known to you, your agents, and/or your attorneys who have knowledge or claim to have knowledge of the events described in the Plaintiff's original Complaint and First Amended Complaint.

**RESPONSE:**  This Defendant objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, not limited in time or scope and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the Trial of this case.  Without waiving said objection, this Defendant is not aware of any individuals with knowledge or who claim to have knowledge that have not already been disclosed or known to the Plaintiff and her attorneys.

8.       Describe, in specific detail, the location where Defendant Daniel B. Snyder's SeaDoo was parked at your family's dock in the evening hours of July 5, 2014. In responding to this interrogatory, please identify the specific side of the dock where the SeaDoo was parked and the direction in which the SeaDoo was facing while parked. Please also state whether the SeaDoo was parked in a SeaDoo slip or boat slip.

**RESPONSE:**  The SeaDoo was on the left side of the dock, tied up with house at the back.

9.      Describe, in specific detail, the location where Defendant Daniel B. Snyder's SeaDoo personal watercraft was parked at your family's dock when you accompanied Daniel B. Snyder and Albina ("Alya") Sharifullina to the dock shortly after midnight on July 6, 2014. In responding to this interrogatory, please identify the specific side of the dock where the SeaDoo

was parked and the direction in which the SeaDoo was facing while parked. Please also state whether the SeaDoo was parked in a SeaDoo slip or boat slip.

**RESPONSE:**  The SeaDoo was parked in the same spot when Daniel Snyder and Albina Sharifullina left my family's dock prior to midnight on Saturday, July 5, 2014.

10.    Did you consume or take any alcoholic beverages, drugs, or medications on July 5, 2014? If so, please identify the substance consumed and state the quantity of the substance consumed, the time(s) of consumption, and the location where the consumption took place.

**RESPONSE:**  No.

11.    State whether any policy or policies of insurance (including any umbrellas or excess policies) exist which may provide coverage to you for any liability which may arise as a result of the incident described in the Plaintiff's First Amended Complaint. For each such policy, state the following:

   (a)    The name and address of the insurer;

   (b)    The policy number;

   (c)    The amount of liability insurance coverage afforded by each such policy;

   (d)    The name and address of each and every named insured under such policy; and

   (e)    Whether any such insurer is defending you in this matter under a reservation of rights.

**RESPONSE:**  Produced.

12.    Have you been a party to any other personal injury and/or wrongful death claims or lawsuits? If so, state the nature of the claim(s) and/or lawsuit(s), and provide the names of all claimants, parties, and persons involved in each claim and/or lawsuit.

**RESPONSE:**  No.

13.    State the names and addresses of all of your relatives, by blood or marriage, who are over the age of eighteen (18) years and who reside in Cullman County, Alabama.

**RESPONSE:**  None.

14.    Identify the person(s) who answered these interrogatories or who contributed any information used in answering these interrogatories. If more than one person provided the answers or contributed such information, identify the specific interrogatories answered by each person and the information provided.

**RESPONSE:**  Myself and my attorney.


_____
JEFFREY HUNTER WHITLOCK


Sworn to and subscribed before me,

_____
Notary Public

My commissions expires:  _____


AS TO OBJECTIONS:

*/s/ David R. Wells*
DAVID R. WELLS (WEL016)
Attorney for the Defendants,
Jeffrey Howard Whitlock and Jeffrey Hunter
Whitlock


OF COUNSEL:

MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203
(205) 639-5300
dwells@wmslawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that I have served a complete copy of the foregoing instrument upon the following attorney of record via the electronic ALAFILE system, on this 8th day of March, 2019.

Mark W. Lee
Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway
Suite 300
Birmingham, AL 35216
(205)   326-6600
mlee@pljpc.com
klee@pljpc.com

Daniel S. Wolter
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive
Suite 100
Birmingham, AL 35223
dwolter@wolterlawfirm.com

                            */s/ David R. Wells*
                            OF COUNSEL

IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| As Administrator and Personal | ) | |
| Representative of the ESTATE OF | ) | |
| ALBINA AGDASOVNA | ) | |
| SHARFIFULLINA, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: CV 2016-900001 |
| | ) | |
| DANIEL B. SNYDER, *et al.* | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT JEFFREY HUNTER WHITLOCK'S RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

COMES NOW, the Defendant, Jeffrey Hunter Whitlock, and for Response to the Plaintiff's First Request for Production, states as follows:

1.      Produce a copy of all insurance policies and declarations page(s) for each policy (including any umbrella or excess policies) which may provide liability coverage to you for the claims asserted in the Plaintiff's First Amended Complaint.

**RESPONSE:** Produced.

2.      Produce a copy of your cell phone records, including all text messages that were sent and/or received by you, from July 5, 2014 to the present that relate in any way to the events described in the Plaintiff's First Amended Complaint. Please exclude all text messages that were sent and/or received exclusively between yourself and your attorney(s).

**RESPONSE:** This Defendant objects to this Interrogatory on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the

trial of this case.  Without waiving said objection, the Defendant states he does not have any documents responsive to this request.

3.      Produce a copy of all e-mail communications that were sent and/or received by your personal e-mail address(es) from July 5, 2014 to the present that relate in any way to the events described in the Plaintiff's First Amended Complaint. Please exclude all e-mails that were sent and/or received exclusively between yourself and your attorney(s).

**RESPONSE:**  This Defendant objects to this Interrogatory on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the trial of this case.  Without waiving said objection, the Defendant states he does not have any documents responsive to this request.

4.      Produce a copy of all electronic communications either sent or received by you through social networking sites, including, but not limited to, Facebook, Twitter, and Instagram, from July 5, 2014 to the present that relate in any way to the events described in the Plaintiff's First Amended Complaint. Please exclude all electronic communications that were sent and/or received exclusively between yourself and your attorney(s).

**RESPONSE:**  This Defendant objects to this Interrogatory on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the trial of this case.  Without waiving said objection, the Defendant states that the only communication this Defendant received was a FaceBook message from Daniel Snyder's brother on July 6, 2014.  This information was disclosed in my deposition on August 1, 2017.

5.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and Defendant Jeffery Howard Whitlock regarding the events described in the Plaintiff's First Amended Complaint.

**RESPONSE:**  This Defendant objects to this Interrogatory on the basis it is overly broad, unduly burdensome, not limited in time or scope, and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of evidence admissible at the trial of this case.  Without waiving said objection, the Defendant states he does not have any documents responsive to this request.

6.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and Defendant Daniel B. Snyder regarding the events described in the Plaintiff's First Amended Complaint.

**RESPONSE:**  This Defendant does not have any copies of any text messages between himself and Daniel Snyder.  However, he did send Mr. Snyder a text a few days later, advising he hoped he was doing okay.

7.      Produce a copy of the Facebook message you received from Defendant Daniel B. Snyder's brother, Aaron Snyder, regarding the events described in the Plaintiff's First Amended Complaint.

**RESPONSE:**  This Defendant is trying to locate the FaceBook message he received from Daniel Snyder's brother and will produce it when and if it is located.

8.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and Defendant Daniel B. Snyder's brother, Aaron Snyder, regarding the events described in the Plaintiff's First Amended Complaint.

**RESPONSE:** This Defendant does not have any documents responsive to this Request.

9.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and your sister, Hollace Whitlock, regarding the events described in the Plaintiff's First Amended Complaint.

**RESPONSE:** This Defendant does not have any documents responsive to this Request.

10.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and your mother, Marilyn Whitlock, regarding the events described in the Plaintiff's First Amended Complaint.

**RESPONSE:** This Defendant does not have any documents responsive to this Request.

11.      Produce a copy of all written communications, including, but not limited to, text messages, e-mails, and other correspondence, between you and any person regarding the events described in the Plaintiff's First Amended Complaint. Please exclude all communications that were sent and/or received exclusively between yourself and your attorney(s).

**RESPONSE:** This Defendant does not have any documents responsive to this Request.

12.      Produce a copy of all photographs, video recordings, and audio recordings that were taken on your family's lake home property located at 680 County Road Highway 218, Bremen, Alabama 35033 on Saturday, July 5, 2014.

**RESPONSE:** This Defendant does not have any documents responsive to this Request.

13.      Produce a copy of all photographs, video recordings, and audio recordings that were taken on your family's lake property located at 680 County Road Highway 218, Bremen, Alabama 35033 on Sunday, July 6, 2014.

**RESPONSE:** This Defendant does not have any documents responsive to this Request.

14.     Produce a privilege log identifying all documents and materials being withheld from production on the basis of privilege.

**RESPONSE:** Not applicable.

/s/ David R. Wells
DAVID R. WELLS (WEL016)
Attorney for the Defendants,
Jeffrey Howard Whitlock and Jeffrey Hunter
Whitlock

OF COUNSEL:

MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203
(205) 639-5300
dwells@wmslawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a complete copy of the foregoing instrument upon the following attorney of record via the electronic ALAFILE system, on this 8th day of March, 2019.

Mark W. Lee
Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway
Suite 300
Birmingham, AL 35216
(205)   326-6600
mlee@pljpc.com
klee@pljpc.com

Daniel S. Wolter
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive
Suite 100
Birmingham, AL 35223
dwolter@wolterlawfirm.com

/s/ David R. Wells
OF COUNSEL



Farmers Insurance
PO Box 2602
Grand Rapids MI
49501-2602

November 28, 2018

Insured: JEFF WHITLOCK
Policy Number: 947504860
Claim Number: 3011310502-1-1
Loss Date: 7/4/2014
Policy Term: 12   Months

☐ Attached is a certified true copy of the original information sent to the insured.

☐ Attached is a certified true copy of the original declarations page, policyback and endorsements.

☒ Attached is a certified true copy of the original declaration page. The attached policyback and endorsements did not mail with this declaration page, but are included as requested.

☐ Attached is a certified true copy of the original declaration page only.

☐ Attached is a certified reconstructed copy of the declaration page only.

☐ Attached is a certified reconstructed copy of the declaration page, policyback and endorsements.

☐ Attached is a certified reconstructed copy of the cancellation.

☐ Attached is a certified true copy of the original cancellation.

Any additional Declaration Sheet(s) included with these documents labeled as "change or change-misc." may reflect a mid-term change in the policy and therefore a time period of less than the original policy term, however the dates reflect the most current policy information on file, up to and including the date of loss for the above-referenced claim.

 **FARMERS**

## FARMERS NEXT GENERATION HOMEOWNERS POLICY
FARMERS INSURANCE EXCHANGE, LOS ANGELES, CALIFORNIA
A Reciprocal Company

**DECLARATIONS**
HOMEOWNERS
Replaces all prior Declarations, if any

**TRANSACTION TYPE:** REINSTATEMENT EFF: 05/30/2014
The Policy Period is effective as shown below and after the time for which applied.

| POLICY NUMBER | POLICY PERIOD | | | POLICY EDITION |
|---|---|---|---|---|
| | FROM: | TO: | STANDARD TIME | |
| 94750-48-60 | 05-30-2014 | 04-30-2015 | 12:00 NOON | 02 |

ISSUING OFFICE:
P.O. BOX 149044
AUSTIN, TX 78714

**This policy will continue for successive policy periods, if:** (1) we elect to continue this insurance, and (2) if you pay the renewal premium for each successive policy period as required by our rates, rules, forms and premium plans then in effect.

**NAMED INSURED AND MAILING ADDRESS:**
JEFF WHITLOCK

680 COUNTY ROAD 218
BREMEN AL  35033-3136

**LOCATION OR DESCRIPTION OF RESIDENCE PREMISES:**
(Same as mailing address unless otherwise stated.)

**COVERAGES** - We insure you for the coverages and limits indicated as covered by a specific limit or other notation. Those Section I - Extensions of Coverage and Section II - Liability Extensions of Coverage that are not shown below apply as described in the policy.

| SECTION I - PROPERTY | | | | SECTION II - LIABILITY | |
|---|---|---|---|---|---|
| A - DWELLING | B - SEPARATE STRUCTURES | C - PERSONAL PROPERTY | D - LOSS OF USE | E - PERSONAL LIABILITY | F - MEDICAL PAYMENTS TO OTHERS |
| | | | | Each Occurrence | Each Person |
| $808,000 | $80,800 | $606,000 | $323,200 | $1,000,000 | $5,000 |

| SECTION I - EXTENSIONS OF COVERAGE | | | | SECTION II - LIABILITY EXTENSIONS OF COVERAGE | | ANNUAL PREMIUM |
|---|---|---|---|---|---|---|
| EXTENDED REPLACEMENT COST - COVERAGE A | CONTENTS REPLACEMENT COST - COVERAGE C | BUILDING ORDINANCE OR LAW | IDENTITY FRAUD COVERAGE | PERSONAL INJURY | LOSS ASSESSMENT | |
| $202,000 | COVERED | 10% | $30,000 | NOT COVERED | NOT COVERED | $3,181.77 |

**ENDORSEMENTS**

| ENDORSEMENT NUMBER | EDITION NUMBER | DESCRIPTION |
|---|---|---|
| AL023A | 1ED | FARMERS NGHO POLICY AMENDATORY ENDORSEMENT |
| H6104A | 2ED | ENDORSEMENT AMENDING LOSSES NOT INSURED |
| J6898A | 1ED | ENDORSEMENT AMENDING GENERAL CONDITIONS |

**DISCOUNTS**

NEW HOME DISCOUNT HAS BEEN APPLIED TO YOUR POLICY.

**DEDUCTIBLES**

Deductible applicable to each covered loss:

$5,000    except Windstorm/Hail loss
$16,160   Windstorm/Hail loss
          (2% of Cov. A limit)

Percent Deductibles adjust with changes to Cov. A limit

**POLICY ACTIVITY** Do not pay - invoice sent separately

| | |
|---|---|
| $ | Previous Balance |
| 2,920.87 | Premium |
| 25.00 | Fees * |
| | Payments or Credits |
| $ | Total * |

ANY "TOTAL" BALANCE OR CREDIT $7.00 OR LESS WILL BE APPLIED TO YOUR NEXT BILLING. BALANCES OVER $7.00 ARE DUE UPON RECEIPT.

INSURED PAYS

* SEE ADDITIONAL FEE INFORMATION BELOW

This Declarations page is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

**AGENT:** CARL JONES
**AGENT PHONE:** (256) 775-3607      **AGENT NUMBER:** 50 03 309

Countersignature

Authorized Representative

56-5479  5TH EDITION 10-11   94750-48-60      *(Continued on the Reverse Side)*      06-03-2014      C5479511

**Important Notice to Policyholders
Regarding Changes to Your Policy Provisions**

Dear Valued Customer;

Endorsement AL 023 1st edition, entitled Farmers Next Generation® Homeowners Policy Amendatory Endorsement has been added to your policy.

This AL 023 1st edition endorsement makes the following change to the policy contract under Section I - UNINSURED LOSS OR DAMAGE and EXCLUDED CAUSES OF LOSS OR DAMAGE, B. Excluded Causes of Loss or Damage #26 Windstorm or hail:

- Part b, an "or" is placed at the end of the section;
- Part c, the following terms have been removed: "and their frames, fences, seawalls, property lines and other similar walls, hot houses, slathouses, trellises, pergolas, cabanas and outdoor equipment pertaining to the service of the residence premises"; and
- Part d has been removed in its entirety

In other words, when the AL 023 1st edition endorsement becomes effective, the policy will offer more coverage by no longer excluding windstorm or hail damage to:

- Fences;
- Hot houses, trellises, pergolas, and cabanas; and
- Wharves, docks, piers, boathouses, and bulkheads

This Important Notice is not a part of your insurance policy contract. It is designed only to alert you to revisions of the insurance policy contract. You should read your policy contract. If there is any conflict between this Important Notice and your policy contract (including its endorsements) the provisions of the policy contract (including its endorsements) take precedence.

If you have any questions about these changes, please contact your Farmers® agent.

---

## FARMERS NEXT GENERATION® HOMEOWNERS POLICY AMENDATORY ENDORSEMENT

**AL023A
ALABAMA
1st Edition**

It is agreed that coverage provided by this policy is modified as follows:

In **SECTION I - UNINSURED LOSS OR DAMAGE and EXCLUDED CAUSES OF LOSS OR DAMAGE, B. Excluded Causes of Loss or Damage,**

26. **Windstorm or hail.**

We do not insure loss or damage directly or indirectly caused by, arising out of or resulting from windstorm or hail:

a. To personal property covered under this policy contained in a **building structure** caused by sand or dust unless the direct force of wind or hail first damaged the **building structure** causing an opening in a roof or outside wall and then sand or dust enters through this opening and causes the loss or damage to the personal property;

b. To watercraft and windsurfers, including their trailers, furnishings, equipment and outboard motors, unless inside a fully enclosed **building structure** at the time of loss or damage; or

c. To cloth awnings, greenhouses and their contents, radio and television towers, masts and antennas, including lead-in wiring, and wind chargers and windmills.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

94-2112 1ST EDITION 5-10                                                                W2112101

Dear Valued Customer:

Endorsement H6104A, second edition, has been added to your policy. **THE CHANGES TO YOUR POLICY MADE BY THIS ENDORSEMENT, AND DESCRIBED BELOW, <u>REDUCE</u> COVERAGE PROVIDED BY YOUR POLICY. Endorsement H6104A, second edition, applies to both the Protector Plus Package Policy and the Special Form Homeowners Package Policy. Please carefully read this notice, endorsement H6104A, second edition, and your policy to determine how the endorsement changes your policy and the exact coverages now provided.**

Endorsement H6104A, second edition, makes the following changes to both the Protector Plus Package Policy and the Special Form Homeowners Package Policy:

1. THE DEFINITION OF **WATER** HAS BEEN CHANGED. Under **DEFINITIONS,** item 18., the definition of **Water** is changed so that water is now defined to expressly include, but not be limited to, "dampness, vapor, condensation, moisture, steam and humidity."

2. THE DEFINITION OF **WATER DAMAGE** HAS BEEN CHANGED. Under **DEFINITIONS,** the definition of **Water Damage,** item 19. is expanded to include item 19.(e), "**water** which seeps, leaks, drips, escapes or is released out of any plumbing, heating or air conditioning system, or from within a household appliance, other than a sudden and accidental release of **water.**"

3. THE WORD "STEAM" IS DELETED IN **SECTION I - LOSSES INSURED, Coverage C - Personal Property,** ITEM 13. The expanded definition of **water** now expressly references "steam."

4. THE **WATER DAMAGE** EXCLUSION, **WATER DAMAGE,** ITEM 2. UNDER **SECTION I - LOSSES NOT INSURED,** IS CHANGED. Previously, Endorsement H6104, first edition, was attached to your policy. Endorsement H6104, first edition, is no longer attached to your policy. Instead, Endorsement H6104A, second edition, replaces Endorsement H6104, first edition. The changes are summarized as follows:

   • The references to **mobile home** are deleted.
   • Endorsement H6104A, second edition, adds language to the **water damage** exclusion specifying that, "we never, under any circumstances, cover rust, mold, fungus, or wet or dry rot, even if resulting from exceptions 1, 2 or 3 above."
   • Endorsement H6104A, second edition, also changes **EXAMPLE 2** of the **water damage** exclusion by adding the words "suddenly and accidentally."

5. ITEM 4. UNDER **SECTION I - LOSSES NOT INSURED** HAS BEEN CHANGED. This Exclusion has been changed three ways. First, the clause "maintenance repair materials" is changed by Endorsement H6104A, second edition, to "maintenance, repairs, or materials." Second, Endorsement H6104A, second edition, adds the words "whether used in" before the phrase "construction, remodeling or maintenance." Third, Endorsement H6104A, second edition, adds language to the exclusion to expressly state that "rust, mold, fungus, or wet or dry rot" are never covered under this policy, however caused.

6. ITEM 13. UNDER **SECTION I - LOSSES NOT INSURED** IS CHANGED. The word "steam," and the phrase "or steam" is deleted from this exclusion. The definition of **water** has been changed to expressly include "steam."

*(Continued Next Page)*

7. THE EXCLUSION OF LOSSES FOR RUST, MOLD, OR WET OR DRY ROT IS BROADENED. Previously, Item 13.d. under **SECTION I - LOSSES NOT INSURED** provided an exclusion against loss caused by or consisting of rust, mold, wet or dry rot, subject to the last three paragraphs of Item 13. under **SECTION I - LOSSES NOT INSURED.** Endorsement H6104A, second edition, deletes reference to "rust, mold, or wet or dry rot" from Item 13. and adds Item 14. under **SECTION I - LOSSES NOT INSURED.** Item 14. expressly adds the word "fungus" to the exclusion so that loss caused by or consisting of "rust, mold, fungus, or wet or dry rot" is always excluded under your policy, however caused. Losses caused by or consisting of rust, mold, fungus, or wet or dry rot, now excluded under Item 14., are no longer subject to the last three paragraphs of Item 13.

8. NEW LANGUAGE IS ADDED TO ITEM 13. UNDER **SECTION I - LOSSES NOT INSURED.** Item 13.g. now excludes loss consisting of, or caused directly or indirectly by "pressure from the presence of (1) any trees, shrubs, plants or lawn, or (2) any root system from any trees, shrubs, plants or lawn," while previously, as Item 13.h., the exclusion applied to "pressure from any root system to a foundation, patio, pavement, driveway, or fence."

Endorsement H6104A, second edition, makes these additional changes only to the Protector Plus Package Policy:

1. UNDER **SECTION I - LOSSES NOT INSURED**, ITEM 2., **EXAMPLE 3** OF THE **WATER DAMAGE** EXCLUSION IS CHANGED BY THE ADDITION OF THE WORDS, "REGARDLESS OF THE CAUSE OR CAUSES OF SUCH **WATER DAMAGE**."

2. UNDER **SECTION I - LOSSES INSURED, Coverage C - Personal Property,** ITEM 13., THE PHRASE IN THE LAST SENTENCE OF THE FIRST PARAGRAPH, "BUT NOT FOR DETERIORATION, RUST, MOLD, WET OR DRY ROT DUE TO THE PRESENCE OF **WATER** OVER A PERIOD OF TIME", IS DELETED.

Endorsement H6104A, second edition, makes these additional changes only to the Special Form Homeowners Package Policy:

1. UNDER **SECTION I - LOSSES NOT INSURED**, ITEM 13. NOW SPECIFIES THAT "**EARTH MOVEMENT** IS NEVER COVERED UNDER THIS POLICY, HOWEVER CAUSED."

2. UNDER **SECTION I - LOSSES INSURED, Coverage C - Personal Property,** ITEM 13, THE PHRASE IN THE LAST SENTENCE OF THE FIRST PARAGRAPH, "BUT NOT FOR DETERIORATION, RUST, MOLD, WET OR DRY ROT DUE TO THE PRESENCE OF **WATER**," IS DELETED.

If you have any questions, please contact your Farmers® agent who will be happy to assist you.

## ENDORSEMENT AMENDING DEFINITIONS, SECTION I - LOSSES INSURED AND SECTION I - LOSSES NOT INSURED

## H6104A

### 2nd Edition

Under **DEFINITIONS,** item 18. **Water** is deleted in its entirety and replaced by the following:

18. **Water** - means water (H2O) alone, whether frozen or not or any liquid or sludge which contains **water**, whether or not combined with other chemicals or impurities. It includes, but is not limited to, snow, sleet, slush, ice, dampness, vapor, condensation, moisture, steam and humidity.

Under **DEFINITIONS,** item 19. **Water damage,** the following paragraph is added:

(e) **water** which seeps, leaks, drips, escapes or is released out of any plumbing, heating or air conditioning system, or from within a household appliance, other than a sudden and accidental release of **water.**

Under **SECTION I - LOSSES INSURED, Coverage C - Personal Property,** item 13. is deleted in its entirety and replaced by the following:

13. Sudden and accidental discharge or overflow of **water** from within a plumbing, heating or air conditioning system, or from within a household appliance.

This peril does not include loss:

   a. to the system or appliance from which the **water** escaped;

   b. caused by or resulting from freezing;

   c. to personal property on the **residence premises** when the sudden and accidental discharge or overflow occurs away from the **residence premises;**

   d. caused by sudden and accidental discharge or overflow from roof gutters, downspouts, sump-pumps, sump-pump wells, leach fields, seepage pits, septic tanks, drainage channels or any other device used to drain **water** away from the **residence premises.**

Under **SECTION I - LOSSES NOT INSURED,** item 2. **Water damage** is deleted in its entirety and replaced by the following:

2. **Water damage.**

   Acts or omissions of **persons** can cause, contribute to or aggravate **water damage.** Also **water damage** can occur naturally to cause loss or combine with acts or omissions of **persons** to cause loss. Whenever **water damage** occurs, the resulting loss is always excluded under this policy, however caused; except we do cover:

   1. Direct physical loss to the dwelling or separate structures caused by **water damage** resulting from build-up of ice on portions of the roof or roof gutters.

   2. Loss or damage to the interior of any dwelling or separate structures, or to personal property inside the dwelling or separate structures caused by **water damage** if the dwelling or separate structures first sustain loss or damage caused by a peril described under **SECTION I - LOSSES INSURED - Coverage C - Personal Property.**

   3. Direct loss to the dwelling or separate structures or personal property if caused by fire or explosion resulting from **water damage.**

   We never, under any circumstances, cover rust, mold, fungus, or wet or dry rot, even if resulting from exceptions 1, 2, or 3 above.

*(Continued Next Page)*

The following examples are set forth to help you understand this exclusion and are not meant to be all-inclusive.

**EXAMPLE 1:**

Rain **water** collects on or soaks into the ground surface. Because of faulty design, construction or maintenance of the **residence premises,** your neighbor's property or **water** diversion devices, the **water** causes loss to the dwelling, separate structures, or personal property. Such loss is not covered by this policy.

**EXAMPLE 2:**

A pipe under your sink breaks suddenly and accidentally, and **water** damages your wallpaper, carpeting and personal property. The **water** also gets under the dwelling or separate structures causing **earth movement** which results in cracking of the foundation and walls. The loss to the wallpaper, carpeting and personal property is covered, but the loss to the foundation and walls is not covered by this policy.

**EXAMPLE 3:**

**Water** which has backed up through sewers or drains, or **water** below ground level causes loss to the dwelling, separate structures or personal property. Such loss is not covered by this policy, regardless of the cause or causes of such **water damage.**

Under **SECTION I - LOSSES NOT INSURED,** item 4. is deleted in its entirety and replaced with the following:

4. Faulty, inadequate or defective planning, zoning, development, surveying, siting, design, specifications, workmanship, construction, grading, compaction, maintenance, repairs, or materials, whether used in construction, remodeling, maintenance or repair of part of or all of any property (including land, structures or any improvements) whether on or off the **residence premises.** However, we do cover ensuing loss by fire, explosion or sudden and accidental discharge of **water. Earth movement,** rust, mold, fungus, or wet or dry rot are never covered under this policy, however caused.

Under **SECTION I - LOSSES NOT INSURED,** item 13. is deleted in its entirety and replaced by the following :

13.

a. wear and tear, marring, deterioration;

b. mechanical breakdown;

c. birds, insects, vermin, rodents, or domestic animals;

d. smog, smoke from agricultural smudging or industrial operations;

e. release, discharge or dispersal of contaminants, pollutants, insecticides, or hazardous gasses or chemicals;

f. any settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

g. pressure from or presence of (1) any trees, shrubs, plants or lawn, or (2) any root system from any trees, shrubs, plants or lawn;

h. soil conditions, including but not limited to corrosion, erosion, chemicals, compounds, elements, suspensions or gels in the soil or the formation of crystals in the soil.

If any of the perils listed in a-h above cause **water** to escape suddenly and accidentally from a plumbing, heating, or air conditioning system or household appliance, we cover loss not otherwise excluded to the dwelling or separate structure caused by **water.** If loss is caused by **water** not otherwise excluded, we will cover the cost of tearing out and replacing any part of the dwelling or separate structure necessary to repair the system or appliance. We do not cover the system or appliance from which the **water** escaped.

If any of the perils listed in a-h above cause a fire or explosion, we cover direct loss by such fire or explosion.

**Earth Movement** is never covered under this policy, however caused.

Under **SECTION I- LOSSES NOT INSURED,** the following item, item 14. Rust, mold, fungus, or wet or dry rot, is added:

14. Rust, mold, fungus, or wet or dry rot.

Acts or omissions of **persons** can cause, contribute to or aggravate rust, mold, fungus, or wet or dry rot. Also, rust, mold, fungus, or wet or dry rot can occur naturally to cause a loss or combine with acts or omissions of **persons** to cause loss. Whenever rust, mold, fungus, or wet or dry rot occurs, the rust, mold, fungus, or wet or dry rot and any resulting loss is always excluded under this policy, however caused.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

92-6204 2ND EDITION 8-00                                                                                        H6204205

**IMPORTANT INFORMATION ABOUT YOUR POLICY**

The new **ENDORSEMENT AMENDING GENERAL CONDITIONS** J6898A 1st Edition (J6898A) is now part of your policy. Please carefully read this notice, this endorsement, and your policy to determine how this endorsement modifies your policy. Please keep this endorsement with your other insurance papers.

There are two additions to the **GENERAL CONDITIONS APPLYING TO THE ENTIRE POLICY (FARMERS NEXT GENERATION ®HOMEOWNERS POLICY** 1st Edition) and **GENERAL CONDITIONS - APPLYING TO THE ENTIRE POLICY (FARMERS NEXT GENERATION HOMEOWNERS POLICY** 2nd Edition) as follows:

- **Additional Benefits and Services** is added and generally provides that we may work with independent merchants for enhanced value for replacement of your property and for other services, discounts or benefits. We may introduce you to these merchants. If you are interested in any of the services, discounts, or benefits that they may offer, you may use them at your option. You are under no obligation to use them. We don't make any representation regarding the suitability of any such services, discounts or benefits for your specific needs and we are not obligated to expand or continue to make available any such services, discounts or benefits.

- **Policy Notices** is added and provides, generally, that we will address policy notices to you at your last mailing address known to us. These notices will be mailed, or when allowed by law, may be electronically delivered. We may mail or deliver policy notices to mortgagees as well. When policy notices are mailed, we or our vendors may forward such notices to an updated address per any change of address filed with the United States Postal Service. Additionally, we may update our policy records to reflect this updated address and/or address future policy notices to this address.

Since the policy with all of its endorsements (including the one below) is your contract with us, it takes precedence over any other explanatory supplement, including this opening notice. If you have any questions about these changes or other insurance needs please contact your Farmers® agent.

---

## ENDORSEMENT AMENDING GENERAL CONDITIONS                  J6898A
                                                                          1st Edition

In the **FARMERS NEXT GENERATION® HOMEOWNERS POLICY** 1st Edition under **GENERAL CONDITIONS APPLYING TO THE ENTIRE POLICY** and in the **FARMERS NEXT GENERATION HOMEOWNERS POLICY** 2nd Edition under **GENERAL CONDITIONS - APPLYING TO THE ENTIRE POLICY**, it is agreed that the following are added:

**Additional Benefits and Services.**

We may work with independent merchants for enhanced value for replacement of your property. We may also work with independent merchants for other services, discounts or benefits. We may introduce you to these merchants and if you are interested in any of the services, discounts, or benefits that they may offer, you will have to deal directly with them. You do not have to use their services. You do not have to accept any discounts or benefits that they may offer to you. We do not make any representation regarding the suitability of any such services, discounts or benefits for your specific needs. We are not obligated to expand or continue to make available any such services, discounts or benefits.

93-6899 1ST EDITION 1-11                  *(Continued Next Page)*                  J6899101

**Policy Notices.**

Notwithstanding any policy provision which states where a policy notice will be addressed, we will address policy notices to you at your last mailing address known to us. We may mail or, unless prohibited by law, deliver such notices to you. If a mortgagee is named in this policy, any notices we give to the mortgagee may be mailed or delivered.

However, when mailed, we or vendors we retain may forward or address such notices to an updated address per any change of address presented to or filed with the United States Postal Service. In addition, we may update our policy records to reflect this updated address and/or address future policy notices to this address.

Except where prohibited by law, a policy notice under this Policy Notices condition will be deemed "mailed" or "delivered" if it is delivered by electronic transmittal or facsimile.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

93-6899 1ST EDITION 1-11                                                                    J6899102

| State of Alabama<br>Unified Judicial System<br>Form C-13 (front)   Rev. 4/18 | ORDER TO APPEAR<br>(SUBPOENA) | Case Number:<br>25-CV-2016-900001.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

☐ **State of Alabama**
☐ **Municipality of** _____

☑ **MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT**
(For Juvenile cases only):                                         1435
☐ **In the Matter of** _____

MARILYN  WHITLOCK

2250 BEAVER CREEK ROAD
COLUMBIANA, AL 35051

W019

**A.**  Issued at the request of :
1. ☑ Plaintiff/State
2. ☐ Defendant
3. ☐ Grand Jury

**B.**  Special Instructions
You are ordered to:
1. ☐ Appear at trial
2. ☐ Produce records or documents–See attached schedule(s)
3. ☑ Appear at deposition
4. ☐ Other _____

**You may contact:**   MARK W. LEE POST OFFICE BOX 661228 BIRMINGHAM, AL 35266 (205) 326-6600

**YOU ARE ORDERED TO APPEAR to give testimony before the court or by deposition; and/or produce and permit inspection and copying of books, documents, or tangible things; and/or permit inspection of premises as stated below until otherwise excused. Failure to obey this subpoena may be deemed a contempt of court from which the subpoena was issued.**

| | | |
|---|---|---|
| **DATE:** | 3/8/2019 9:00:00 AM | **ADDITIONAL INSTRUCTIONS**<br>Any inspection or production of documents or records<br>must be completed within 15 days |
| **ROOM:** | Large Conference Room | |
| **ADDRESS:** | Parsons, Lee & Juliano, P.C. | **FILED IN OFFICE** |
| | 600 Vestavia Parkway, Suite 300 | |
| | Birmingham, AL 35216 | **MAR 11 2019** |
| **DATE ISSUED:** | 2/4/2019 | LISA MCSWAIN<br>CIRCUIT CLERK<br>CULLMAN COUNTY |

/s/ LISA MCSWAIN
_____
Signature of Court Clerk              Deputy Clerk Initials

**TO ANY SHERIFF OF THE STATE OF ALABAMA** You are ordered to serve this order on the above named person and make return to this
**OR ANY AUTHORIZED PERSON:**                  court.

### RETURN ON SERVICE

I certify that I personally delivered a copy of this order
to   Mariyn Whitlock
_____  on  2/23/19
_____

C. COoke 590 Deputy
_____
Signature and Title of Server

**(For Criminal cases only)**
☐ Served By Mail

_____
Date Mailed

_____
Sheriff                                    Deputy Sheriff

## SERVICE RETURN COPY

25-CV-2016-900001.00-W019

| State of Alabama<br>Unified Judicial System<br>Form C-13 (front)   Rev. 4/18 | ORDER TO APPEAR<br>(SUBPOENA) | Case Number:<br>25-CV-2016-900001.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

☐ State of Alabama
☐ Municipality of _____
☑ MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT
(For Juvenile cases only):
☐ In the Matter of _____

*310MB*

MARY HOLLACE WHITLOCK

713 SAULTER LANE
BIRMINGHAM, AL 35209

W020

A.  Issued at the request of :
1. ☑ Plaintiff/State
2. ☐ Defendant
3. ☐ Grand Jury
B.  Special Instructions
You are ordered to:
1. ☐ Appear at trial
2. ☐ Produce records or documents-See attached schedule(s)
3. ☑ Appear at deposition
4. ☐ Other _____

You may contact:  MARK W. LEE POST OFFICE BOX 661228 BIRMINGHAM, AL 35266 (205) 326-6600

YOU ARE ORDERED TO APPEAR to give testimony before the court or by deposition; and/or produce and permit inspection and copying of books, documents, or tangible things; and/or permit inspection of premises as stated below until otherwise excused. Failure to obey this subpoena may be deemed a contempt of court from which the subpoena was issued.

DATE:       3/8/2019 1:00:00 PM
ROOM:       Large Conference Room
ADDRESS:    Parsons, Lee & Juliano, P.C.
            600 Vestavia Parkway, Suite 300
            Birmingham, AL 35216
DATE ISSUED:  2/4/2019

/s/ LISA MCSWAIN
Signature of Court Clerk              Deputy Clerk Initials

Returned Not Served on 2-19-19
ADDITIONAL INSTRUCTIONS
The inspection of documents or records must be completed within 15 days

For The Following Reasons:
☐ Moved/Not at Address
☐ Insufficient Address
☐ Not Employed at Address
☐ Received Too Late for Service
☒ Unable to make Contact
☐ Other

Mark Pettway, Sheriff, Jefferson County, AL

_____ D.S.

TO ANY SHERIFF OF THE STATE OF ALABAMA  You are ordered to serve this order on the above named person and make return to this
OR ANY AUTHORIZED PERSON:              court.

### RETURN ON SERVICE

I certify that I personally delivered a copy of this order
to _____
on _____

_____
Signature and Title of Server

(For Criminal cases only)
☐ Served By Mail

**FILED IN OFFICE**

Date Mailed

FEB 27 2019

LISA McSWAIN
CIRCUIT CLERK
CULLMAN COUNTY

Sheriff                    Deputy Sheriff

...URN COPY

25-CV-2016-900001.00-W020

*190039568*


*XAEX39751*
MARY HOLLACE WHITLOCK

LEFT CARD
02-12-19

ELECTRONICALLY FILED
3/13/2019 3:43 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

| State of Alabama<br>Unified Judicial System<br>Form C-13 (front)   Rev. 4/18 | ORDER TO APPEAR<br>(SUBPOENA) | Cas<br>25-C |
|---|---|---|

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

☐ **State of Alabama**
☐ **Municipality of** _____
☑ **MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT**
  **(For Juvenile cases only):**
☐ **In the Matter of** _____

MARY HOLLACE WHITLOCK

700 DOROTHY FORD LANE SW
APARTMENT 372
HUNTSVILLE, AL 35801

A.  Issued at the request of :
1. ☑ Plaintiff/State
2. ☐ Defendant
3. ☐ Grand Jury
B.  Special Instructions
    You are ordered to:
1. ☐ Appear at trial
2. ☐ Produce records or documents-See attached schedule(s)
3. ☑ Appear at deposition
4. ☐ Other _____

**You may contact:**  KENDALL A. LEE POST OFFICE BOX 661228 BIRMINGHAM, AL 35266 (205) 326-6600

**YOU ARE ORDERED TO APPEAR to give testimony before the court or by deposition; and/or produce and permit inspection and copying of books, documents, or tangible things; and/or permit inspection of premises as stated below until otherwise excused. Failure to obey this subpoena may be deemed a contempt of court from which the subpoena was issued.**

|  |  |
|---|---|
| **DATE:** | 04/22/2019 10:00 AM |
| **ROOM:** | Large Conference Room |
| **ADDRESS:** | Parsons, Lee & Juliano, P.C. |
|  | 600 Vestavia Parkway, Suite 300 |
|  | Birmingham, AL 35216 |
| **DATE ISSUED:** | 3/13/2019 |

**ADDITIONAL INSTRUCTIONS**
Any inspection or production of documents or records must be completed within 15 days

/s/ LISA MCSWAIN
Signature of Court Clerk                    Deputy Clerk Initials

**TO ANY SHERIFF OF THE STATE OF ALABAMA**  You are ordered to serve this order on the above named person and make return to this
**OR ANY AUTHORIZED PERSON:**                court.

## RETURN ON SERVICE

I certify that I personally delivered a copy of this order
to _____
_____ on _____

_____
Signature and Title of Server

*(For Criminal cases only)*
☐ **Served By Mail**

_____
Date Mailed

_____
Sheriff                                          Deputy Sheriff

| Form C-13 (back)    Rev.4/18 | ORDER TO APPEAR (SUBPOENA) |
|---|---|

**NOTICE**

With respect to a subpoena which seeks only a production of documents or tangible things or an inspection of premises, as provided in Ala.R.Civ.P 45(a) (3) (C), the production of documents or tangible things or the inspection of premises pursuant to this subpoena shall take place where the documents or tangible things are regularly kept or at some other reasonable place designated by the recipient of this subpoena. As recipient of this subpoena, you have the option to deliver or mail legible copies of the documents or things to the party causing issuance of this subpoena, and the preparation of copies may be conditioned on the payment in advance of the reasonable cost of making such copies. Other parties involved in this lawsuit have the right to be present at the time of the production or inspection. The recipient of this subpoena has the right to object to the production or inspection at any time prior to the date of production or inspection set forth in this subpoena. See Ala. R.Civ.P. 45(c) (2) (B), which is set out below.

Rule 45, Ala. R.Civ.P., Paragraphs (c) & (d)

(c) Protection of person subject to subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court from which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty on appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, document or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying at any time before the time specified for compliance may serve upon the party or attorney designed in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. "Serve" as used herein means mailing to the party or attorney. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a resident of this state who is not a party or an officer of a party to travel to a place more than one hundred (100) miles form the place where that person resides, is employed or regularly transacts business in person, or requires a nonresident of this state who is not a party or an officer of a party to travel to a place within this state more than one hundred (100) miles from the place of service or, where separate from the place of service, more than one hundred (100) miles from the place where that person is employed or regularly transacts business in person, except that, subject to the provision of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expenses to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) Duties in responding to subpoena.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(3) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(4) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(5) A person responding to a subpoena need not provide discovery of electronically stored information from sources the person identifies to the requesting party as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(B). The court may specify conditions regarding the production of the discovery.

(6) If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the person or party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. Any party or the producing person may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

DOCUMENT 322

ELECTRONICALLY FILED
3/27/2019 2:29 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

# IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

**MARINA STEWART-MAGGE,**
**Who sues as Administrator and**
**Personal Representative of the Estate**
**of ALBINA AGDASOVNA**
**SHARIFULLINA, Deceased**

     **Plaintiff,**

**v.**

**DANIEL B. SNYDER,**

     **Defendants.**

**Civil Action No.: CV 16-900001**

## NOTICE OF APPEARANCE

The undersigned, Floyd D. Gaines, of the law firm Gaines LLC enters his appearance as counsel of record in the above-referenced action for **DANIEL B. SNYDER** and requests to be copied on all subsequent pleadings, orders, notices, discovery, and correspondence.

Respectfully submitted

*s/ Floyd D. Gaines*
Floyd D. Gaines

Attorney for Defendant(s)

OF COUNSEL:

GAINES LLC

2160 Highland Avenue South, Suite 101

Birmingham. AL 35205

dsnyder@gainesllc.com

Office Number:          205.598.5055

Fax Number:            205.598.5066

Daniel Snyder Direct:    205.598.5076

## **CERTIFICATE OF SERVICE**

       I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing through the Clerk of the Court, using the electronic filing system, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail or hand delivery, on March 27, 2019:

**Mr. Marus W. Lee**

**PARSONS, LEE & JULIANO, P.C.**

600 Vestavia Parkway

Suite 300, Shelby Building

[P.O. Box 661228 35266-1228]

Birmingham, AL 35216

(205)326-6600

MLEE@PLJPC.COM

**Ms. Kendall Lee**

**PARSONS, LEE & JULIANO, P.C.**

600 Vestavia Parkway

Suite 300, Shelby Building

[P.O. Box 661228 35266-1228]

Birmingham, AL 35216

(205)326-6600

KLEE@PLJPC.COM

                                     *s/ Floyd D. Gaines*

                                     Floyd D. Gaines

ELECTRONICALLY FILED
4/9/2019 10:31 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| MARINA STEWART-MAGEE,            ) | |
| as Administrator and Personal      ) | |
| Representative of the ESTATE      ) | |
| OF ALBINA AGDASOVNA            ) | |
| SHARIFULLINA, deceased,          ) | |
|                                   ) | **CIVIL ACTION NO.** |
|     Plaintiff,          ) | **CV-2016-900001** |
|                                   ) | |
| v.                                ) | |
|                                   ) | |
| DANIEL B. SNYDER, et al.,          ) | |
|                                   ) | |
|     Defendants.          ) | |

## NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

Comes now the Plaintiff, **MARINA STEWART-MAGEE**, **as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, and gives notice of serving the following discovery documents on all counsel of record in the above-captioned lawsuit:

    ☒    Plaintiff's Notice of Deposition of Hollace Whitlock; and

    ☒    Plaintiff's Amended Notice of Deposition of Marilyn Whitlock.

/s/ Kendall A. Lee
_____
**MARK W. LEE (LEE003)**
**KENDALL A. LEE (LEE091)**
Attorneys for Plaintiff
MARINA STEWART-MAGEE

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 9th day of April, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile electronic filing system, and have served a copy of the same via electronic mail to the following:

David R. Wells, Esq.
**MUDD, BOLVIG, LUKE**
**& WELLS, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Floyd D. Gaines, Esq.
**GAINES LLC**
2160 Highland Avenue South, Suite 101
Birmingham, Alabama 35205
fgaines@gainesllc.com

Daniel S. Wolter, Esq.
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

Jason P. Knight, Esq. (via e-mail only)
**KNIGHT & KNIGHT, LLC**
210 2nd Street SE
Cullman, Alabama 35055
jpknight@knight-knightattorneys.com

/s/ Kendall A. Lee
OF COUNSEL

ELECTRONICALLY FILED
4/9/2019 10:31 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| as Administrator and Personal | ) | |
| Representative of the ESTATE | ) | |
| OF ALBINA AGDASOVNA | ) | |
| SHARIFULLINA, deceased, | ) | |
| | ) | **CIVIL ACTION NO.** |
| Plaintiff, | ) | **CV-2016-900001** |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL B. SNYDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF DEPOSITION OF HOLLACE WHITLOCK

**TO:**   David R. Wells, Esq.                          Floyd D. Gaines, Esq.
MUDD, BOLVIG, LUKE                       GAINES LLC
& WELLS, LLC                                  2160 Highland Avenue South, Suite 101
2011 4th Avenue North                       Birmingham, Alabama 35205
Birmingham, Alabama 35203

Daniel S. Wolter, Esq.
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223

**PLEASE TAKE NOTICE** that, pursuant to Rule 30 of the Alabama Rules of Civil Procedure, Plaintiff Marina Stewart-Magee, by and through her attorneys, Mark W. Lee and Kendall A. Lee, will take the deposition upon oral examination of Hollace Whitlock for the purpose of discovery and/or for use as evidence in the above-captioned lawsuit.

**Deponent's Name:**   Hollace Whitlock

**Date:**                May 20, 2019

**Time:**                1:00 p.m.

**Location:**            Knight & Knight, LLC
210 2nd Street SE

Cullman, Alabama 35055

**Court Reporter:**    Freedom Court Reporting (Veritext)

/s/ Kendall A. Lee
**MARK W. LEE (LEE003)**
**KENDALL A. LEE (LEE091)**
Attorneys for Plaintiff
MARINA STEWART-MAGEE

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

---

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 9$\underline{^{th}}$ day of April, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile electronic filing system, and have served a copy of the same via electronic mail to the following:

David R. Wells, Esq.
**MUDD, BOLVIG, LUKE**
**& WELLS, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Floyd D. Gaines, Esq.
**GAINES LLC**
2160 Highland Avenue South, Suite 101
Birmingham, Alabama 35205
fgaines@gainesllc.com

Daniel S. Wolter, Esq.
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

Jason P. Knight, Esq. (via e-mail only)
**KNIGHT & KNIGHT, LLC**
210 2nd Street SE
Cullman, Alabama 35055
jpknight@knight-knightattorneys.com

/s/ Kendall A. Lee
OF COUNSEL

2

ELECTRONICALLY FILED
4/9/2019 10:31 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

|  |  |  |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| as Administrator and Personal | ) | |
| Representative of the ESTATE | ) | |
| OF ALBINA AGDASOVNA | ) | |
| SHARIFULLINA, deceased, | ) | |
| | ) | **CIVIL ACTION NO.** |
| Plaintiff, | ) | **CV-2016-900001** |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL B. SNYDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED NOTICE OF DEPOSITION OF MARILYN WHITLOCK

**TO:**   David R. Wells, Esq.                    Floyd D. Gaines, Esq.
MUDD, BOLVIG, LUKE                    GAINES LLC
& WELLS, LLC                               2160 Highland Avenue South, Suite 101
2011 4ᵗʰ Avenue North                  Birmingham, Alabama 35205
Birmingham, Alabama 35203

Daniel S. Wolter, Esq.
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223

   **PLEASE TAKE NOTICE** that, pursuant to Rule 30 of the Alabama Rules of Civil

Procedure, Plaintiff Marina Stewart-Magee, by and through her attorneys, Mark W. Lee and

Kendall A. Lee, will take the deposition upon oral examination of Marilyn Whitlock for the

purpose of discovery and/or for use as evidence in the above-captioned lawsuit.

   **Deponent's Name:**   Marilyn Whitlock

   **Date:**            May 20, 2019

   **Time:**            2:30 p.m.

   **Location:**        Knight & Knight, LLC
                        210 2ⁿᵈ Street SE

Cullman, Alabama 35055

**Court Reporter:**    Freedom Court Reporting (Veritext)

/s/ Kendall A. Lee
**MARK W. LEE (LEE003)**
**KENDALL A. LEE (LEE091)**
Attorneys for Plaintiff
MARINA STEWART-MAGEE

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

---

### CERTIFICATE OF SERVICE

I hereby certify that I have on this 9$\underline{th}$ day of April, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile electronic filing system, and have served a copy of the same via electronic mail to the following:

David R. Wells, Esq.
**MUDD, BOLVIG, LUKE**
**& WELLS, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Floyd D. Gaines, Esq.
**GAINES LLC**
2160 Highland Avenue South, Suite 101
Birmingham, Alabama 35205
fgaines@gainesllc.com

Daniel S. Wolter, Esq.
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

Jason P. Knight, Esq. (via e-mail only)
**KNIGHT & KNIGHT, LLC**
210 2nd Street SE
Cullman, Alabama 35055
jpknight@knight-knightattorneys.com

/s/ Kendall A. Lee
OF COUNSEL

ELECTRONICALLY FILED
4/10/2019 12:58 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA              AGDASOVNA )
SHARIFULLINA, DECEASED MARINA )
STE, )
Plaintiff, )
)
V. ) Case No.:    CV-2016-900001.00
)
SNYDER DANIEL B., )
WHITLOCK JEFFREY HOWARD, )
WHITLOCK JEFFREY HUNTER, )
Defendants. )

## ORDER

The Court has received and reviewed the Motion To Compel filed herein on behalf of Plaintiff which seeks an Order to require Defendants, JEFFREY HOWARD WHITLOCK and JEFFREY HUNTER WHILOCK, to sit for second depositions after being named party-defendants in Plaintiff's amended complaint.

The inference that Plaintiff's previous attorney failed to take full advantage of the first deposition is not a helpful argument. These Defendants have been know to Plaintiff from the outset. The Court will, however, Order that such Defendants shall sit for second deposition testimony at a time and place to be agreed upon by counsel for all parties. If no agreement can be reached, then Plaintiff shall notice Defendants for three separate occasions and Defendants shall select which opportunity they choose.

**DONE this 10th day of April, 2019.**

**/s/ MARTHA E. WILLIAMS**
**CIRCUIT JUDGE**

| State of Alabama<br>Unified Judicial System<br>Form C-13 (front)   Rev. 4/18 | ORDER TO APPEAR<br>(SUBPOENA) | Case Number:<br>25-CV-2016-900001.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

☐ State of Alabama
☐ Municipality of _____
☑ MARINA STEWART-MAGEE, WHO SUES AS ADMINISTRATOR AND PERSONAL REPRESENT
   (For Juvenile cases only):
☐ In the Matter of _____

**FILED IN OFFICE**

MARY HOLLACE WHITLOCK

700 DOROTHY FORD LANE SW
APARTMENT 372
HUNTSVILLE, AL 35801

W021

A.  Issued at the request of :
1. ☑ Plaintiff/State
2. ☐ Defendant
3. ☐ Grand Jury
B.  Special Instructions
    You are ordered to:
1. ☐ Appear at trial
2. ☐ Produce records or documents-See attached schedule(s)
3. ☑ Appear at deposition
4. ☐ Other _____

APR 08 2019

LISA McSWAIN
CIRCUIT CLERK
CULLMAN COUNTY

**You may contact:**  KENDALL A. LEE POST OFFICE BOX 661228 BIRMINGHAM, AL 35266 (205) 326-6600

YOU ARE ORDERED TO APPEAR to give testimony before the court or by deposition; and/or produce and permit inspection and copying of books, documents, or tangible things; and/or permit inspection of premises as stated below until otherwise excused. Failure to obey this subpoena may be deemed a contempt of court from which the subpoena was issued.

**ADDITIONAL INSTRUCTIONS**
Any inspection or production of documents or records
must be completed within 15 days

| | |
|---|---|
| **DATE:** | 4/22/2019 10:00:00 AM |
| **ROOM:** | Large Conference Room |
| **ADDRESS:** | Parsons, Lee & Juliano, P.C. |
| | 600 Vestavia Parkway, Suite 300 |
| | Birmingham, AL 35216 |
| **DATE ISSUED:** | 3/13/2019 |

/s/ LISA MCSWAIN
_____
Signature of Court Clerk          Deputy Clerk Initials

**TO ANY SHERIFF OF THE STATE OF ALABAMA** You are ordered to serve this order on the above named person and make return to this
**OR ANY AUTHORIZED PERSON:**          court.

## RETURN ON SERVICE

I certify that I personally delivered a copy of this order
to   _Mary Whitlock_____
          on   _4-4-19_____
_____

_Deputy M. Locky 9591_
_____
Signature and Title of Server

*(For Criminal cases only)*
☐ Served By Mail
_____
_____
Date Mailed

_____
Sheriff                    Deputy Sheriff

25-CV-2016-900001.00-W021

**SERVICE RETURN COPY**

ELECTRONICALLY FILED
4/12/2019 3:58 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | |
|---|---|
| MARINA STEWART-MAGEE, | ) |
| As Administrator and Personal | ) |
| Representative of the ESTATE OF | ) |
| ALBINA AGDASOVNA | ) |
| SHARFIFULLINA, deceased, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No.: CV 2016-900001 |
| | ) |
| DANIEL B. SNYDER, *et al.* | ) |
| | ) |
|     Defendant. | ) |

## **MOTION TO RECONSIDER**

COME NOW, the Defendants, Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock (hereinafter, "the Whitlocks") and move this Court to reconsider its Order entered on April 10, 2019, compelling these Defendants to submit for second depositions, and as grounds for such show unto the Court as follows:

1.    In the Plaintiff's Motion to Compel, the Plaintiffs claim they need to re-depose the Whitlocks to (a) prove their claims against the Whitlocks, (b) assess the defenses asserted against the Plaintiff and (c) prepare for the Trial on June 24, 2019.

2.    As this Court pointed out in it April 10, 2019 Order, the identity of the Whitlocks was known since the time of the incident giving rise to this lawsuit.

3.    This was confirmed in Defendant Daniel Snyder's deposition, which was taken on June 14, 2016, when he was questioned by Steve Heninger about statements the Whitlocks made to law enforcement following this incident.

4.    The Whitlocks were deposed by Steve Heninger, one of the most well-known, well-respected and capable personal injury attorneys in the State of Alabama, on August 1, 2017.

Mr. Heninger had the opportunity to ask the Whitlocks any questions he desired and was not limited in any way. It appears from the Plaintiff's Motion they are taking issue with how Mr. Heninger previously represented the Plaintiff.

5.     Following the expiration of the statute of limitations, the Plaintiff amended the Complaint to add the Whitlocks as Defendants on July 12, 2018, more than two years after the statute of limitations expired.

6.     For that reason, it difficult to understand why the Plaintiff's attorneys claim that they need to re-depose the Defendants for the reasons stated, given the fact their claims are barred by the statute of limitations.

7.     This fact was confirmed by Mark Lee, who admitted to the undersigned that the Plaintiff's negligence claim was probably barred by the statute of limitations.

8.     As this Court is aware, the Defendants have filed a Motion for Summary Judgment on a purely legal issue, the statute of limitations, and as such, should not be forced to submit to a deposition prior to this Court's ruling on that Motion.

9.     In the event the Court grants the Motion, the Plaintiff's attorney has every right to issue a subpoena to depose the Whitlocks as witnesses in this matter.

10.     However, to seek to depose them at this time, when there is clearly no rightful basis to pursue claims against them, it is nothing more than harassment on the part of the Plaintiff and her attorneys.

11.     For the foregoing reasons, the Whitlocks pray this Court will reconsider its April 10, 2019 Order requiring them to submit for second depositions.

12.     Alternatively, if this Court is not inclined to vacate the Order in its entirety, the Whitlocks pray the Court would amend the Order to state that they are not required to be deposed until the Court has ruled on their pending Motion for Summary Judgment.

WHEREFORE, PREMISES CONSIDERED, the Defendants, Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock, by and through the undersigned counsel of record, pray this Court will enter an Order vacating its April 10, 2019 Order, ordering the Whitlocks to submit for deposition for the foregoing reasons, or in the alternative, amend the Order to state the Defendants are not required to submit for depositions until the Court has ruled on their outstanding Motion for Summary Judgment.

*/s/ David R. Wells*
DAVID R. WELLS (WEL016)
Attorney for the Defendants,
Jeffrey Howard Whitlock and Jeffrey Hunter
Whitlock

OF COUNSEL:

MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203
(205) 639-5300
(205) 639-5350 *facsimile*
dwells@wmslawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a complete copy of the foregoing instrument upon the following attorney of record via the electronic ALAFILE system, on this 12th day of April, 2019.

Mark W. Lee
Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway
Suite 300
Birmingham, AL 35216
(205) 326-6600
mlee@pljpc.com
klee@pljpc.com

Daniel S. Wolter
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive
Suite 100
Birmingham, AL 35223
dwolter@wolterlawfirm.com

*/s/ David R. Wells*
OF COUNSEL

ELECTRONICALLY FILED
4/15/2019 12:48 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA                     AGDASOVNA
SHARIFULLINA, DECEASED MARINA)
STE,
Plaintiff,                         )
                                   )
V.                                 ) Case No.:    CV-2016-900001.00
                                   )
SNYDER DANIEL B.,                  )
WHITLOCK JEFFREY HOWARD,           )
WHITLOCK JEFFREY HUNTER,           )
Defendants.                        )

## ORDER

MOTION TO RECONSIDER this Court's 4/10/19 Order, filed by Defendants, JEFFREY HOWARD WHITLOCK and JEFFREY HUNTER WHITLOCK, has been received and reviewed by the Court. After such review, the Court also reviewed the Motion For Summary Judgment filed on behalf of such Defendants and finds that there may be merit to such Motion. Therefore, the Motion To Reconsider is GRANTED to the extent that no further depositions of these Defendants shall be scheduled until after the Court rules on the Motion For Summary Judgment which remains set for hearing at **9:00 a.m. on the 22nd day of May, 2019.**

**DONE this 15th day of April, 2019.**

**/s/ MARTHA E. WILLIAMS**
**CIRCUIT JUDGE**

ELECTRONICALLY FILED
4/15/2019 3:55 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARINA STEWART-MAGEE,** | ) | |
| **as Administrator and Personal** | ) | |
| **Representative of the ESTATE** | ) | |
| **OF ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:   CV-2016-900001** |
| | ) | |
| **JEFFREY HOWARD WHITLOCK and,** | ) | |
| **JEFFREY HUNTER WHITLOCK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## NOTICE OF APPEARANCE

Comes now the undersigned attorney and files this his Notice of Appearance for the Defendants, Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock in the above-referenced case.

/s/ Jason Knight
Jason Knight (KNI016)
Attorney for Defendants
KNIGHT & KNIGHT, L.L.C.
210 Second Street, SE
Cullman, Alabama 35055
Telephone:   (256) 734-0456
Fax:             (256) 734-0466
jpknight@knight-knightattorneys.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing motion upon opposing counsel, by Alafile/CM-ECF electronic filing on this the 15th day of April, 2019.

/s/ Jason Knight
Jason Knight

ELECTRONICALLY FILED
4/16/2019 2:34 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

# IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA          AGDASOVNA    )
SHARIFULLINA, DECEASED MARINA)
STE,
Plaintiff,          )
                    )
V.                  ) Case No.:    CV-2016-900001.00
                    )
SNYDER DANIEL B.,   )
WHITLOCK JEFFREY HOWARD,   )
WHITLOCK JEFFREY HUNTER,   )
Defendants.         )

## ORDER of RECUSAL

Attorney Jason P. Knight having entered his appearance as counsel for Defendants, JEFFREY HOWARD WHITLOCK and JEFFREY HUNTER WHITLOCK, and having a business relationship with the undersigned, the undersigned does hereby recuse herself to avoid even the appearance of impropriety in this matter.

This case is transferred to Presiding Judge Gregory Nicholas for reassignment.

**DONE this 16th day of April, 2019.**

/s/ **MARTHA E. WILLIAMS**
**CIRCUIT JUDGE**

ELECTRONICALLY FILED
4/25/2019 4:18 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

DOCUMENT 343

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

MARINA STEWART-MAGEE,                       )
as Administrator and Personal               )
Representative of the Estate of             )
ALBINA AGDASOVNA                            )
SHARIFULLINA,                               )
                                            )        **01-CV-2016-900001**
      **Plaintiff,**                         )
                                            )
v.                                          )
                                            )
DANIEL B. SNYDER,                           )
                                            )
      **Defendant.**                         )

## DEFENDANT DANIEL B. SNYDER'S RULE 26 EXPERT DISCLOSURES

Pursuant to Alabama Rule of Civil Procedure 26 and this Court's June 21, 2016 Standard Pre-Trial Scheduling Order, Daniel B. Snyder ("Snyder") respectfully provides the following information regarding expert witnesses he intends to call at the trial of this matter:

## I.    EXPERT IDENTIFICATIONS

### A.    Robert Taylor

Robert Taylor is presently, and has been, a naval architect and mechanical engineer for more than forty-five years. He has specialized in maritime issues associated with design, design analysis, accident reconstruction, and operation of maritime vessels. As a naval architect and mechanical engineer, he has substantial expertise related to the design, function, and operation of recreational boats, personal watercrafts and commercial vessels. He has studied their specifications and capacity, method of propulsion, stability, structure, maneuverability, and modes of operation. He also has expertise in accident reconstruction, failure analysis, human factors and ergonomics, and injury causation and analysis related to marine incidents. Mr. Taylor has been quailed in both state and federal courts to testify in areas including maritime accident

reconstruction, naval architecture, recreational boat and marine vessel design and operation, and human factors. Mr. Taylor's professional *curriculum vitae* is attached as **Exhibit A**. A list of cases in which he provided legal testimony is attached as **Exhibit B**.

**B.**    **Chris Van Ee**

Dr. Chris Van Ee holds a Ph.D. in Biomechanical Engineering from Duke University and is a licensed Professional Engineer. His academic training has been in mechanical and biomechanical engineering. His academic research has been focused on determining injury causation and evaluating injury prevention strategies. Biomechanical engineering is a subdiscipline of biomedical engineering that uses the application of mechanical engineering and physics to quantify the effects of forces on and within the human body, including quantifying injury tolerance levels and identifying injury mechanisms. His work in biomechanics has been well recognized by the scientific community and the published results of his work have received multiple honors and awards. He has served as a grant reviewer for the National Institutes of Health and as a program reviewer of the U.S. Army Aeromedical Research Laboratory on Head and Spine Injury. He is the former chairman of both the Occupant Protection Committee of the Society of Automotive Engineers (SAE) and of the Scientific Program Committee of the Association for the Advancement of Automotive Medicine. He is an associate editor for the SAE Transportation Safety Journal and has been a co-organizer and peer reviewer for Occupant Restraints session for the SAE World Congress for over eleven years. He currently is an adjunct professor in the Department of Biomedical Engineering at Wayne State University where he provides graduate student training and conducts research in impact biomechanics. Dr. Van Ee's *curriculum vitae* is attached as **Exhibit C**. A list of cases in which he provided legal testimony is attached as **Exhibit D**.

DOCUMENT 343

II.    **SUBECT MATTER OF EXPERT TESTIMONY**

Mr. Taylor and Dr. Van Ee will offer expert testimony on the following areas related to the personal watercraft ("PWC") accident involving Albina Sharifullina and Daniel Snyder on July 6, 2014 at Smith Lake in Cullman County, Alabama:   the reconstruction of the accident; the movement of the passengers with respect to their seating positions; the PWC speed, and the direction of travel of the PWC at impact; the causation of damage to the PWC, the damage to the dock impact point and the injuries to the passengers; and the identification of the PWC operator at the time of impact based upon the available evidence.

Mr. Taylor and Dr. Van Ee may also provide expert testimony in response to and in rebuttal to any fact or expert opinion testimony offered by Trooper John Williams, or any other witness offered by the Plaintiff.  Defendant Snyder reserves the right to supplement this disclosure and make additional rebuttal disclosures as discovery progresses.

III.   **SUMMARY OF EXPECTED EXPERT TESTIMONY**

Based on their review and combined analysis of the available evidence to date, along with their respective professional experience, Mr. Taylor and Dr. Van Ee are expected to testify as to the following opinions:

1.    The PWC was in an aggressive left-hand turn with associated side slip when it impacted into the dock.  The speed of the vessel at the time of the turn was well above planing speed.

2.    Under these conditions, the rear most passenger is typically dislodged prior to the driver as the driver has the added stability associated with gripping the handlebars and is likely closer to the center of yaw rotation of the vessel.

3.      The permanent deformation of the handrail on the dock both inward and upward is consistent with body contact.

4.      The damage to the PWC (including the scuffs/scratches) and the damage to the dock's outer structures allow for relatively precise placement of the PWC during critical points of interaction with the dock.

5.      The blood and hair evidence collected by law enforcement in this case does not assist in identifying the operator of the vessel at the time of the impact.

6.      Based on their review of the incident, including the testimony, the physical evidence, the determination of the kinematics of the vessel, and their analysis of the kinematics and injuries of the occupants, it is their opinion that the evidence which does point to a specific operator indicates that Ms. Sharifullina was in the PWC operator's position sitting forward of Mr. Snyder at the time of impact.

7.      All of these opinions are based upon a reasonable degree of engineering certainty and based upon the material provided to date.

## IV.      **GROUNDS FOR EXPERTS' FACTS AND OPINIONS**

Mr. Taylor's and Dr. Van Ee's opinions are based upon their years of experience, their education, their review of the documents that have been produced by parties and non-parties in this case and their inspection of the accident scene. A list of case specific materials that Mr. Taylor and Dr. Van Ee have reviewed is attached as **Exhibit E**. In addition to reviewing the supplied documents, Mr. Taylor and Dr. Van Ee conducted an inspection of the accident vessel, the accident site and surrounding areas on April 17, 2019.

DOCUMENT 343

DATED:  April 25, 2019

Respectfully submitted,

/s/ Daniel S. Wolter
Daniel S. Wolter
**Attorney for Daniel B. Snyder**

**OF COUNSEL:**
Daniel S. Wolter (dwolter@wolterlawfirm.com)
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Mountain Brook, AL  35223-2435
Telephone:      205-983-6440
Facsimile:      205-983-6443
**Attorney for Daniel B. Snyder**

DOCUMENT 343

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served on the following by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email, on April 25, 2019.

Marcus W. Lee, Esq.
Kendall A. Lee, Esq.
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL  35216
***Attorney for Plaintiff Marina Stewart-Magee***

David R. Wells, Esq.
MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4ᵗʰ Ave. N.
Birmingham, AL  35203

Jason P. Knight, Esq.
KNIGHT & KNIGHT, LLC
210 2ⁿᵈ St. SE
Cullman, AL  35055-3508
***Attorneys for Defendants Jeffrey Howard Whitlock and***
***Jeffrey Hunter Whitlock***

DOCUMENT 343

                                        */s/ Daniel S. Wolter*_____
                                        OF COUNSEL

6

# EXHIBIT A

DOCUMENT 343



**DESIGN RESEARCH ENGINEERING**
46475 Desoto Court
Novi, Michigan 48377
Tel: (248) 668 - 3450
Fax: (248) 668 - 3460

# ROBERT K. TAYLOR, M.S., P.E.

**Professional Specialization**
Design, design analysis, risk analysis, and failure analysis of structures, industrial equipment, mechanical equipment, and systems. Design and failure analysis of structures, equipment, and machinery related to ships, boats and offshore platforms. Naval architecture and marine engineering design and failure analysis. Prediction of environmental loads and response to marine vehicles. Accident reconstruction, failure analysis, risk analysis related to marine casualties including stability analysis, ship motions, progressive flooding analysis, fire cause and origin. Field and laboratory testing of systems and equipment. Structural analysis and fracture mechanics involving ship hull structures, cranes, equipment, and mechanical systems. Human factors as related to accident analysis, guardings, and warnings. Occupant kinematics related to crashworthiness. Testing and design evaluation of recreational boats, consumer products, and mechanical systems.

**Professional Background**
B.S.E. (Naval Architecture and Marine Engineering), University of Michigan
M.S. (Mechanical Engineering), University of California, Berkeley

**Principal Engineer,**
Design Research Engineering
**Principal Engineer,**
Failure Analysis Associates
**Naval Architect,**
Naval Sea Systems Command

Registered Professional Mechanical Engineer, Michigan #47051
Registered Professional Mechanical Engineer, California #23284
Certified Fire and Explosion Investigator (CFEI) #22314-12947

Quarterdeck Honor Society, University of Michigan
Fellow, Society of Naval Architects and Marine Engineers
Member, Human Factors and Ergonomics Society
Member, American Boat and Yacht Council
Member, National Association of Fire Investigators, International (NAFI)

**Technical Publications**

"Linear Elastic Fracture Mechanics Applied on Ships" National Technical University of Athens School of Naval Architecture & Marine Engineering – Shipbuilding Technology Laboratory. Vassilios Papazoglou – A Volume in his Honor - Athens 2016
"Assessment of Compressive Thoracolumbar Injury Potential and Influence of Seat Cushions on Vertical Impact Loading of a Seated Occupant" SAE International 2015-01-9151 with Eric S. Winkel and Daniel E. Toomey. January 2015.
"Fracture Mechanics Applications on Sea-going Vessels" Keynote Presentation at the International Conference on Fracture, Ottawa, Canada, July 12-17, 2009 (with J.E. Kokarakis Ph.D.)
"Computer Model Used to Predict Occupant Ejection Kinematics in the Marine Environment" 2008 TASS Americas MADYMO Users Meeting, Detroit MI April 16, 2008 (with Chris VanEe Ph.D.)
"Hydrodynamic Interaction analysis in Marine Accidents," International Symposium on Maritime Safety, Security and Environmental Protection, Athens, Greece, September 20-21, 2007 (with J. E. Kokarakis, Ph.D.)
"Steady Hydrodynamic Analysis of Planing Surfaces," Journal of Ship Research, SNAME, December 2002 (with B. Savander Ph.D. and S. Scorpio Ph.D.).

December 2017

DOCUMENT 343

**Robert K. Taylor, M.S., P.E.**

"Impact Loads Experienced by the Cervical Spine During High-Speed Water Entry," International Conference on The Biomechanics of Impact (IRCOBI), Montpellier, France, September 20-22, 2000 (with R. Robbins, P.M. Fuller, B.R. Savander, Ph.D.).

"Hyatt Failure from the Perspective of a Forensic Engineer," Forensic Engineering, Proceedings of the Second Congress, San Juan, Puerto Rico, May 2000 (with P. D. Moncarz, Ph.D.).

"Engineering Process Failure – Hyatt Walkway Collapse," Journal of Performance of Constructed Facilities, ASCE, May 2000, Vol. 14, No. 2 (with P. D. Moncarz, Ph.D.).

"Neck Loading Due to Head Immersion in Water at High Speeds," International IRCOBI Conference on the Biomechanics of Impact (IRCOBI), Hannover, Germany, September 24-26, 1997 (with R. Robbins and P. M. Fuller).

"Occupant Kinematics Analysis of Passenger Ejections in Boating Accidents," Small Craft Marine Engineering, Resistance, and Propulsion Symposium, University of Michigan, Ann Arbor, May 1996 (with J. E. Kokarakis Ph.D.).

"Fatigue Strength Assessment of Large Tankers and Ore/Oil Carriers," Technology, Law and Insurance, January 1996 (with J. E. Kokarakis Ph.D.).

"Fatigue Strength Assessment of Large Tankers and Ore/Oil Carriers," International Symposium on Safety, Economy, and Reliability in Marine Engineering and Construction, Hong Kong, China, September 1994 (with J. E. Kokarakis Ph.D.).

"Fracture Mechanics Based Evaluation of the Cause and Repair of a Ship Bulkhead Cracking," International Symposium of Safety, Economy, and Reliability in Marine Engineering and Construction Hong Kong, China, September 1994 (with J. E. Kokarakis Ph.D.).

"Fatigue Crack Problems in Large Oil Tankers," Society of Naval Architects and Marine Engineers, Northern California Section, January 1994 (with J. E. Kokarakis Ph.D., C. H. Wells, and R. A. Sire).

"A Probabilistic Structure Life Prediction System for Container Ship Repair and Inspection," International Colloquium on Aging of Materials and Methods for the Assessment and Extension of Lifetimes of Engineering Plant, Cape Town, South Africa, April 1991 (with J. E. Kokarakis Ph.D., C. H. Wells, and R. A. Sire).

"Investigation of a Container Crane Boom Collapse During Sea Voyage," Society of Naval Architects and Marine Engineers, Northern California Section, March 1991 (with J. E. Kokarakis Ph.D., S. E. Day, and S. K. Tyagi).

"A Comparative Analysis of Industrial Lift Truck (Forklift) Accidents," American Society of Mechanical Engineers Winter Annual Meeting, Dallas, Texas, November 1990 (with R. L. McCarthy Ph.D. et al.).

"Theoretical and Experimental Investigations of Blistered Fiberglass Boats," Proceedings, 3rd International conference on Marine applications of Composite Materials, March 1990, Melbourne, Florida (with J. E. Kokarakis Ph.D.).

"Structural Integrity Evaluation of Blistered Fiberglass boats," International Conference on Structural Failure, Product Liability and Technical Insurance, Structural Failure II Session, July 1989, Vienna, Austria (with J. E. Kokarakis Ph.D.).

"Marriage of Disciplines Provides Answers to Complex Problems," International Conference on Structural Failure, Product Liability, and Technical Insurance, Structural Failure II Session, July 1989, Vienna, Austria (with J. E. Kokarakis Ph.D.).

"Stability of Damaged Platforms in Waves," Proceedings, 4th International Conference on Behavior of Offshore Structures, July 1985, Delft, Netherlands (with P. D. Moncarz Ph.D., J. R. Paulling Ph.D., and J. M. Thomas Ph.D.).

"Seat Belts: Effectiveness of Mandatory Use Requirements: International Congress and Exposition, Detroit, Michigan, February 1984 (with R. L. McCarthy Ph.D, S. B. Sanford, and R. C. Lange).

"Failure Analysis Methodology," Society of American Military Engineers, Northern California Section, February 1983 (with J. N. Robinson Ph.D.).

"Catastrophic Events: Actual Risk Versus Societal Impact," Proceedings, Annual Reliability and Maintainability Symposium, January 1982 (with R. L. McCarthy Ph.D. and J. P. Finnegan).

"Warnings on Consumer Products: Objective Criteria for Their Use," Proceedings, 26th Annual Meeting of the Human Factors Society, Seattle, Washington, October 1982 (with R. L. McCarthy Ph.D., J. N. Robinson Ph.D., and J. P. Finnegan).

December 2017

# EXHIBIT B

DOCUMENT 343

## Deposition and Trial Testimony for Robert Taylor

DOCUMENT 343

| Date | Depo | Trial | Case name | State |
|------|------|-------|-----------|-------|
| Mar-14 | Depo | | Seitz v. Mastercraft | GA |
| Aug-14 | Depo | | Linton/Davis v. Teleflex | MS |
| Oct-14 | Depo | | Diaz, Yaritza v. Bombardier | MA |
| Nov-14 | Depo | | Jenkins v. Pentair | NV |
| Dec-14 | Depo | | Collins v. Ballard Marine | WA |
| Dec-14 | Depo | | Santos v. Sea Star | PR |
| Jan-15 | Depo | | Malibu v. Correct Craft (Nautique) | TN |
| Mar-15 | Depo | | Marine Recourses v. Moore | FL |
| Apr-15 | Depo | | Puckett v. Marine Rebuild Specialist | MS |
| May-15 | | Trial | Marine Recourses v. Moore | FL |
| Jun-15 | Depo | | North Shore Marina Fire | MI |
| Dec-15 | Depo | | Akturk v. Yamaha | FL |
| Dec-15 | Depo | | Spidle, Kevin v. Pentair | TX |
| Feb-16 | Depo | | Arctic Cat v. Bombardier | FL |
| Mar-16 | | Trial | Cortes v. Sea Fox | FL |
| Apr-16 | Depo | | Feasel v. Brunswick | UT |
| Apr-16 | Depo | | Amore July 4th Accident | FL |
| May-16 | Depo | | Wagner v. Sea Star | TX |
| May-16 | Depo | | Hickerson v. Yamaha | SC |
| May-16 | | Trial | Arctic Cat v. Bombardier | FL |
| Jun-16 | Depo | | Ruggiero v. Yamaha | NJ |
| Sep-16 | Depo | | Brand v. United Staes of America | AZ |
| Sep-16 | Depo | | St. Germaine v. Bombardier | CT |
| Dec-16 | | Trial | McDonald v. Bollinger | NY |
| Dec-17 | Depo | | Cline v. Kawasaki | OH |
| Mar-17 | Depo | | Malibu v. Mastercraft | TN |
| Jul-17 | Depo | | Bezilla v. Kawasaki | CT |
| Nov-17 | Deoo | | Indugula v. Salesforce | CA |
| Nov-17 | Depo | | Schumaker v. USA | CA |
| Jan-18 | Depo | | Project Boat Holdings v. Bass Pro | DE |
| Mar-18 | Depo | | Pridemore, Timothy v. SafeBoat | VA |
| Jun-18 | | Trial | Project Boat Holdings v. Bass Pro | DE |

**Deposition and Trial Testimony for Robert Taylor**

| Date | Depo | Trial | Case name | State |
|------|------|-------|-----------|-------|
| Jun-18 | Depo | | Bostek v. Norfolk Southern | OH |
| Jul-18 | Depo | | Pena, Daniel v. Tracker Marine | FL |
| Aug-18 | Depo | | Darnell v. Yamaha | AL |
| Aug-18 | Depo | | Cobalt v. Brunswick | VA |
| Aug-18 | Depo | | Rider v. Kawasaki | UT |
| Oct-18 | Depo | | Garcia v. Safe Boats | TX |
| Nov-18 | Depo | | Cobalt v. Brunswick | VA |
| Feb-19 | Depo | | Rider v. Kawasaki | UT |

DOCUMENT 343

# EXHIBIT C

DOCUMENT 343



**D E S I G N**
**R E S E A R C H**
**ENGINEERING**

46475 Desoto Ct.
Novi, MI 48377
Phone: (248) 668-5533
Fax: (248) 668-3460
chrisv@dreng.com

## Chris A. Van Ee

DOCUMENT 343

### Professional Specialization

Impact biomechanics and accident reconstruction research to identify mechanisms of injury with application to product safety and design. Injury causation is investigated using a combination of computational modeling, laboratory experimental studies, and investigations of real world accidents to define human kinematics, injury mechanisms, interactions with product components and effectiveness of intervention strategies. Specific areas of focus include automotive and marine accidents, child safety, contact sports injuries, industrial machine accidents, and small power hand tool injury investigations.

Past research and product investigations have included adult and pediatric head and neck injury biomechanics, crash induced injuries to the knee, thigh, and hip; crash induced ruptures of the large vessels of the thorax; injury mechanisms and tolerance of the cervical spine; identifying correlations between thoracic loading, skeletal fractures, and internal organ injuries in crash occupants; identifying injury mechanisms to pregnant automobile occupants, evaluating the performance of current and prototype belt restraint systems; evaluating and refining anthropomorphic test device designs and injury reference values; designing assembly machines for increased operator safety; quantifying the protective performance of football, boxing, and motorcycle helmets; evaluating the effectiveness of protective eyewear in small power tool accidents; quantifying the dynamics of circular, miter, and table saw injuries including blade binding, operator error, and the effectiveness of safety interventions; determination of the sufficiency of machine guarding components; and the cause and nature of slip and fall accidents.

### Education

Ph.D. (Biomedical Engineering), Duke University, 2000
      Advisor: Barry S. Myers M.D. Ph.D.
B.S. (Mechanical Engineering), Dordt College, 1992

### Licensure

Professional Engineer: State of Michigan #6201056733

### Professional Background

**Principal Engineer: Biomedical and Mechanical Engineering**
Design Research Engineering, Novi, Michigan
2009 - Present
**Adjunct Assistant Professor**
Department of Biomedical Engineering, Wayne State University, Detroit, Michigan
2002 - Present
**Senior Biomechanical Engineer**
Design Research Engineering, Novi, Michigan
2005 - 2009
**Project Engineer**
Design Research Engineering, Novi, Michigan
2002 - 2005
**Assistant Research Scientist**
University of Michigan Transportation Research Institute, Ann Arbor, Michigan
2000 - 2002
**Doctoral Candidate**
Department of Biomedical Engineering, Duke University, Durham, North Carolina
1998-2000

*Chris A. Van Ee, Ph.D.*
*Page 2 of 8*



DOCUMENT 343

**Research Assistant**
Department of Biomedical Engineering, Duke University, Durham, North Carolina
1992-1998
**Custom Design Engineer**
Pella Corporation, Pella, Iowa
1991 - 1992
**Engineering Technician**
Vermeer Manufacturing, Pella, Iowa
1990

## Professional Affiliations, Service, Certifications

Association for the Advancement of Automotive Medicine
- Membership Committee (2012-Present)
- Scientific Program Committee (2006-2011)
- Chairman of the Scientific Program Committee (2009-2010)

Society of Automotive Engineers Occupant Protection Committee (2005-Present)
- Chairman of the Automobile Body Activity of the Land and Sea Group (2010-2013)
- Vice-Chairman of the Automobile Body Activity of the Land and Sea Group (2009-2010)
- Chairman of the Occupant Protection Committee (2008-2009)
- Vice-Chairman of Occupant Protection Committee (2006-2008)

Member: Society of Automotive Engineers Automated Driving Systems (ADS)
  Crashworthiness Task Force Committee (2017-Present)
Co-organizer of the Occupant Restraints Session: SAE World Congress (2006-Present)
Co-chairperson of the Biomechanics Session: SAE World Congress 2006
Session Organizer: Dynamics and Control of Biomechanical Systems III, 2009 ASME
  International Mechanical Engineering Congress & Exposition
Traffic Accident Reconstruction, Northwestern University Center for Public Safety
Child Passenger Safety Technician - The National Standardized Child Passenger Safety
  Training Program (June 2006 - June 2010)
Associate Editor: Journal of Passenger Cars – Mechanical Systems (2010-Present)
Associate Editor: Journal of Forensic Biomechanics (2010-2013)
Associate Editor: Transportation Safety Journal (2013- Present)
Editor: SAE Occupant Protection and Crashworthiness Technology Collection
  (2009-2012)
Review Panel Member: American Institute of Biological Sciences review of United
  States Army Aeromedical Research Laboratory (February 2008)
Reviewer for American Institute of Biological Sciences: review of proposal submitted to
  US Army Medical Research and Materiel Command
Reviewer and Review Panel Member, National Institutes of Health (2003-2008, 2012-
  2015)
- Special Emphasis Panel/Scientific Review Group ZRG1 MOSS,
    Musculoskeletal, Oral and Skin Sciences
- Study Section ZRG1 BDCN-K Clinical Neurophysiology, Devices and
    Neuroprosthetics / Brain Disorders and Clinical Neuroscience
- Study Section ZRG1-GRM, Geriatrics and Rehabilitation Medicine
- Study Section MRS, Musculoskeletal Rehabilitation Sciences
- Study Section ZRG1-SBDD, Rehabilitative Medicine

Reviewer, SAE Congress:
- Biomechanics
- Occupant Restraints
- Side Impact, Rear Impact and Rollover

*Chris A. Van Ee, Ph.D.*
*Page 3 of 8*



DOCUMENT 343

Reviewer: Safety
Reviewer: International Journal of Crashworthiness
Reviewer: Annals of Biomedical Engineering
Reviewer: Accident Analysis and Prevention
Reviewer: Traffic Injury Prevention
Reviewer: ASME: Occupant Protection & Biomechanics
Reviewer: Journal of Biomechanics
Reviewer: Journal of Biomechanical Engineering
Reviewer: Medical Engineering & Physics
Reviewer: SAE International Journal of Passenger Cars
Reviewer: Journal of Forensic and Legal Medicine
Reviewer: International Journal of Industrial Ergonomics
Invited Reviewer: Stapp Car Crash Journal 2009
Judge, ASME PhD Student Paper Competition (Summer 2007)
Member, American Society of Biomechanics (ASB)
Member, American Society of Mechanical Engineers (ASME)
Member, Society of Automotive Engineering Society (SAE)
Member, Association for the Advancement of Automotive Medicine (AAAM)

**Honors and Awards**

John Paul Stapp Award
    Best paper at the 2008 Stapp Car Crash Conference
UMTRI Best Publication Award
    University of Michigan Transportation Research Institute best publication award
    for 2004
UMTRI Best Publication Award
    University of Michigan Transportation Research Institute best publication award
    for 2003
John Paul Stapp Award
    Best paper at the 2000 Stapp Car Crash Conference
Stapp Association Student Award
    Most outstanding student presentation at the 2000 Stapp Car Crash conference.
Ralph H. Isbrandt Automotive Safety Award
    Best paper presented to the Society of Automotive Engineers on the subject of
    Automotive Safety Engineering for the year 1995.
Arnold W. Siegel Award
    Society of Automotive Engineers' award for the most outstanding paper presented
    at the 1995 Stapp Car Crash Conference.
Duke University Research Fellowship
National Science Foundation Fellowship Committee Honorable Mention
Dordt College Merit Scholarship

**Publications**

"The Hybrid III Upper and Lower Neck Response in Compressive Loading Scenarios
    with Known Human Injury Outcomes," Traffic Inj Prev. 2014;15 Suppl 1:S223-
    30. (with D. Toomey, K. Yang)
"ATV Rollover, Rider Response, and Determinants of Injury: In-Depth Analysis of
    Video-Documented ATV Rollover Events" Traffic Inj Prev. 2014;15 Suppl
    1:S190-6. (with D. Toomey, B. Moroski-Browne, M. Vander Roest, A. Wilson)
"Towards a More Robust Lower Neck Compressive Injury Tolerance - An Approach
    Combining Multiple Test Methodologies," Traffic Injury Prevention,
    2013;14(8):845-52, (with D. Toomey, K. Yang, N. Yoganandan, F. Pintar)

Chris A. Van Ee, Ph.D.
Page 4 of 8



"Biomechanical Evaluation of Frangible Skull Surrogates to Blunt Ballistic Temporo-parietal Head Impact" (Abstract) American Academy of Forensic Sciences 65th Annual Meeting, February 18-23, 2013 (with D. Raymond, G. Crawford, and C. Bir).

"Skull Biomechanics" Orthopaedic Biomechanics, ed. B.A. Winkelstein, Boca Raton: CRC Press Taylor and Francis Group, 2013. (with C.R. Bass, A.M. Lloyd, B.S. Myers, M.B. Panzer).

"Exploring the Role of Lateral Bending Postures and Asymmetric Loading on Cervical Spine Compression Responses", 2009 ASME International Mechanical Engineering Congress & Exposition, IMECE2009-12911, (with D Toomey, M Mason, W Hardy, K Yang, J Kopacz).

"Evaluation and Refinement of the CRABI-6 Anthropomorphic Test Device Injury Criteria for Skull Fracture", Proceedings 2009 ASME International Mechanical Engineering Congress & Exposition, IMECE2009-12973, (with B Moroski-Browne, D Raymond, K Thibault, W Hardy, J Plunkett).

"Child ATD Reconstruction of a Fatal Pediatric Fall", 2009 ASME International Mechanical Engineering Congress & Exposition, IMECE2009-12994, (with D Raymond, K Thibault, W Hardy, J Plunkett).

"Development of Biomechanical Response Corridors of the Head to Blunt Ballistic Temporo-Parietal Impact," Journal of Biomechanical Engineering, September 2009, Vol. 131 (with DE Raymond, GS Crawford, CA Bir).

"Tolerance of the Skull to Blunt Ballistic Temporo-parietal Impact", Journal of Biomechanics, Nov 13;42(15):2479-85, 2009 (with DE Raymond, GS Crawford, CA Bir).

"Mechanisms of Traumatic Rupture of the Aorta and Associated Peri-isthmic Motion and Deformation" Stapp Car Crash Journal, Vol. 52, November 2008. (with W. Hardy, CS Shaw, MJ Mason, JM Kopacz, KH Yang, AI King, JL Bishop, RF Banglmaier, MJ Bey, RM Morgan, KH Digges).

"Use of Computational Models in Marine Accident Reconstruction", 2008 TASS Americas MADYMO Users Meeting, April, Detroit, MI (with Robert Taylor).

"The Effect of Soft Tissue On The Biomechanics Of Skull Fracture Due To Blunt Ballistic Impact: Preliminary Analysis and Findings" (Abstract) 2008 Summer Bioengineering Conference, June 25-29, 2008 (with D. Raymond, G. Crawford, C. Bir).

"Biomechanics of Temporo-Parietal Skull Fracture from Blunt Ballistic Impact" (Abstract) 2008 Summer Bioengineering Conference, June 25-29, 2008 (with D. Raymond, G. Crawford, C. Bir).

"Biomechanics of Blunt Ballistic Impacts to the Head and Fracture-Specific Injury Criteria Development" (Abstract) American Academy of Forensic Sciences 60th Annual Meeting, February 18-23, 2008 (with D. Raymond, G. Crawford, and C. Bir).

"Biomechanics of Blunt Ballistic Impacts to the Forehead and Zygoma" (Abstract-Poster) American Academy of Forensic Sciences 60th Annual Meeting, February 18-23, 2008 (with G. Crawford, D. Raymond, and C. Bir).

"Head Exposure Levels in Pediatric Falls" (abstract-poster) National Neurotrauma Society Meeting, 2007 (with K. Monson, C. Sparrey, L. Cheng, and G. Manley).

"Dynamic Biaxial Tissue Properties of the Human Cadaver Aorta," Stapp Car Crash Journal, Vol. 50, November 2006 (with C.S. Shah, W.N. Hardy, M.J. Mason, and K.H. Yang, R. Morgan, and K. Digges).

"Study of Potential Mechanisms of Traumatic Rupture of the Aorta Using In Situ Experiments," Stapp Car Crash Journal, Vol. 50, November 2008. (W.N. Hardy, C.S. Shah, J.M. Kopacz, K.H. Yang, R. Morgan and K. Digges).

DOCUMENT 343

*Chris A. Van Ee, Ph.D.*
*Page 5 of 8*



DOCUMENT 343

"Investigation of Potential Mechanisms of Traumatic Rupture of the Aorta" (Abstract #5245) Proceedings of the World Congress of Biomechanics – Munich, Germany August 2006 (with W.N. Hardy, C.S. Shah, M.J. Mason, K.H.Yang, and K. Digges).

"Safety Restraint System Physical Evidence and Biomechanical Injury Potential Due to Belt Entanglement," SAE Paper 2006-01-1670, 2006 SAE World Congress (with D.E. Toomey and M.E. Klima).

"High-Speed Biaxial Tissue Properties of the Human Cadaver Aorta," Proceedings of IMECE05 - 2005 ASME International Mechanical Engineering Congress, November 2005. (with C.S. Shah, M.J. Mason, K.H. Yang, W.N. Hardy, R. Morgan, and K. Digges).

"A New Device for High-Speed Biaxial Tissue Testing: Application to Traumatic Rupture of the Aorta," SAE Paper 2005-01-0741, SAE 2005 Transactions: Journal of Passenger Cars. (with M.J. Mason, C.S. Shah, M. Maddali, K.H. Yang, W. N. Hardy, and K. Digges).

"Use of Computer Models in Forensic Investigations of Human Kinematics: Examples from Alpine Skiing and Marine Accident Reconstruction", Proceedings of AmeriPAM 2004 (Abstract) (with E. Morphy and R. Taylor).

"Mechanical Properties and Anthropometry of the Human Infant Head," Stapp Car Crash Journal, 2004 (with M.T. Prange, J. F. Luck, A. Dibb, R. W. Nightingale, and B. S. Myers).

"Cervical-spine Geometry in the Automotive Seated Posture: Variations with Age, Stature, and Gender," Stapp Car Crash Journal, 2004 (with K. D. Klinich, S. Ebert, C. Flannagan, M. Prasad, M. P. Reed, and L. W. Schneider).

"Improved Estimation of Human Neck Tensile Tolerance: Reducing the Range of Reported Tolerance Using Anthropometrically Correct Muscles and Optimized Physiologic Initial Conditions." Stapp Car Crash Jounal, November 2003, (with V. C. Chancey, R. W. Nightingale, K. E. Knaub, and B. S. Myers).

"The Tolerance of the Human Hip to Dynamic Knee Loading." Stapp Car Crash Jounal, pp 211-228, November, 2002.  (with  J. D. Rupp, M. P. Reed, S. Kuppa, S. C. Wang, J. A. Goulet, and L. W. Schneider).

"Techniques and Applications in Strain Measurements in Skeletal Muscle." **Biomechanic Systems, Techniques, and Applications. Volume III**. Leondes CT, ED., CRC Press, Boca Raton, Florida 2001 (with B. S. Myers).

"Lateral Bending Strength of the Cervical Spine Estimated from Muscle Generated Moments," 2001 BMES Annual Fall Meeting Proceedings (Abstract)  (with V. C. Chancey, R. W. Nightingale, K. E. Knaub, and B. S. Myers).

"Tensile Properties of the Human Muscular and Ligamentous Cervical Spine." 2000 Stapp Car Crash Journal, pp 85-102, November, 2000 (with R. W. Nightingale, D. L. A. Camacho, V. C. Chancey, K. E. Knaub, E. A. Sun, and B. S. Myers).

"Tensile Properties of the Human Muscular and Ligamentous Cervical Spine." Ph.D. Thesis, Duke Universty, 2000.

"Quantifying Skeletal Muscle Properties in Cadaveric Test Specimens: Effects of Mechanical Loading, Postmortem Time, and Freezer Storage." Journal of Biomechanical Engineering, 122:9-14, February 2000 (with A. L. Chasse, and B. S. Myers).

"Understanding and Minimizing Error in Cervical Spine Tensile Testing," Proceedings: The 28th International Workshop on Human Subjects for Biomechanical Research, 2000 (with V. C. Chancey, R. W. Nightingale, D. L. A. Camacho, B. S. Myers).

*Chris A. Van Ee, Ph.D.*
*Page 6 of 8*



DOCUMENT 343

"Tensile Testing of the Ligamentous Cervical Spine: Biomechanical Considerations for a Proposed Testing Methodology." Proceedings: The 27th International Workshop on Human Subjects for Biomechanical Research, 1999 (with R. W. Nightingale, and B. S. Myers).

"Muscle Fixation Methods to Increase Cadaveric Biofidelity: Results of a Single Fiber Muscle Model," The 9th Injury Prevention Through Biomechanics Symposium Proceedings, Detroit, MI, 1999 (with M. R. Larochelle, W. Feng, M. K. Reedy, F. H. Schachat, and B. S. Myers).

"The Effects of Postmortem Time and Freezer Storage on the Mechanical Properties of Skeletal Muscle." The 8th Injury Prevention Through Biomechanics Symposium Proceedings, Detroit, MI, 1998 (with A.L Chasse, B. S. Myers).

"Injury Mechanisms in the Pediatric Cervical Spine During Out-of-Position Airbag Deployments." Proceedings of the 42nd Association of the Advancement of Automotive Medicine, 1998 (with R. W. Nightingale, B. A. Winkelstein, and B. S. Myers).

"The Effects of Postmortem Time and Freezer Storage on the Mechanical Properties of Skeletal Muscle." Society of Automotive Engineers, J. Passenger Cars, SAE Paper #983155, 1998 (with A. L. Chasse, and B. S. Myers).

"Measurement of Human Neck Muscle Volume Geometry and Physiologic Cross Sectional Area in 5th, 50th and 95th Percentile Subjects using Cadaveric Dissection and MRI." 25th Annual International Workshop for Human Subjects for Biomechanical Research, 1997 (with K. E. Knaub, C. Cheng, B. Poon , C. Spritzer, and B. S. Myers).

"On the Structural and Material Properties of Mammalian Skeletal Muscle and its Relevance to Human Cervical Impact Dynamics." Society of Automotive Engineers, J. Passenger Cars, SAE Paper #952723, 1995 (with B. S. Myers, D. L. A. Camacho, C. T. Woolley, and T. M. Best).

"Measurement of the Structural and Material Properties of Mammalian Skeletal Muscle." The 5th Injury Prevention Through Biomechanics Symposium Proceedings, Detroit, MI, 1995 (with D. L. A. Camacho, C. T. Woolley, T. M. Best, and B. S. Myers).

**<u>Presentations</u>**

"The Biomechanics of Pediatric Head Injury," Invited Speaker, New Jersey Forensic Science Center Technology Center, Hamilton, NJ, New Jersey Office of the Public Defender CLE Program. August 2018.

"The Physics of Falls", TCDLA, Invited Speaker, Fort Worth, TX, September 2017

"The Biomechanics of Pediatric Head Injury" The Center for American and International Law, Plano, TX, March 2016.

"Biomechanics of Pediatric Head Injury," NYSDA Annual Conference, Saratoga, NY, July 2015.

"ATV Rollover, Rider Response, and Determinants of Injury: In-Depth Analysis of Video-Documented ATV Rollover Events", 57th Annual Scientific Conference, Association for the Advancement of Automotive Medicine (AAAM), Munich, Germany, October 2014.

"Biomechanical Evaluation of Traumatic Brain Injury" World Congress on Infant Head Trauma, The Center for American and International Law, Plano, TX, November 2013.

"Biomechanics of Pediatric Head Injury," Invited Lecturer, Center for Forensic Science and Medicine, University of Toronto, March 22, 2013.

DOCUMENT 343

*Chris A. Van Ee, Ph.D.*
*Page 7 of 8*



"ATV Rollover, Operator Response, and Determinants of Injury: Implications for Crush
  Protection Devices," US Consumer Product Safety Commission: ATV Safety
  Summit, Bethesda, MD, October 12, 2012.

"Evaluation and Refinement of the CRABI-6 Anthropomorphic Test Device Injury
  Criteria for Skull Fracture", 2009 ASME International Mechanical Engineering
  Congress & Exposition, November 18, 2009.

"Child ATD Reconstruction of a Fatal Pediatric Fall", 2009 ASME International
  Mechanical Engineering Congress & Exposition, November 18, 2009.

"Use of Computational Models in Marine Accident Reconstruction", 2008 TASS
  Americas MADYMO Users Meeting, April, Detroit, MI

"Pediatric Head Injury Risk: Automotive Accidents, Falls, Household Trauma, and
  Non-Accidental Injury," The Center for American and International Law, March
  2008.

"Pediatric Head Injury: Injury Mechanisms and Injury Tolerance", Invited Lecturer for
  BME 7810 – Forensic Bioengineering, Wayne State University, November 2007.

"Principles of the Biomechanical Analysis of Infant Brain Injury" and "Case Studies in
  Infant Brain Injury Analysis," co-presenter with Kirk Thibault at the EBMS
  Symposium – An Evidence-Based Analysis of Infant Brain and Skeletal Injury,
  May 2007.

"Characterizing Pediatric Head Injury Risk: Automotive Accidents, Falls, and Shaking,"
  Invited Keynote Speaker: 15th Annual Meeting of the Rachidian Society, Kona, HI,
  February 2007.

"Tensile Tolerance of the Cervical Spine" Invited Keynote Speaker: 15th Annual Meeting
  of the Rachidian Society, Kona, HI, February 2007.

"Safety Restraint System Physical Evidence and Biomechanical Injury Potential Due to
  Belt Entanglement," co-presenter with M. Klima, SAE World Congress, Detroit,
  MI, April 2006.

"Biomechanics, Falls, and Shaken Baby Syndrome," Guest Lecturer for BME 7995 –
  Forensic Bioengineering, Wayne State University, October 2005.

"Trial Techniques and Strategies: Making the Most of Your Experts," co-presenter with
  Jeffrey Weiner, Florida Bar Continuing Legal Education Seminar, Miami, FL,
  January 21, 2005.

"Use of Computer Models in Forensic Investigations of Human Kinematics: Examples
  from Alpine Skiing and Marine Accident Reconstruction", AmeriPAM Nov 3,
  2004.

"Marine Accident Reconstruction: Forensic Engineering and Biomechanics" Wayne
  State University, June 7, 2004.

"Biomechanics and Physical Restraint, An Analysis of the Mandt System." Dallas, TX,
  April 22, 2004.

"Rollovers, Neck Injury, and Defining the Role of Lateral Bending in Compressive Neck
  Injury." Wayne State University, March 15, 2004.

"Development of an Experimental Protocol to Quantify the Tolerance of the Hip to Axial
  Femur Loading." The 29th International Workshop on Human Subjects for
  Biomechanical Research. San Antonio, TX, November 2001.

"Head and Cervical Spine Geometry in the Automotive Neutral, Flexion, and Extension
  Postures." Ford Motor Company, Dearborn, MI, September 2001.

"Tensile Properties of the Human Muscular and Ligamentous Cervical Spine." 2000
  Stapp Car Crash Conference, Atlanta, GA, November 2000.

"Development of an Experimental Model of Tensile Neck Injury." The 27th
  International Workshop on Human Subjects for Biomechanical Research, San
  Diego, CA, October 1999.

*Chris A. Van Ee, Ph.D.*
*Page 8 of 8*



"A Combined Experimental and Computational Study of Tensile Neck Injury." National Highway Traffic Safety Administration, Durham, NC, July 1999.

"Neck Surrogates: A Systematic Experimental and Computational Study Designed to Provide Anthropometric Test Device Injury Reference Values." National Highway Traffic Safety Administration, Washington, DC, December 1998.

"The Effects of Postmortem Time and Freezer Storage on the Mechanical Properties of Skeletal Muscle." The 42nd Annual Stapp Car Crash Conference, Phoenix, AZ, November 2-4, 1998.

"The Effects of Postmortem Time and Freezer Storage on the Mechanical Properties of Skeletal Muscle." The 8th Injury Prevention Through Biomechanics Symposium, Detroit, MI, May 7-8, 1998.

"Measurement of the Structural and Material Properties of Mammalian Skeletal Muscle." The 5th Injury Prevention Through Biomechanics Symposium, Detroit, MI, May 4-5, 1995.

*Last Update: March 2019*

DOCUMENT 343

# EXHIBIT D

DOCUMENT 343

DOCUMENT 343

Legal Testimony of Chris Van Ee, Ph.D. April 2019)

| No. | Case Name | Date of Testimony | | State/Country | Court | Case ID |
|---|---|---|---|---|---|---|
| | | Deposition | Trial/Hearing | | | |
| 1 | Tanner, Mary v. Food Lion LLC | Jan-03 | | NC | General Court of Justice of Franklin County - Superior Court Division | 01-CvS-1123 |
| 2 | State of Florida v. William Blackman | Aug-03 | Mar-04 | FL | Circuit Court of the Sixteenth Judicial Circuit of Florida, in and for Monroe County | 2002-SF-274 |
| 3 | People v. Anthony Scott Campbell | | Dec-04 | MI | 15th Circuit Court No. 0-007197-FC, Branch County, Michigan State Court of Appeals | 245263 |
| 4 | Michael Dallwitz v. Seabring Marine Ind. | May-04 | | FL | Circuit Court of the Twentieth Judicial Circuit in and for Lee County | 00-2721 CA-JHS |
| 5 | Commonwealth of VA v. C. Estrella-Perez | Jun-04 | | VA | Newport News Circuit Court | CR03051857-00 |
| 6 | Robert Crasley v. Daniel Hudgens | Jun-04 | | CO | US District Court, District of Colorado | 03-N-0698 (MJW) |
| 7 | in re Ruf | | Nov-04 | MI | Kalamazoo County Circuit Court - Family Division (Parental Rights) | 400126 NA |
| 8 | Troy Testerman v. Riddell Inc | Jan-05 | | VA | US District Court, District of Western/Virginia. Danville Division | 4:03CV00071 |
| 9 | in the matter of C Tomczac, et al | | Oct-05 | MI | State of Michigan Office of Administrative Hearings and Rules - Bay County DHS | X1872356P |
| 10 | State of Florida v. Faye Sanidad | | Jan-06, Oct-06 | FL | Circuit Court, Seventh Judicial Circuit, in and for Flagler County | 2000-524-CFFA |
| 11 | Commonwealth of Mass v. Ann Power | | Feb-06 | MA | Middlesex Superior Court | 2003-01473 |
| 12 | Willig v. Mammoth Mtn Ski Area | Mar-06, April-06 | May-06 | CA | Superior Court for the St of CA, Mono County, Northern Branch | CV 14434 |
| 13 | People v. Gary Lauzon Jr. | | Apr-06 | MI | 41-B Judicial District Court (Macomb County) | 05-0055 |
| 14 | State of Texas v. Jerod Doncey | | Jul-06 | TX | Criminal District Court # 7 of Dallas County, Aux Court #8 - Judge Gary Stephens | F04-55698 |
| 15 | Patricia Castle v Pikeville Medical Center | Sep-06 | | KY | Commonwealth of Kentucky, Pike Circuit Court - Division 1 | 05-CI-00331 |
| 16 | N Focht v Beech Mountain Resort | Oct-06 | | NC | Mecklenburg County Superior Court Division | 06-CVS-3688 |
| 17 | R Shawgo v General Motors Corp. | Mar-07 | | IL | US District Court - Southern District of IL | 05-CV-04173-JLF |
| 18 | Moss v Strand Associates, Inc., et al | Apr-07 | | WI | Clark County Circuit Court - Wisconsin | 04-CV-117 |
| 19 | People v A Montalbano | | Jun-07 | IL | Winnebago County 17th Judicial Circuit | 05CF3808 |
| 20 | State of Ohio v M Mills | | Jun-07 | OH | Court of Common Pleas, Tuscarawas County, OH | 2006 CR 10 0315 |
| 21 | Grant v Warden | | Jun-07 | CT | Superior Court for the Judicial District of Tolland | cv 03-0004233 |
| 22 | State of Florida v Diaz | Sep-07 | Apr-08 | FL | Fifth Judicial Circuit in and for Lake County, FL | 2006-CF-000433-A-01 |
| 23 | Davis v Graco v Shelter | Oct-07 | | TN | Circuit Court of Hardin County, TN 24th Judicial District at Savannah | 3791 |
| 24 | Anthony M Perryman | | May-08 | England | Southampton, UK - Crown Court | T20067169 |
| 25 | In the matter of Omar Miah et al | | Jun-08 | England | High Court of Justice. London Borough of Hammersmith and Fulham | FD07C00331 |
| 26 | Eric Lester v J Shockey MD et al | Oct-08 | Dec-08 | KY | Pike Circuit Court | 06-CI-00196 |
| 27 | People v Rivas | | Oct-08 | CA | Superior Court - Los Angeles County - Judge Camacho | KA8-08-1942 |
| 28 | R -v- Fatima Miah | | Nov-08 | England | Central Criminal Court, Old Bailey, London, England, ECAM 7EH   Court number: 413 | T20077208 |
| 29 | R. v. Choy | | Nov-08, May-11 | Canada | The Court of Queen's Bench of Alberta (trial in Edmonton) | 070121058Q1 |
| 30 | Ex Parte Ct. Henderson | | Dec-08, Feb Mar-09 | TX | 299th District Court, Travis County, Texas | WR-49,984-02 |
| 31 | A Espinoza v Graco et al | Jan-09 | | TX | United States District Court, Eastern District of Texas, Marshall Division | 2:07-cv-517-TJW |
| 32 | State of Texas v. ME McLaughlan | | Feb-09 | TX | District Court of Palo Pinto County, 29th Judicial District | 13094 |
| 33 | People v Lynette Lott | | Feb-09, March 09 | MI | Third Circuit Court - State of Michigan | 08-14410 |
| 34 | Sayed Raza | | Mar-09 | England | Luton Crown Court, transferred from St Albans Crown Court T20070304 | U20090090 |
| 35 | T. Williams | Aug-09 | Apr-09 | NE | District Court of Wayne County, NE | NP08C00896 |
| 36 | P v. GH Wilson | Nov-09 | May-09 | Great Britain | Newport County Court, Gwent, Wales | FSB033934 |
| 37 | TD Allen | | Dec-09 | CA | Superior Court of California, County of San Bernardino | DCM07-40137 |
| 38 | R -v- Fatima Miah | Jan-10 | Nov-09 | Canada | Provincial Court of Nova Scotia - Truro | T20077208 |
| 39 | Q v Robinson | | Feb-10 | England | Central Criminal Court - Old Bailey | C082790CR |
| 40 | St v Loberg | Aug-09 | Aug-09 | New Zealand | Rotorua, NZ | 031, 0264 |
| 41 | T. Williams | Nov-09 | Sep-09 | NE | District Court of Wayne County, NE | T20097259 |
| 42 | People v M Marceaux | | Nov-09 | MI | Macomb County Circuit Court, Mt Clemens | S-1506-CV |
| 43 | J Dineen v J Jackson Jr. et al | Jan-10 | | IL | Circuit Court of Cook County | 07 L 000942 |
| 44 | State v. Geodin | | Feb-10 | OR | Washington County Circuit Court, Hillsboro | C082790CR |
| 45 | Spirtstma v Mercury Marine | Mar-10, Jul-10 | | IL | Circuit Court of Cook County | 031, 0264 |
| 46 | R v Gavin Gibbs | | Jul-10 | England | Central Criminal Court, Old Bailey, London, England | T20097259 |
| 47 | Altman, Jeffrey v. HO Sports | Oct-10, Nov-10 | | CA | SUPERIOR COURT OF CALIFORNIA - COUNTY OF KERN | S-1506-CV |
| 48 | St of FL v E Tate | Oct-10 | Jan-11 | FL | Circuit Court of the 13th Judicial Circuit for Hillsborough County, Division 2 | 06-CF-016495 |

DOCUMENT 343

| No. | Case Name | Deposition | Trial/Hearing | State/Country | Court | Case ID |
|---|---|---|---|---|---|---|
| 49 | R. Kemner v Leatt Corp. | Nov-10 | | KY | District Court, Eastern District of Kentucky, Central Division of Lexington | 5:09-CV-00084-JBC |
| 50 | St of OH v T Evers | | Feb-11 | OH | Common Pleas Court of Mercer County, OH | 09-CRM-095, 110 |
| 51 | Neuharth v Firebird Raceway | Feb-11 | Apr-11 | AZ | Superior Court of state of AZ in and for the county of Maricopa | CV2006-012065 |
| 52 | Schessl v Franklin Sports, Inc | Feb-11 | | NY | US District Court - Western District of New York | 07-CV-6234 |
| 53 | Hansen MR v St of MN | | Apr-11 | MN | Seventh Judicial District Court - Douglas County | 21-KX-04-001222 |
| 54 | Person v Ford Motor Company | Aug-11 | | MS | US District Court - Northern District of Mississippi - Western Division | 3:09cv133-M-A |
| 55 | S. Todd v Progressive Select Ins. Co. | Sep-11 | | FL | Circuit Court of the 13th Judicial Circuit for Hillsborough County | 08-012520 |
| 56 | St of TX v Micah Duncan | | Oct-11 | TX | District Court of Grayson County, Texas 15th Judicial District | 060104 |
| 57 | R v Chana Al-Ahas | | Nov-11 | England | Central Criminal Court: Old Bailey, London, England | T20107362 |
| 58 | G Morton v Chyrsler | Dec-11 | | SC | Court of Common Pleas, Richland County, South Carolina | C/A# 2010-CP-40-04784 |
| 59 | USA v Tommy Lee Vasquez | | Feb-12 | OR | US District Court, Oregon, Portland Division | 11-CR-00026-BR |
| 60 | London B of Islington v C Al Alas | | Mar-12 | England | High Court of Justice: Family Division | FD10C00445 |
| 61 | Depart. Social Services v. C Wallach | | Sep-12 | VA | County of Prince George Circuit Court | CJ1000021-00 |
| 62 | R. v. Colin Matchim | | Oct-12 | Canada | Supreme Court Trial Division; NL (St. Johns, Newfoundland) | 201001G4580 |
| 63 | J Tallman v Ontel Corp. | Nov-12 | | OH | Court of Common Pleas, Lucas County, Ohio | G-4801-CI-201110568-000 |
| 64 | US v SSgt RJ Rabideau | | Jan-13 | Germany | United States Air Force Judiciary, European Region. Ramstein Air Base, Germany | case name |
| 65 | B Smith v Biltmore Forest Country Club | Jan-13 | | NC | St of NC, County of Buncombe: Superior Court | 11 CVS 1888 |
| 66 | R v Darrin Brown | | Mar-13 | England | Guildford Crown Court, Bedford Road, Guildford, Surry, England | T20120238 |
| 67 | People v Keith Thibeault | | Jun-13 | MI | 8th Circuit Court for the county of Ionia | 12-K-15595-FC |
| 68 | St of TX v Smita Chakravethy | | Sep-13 | TX | 93rd District Court, Hidalgo County, Courthouse, Edinburg, TX | CR-0530-07-B |
| 69 | Thomas J. Cullman v. State of Nevada | | Sep-13 | NV | Seventh Judicial District Court of the State of Nevada, County of White Pine | HC-0105006 |
| 70 | R v Adrian Guest | | Nov-13 | England | Wolverhampton Crown Court | T20117041 |
| 71 | R v Emma Wilson | | Dec-13 | England | Central Criminal Court: Old Bailey, London, England | T20137031 |
| 72 | Oregon v Norman Brown, Jr. | | Feb-14 | OR | Multnomah County Courthouse | 130210926 |
| 73 | SD v Maregake Ally | | Feb-14 | SD | Minnehaha County, Second Judicial Circuit | CR. 12-8143 |
| 74 | St of FL v CL Colvin Jr | Apr-14 | May-14 | FL | Circuit Court for Okaloosa County, FL | 11-CF-1140 |
| 75 | SD v D Gonzales | | Apr-14 | SD | Buffalo County, First Judicial Circuit | 08 CRI 13-1 |
| 76 | Sanders v Daimler Trucks NA | Apr-14 | | NM | First Judicial District, Santa Fe, NM | D-0101-CV-A201001070 |
| 77 | Woods v HO Sports | Jun-14 | | WA | Superior Court, Pierce County, State of Washington | 12-2-08809-3 |
| 78 | People v A Lopez | | Jul-14 | CA | Superior Court of CA, Los Angeles East District | KA 100809(1) |
| 79 | St of IA v S Hunt | | Jul-14 | IA | Iowa District Court for Polk County | FECR267030 |
| 80 | Tuitel v Weinstein | Jul-14 | | FL | Curcuit Court 15th Judicial Circuit, Palm Beach, FL. | 2013-CA-014205 |
| 81 | Stapleton v BYU | Oct-14 | | UT | Third Judicial District Court, Salt Lake City, Utah | 120907380 |
| 82 | In the matter of an inquest into the death of Geoffrey Moore and others | | Nov-14 | Australia | Queensland Coroners' Court, Brisbane, Australia | case no 2012/833 |
| 83 | St of TX v J Boyce | | Jan 2015, Oct 2015 | TX | District Court 15th Judicial, Grayson County, TX | 063963 |
| 84 | St of IL vC Rosentwinkel | | Jan-15 | IL | 23rd Judicial District, Kendall County | 2011CF000370 |
| 85 | in re M. S. | | Feb-15 | UT | Third District Juvenile Court, in and for Salt Lake County, State of Utah | 1101788770 |
| 86 | in re EC T. | | Mar-15 | MI | Oakland County Circuit Court: Family Court Division | 2014 – 821905 NA |
| 87 | R v SK | | May-15 | Canada | Superior Court: Youth Criminal Justice Court, New Market, Ontario | YC-11-00000714-0000 |
| 88 | Select Comfort v Tempur Sealy, et al | Jun-15 | | MN | US District Court: District of Minnesota | 13-cv-02451 |
| 89 | St of KS v Brock Cunningham | | Aug-15 | KS | District Court of Ford County, Kansas 16th Judicial District | 13-CR-29 |
| 90 | People v RA DiMambro Jr. | | Sep-15 | MI | Macomb County Circuit Court, Court of Appeals # 323251 | 2013-4215-FC |
| 91 | State of Wisconsin vs. Dakota K Black | | Sep-15 | WI | Dane County Circuit Court | 2013DA010692 |
| 92 | State of FL vs. Carter Bryant III | Oct-15 | Oct-15 | FL | Sarasota County, FL Circuit Court | 58-2014-CF-012399-A |
| 93 | State of NJ v Steven R. Donaldson | Nov-15 | | NJ | Superior Court of New Jersey, Burlington County | 2013-10-13444 |
| 94 | Thakur v Goodyear Tire and Rubber | Dec-15 | | KY | Boone Circuit Court Div 3: Commonwealth of KY | 12-CI-1628 |
| 95 | GMC v WMVS | | Feb-16 | England | Medical Practitioners Tribunal Service, Manchester, England | 1555161 |
| 96 | People v B Russel | | Mar-16 | MI | Iron County Trial Court, Michigan | 15-7551-FY |

2

DOCUMENT 343

| No. | Case Name | Date of Testimony | | State/Country | Court | Case ID |
|---|---|---|---|---|---|---|
| | | Deposition | Trial/Hearing | | | |
| 97 | A Bergman v Rockhurst Univ | Apr-16 | | MO | Circuit Court of Jackson County, Missouri | 1416-CV-27114 |
| 98 | St of VT v D Duby | Apr-16 | | VT | Superior Court, Rutland Unit, State of Vermont | 279-2-14 Rdcr |
| 99 | St of FL v W Thomason | Apr-16 | | FL | Circuit Court of the First Circuit for Okaloosa County, FL | 2013 CF 2271 |
| 100 | Commonwealth v. Breisinger | | May-16 | PA | Court of Common Pleas, Lehigh County, Pennsylvania | CP-39-CR-3251-1997 |
| 101 | R v. Butler | | May-16 | England | Central Criminal Court, London | T20147105 |
| 102 | St of NV v. TL Getty | | May-16 | NV | Ninth Judicial District Court, Douglas County, Nevada | 15-CR-0043 |
| 103 | St of IL v P Brant | | Jul-16 | IL | Coles County Circuit Court, Illinois | 2014-CF-66 |
| 104 | In re NB and EBIII | | Aug-16 | AZ | Superior Court of AZ - County of Pinal | JD-201300156 |
| 105 | The Queen v. Casondra Mapplebeck | | Sep-16 | Canada | Nova Scotia Supreme Court, C.R. H. No.435162 | 435162 |
| 106 | St of MI v GJ Lowe | | Oct-16 | MI | Macomb County Circuit Court, Michigan | 2015-2502-FC |
| 107 | In re: DO | | Nov-16 | DC | Superior Court of the District of Columbia, Family Division | 2016-NEG-000204 |
| 108 | Commonwealth v Emmanuel Rodriguez | | Dec-16 | MA | Superior Court: Trial court of Massachusetts | 1581CR270 |
| 109 | CA v Ryan Garcia | | Jan-17 | CA | San Bernardino County, Rancho Cucamonga Superior Court, CA | FWV1302061 |
| 110 | JD v Brian Wagner | | Jan-17 | ID | 5th Judicial District – Twin Falls County | CR42-15-10447 |
| 111 | J Schwartz v Le Creust of America | | Jan-17 | NY | Supreme Court of NY, Nassau County | 600237/2014 |
| 112 | People v. Cassonova | | Feb-17 | MI | Muskegon, MI | 13-63270 |
| 113 | Ex Parte R Avila | | Mar-17 | TX | 41st District Court, El Paso County, TX | WR-59. 66203: 20000D01342 |
| 114 | St of CA v A Sanchez | | Apr-17 | CA | Superior Court - Merced County | 15CR-03437 |
| 115 | ID v J Davis | | May-17 | ID | District Court – First District – Kootenai County | CR-F16-16856 |
| 116 | Bradford v St of OK | | May-17 | OK | District Court Wagoner County, Oklahoma | CR-09-264 |
| 117 | Bogart v Ward II Ent. and D Johnson | Jun-17 | | VA | US District Court: Eastern District of VA | 1:16-cv-01544 (GBL/MSN) |
| 118 | St of FL v S Spurgeon | Jul-17 | Jan-18 | FL | Sixth Circuit, Florida, Pinellas County | CRC08-23878CFANO |
| 119 | J Havard v MS | | Aug-17 | MS | Circuit Court of Adams County, Nadrez, MS | 02-KR-0141-J |
| 120 | People v Milton Lemons | | Sep-17 | MI | Wayne County Circuit Court | 06-04818-FC |
| 121 | Pinnock v Midway Services et al. | | Sep-17 | PA | First Judicial District, Philidelphia, PA | NO.: 0225 |
| 122 | P Suarez v Air Rescue Air Cond et al. | Oct-17 | May-18 | FL | 13th Judicial Circuit, Hillsborough County | 15-CA-11771 |
| 123 | Q v N. A. Baxter | | Oct, Nov 2017 | Australia | Supreme Court of Queensland at Townsville | #74 - 2015 |
| 124 | St of OK v C Whitney | | Nov-17 | OK | 24th District Court: Creek County | CF-2015-30 |
| 125 | St of CA v G Bailey | | Nov-17 | CA | Superior Court California, Solano County | FCR318645 |
| 126 | St of NV v German | | Feb-18 | NV | Ninth Judicial District Court, Douglas County, Nevada | 13-CR-0111 |
| 127 | People v Hugh Barry | | Feb-18 | NY | Bronx Civil Supreme Court | 1104/2017 |
| 128 | St of OR v K Jones | | Mar-18 | OR | Multnomah County Circuit Court | 16CR69802 |
| 129 | Commonwealth v J Robinson | | Apr-18 | MA | Norfolk Superior Court, Dedham | NO-2013-0143 |
| 130 | People v C Khaled | | Jun-18 | WA | Superior Court, Spokane County | 15-1-02645-4 |
| 131 | Fisher v Waste Management | Jul-18 | | LA | US District Court, Middle District Louisiana | 3:17-cv-00246-BAJ-RLB |
| 132 | C v Harve Johnson | | Jul-18 | PA | Court of Common Pleas of York County, PA | CP-67-CR-004854-2008 |
| 133 | St v W Bell | | Sep-18 | NC | Superior Court, Wake County, Raleigh, NC | 16CRS214241 |
| 134 | Garcia v USA, Mercury, Safe Boats Int. | Oct-18 | | TX | US District Court; Southern District of Texas, Brownsville | 1:17-CV-28 |
| 135 | in re LG, HY, JB, | | Nov-18 | Wales | Family Court: Swansea Civil Justice Center | SA17C00804 |
| 136 | Clarence Jones III v. State of Maryland | | Dec-18 | MD | Maryland Circuit Court, Baltimore County | 98-CR-3820 |
| 137 | Andrew Gallo v Ruis-Carlton et al. | Jan-19 | | FL | Eleventh Judicial District, Miami-Dade County, Circuit-Civil Division | 2017-028855-CA-01 (22) |
| 138 | Gray v Nissan | Jan-19 | | MS | Circuit Court of Warrington County, Mississippi | 2016-0044 CI |
| 139 | JA Matthews v MC Hatton et al. | Mar-19 | | AL | Circuit Court of Colbert County, Alabama | CV-20-16-900319 |

3



ELECTRONICALLY FILED
4/25/2019 4:31 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

DOCUMENT 345

# EXHIBIT E

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARINA STEWART-MAGGE,** | ) | |
| **Who sues as Administrator and** | ) | |
| **Personal Representative of the Estate of** | ) | |
| **ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA, Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.:  CV 16-900001** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>EXHIBIT E</u>

File of Alabama Law Enforcement Agency

Autopsy Report

Photos of Daniel Snyder

Photos provided by plaintiff in response to the Whitlocks Response to Request for Production

Police Photos

Sea Doo Photos

Trooper John Williams Depositions

Affidavit of John Williams

Death Certificate

Deposition of Daniel Snyder

Deposition of Hunter Whitlock

Deposition of Jeffrey Whitlock

Huntsville Hospital Records

Plaintiff's response to Whitlock Request for Production

DOCUMENT 345

1

Cullman County Sheriff's Report

DOCUMENT 345

ELECTRONICALLY FILED
4/25/2019 4:44 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| as Administrator and Personal | ) | |
| Representative of the ESTATE | ) | |
| OF ALBINA AGDASOVNA | ) | |
| SHARIFULLINA, deceased, | ) | |
| | ) | **CIVIL ACTION NO.** |
| Plaintiff, | ) | **CV-2016-900001** |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL B. SNYDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RULE 26 EXPERT DISCLOSURES

Comes now the Plaintiff, **MARINA STEWART-MAGEE, as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, pursuant to Rule 26 of the Alabama Rules of Civil Procedure, and reserves the right to call the following individuals as expert witnesses at the trial of this case:

1. **Trooper John Williams**
   **Alabama Law Enforcement Agency**
   **Marine Patrol Division**

Trooper John Williams is a senior trooper for the Alabama Law Enforcement Agency (Marine Patrol Division) and an expert in the field of boating accident investigation and reconstruction. He was the chief investigating officer for the accident made the basis of this lawsuit. The anticipated opinions of Trooper Williams and the factual basis for those opinions were fully explored during his depositions on March 21, 2018 and April 4, 2019. A copy of his deposition transcripts is in the possession of Plaintiff's counsel and will be provided to defense counsel if requested.

2.       **Pamela J. Sims, Pharm., D., Ph.D.**

Dr. Pamela Sims is an expert in pharmacology, pharmacokinetics, and toxicology who is expected to testify on topics related to the pharmacokinetics of ethanol, including the rate of absorption, distribution, metabolism, and elimination; the effects of ethanol on the human body; and the extrapolation of blood alcohol data.

Dr. Sims is expected to offer an opinion concerning the approximate blood alcohol concentration (BAC) of Daniel Snyder at the time of his departure from the home of Jeff and Hunter Whitlock on July 6, 2014 and at the time of the collision made the basis of this lawsuit. Dr. Sims will offer an opinion regarding the typical signs that an average person with Daniel Snyder's BAC level would have exhibited immediately prior to leaving the Whitlock's home. Dr. Sims is further expected to opine that Daniel Snyder was intoxicated at the time of the subject collision. The opinions of Dr. Sims are based upon her education, training, and experience and her review of the post-accident medical records of Daniel Snyder from Huntsville Hospital, the affidavit of Carissa Brock, R.N. (Doc. 229), the deposition testimony and written discovery responses of Daniel Snyder, and various other documents and materials that have been produced by parties and non-parties in this case. A complete list of case specific materials that Dr. Sims has reviewed will be provided to defense counsel at a later date. A copy of Dr. Sims's curriculum vitae (CV) is attached hereto as "Exhibit A."

3.       **Rebuttal Expert(s)**

Plaintiff reserves the right to supplement  and/or amend this disclosure in response to any expert witness(es) identified by the Defendants.

Respectfully submitted this 25th day of April, 2019.

/s/ Kendall A. Lee
**MARK W. LEE (LEE003)**
**KENDALL A. LEE (LEE091)**
Attorneys for Plaintiff
MARINA STEWART-MAGEE

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

---

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 25th day of April, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

David R. Wells, Esq.
**MUDD, BOLVIG, LUKE**
**& WELLS, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Floyd D. Gaines, Esq.
**GAINES LLC**
2160 Highland Avenue South, Suite 101
Birmingham, Alabama 35205
fgaines@gainesllc.com

Daniel S. Wolter, Esq.
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

Jason P. Knight, Esq.
**KNIGHT & KNIGHT, LLC**
210 2nd Street SE
Cullman, Alabama 35055
jpknight@knight-knightattorneys.com

/s/ Kendall A. Lee
OF COUNSEL

Exhibit A

**CURRICULUM VITAE**

**PAMELA J. SIMS**

**EDUCATION AND TRAINING:**

| | |
|---|---|
| August 1983 - June 1987 | Ph.D. Pharmaceutical Sciences<br>University of Colorado<br>Boulder, CO |
| Jan. 1982 - June 1983 | Research Internship<br>Forensic Toxicology Laboratory<br>Georgia Bureau of Investigation<br>Atlanta, GA |
| Sept. 1981 - June 1983 | Doctor of Pharmacy (Pharm.D.)<br>Mercer University<br>Atlanta, GA |
| March 1975 | B.S. Pharmacy (High Honors)<br>University of Florida<br>Gainesville, FL |

**PROFESSIONAL EXPERIENCE:**

**Administrative Appointments:**

| | |
|---|---|
| 2001 – Present | Member, Advisory Group for Prevention of Perinatal Group B Strep<br>Center for Disease Control and Prevention |
| April 2001- August 2007 | Chair, Department of Pharmaceutical, Social and Administrative Sciences<br>McWhorter School of Pharmacy<br>Samford University |
| April 2001 – August 2007<br>Jan. 1992 - Dec. 1992 | Member, Administrative Leadership Team<br>School of Pharmacy<br>Samford University |
| Oct. 1994 - Nov. 1998 | Positive Maturity, Inc.<br>Board of Directors<br>A United Way Agency |
| Jan. 1992 - Dec. 1992 | Assistant Dean for Student & Alumni Affairs<br>School of Pharmacy<br>Samford University |
| Jan. 1992 - Dec. 1992 | Samford Representative to the Alabama Board of Pharmacy Committee on Rehabilitation of Impaired Professionals |

*Pamela J. Sims, Pharm.D., Ph.D.*                                                    2

|  |  |
|---|---|
| Oct. 1991 - 1996 | Pharmacy Unit Director<br>Geriatric Education Center<br>Center for Aging<br>School of Medicine<br>University of Alabama at Birmingham |
| Jan. 1991 - 1993 | Chair, University President's Quality Team<br>for Teaching and Learning<br>Samford University |

**Academic Appointments:**

|  |  |
|---|---|
| Jan. 2005 – present | Clinical Professor<br>School of Dentistry<br>University of Alabama at Birmingham |
| June 2000 – Dec 2017 | Professor of Pharmacokinetics<br>McWhorter School of Pharmacy<br>Samford University |
| June 1995 - May 2000 | Associate Professor of Pharmacokinetics with Tenure<br>School of Pharmacy<br>Samford University |
| July 1994 – Jan. 2005 | Clinical Assistant Professor<br>School of Dentistry<br>University of Alabama at Birmingham |
| June 1989 - May 1995 | Assistant Professor of Pharmacokinetics<br>School of Pharmacy<br>Samford University |
| July 1987 - June 1989 | Assistant Professor of Pharmaceutical Sciences<br>College of Pharmacy<br>Idaho State University |
| Sept. 1985 - June 1987 | Instructor<br>School of Pharmacy<br>University of Colorado |
| Sept. 1984 - Sept. 1985 | Graduate Teaching Assistant<br>School of Pharmacy<br>University of Colorado |
| Sept. 1982 - Dec. 1982 | Instructor<br>College of Pharmacy<br>Mercer University |
| Jan. 1981 - Aug. 1981 | Instructor<br>College of Veterinary Medicine |

*Pamela J. Sims, Pharm.D., Ph.D.*                                                                3

|                          | University of Florida                                                                    |
|--------------------------|------------------------------------------------------------------------------------------|
| Sep. 1975 - Dec. 1980    | Preceptor of Pharmacy Interns and Externs<br>Florida and Wyoming                         |

**Teaching:**

| May 2016 – present        | Pharmacology for Physical Therapy (PHTH 651)<br>Samford University<br>School of Health Professions |
|---------------------------|-----------------------------------------------------------------------------------------------------|
| August 2009-Dec 2017      | Introduction to Pharmaceutical Sciences (PHRX 305)<br>Biopharmaceutics/Pharmacokinetics (PHRX 407)  |
| June 2004 – present       | Pharmacology I (NURS/CRNA 633)<br>Samford University<br>Ida V. Moffett School of Nursing            |
| June 2004 – August 2006   | Pharmacology II (CRNA 611)<br>Samford University<br>Ida V. Moffett School of Nursing                |
| June 1997 - May 2001      | Basic Pharmacokinetics (NTPD 603)                                                                   |
| June 1995 - August 1999   | Therapeutic Drug Management I (PHRD 407)                                                             |
| June 1995 – May 2010      | Therapeutic Drug Management II (PHRD 408)                                                            |
| July 1994 – present       | Pharmacology and Therapeutics for Post-Doctoral<br>Residents (PG 502)<br>University of Alabama at Birmingham<br>School of Dentistry |
| July 1994 - July 1996     | Pharmacology and Therapeutics for Dental Hygiene<br>University of Alabama at Birmingham<br>School of Dentistry |
| July 1994 - July 1995     | Pharmacology and Therapeutics for Dental Assistants<br>University of Alabama at Birmingham<br>School of Dentistry |
| June 1993 – Dec 2011      | Pharmacology and Therapeutics for Clinical Nurse<br>Specialists and Nurse Practitioners (NUR 613)<br>University of Alabama at Birmingham<br>School of Nursing |
| Jan 1992 - 1995           | Current Topics in Pediatrics (PHRM 495)                                                             |
| Aug 1989 - 1996           | Biopharmaceutics/Pharmacokinetics (PHRM 412)<br>Geriatric Pharmacy (PHRM 485)<br>Biostatistics (PHRM 305) |

*Pamela J. Sims, Pharm.D., Ph.D.*                                                          4

|  | Clinical Pharmacokinetics (PHRD 585) |
|---|---|
| Aug 1989 - Dec 1991 | Fundamentals of Proposal Writing (PHRD 603)<br>Pharmaceutics I (PHRM 335)<br>Pharmaceutics II (PHRM 435) |
| July 1987 - 1989 | Pharmacokinetics (PCEU 320)<br>Clinical Pharmacokinetics (PSCI 529)<br>Clinical Research, Design and Analysis (PSCI 532)<br>Biopharmaceutics (PSCI 428)<br>Special Topics in Clinical Pharmacokinetics (PSCI 499)<br>Drug Therapy in the Elderly (PSCI 471)<br>Idaho State University<br>College of Pharmacy |

**Consulting:**

| June 1990 - August 1993 | Clinical Pharmacokinetics Service<br>The Children's Hospital of Alabama<br>Birmingham, AL |
|---|---|

**GRADUATE STUDENTS SUPERVISED:**

Nuvy Bosch, M.S., Pharmaceutical Sciences, Idaho State University, 1989. (Major Professor)
Alice Sato, Ph.D., Nursing Administration, University of Utah, 1989.
Darlene Reiter, M.S., Hearing & Speech Pathology, Idaho State University, 1989.

**PROFESSIONAL LICENSURE:**

1982 - Georgia
1979 - Wyoming
1978 – Alabama
1975 - Florida

**JOURNALS REVIEWED:**

American Journal of Pharmaceutical Education
Journal of Pharmaceutical Sciences
Clinical Pharmacy
Journal of Pharmacy Teaching
American Journal of Hospital Pharmacy
Diabetes Care
The American Journal of Medicine

**PROFESSIONAL ORGANIZATIONS:**

American Association of Colleges of Pharmacy
        Secretary, Section on Pharmaceutics, 1995-97
        Academic Affairs Committee, 2002-03
American College of Clinical Pharmacology

*Pamela J. Sims, Pharm.D., Ph.D.*                                                                 5

             Fellow, 1991
             President-elect, Southeastern Region, 1991-92
American Pharmaceutical Association
American Society of Hospital Pharmacy (1981 - 88)
American Association of Pharmaceutical Scientists
Wyoming Pharmaceutical Association (1979-80)
Florida Pharmaceutical Association (1973-80)
Leon County Pharmaceutical Association (1975-80)
             President (1977-78), Vice-President (1976-77)

**SCHOLARSHIPS AND FELLOWSHIPS:**

American Foundation for Pharmaceutical Education William E. Weiss Fellowship (1985-86), (1986-87)
Rho Chi National Scholarship (1984)
Colorado Doctoral Fellowship (1983-84), (1984-85), (1985-86), (1986-87)
Governor's Grant for Research, State of Georgia (1982-83)
Florida Grant-in-aid (1974-75)

**HONORS AND AWARDS:**

Margaret Self Propst Teacher of the Year, Samford Universtiy, McWhorter School of Pharmacy (2017)
Superior Scholar Award, Samford University, McWhorter School of Pharmacy (2013)
Scholar Award, Samford University, McWhorter School of Pharmacy (2011)
Honorary Member, Omicron Kappa Upsilon, National Dental Honor Society (2002)
Teacher of the Year, Pharmaceutical Sciences, Samford University, McWhorter School of Pharmacy (2001)
Teacher of the Year, Samford University, McWhorter School of Pharmacy (1997-8)
John H. Buchanan Award (1994), Samford University
Hypatia Honor Society (1994)
Outstanding Professor Award (1992-3), Samford University School of Pharmacy
Fellow, American College of Clinical Pharmacology (1991)
Teacher of the Year (1989), Idaho State University College of Pharmacy
Sigma Xi, (1987)
Teacher of the Year (1987), University of Colorado School of Pharmacy
Graduate Research Award, University of Colorado (1985, 1986)
Phi Kappa Phi (1975)
Rho Chi (1975)
Who's Who in American Colleges and Universities (1975)
Gold Merit Award, Florida Pharmaceutical Association (1975)
Sigma Tau Gamma (1971)
Gamma Sigma Epsilon (1971)
Graduated High Honors, University of Florida (1975)

**PUBLICATIONS:**

Waits J, Cretton-Scott E, Childers NK, *Sims, PJ.* Pediatric psychopharmacology and local anesthesia: potential adverse drug reactions with vasoconstrictor use in dental practice. Pediatric Dentistry.  36: 18-23, 2014.

*Pamela J. Sims, Pharm.D., Ph.D.*                                                          6

Cruthirds D, *Sims PJ*, Louis PJ. Review and recommendations for the prevention, management and treatment of postoperative and postdischarge nausea and vomiting. Oral Surgery, Oral Medicine, Oral Pathology, Oral Radiology. 115: 601-611, 2013.

Waldrop BA, *Sims PJ*, Book Review, **Desk Reference of Clinical Pharmacology**, JAMA November 26, 2008; 300 (20) p 2431-2.

*Sims PJ*, Sims KM.  Drug Interactions important for periodontal therapy.  Periodontology 2000 Vol. 44, 2007, 15-28

*Sims PJ,* Book Review, **Applied Pharmacokinetics & Pharmacodynamics Principles of Therapeutic Drug Monitoring,** Am J Pharm Ed 2006; 70 (6) Article 148

Wilson SR, Fargason RE, Cates ME, *Sims PJ,* Boggs AA.  Clinical Course of Adult ADHD Patients Treated with Atomoxetine.   The International Journal of Pharmacy Education Fall 2006, Issue 2

Cates M, *Sims PJ.* Therapeutic Drug Management of Lithium. Am J Pharm Ed 2005; 69 (5) Article 88.

*Sims, PJ.*  Disorderly Conduct, Contact, p. 12-13, (Spring/Summer 2002)

*Sims, PJ.*  Pills and Prescriptions Drugs Dentists Should Know About, Contact, p.10 , Summer 2001

*Sims, PJ.* Therapeutic Drug Management I, A Course Portfolio, Portfolio Project, Pew Initiative, 2001.

Beckett, BE, *Sims, PJ,* Monk-Tutor, MR, Thompson, PA. Adapting the Pedagogy of PBL to Individual Courses and a Curriculum. In Marsh, J. (Ed.), *Implementing Problem-Based Learning: Proceedings of the First Asia Pacific Conference on Problem Based Learning.* Hong Kong: University of Hong Kong, 449-458. [Online].    Available: http://nt.media.hku.hk/pbl/book/homepage.htm.

*Sims, PJ.*  Can One Professor Use Problem-Based Learning in a Large Class?. PBL Insight 2 (3): 11-12, 1999.

*Sims, PJ.*  Antibiotic Prophylaxis in Dental Patients. DentAlumni 3-13, Summer 1999.

Sabbe, NR, *Sims PJ*, and Sims MH.  Tramadol-Warfarin Interaction.  Pharmacotherapy 18 (4): 871-3, 1998.

Rosen DL, Lynn NJ and *Sims PJ*, The Orange Book Drug Product Equivalence and Pharmacist Liability, Abcomm, Inc, Champaign, IL, November 1997.

*Sims PJ*, Book review,  **Modern Pharmaceutics,** Am J Health-Systems Pharm 53: 958-9, 1996.

Dean JO, and *Sims PJ.* Application of Hoshin Planning: A TQM/CQI Principle and Process for Curricular Revision. Am J Pharm Ed 58: 339-342, 1994.

*Pamela J. Sims, Pharm.D., Ph.D.*                                                              7

*Sims PJ.* Utilizing the Peer Group Method with Case Studies to Teach Pharmacokinetics. Am J Pharm Ed 58: 73-77, 1994.

*Sims PJ.* Utilizing the Peer Group Method with Case Studies to Teach Pharmaceutics. Am J Pharm Ed 58: 78-81, 1994.

*Sims PJ,* Waites KB, Crouse DT. Erythromycin Lactobionate Toxicity in Pre-term Neonates. Pediatr Infect Dis J 13;2 164-7, 1994.

Waites KB, *Sims PJ*, Geerts JH, Crouse DT, Shoup RE, Hamrick WB, Duffy LB, Cassell GH. Serum Concentrations of Erythromycin After Intravenous Infusion in Pre-term Neonates Treated for *Ureaplasma urealyticum*. Pediatr Infect Dis J 13;4: 287-93, 1994.

*Sims PJ.* Drugs and Nutrition. Drug Store News for the Pharmacist 1;3: 27-34, 1991.

Rhodes RS, *Sims PJ,* Culbertson VL, Jahnigen DW. Accuracy of Creatinine Clearance Estimates in Geriatric Males With Elevated Serum Creatinine. J Geriatric Drug Therapy 5;3: 31-45, 1991.

Rhodes RS, *Rhodes PJ\**, Culbertson VL, Jahnigen DW. Evaluation of Creatinine Clearance Determinations in the Elderly: Measured Versus Formula Calculations. J Geriatric Drug Therapy 4;3: 29-45, 1990.

Culbertson VL, Hill EM, *Rhodes PJ\*,* Rhodes RS.  The Budgetary Impact of Home Parenteral Therapy in a State Medicaid Program-Cost Analysis and Recommendations. Am J Hosp Pharm 6: 1346-1349, 1988.

Culbertson VL, Arthur T, *Rhodes PJ\*,* Rhodes RS. Consumer Preferences for Verbal and Written Medication Information.   Drug Intell Clin Pharm 22; 5:390-6, 1988.

Edwards GB, Culbertson VL, Andresen GP, *Rhodes PJ\*.*   Free Phenytoin Concentrations in Geriatric Nursing Home Patients. J Ger Drug Therapy  3;2: 97-102, 1988.

*Rhodes PJ\**, Rhodes RS, McClelland GH, Culbertson VL, Jahnigen DW, Bloedow DC. Accuracy of Creatinine Clearance Estimates in Adult Males Clin Pharm 6: May 399-406, 1987

Rhodes RS, *Rhodes PJ\**, Jahnigen DW, Piepho RW.  Pain Management in the Elderly, part III. Colorado J Pharm 29; 2: 15-26, 1986.

Rhodes RS, *Rhodes PJ\**, Jahnigen DW, Piepho RW.  Pain Management in the Elderly, part II. Colorado J Pharm 29; 1: 15-26, 1986.

*Rhodes PJ\**, Rhodes RS, Jahnigen DW, Piepho RW.  Pain Management in the Elderly, part I. Colorado J Pharm 28; 4: 47-55, 1985.

Rhodes RS, Jahnigen DW, *Rhodes PJ\**, Piepho RW. Dental Pain Management in the Geriatric Patient. Gerodontics 1:264-273, 1985.

Gal J, *Rhodes PJ\**, Nakata LM, Bloedow DC.   A Readily Obtainable Analog of

*Pamela J. Sims, Pharm.D., Ph.D.*                                                                 8

Propranolol Suitable for Use as Internal Standard in Chromatographic Assays for Propranolol, <u>Res Comm Chem Pathol Pharmacol</u>, 48: 2; 255-66, 1985.

Rhodes RS, *Rhodes PJ\**, Kline C, Sintek CD.  Piroxicam Warfarin Drug Interaction, <u>Drug Intell Clin Pharm</u>, 19: 556-8, 1985.

Rhodes RS, *Rhodes PJ\**, McCurdy HH. Stability of the Preoperative Admixture: Meperidine, Promethazine and Atropine in Plastic Syringes.  <u>Am J Hosp Pharm</u>, 42: 112-5, 1985.

*Rhodes PJ\**, Rhodes RS, McCurdy HH. Elimination Kinetics and Symptomatology of Diazepam Withdrawal in Abusers. <u>J Toxicol</u>: <u>Clin Toxicol</u>, 4; 22: 371-85, 1984.

*Rhodes PJ\**. Moxalactam Disodium, <u>Maryland Soc Hosp Pharmacists Newsletter</u>, 5: 9; 1982.

## BOOK CHAPTERS:

Cruthirds DL, *Sims PJ,* and Louis PJ. Chapter 7: Postoperative Nausea and Vomiting In: Anesthesia Considerations for the Oral and Maxillofacial Surgeon, Hanover Park, IL: Quintessence Publishing USA; 2017.

Louis PJ, *Sims PJ,* and Mizukawa M. Chapter 1: Basic Principles of Anesthesia In: Anesthesia Considerations for the Oral and Maxillofacial Surgeon, Hanover Park, IL: Quintessence Publishing USA; 2017.

Cretton-Scott E, Cruthirds D and *Sims PJ.*  Anti-Infectives In: Remington: The Science and Practice of Pharmacy, 22nd ed; Allen, L. Editor.  Philadelphia, PA:  Pharmaceutical Press; Online July 31, 2012.

*Sims PJ,* Sims KM, Chapter 32: Oral Pain and Discomfort, <u>Handbook of Nonprescription Drugs</u>, 14th Edition, 2004

## ABSTRACTS:

Stogner RO, Clark SK, Gorman GS, *Sims PJ* "Albumin Site Specific Protein Binding of Benzodiazepines" presented at the 99th Annual meeting of  the Alabama Academy of Science Birmingham, Alabama, March 14-16, 2018

Sims N, Benner K, Kalra Y, Sewell K, Daniel L, Kong M, *Sims P*, Gorman G. " Dosing Adequacy of Piperacillin in Children on Continous Venovenous Hemodialysis: A Pilot Study" presented at the Society of Critical Care Medicine: February 2018 San Antonio TX.

Diaz F, Benner KW, Sewell K, Daniel L, Kalra Y, *Sims PJ*, Gorman GS "Adequacy of beta-lactam antibiotic dosing in critically ill children on continuous renal replacement therapy: A pilot study" presented at 8th World Congress of the World Federation of Pediatric Intensive & Critical Care Societies (PICC 2016) Toronto, Ontario, Canada June 4-8, 2016.

Benner  K,  Worthington  M,  Hayes  L,  Sims  P,  Searcy  H,  Bryant  M,  Kimberlin  D.

*Pamela J. Sims, Pharm.D., Ph.D.*                                                           9

Daptomycin Pharmacokinetics in a Pediatric Patient with Methicillin-Resistant *Staphylococcus aureus* Endocarditis, American College of Clinical Pharmacy Spring Research Forum, Phoenix, Arizona, April 6-9, 2008

Monk-Tutor MR, Cates ME, DeHart RM, Riggs RM, Sands CD, *Sims PJ.* Development and Use of a 360-Degree Curricular Assessment Tool, 2007 AACP Annual Meeting and Seminars, Orlando, Florida, July, 2007

*Sims PJ*, Broeseker AE, Bumgarner GW, White BD.  From Interdisciplinary Teaching to Practice.  2006 AACP Annual Meeting and Seminars, San Diego, California, July 8-12, 2006

Webster AA, *Sims PJ,* Monk-Tutor MR, Covington TR, Steil CF, Schrimsher CF, Chan E.  Modification of CQI Tools in Developing a Model of Seamless Programmatic Assessment.  2002 AACP Annual Meeting and Seminars, Kansas City, Missouri, July 13-17, 2002

Chan ES, Monk-Tutor MR, *Sims PJ.*  Progressive Model for integrating Learning Concepts Across Pharmacy Practice Courses to Avoid the "Learn and Dump" Phenomenon.  AACP Annual Meeting.  Toronto, Ontario, Canada, July 10, 2001

Monk-Tutor MR, Chan ES, *Sims PJ*, Webster AA, Covington TR, Steil CF.  Use of CQI Tools to Develop a Model of Seamless Programmatic Assessment in Compliance with ACPE Accreditation Standards 2000.  AACP Annual Meeting, Toronto, Ontario, Canada, July 8-10, 2001

Dean JO, McBride HA, *Sims PJ*, Thompson PA, Webster AA. The Samford Plan: A TQM Process Model for Curriculum Development and Refinement, TQM Forum Nine, quality Exp, Penn State University, May 1, 2000.

Robert H. Moore III, Andrew A. Webster, and *Pamela J. Sims*.  Admission Considerations for Entering Students into a Problem-Based Learning Program.  1998 AACP Annual Meeting, Snowmass Village at Aspen, Colorado, July 21, 1998.

John G. Sowell, Robert H. Moore and *Pamela J. Sims*, Experiences in an Interdisciplinary Pharmacotherapeutics Course for Nurse Practitioners Involving Distance Learning Technology and Problem Based Learning.  AACP Annual Meeting, Snowmass Village at Aspen, Colorado, July 21, 1998.

Beck Diane E, Smith S Troy, Job Martin, Grimsley Sara, *Sims Pamela,* Grussing Paul, Development and Validation of a Computer-Based Test for Measuring Pharmacokinetic Dosing Abilities: A Consortium Approach.  AACP 98th Annual Meeting, Indianapolis, Indiana. July 15, 1997.

*Sims PJ*, McBride HA, Dean JO**,** Early Experiences of the Samford University PharmD Curriculum.  AACP 97th Annual Meeting, Reno, Nevada, July 17, 1996.

Dean JO, *Sims PJ*, Webster A.  Creating a Culture of Quality Within a Professional School, 10th AAHE Conference on Assessment and Quality, Boston, MA, June 11-14, 1995.

*Sims PJ,* Harrington K, Breaux CW Jr, Laney D.  Changes in gentamicin

*Pamela J. Sims, Pharm.D., Ph.D.*                                    10

pharmacokinetics following decannulation from ECMO. Tenth Annual CNMC ECMO Symposium, Keystone, Colorado, February,1994.

*Sims PJ.* Utilizing the group system method with case studies to teach pharmaceutics and pharmacokinetics. 94th Annual AACP Meeting, San Diego, California, July, 1993.

Hemstreet DM, *Sims PJ,* Creel D, Ingram M. Vehicle effect on volume delivery and drug concentration of aerosolized albuterol, <u>J Allergy Clin Immunology</u> 89; 1 part 2, 335, 1992.

*Sims PJ.* Predictive performance of ideal and lean body weight estimates in ambulatory geriatric males and females, 20th Annual Meeting of the American College of Clinical Pharmacology (ACCP), Atlanta, GA, October 16, 1991.

*Sims PJ.* Using modified group system teaching to teach clinical pharmacokinetics. 92nd AACP Annual Meeting, Boston, July, 1991.

*Sims PJ.* Accuracy of lean body weight estimates in the elderly. <u>Pharmaceutical Research</u> 7;9: S-49, 1990.

Mallet MS, *Rhodes PJ\*.* Cost comparison of prime and non-prime hours searching of Medline using Grateful Med. ASHP Midyear Clinical Meeting, Atlanta, GA, December, 1989.

Adamcik B, Huff M, Rhodes R, *Rhodes P\*.* Certificate program in geriatric pharmacy for pharmacists and pharmacy students. AACP/AFCP Joint Annual Meeting, Portland, OR, July, 1989.

Rhodes R, *Rhodes P\*,* Lahoz M. What did it take to get tenured as a clinical faculty? Am Pharm Assoc Annual Meeting, Anaheim, CA, April, 1989.

Culbertson VL, Arthur TG, *Rhodes PJ\*,* Rhodes RS, Consumer preferences for verbal and written medication information. <u>Clinical Abstracts (DICP)</u> 7: 2:7, 1988.

*Rhodes PJ\*,* Rhodes RS, McClelland GH, Culbertson VL, Jahnigen DW, Bloedow DC. Accuracy of creatinine clearance estimates in adult males. <u>Am J Hosp Pharm</u> 44; 6:1468, 1987.

Culbertson VL, Hill EP, Rhodes RS, *Rhodes PJ\*.* Budgetary impact of home parenteral therapy in a state medicaid program-cost analysis and recommendations. ASHP Midyear Clinical Meeting, Las Vegas, NV, December, 1986.

*Rhodes PJ\*,* Rhodes RS, Culbertson VL, Bloedow DC. Accuracy of creatinine clearance determinations in adult males with elevated serum creatinine. ASHP Midyear Clinical Meeting. Clinical Research Forum, Las Vegas, NV, December, 1986.

Edwards GB, Culbertson VL, Andresen GP, *Rhodes PJ\*.* Therapeutic monitoring of phenytoin in elderly patients. Colorado Pharmacal Association Convention, Breckenridge, CO, June, 1986.

*Rhodes PJ\*,* Rhodes RS, Culbertson VL, Jahnigen DW. Predicting creatinine clearance in adult males with normal serum creatinine. Dept. of Medicine, Div. of Clinical

*Pamela J. Sims, Pharm.D., Ph.D.*                                                    11

Pharmacology Research Forum, University of Colorado, Denver, CO, May, 1986.

*Rhodes PJ\**, Rhodes RS, Culbertson VL, McClelland GH, Bloedow DC, Jahnigen DW. Predicting creatinine clearance in elderly males with normal serum creatinine. Colorado Pharmacal Association Convention, Breckenridge, CO, June 1986.

Culbertson VL, *Rhodes PJ\**, Arthur TG, Rhodes RS. Correlations of high medication use and patient preference for medication information. APHA 133rd Annual Convention, San Francisco CA, March, 1986 (invited as podium presentation).

Rhodes RS, *Rhodes PJ\**, Culbertson VL, Bloedow DC. Estimation of creatinine clearance from serum creatinine in the elderly: 8 current formulae versus measured creatinine clearance. ASHP midyear, New Orleans, LA, December, 1985.

Arthur T, Culbertson V, *Rhodes P\**, Vander Zanden J. Response of patients to medication consultation using oral and written USP information. ASHP Annual Meeting, 1985.

*Rhodes PJ\**, Gal J, Nakata LM, Bloedow DC. Propranolol assays by chromatography: a readily available analog for use as internal standard. Federation Proceedings 44; 4:113, 1985.

**GRANTS:**

UAB Oral Health Research Curriculum Innovation Grant (NIDCR), 4/1/2005-3/31/2009, (Investigator) $648,000.

PBL-Peer Review, Documenting the Scholarship of PBL Course and Curriculum Development, Pew Charitable Trusts, Spring 2000, $750,000, (Samford Portfolio Team)

PBL Curriculum/Program Development Grant, Samford PBL Initiative 2000+, Samford University/Pew Charitable Trusts, Spring 2000, (Principal investigator) $16,000.

Samford PBL Initiative, Pew Charitable Trusts, January 1998, $1,000,000, (School Facilitators Team)

Peer Review to Promote Integrated Experiential Learning: Curricular Outcome Related to Pharmacokinetics. AACP GAPS Grant, 1995, (Co-investigator)

Innovations in Teaching Grant, Instructional Innovation/Course Redesign Grants, Samford University, 1994, (Principal investigator) $3120.

Public Health Service, HHS GEC Continuation Grant, $1,229,401, 1990-93, Pharmacy Unit Director.

A Comparative Analysis of the Accuracy of Four Pharmacokinetic Computer Programs to Predict Patient Parameters, Samford Faculty Development Grant, 1990 (Co-principal investigator) $1700.

Non-instructor Factors Affecting Student Evaluations of Classroom Teaching Effectiveness, Samford Faculty Development Grant, 1990 (Co-principal investigator) $2000.

NONMEM  Analysis of Theophylline Pharmacokinetics in Infants and Children, Samford University Faculty Development Grant, 1989. (Co-principal Investigator) $1,997.

Clathrate Stability of Camphor and Phenol in Simulated Gastric Content, Basic Research Support Grant, Idaho State University, 3/1989, (Principal Investigator) $750.

The Pharmacokinetics of Transdermal Drug Delivery in the Elderly. Idaho State Board of Education Grant Competition, Specific Research Projects, 1988-89, 2/1989 (Principal Investigator) $34,875.

Transdermal Delivery of Clonidine in the Elderly.  Boehringer Ingelheim 1/1989 (Principal Investigator).

Certificate Program in Geriatric Pharmacy Practice.  Administration on Aging, Department of Health and Human Services.  (Co-Principal Investigator) 10/1988, $243,474.

A Randomized Open Study of Teicoplainin Versus Cefazolin in the Treatment of Moderate to Serious Skin and Soft Tissue Infections Caused by Gram-Positive Bacteria. Merrell Dow Research Inst. (Consultant) 1988, $35,358.

Cost Comparison of Prime and Non-Prime Hours Searching of MEDLINE using GRATEFUL MED.  Upjohn Pharmaceutical Laboratories. (Co-Principal Investigator) 1988, $1,225.

Therapeutic Drug Monitoring, Abbott Pharmaceuticals Educational Grant. (Principal Investigator) 1988, $2,000.

Pharmacokinetic Drug Dosing. DataMed Educational Grant (Principal Investigator) 1987, $2,000.

Accuracy of Lean Body Weight Estimates in Geriatrics Males.  Faculty Research Grant, Idaho State University (Principal Investigator) 1987, $2,500.

Academic Achievements of Tenured Clinical Faculty in U.S. Schools of Pharmacy. Council of Research and Creative Work, UCHSC (Co-Investigator) 1986, $1,200.
Consumer Preference for Verbal and Written Medication Information. Syntex Pharmaceutical Laboratories (Co-Investigator) 1986, $10,000.

A Computer-Assisted Drug Dosing System (NONMEM) for Students and Faculty of the School of Pharmacy, University of Colorado, (Co-Investigator) 1986, $5,000.

Propranolol Absorption and Disposition at Altitude in Rats.  Colorado Heart Association (Co-Investigator) 1985, $10,000.

**INVITED PRESENTATIONS:**

**Other Academic Teaching:**

**Dentistry:**

*Pamela J. Sims, Pharm.D., Ph.D.*                                               13

NBDE Part II Pharmacology Review. UAB SOD, September 25, October 2,9,16,23, 2012; August 20, 28, September 3, 17, 25, 2013; July 29, August 26, September 2, 16, October 21, 28, 2014.

Managing Chronic Pain Patients' Acute Pain, Fourth Year Dental Students, UAB School of Dentistry, March 15, 2012

Common Drug Interactions in Dentistry, Fourth Year Dental Students, UAB School of Dentistry, January 19, 2012

TMJ Disorders and Pharmacology, Post-doctoral Dental Residents, UAB School of Dentistry, March 17, 2009, May 10, 2011, May 21, 2013.

Oral Sedation, Pain and Anxiety Control II, Junior Dental Students, UAB School of Dentistry,  September 22, 2000, October 12, 2001, October 18, 2002, September 19, 2003, September 24, 2004, October 28, 2005, September 29, 2006, September 21, 2007, September 26, 2008, September, 2009

Pharmacokinetics, Drug Interactions, Conscious Sedation, Post-doctoral Dental Residents, UAB School of Dentistry, August 5, 1998; July 7, 1999, August 8, 2000, July 17, 2001, July 2, 2002, July 8, 2003, August 3, 2004, August 2, 2005, August 22, 2006, August 14, 2007, August 12, 2008, August 25, 2009, August 24, 2010, August 2, 2011, July 31, 2012, July 30, 2013, August 5, 2014

Pharmacology of Sedative Drugs, Conscious Sedation, Post-doctoral Dental Residents, UAB School of Dentistry, August 12, 1998; August 4, 1999, August 15, 2000, July 31, 2001, July 30, 2002, August 5, 2003, August 31, 2004, August 30, 2005, September 5, 2006, September 4, 2007, September 2, 2008, September 1, 2009, August 31, 2010, August 9, 2011, August 7, 2012, August 6, 2013, August 19, 2014.

Surgical Antibiotic Prophylaxis and Update on Antibiotics, Oral Maxillofacial Surgery Residents, UAB School of Dentistry, April 28, 2009

Pharmacologic Aspects of Aging, Aging and Community Dentistry, Junior Dental Students, UAB School of Dentistry, May 21, 2002, May 27, 2003, May 18, 2004, May 3, 2005, March 28, 2006, May 8, 2007, May 20, 2008, April 13, 2010

Medications and Children, Pediatric Dentistry, Senior Dental Students, UAB School of Dentistry, September 17, 2001, April 25, 2005

Antibiotics and Pain Management, Pediatric Dentistry, Senior Dental Students, UAB School of Dentistry, November 11, 2002

Sedation of Pediatric Patients, Pediatric Dental Grand Rounds, The Children's Hospital and UAB School of Dentistry October 10, 2002, October 30, 2003, January 6, 2005

Challenges of Treating Children Taking Psychotropic Drugs, Pediatric Dentistry, Senior Dental Students, UAB School of Dentistry, September 24, 2001

Pediatric Dental Grand Rounds, The Children's Hospital and UAB School of Dentistry, Birmingham, AL, March 15, 2001, April 26, 2004

*Pamela J. Sims, Pharm.D., Ph.D.*                                                    14

Antibiotics Update. Oral and Maxillofacial Surgery Seminar, Department of Oral and Maxillofacial Surgery, UAB School of Dentistry, Birmingham, AL, March 21, 2000

Sedation of Pediatric Patients: Pharmacologic Considerations Part I. Grand Rounds, Department of Pediatric Dentistry, UAB School of Dentistry and The Children's Hospital of Alabama, Birmingham, AL, December 2, 1999, February 10, 2000, April 6, 2000

Board Review: Pharmacology, UAB School of Dentistry, Birmingham, AL, November 1, 8, 15, 1999, October 27, 2000, November 3, 7, 2000

Antibiotics, Oral and Maxillofacial Surgery Residents Seminar, UAB School of Dentistry, February 16, 1999.

Emergency Kits, Pediatric Dental Grand Rounds, Birmingham, AL, January 22, 1998.

Pharmacology of IV Sedation Drugs, Pain and Anxiety Control, Junior Dental Students, UAB School of Dentistry, September 26, 1997, October 2 & 16, 1998, October 1, 1999.

Pharmacologic Issues Pertaining to the Child & Adolescent Patient, Pediatric Dentistry III, Senior Dental Students, UAB School of Dentistry, October 22 & 29, 1996, October 21 & 28, 1997, October 20 & 27, 1998, October 12 & 19, 1999, October 9 & 16, 2000

Patient Compliance Regarding Prescription Medications, Patient Management, Junior Dental Students, UAB School of Dentistry, May 31, 1996, May 28, 1997, April 16, 1998, April 1, 1999.

Clinical Pharmacology and Therapeutics for the Older Adult, Aging/Geriatric Dentistry, 3300, Junior Dental Students, UAB School of Dentistry, April 4, 1996, April 17, 1997, April 16, 1998, April 1, 1999, April 13, 2000

Pediatric Dentistry Grand Rounds,   Pediatric Dentistry Residents, UAB School of Dentistry and The Children's Hospital of Alabama, January 11 & 25, 1996.

Drug Interaction Mechanisms for the Top 200 Drugs, Literature Review, Periodontic Residents, UAB School of Dentistry, Department of Periodontics. January 5, 1996.

Pediatric Case Studies, Grand Rounds, Pediatric Dentistry Residents, UAB School of Dentistry and The Children's Hospital of Alabama, June 15 & 29, 1995.

Antibiotics in Children, Grand Rounds, Pediatric Dentistry, Residents UAB School of Dentistry and The Children's Hospital of Alabama, June 1, 1995.

Getting Your Patients to Comply with Drug Therapy, Practice Management, Junior Dental Students, UAB School of Dentistry, May 5, 1995.

Pharmacological Aspects of Aging, Aging/Geriatric Dentistry, Junior Dental Students, UAB School of Dentistry, April 27, 1995, March 28, 1996, April 10, 1997, April 9, 1998, March 25, 1999, April 6, 2000, May 8, 2001

Geriatric Drug Dosing, Aging/Geriatric Dentistry, Junior Dental Students, UAB School of Dentistry, April 20, 1995.

*Pamela J. Sims, Pharm.D., Ph.D.*                                               15

Pharmacological Consideration in Children I and II, Fundamentals of Pediatric Dentistry, Pedodontics Residents, UAB School of Dentistry, February 13 and 27, 1995.

Clinical Pharmacology of Antibiotics, Topical Analgesics, Antiseptics, and Anti-infectives. Advanced General Practice Residents, UAB School of Dentistry, February 2, 1994.

Clinical Pharmacology of Anxiolytic, Sedative/Hypnotic and Analgesic Agents. Advanced General Practice Residents, UAB School of Dentistry, January 26, 1994.

Pharmacological Aspects of Aging. Geriatric Dentistry, UAB School of Dentistry, January 19, 1994.

Pediatric Clinical Pharmacology of Analgesics, Pediatric Dentistry, UAB School of Dentistry and The Children's Hospital of Alabama, December 9, 1993.

Geriatric Clinical Pharmacology of Anxiolytic, Sedative/Hypnotic and Analgesic Agents. Geriatric Dentistry, UAB School of Dentistry, November 1, 1993.

Pediatric Clinical Pharmacology of Antibiotics, Pediatric Dentistry, UAB School of Dentistry and The Children's Hospital of Alabama, October 28, 1993.

Pediatric Clinical Pharmacology of Anxiolytics and Sedative/Hypnotics, Pediatric Dentistry, UAB School of Dentistry and The Children's Hospital of Alabama, October 21, 1993.

Pharmacotherapy and Aging. Advanced General Practice Residents, UAB School of Dentistry. August 1993.

Pediatric Pharmacology, Pedodontics Residents, UAB School of Dentistry, November, 1992.

Oral Effects of Medications. Advanced General Practice Residents, UAB School of Dentistry, May 1992, April 1993, April 1993.

Pediatric Patients and the Oral Effects of Medications. Pedodontics Residents, UAB School of Dentistry, April 1992.

Oral Effects of Drugs and the Elderly, Geriatric Dentistry, UAB School of Dentistry Birmingham, AL, January 1992.

**Medicine:**

Pediatric Pulmonary Pharmacology, UAB School of Medicine, Department of Pediatrics, Pulmonary Division, Post-doctoral fellows, October 6 - November 3, 1993.

Developmental Pharmacology, Pharmacokinetics and Pharmacodynamics, UAB School of Medicine, Department of Pediatrics, Neonatal and Critical Care Division, Physicians, July - August 1992.

Drug Interactions and the Pharmacokinetic Effects, Pediatric Grand Rounds, UAB School of Medicine, Department of Pediatrics, April 2, 1992.

*Pamela J. Sims, Pharm.D., Ph.D.*                                                                    16

Pediatric Pharmacokinetics. Noon Conference. UAB School of Medicine, Department of Pediatrics, July 1991.

**Nursing:**

Developmental Physiology and Pharmacology, UAB School of Nursing, CRNP Neonatal Specialists, April 19, 1994.

Pediatric Drug Dosing, UAB School of Nursing, CRNP Program, January 1993.

Pediatric Pharmacology and Therapeutics, UAB School of Nursing, CRNP Program, January 1992.

Pediatric Pharmacology Review. UAB School of Nursing, Masters program for Family Practice and Pediatric Nurse Practitioners, July 1991.

**Nutrition:**

Drugs and Nutrition.  Samford University Department of Home Economics, November 1990.

Food/Drug Interactions, Idaho State University, Department of Home Economics Pocatello, ID, April 1989.

**Occupational Therapy:**

Pharmacodynamics and Pharmacokinetics of Aging, Geriatrics, Graduate Occupational Therapy Students, UAB School of Health Related Professions, January 21, 1995, January 29, 1996.

Drugs and Drug Problems in the Older Adult, Occupational Therapy, UAB School of Health Related Professions, March 20, 1994.

Drugs and the Elderly, Occupational Therapy, UAB School of Health Related Professions, May 1993.

**Optometry:**

Pharmacology and Aging, Optometric Gerontology, Junior Optometry Students, UAB School of Optometry, September 17, 1996.

Pharmacodynamics and Pharmacokinetics of Aging, Optometric Gerontology, Senior Optometry Students, UAB School of Optometry, October 24, 1995.

Systemic Medications and the Elderly Adult, Optometric Gerontology, Junior Students, AB School of Optometry, May 17, 1994, November 4, 1994, November 4, 1994.

Considerations of Drug Interactions, UAB School of Optometry, Junior Students, May 17, 1994, November 4, 1994.

Systemic Effects of Medications in the Elderly, Geriatrics, UAB School of Optometry, March 1992, May 1993.

Adverse Drug Reactions in the Elderly, Geriatrics, UAB School of Optometry, March 1992, May 1993.

Systemic Medications and the Elderly Adult, UAB School of Optometry, Junior Students, May 1991, March 1992, May 1993, May 17, 1994, November 4, 1994.

Consideration of Drug Interactions and the Eye, UAB School of Optometry, Junior Students, May 1991, March 1992, May 1993, May 17, 1994, November 4, 1994.

**Pharmacology:**

Introduction to Pharmacokinetics, Pharmacology I, Principles of Pharmacology, UAB Department of Pharmacology, Graduate Pharmacology Curriculum, October 1,2,3, 1994, November 5, 8, 12, 15, 1996.

**<u>Continuing Education Programs:</u>**

**Accounting:**

Drug Testing in the Workplace, South Birmingham Chapter of the Institute of Management Accountants, January 17, 1995.

Drug Testing in the Workplace, Alabama Society of CPAs, Birmingham Chapter, January 10, 1995.

Drug Testing in the Workplace, Keynote Speaker, UAB ASWA Institute of Management Accountants, UAB Professional Accountancy Day, September 23, 1994.

Drug Testing in the Workplace, Institute of Management Accountants, Birmingham, AL, April 19, 1994.

**Dieticians:**

Food-drug Interactions, Birmingham Dietetic Society, May 16, 1996.

**Dentistry:**

Managing Acute Pain in Chronic Pain Patients. Commonwealth Study Club, Fredericksburg, VA, September 15, 2015.

Understanding the Medications Your Patient Takes; Drug Testing and Drugs of Abuse: What's Important for Dentistry? 9th Annual Dental Hygiene Symposium, Birmingham, AL, August 21, 22, 2015.

Overview of Pharmacokinetics; Pharmacologic Effects of Medications; Mechanisms of Drug Interactions; Pharmacology of Aging; Preventing Infection; Local Anesthetic Drug Interactions and Allergies; Behavior Modification; Acute Pain Management; Emergency Medications. Georgia Advanced General Dentistry MasterTrack Program, Atlanta, GA. August 7, 8, 2015.

Important Pharmacokinetic and Pharmacologic Considerations for Behavior Management During Minimal and Moderate Sedation, Wilson Chenault Dental Study Club, Decatur, AL, June 23, 2015.

Behavior Modification; Antibiotic Prophylaxis; Local Anesthetics and Drug Interactions; Managing Acute Pain in Chronic Pain Patients. Florida Dental Convention, Orlando, FL, June 11-12, 2015,

The Top 100 Drugs Patients Take:  What the Dentist and Staff Need to Know. Louisiana AGD, Baton Rouge, LA, May 1, 2015.

Impact of Aging on Oral Health. Sixth District Dental Society, Tuscaloosa, AL. April 17, 2015.

Case Studies in Pharmacology:  Finding the Best Solution for your Patient, AIDA 2015 Ski and Learn Seminar, Big Sky, Montana, March 19, 2015.

Acute Pain Management; Dental Concerns for PTSD Medications; Local Anesthetic Drug Interactions and Allergies Preventing Infection. US Army Fort Gordon Dentac. Augusta, GA, October 23, 24, 2014.

A Review of Medications Used in Dentistry. Leon County Dental Association, Tallahassee, FL, September 19, 2014

Antibiotic Prophylaxis; Drug Interactions with Local Anesthesia. Second District Dental Society, Montgomery, AL, May 2, 2014

The Top 200 Drugs Patients Take:  Impact on Dental Care, Pharmacologic Considerations in the Dental Treatment of Patients with Post Traumatic Stress Disorder. US Army Fort Sill Dentac, Fort Sill, Oklahoma, March 27, 28, 2014

Important Drug Interactions with Local Anesthesia; The Use and Abuse of Pain Medications. 2014 Alumni Weekend, UAB School of Dentistry Alumni Association, Birmingham, AL, February 7, 2014

Medications Used in Dentistry. US Army Dentac, Fort Benning, GA, October 24, 25, 2013.

Pharmacology Update:  Drugs Important to Dentistry. Central District Dental Society, Columbia, SC, September 13, 2013.

Oral Minimal Sedation. UAB CDE, Birmingham, AL, May 3-4, 2013.

Analgesic Use and Abuse, Answering Important Dental Questions. Wiregrass Study Club. Dothan, AL. April 25, 2013.

The Top 200 Drugs. Alabama Academy of General Dentistry and Birmingham District Dental Society Around the State Meetings. Birmingham, AL. April 5, 2013.

Update on Medications Used in Dentistry: Antibiotics, Sedatives, Local Anesthetics, Analgesics. Naval Postgraduate Dental School, Bethesda, MD. March 22, 2013.

*Pamela J. Sims, Pharm.D., Ph.D.*                                                    19

Perioperative Use of Antibiotics, NSAIDs and Steroids. Edward C. Penick Endodontic Study Club. Bethesda, MD. March 21, 2013.

The Top 200 Drugs Patients Take: their Impact on Dentistry. 2013 NWDDA Annual Meeting, Pensacola Beach, FL. February 8, 2013.

Treating Acute Pain in Chronic Pain Patients. Birmingham District Dental Society, Birmingham, AL. January 8, 2013.

Preventing and Treating Infection, Emergency Medications. Third District Dental Society, Dothan, AL. December 14, 2012.

Preventing and Treating Infection, Pain Management, Local Anesthetics, Behavior Modification. United States Dental Activity. Fort Sill, OK. October 25-26, 2012.

Pharmacology Update for Pediatric Dentists: Antibiotics and Pain Management. Dental Health Education. Atlanta, GA. October 6, 2012.

A Review and Update in Mild, Moderate and Deep Sedation. UAB CDE, Birmingham, AL. September 28, 29, 2012.

Antibiotics, Analgesics, Local Anesthetics, Behavior Modification. The United States Army Dental Activity Postgraduate Dental Program, Fort Gordon, Georgia. September 13-14, 2012.

Pharmacology Update: Medications Important to Dentistry. LSU Continuing Dental Education, Lake Charles, LA, February 24, 2012

Perioperative Use of antibiotics, steroids and NSAIDs and Dental Implications of Medications used to treat Osteoporosis. Birmingham District Dental Society, January 3, 2012

Refresher Course in Sedation. UAB CDE, Birmingham, AL, August 5-6, 2011, January 30, 31, 2015.

Pharmacology Update: Medications Important to Dentistry. LSU Continuing Dental Education, Shreveport, LA, March 18, 2011

Preventing Infections in the Dental Patient and Local Anesthetic Choice and Drug Interactions. 3rd District Dental Society of Mississippi. Meridian MS, February 11, 2011

Top 200 Drugs Your Patient Takes: Importance to Dentistry. Army Advanced Education Program in Periodontics, Prosthodontics and Endodontics, Fort Gordon, GA. January 20-21, 2011

Pharmacology Update: Medications Important to Dentistry, Fall Seminar, Seventh District, Tennessee Dental Association, Jackson, TN, November 12, 2010

Pharmacology Review: Sedation Drugs, University of Texas at Houston, School of Dentistry, Houston, TX, August 23, 2010

Pharmacology Update: Medications Important to Dentistry, 141st Annual Session

*Pamela J. Sims, Pharm.D., Ph.D.*                                            20

Alabama Dental Association, Perdido Beach, AL, June 12, 2010

Pediatric Medications:  Implications for Dental Treatment, American Academy of Pediatric Dentistry, 63rd Annual Session, Chicago, IL, May 28, 2010

The Top 200 Drugs:  What the Dentist and Staff Need to Know, Star of the South Dental Meeting, Houston, TX, April 16, 2010

Medications Used Most by Dentists, Carolina Mountain Dental Education Club, Ashville, NC, March 31, 2010

The Top 200 Drugs Patients Take:  What the Dentist and Staff Need to Know, Mobile Area Dental Society, Foley, AL, March 19, 2010

Pharmacology, Georgia AGD Mastership, Atlanta, GA, December 6, 2009

Pharmacology Update:  Medications Important to Dentistry, 2nd District Alabama Dental Association, Montgomery, AL, November 13, 2009

The Top 200 Drugs Patients Take: What the Dentist and Staff Need to Know, Jackson, TN, October 2, 2009

Update on Medications and Drug Interactions for the Pediatric Dentist, VitalSmiles, Hoover, AL, September 18, 2009

The Top 200 Drugs Patients Take:  What the Dentist and Staff Need to Know, Academy of General Dentistry's 36th Annual Review of Dentistry, SanDestin, FL, September 12, 2009

100 Most Prescribed Drugs and How They Affect Your Dental Patient, Mississippi Dental Association Annual Meeting, SanDestin, FL, June 17, 2009

Medications that are Important to Dentistry, Drug Abuse:  Its Impact on Dentistry, LSU Dental Continuing Education, New Orleans, LA, March 20, 2009

Update on Medications and Drug Interactions for the Pediatric Dentist, University of Tennessee Pediatric Dental Alumni Association, Memphis, TN, February 23, 2008

Pharmacology Update:  Medications Important to Dentistry, 1st District Dental Society, Hickory, NC, February 16, 2008

New Guidelines to Antibiotic Prophylaxis, Birmingham District Dental Society, Hoover, AL, September 11, 2007

Pharmacology Update:  Medications Important to Dentistry, 138th Annual Session Alabama Dental Association, Orange Beach, AL, June 16, 2007

Medications Important to Pediatric Dentists, Birmingham Pediatric Dental Society, Birmingham, AL, April 10, 2007

Review of Pharmaceuticals Used in Dental Practice, Central District Dental Society, Columbia, SC, March 23, 2007

*Pamela J. Sims, Pharm.D., Ph.D.*                                        21

Review of Pharmaceuticals Used in Dental Practice, North Taiwan Dental Alumni, Taipei, Taiwan, December 31, 2006

Methamphetamine.  Osteonecrosis and Bisphosphonates, 2nd District Dental Society, Montgomery, AL, November 3, 2006

Street Drugs, University of Washington Continuing Dental Education, Seattle, WA, September 22, 2006

Review of Drug Used in Dental Practice, TLC Study Club, Columbia, SC, July 14, 2006

Knowing Your Patient's Medical and Medication History: The Top 200 Drugs and Herbs, Around the State AGD Meeting, Anniston, AL, May 12, 2006

Review of Pharmaceuticals Used in Dental Practice, 2006 Annual Spring Meeting of the Meridian Area Dental Society, Meridian, MS  May 5, 2006

Pharmacology Review, Pharmacokinetics, Pharmacology of Sedative Drugs, Benzodiazepines and Opiates, Pharmacology of Sedative Drugs Barbiturates, Antiemetics, Propofol, Ketamine, Drug-Drug Interactions.  IV Sedation Course Mini-Residency, UAB School of Dentistry, Department of Oral maxillofacial Surgery, Birmingham, AL, April 18, 1998, April 17, 1999, April 15, 2000, April 21, 2001, April 13, 2002, April 12, 2003, April 16, 2004, September 28, 2004, April 20, 2006, April 12, 2007, May 17, 2007, March 13, 2008, April 10, 2008, February 5, 2009, March 5, 2009, March 4, 2010, March 31, 2011, April 12, 2012, April 12, 2013, March 6, 2014, March 6, 2015.

Knowing Your Patient's Medical and Medication History: The Top 200 Drugs and Herbs, Fourth District Dental Society, Jackson, MS January 20, 2006

Medications Important to the Pediatric Dentist, Alabama Academy of Pediatric Dentistry Annual Meeting, Birmingham, AL December 3, 2005

The Top 200 Drugs and Herbals: What the dentist and staff need to know, 2nd District Dental Society, Montgomery, AL November 11, 2005

Medications and Children, Birmingham Pediatric Dentistry Association, Birmingham, AL April 12, 2005

The Top Twenty Facts Dentists Should Know About a Patient's Medications, Birmingham District Dental Society, Birmingham, AL  January 7, 2005
The Top 100 Prescribed Drugs: Their Importance to Dentistry, Alabama Academy of General Dentistry 2004 31st Annual Review of Dentistry,  San Destin Beach Resort, San Destin, FL September 8, 2004

Drugs Your Patients Take (The Top 100 Prescribed Drugs: what the dentist needs to know), 2004 CE Seminar, Montgomery Country Club, Montgomery, AL August 13, 2004

Herbal Products and Patients' Medications: Are they concerns for dentists? American Association of Endodontists 2004 Annual Session, Anaheim, CA  May 6, 2004

The Top 100 Drugs: What the dentist needs to know, Tennessee 7th District Dental

*Pamela J. Sims, Pharm.D., Ph.D.*                                              22

Society Postgraduate Seminar, Jackson, TN  February 13, 2004

Drugs of Abuse, Pain Management, University of Iowa School of Dentistry, Iowa City, Iowa, November 14, 2003

Faculty Grand Rounds, UAB School of Dentistry, June 27, 2003

Herbal Products: Concerns for the Dental Patient, Birmingham, Al, September 21, 2002, June 14, 2003

Preventing Infection and Managing Pain in the Dental Patient, AGD 29th Annual Review of Dentistry, Destin, Fl, September 6, 2002

The Top 100 Drugs: What the dentist needs to know, UAB School of Dentistry Birmingham, Al, August 16, 2002,

Medications patients take: Ten important to dental care, Wilson Chenault Study Club, Decatur, AL, June 25, 2002

Acute Pain Management and Antibiotic Prophylaxis.  Tennessee Dental Association Annual Meeting, Chattanooga, Tennessee May 17, 2002

Managing Pain and Behavior in the Dental Patient.  Oregon Dental Conference. Portland, Oregon. April 12, 2002

Acute Pain Management and Antibiotic Prophylaxis.  Alabama Implant Study Group, Birmingham, AL, January 25, 2002

Everything You Wanted to Know About Street Drugs and Antibiotic Premedications. Birmingham District Dental Society Annual Half-Day Seminar, Birmingham, AL, January 18, 2002

Pain Control and Sedation Techniques for the General Dentist.  Pain Control and Nitrous Oxide Sedation, Naval Postgraduate Dental School, National Naval Dental Center, Bethesda, Maryland, November 15, 2001

Challenges of Treating Children taking Psychotropic Drugs, 54th Annual Session of the American Academy of Pediatric Dentistry, Atlanta, GA, May 26, 2001.

Academy of General Dentistry VI Mastership program, UAB School of Dentistry, Birmingham, AL, January 26, March and May 11, 2001.
Over the Counter Dental Products, UAB School of Dentistry, Birmingham, AL, April 6, 2001

Management of Pain, Pain Control and Nitrous Oxide Sedation, Naval Postgraduate Dental School, Bethesda, Maryland, December 13, 2000.

The Top 100 Drugs: What the Dentist Needs to Know.  University of Alabama at Birmingham,  School of Dentistry.  Birmingham, AL, August 25, 2000.

Choosing the Right Medication for Your Pediatric Dental Patient: Important Pharmacologic Considerations. American Academy of Pediatric Dentistry 53rd Annual

*Pamela J. Sims, Pharm.D., Ph.D.*                                                    23

Session, Nashville, Tennessee, May 26, 2000

Street and Recreational Drugs: What is the Impact on Dentistry? UAB School of Dentistry, Continuing Education Program, Birmingham, AL., April 14, 2000

Pain Management. Chattanooga Area Dental Society, Chattanooga, TN, February 18, 2000.

Behavior Control. Chattanooga Area Dental Society, Chattanooga, TN, February 18, 2000.

Over the Counter Dental Products: What the dentist and staff need to know.  Third District Dental Society, Dothan, AL, February 12, 2000

Preventing or Treating Infection, Second District Dental Society, Montgomery, AL, February 11, 2000

Pain Management, Second District Dental Society, Montgomery, AL, February 11, 2000

Medications to Control Behavior, Atlanta Periodontal Study Club, Atlanta, GA, November 14, 1999.

Over the Counter Drugs and Dentistry, Academy of General Dentistry Mastership Program Reunion,  UAB School of Dentistry, October 29, 1999.

Pharmacologic Considerations for Periodontists, 85th Annual Meeting of the American Academy of Periodontology, San Antonio, Texas, September 28, 1999.

Over the Counter Dental Products, UAB School of Dentistry Continuing Education program, September 17, 1999

Pharmacology Update 1999, Academy of General Dentistry's 26th Annual review of Dentistry, Hilton San Destin Beach and Golf Resort, Florida, September 11, 1999

Drug and Drug Interactions, Alabama Dental Society Eightieth Annual State Convention and the National Dental Association District IV Convention, San Destin Resort, Florida June 4, 1999

Controlling Pain and Behavior in the Dental Patient, UAB School of Dentistry, Continuing Education Program, April 16, 1999.

Medications Most Commonly Used in Dentistry, Jefferson County Health Department Dental Services Continuing Education Program, December 18, 1998.

Antibiotics, Academy of General Dentistry V Mastership Program, UAB School of Pharmacy, December 4, 1998.

Pain and Fear Control, Academy of General Dentistry V Mastership Program, UAB School of Dentistry, October 9, 1998.

Medications Commonly Used in Dentistry, UAB School of Dentistry, Continuing Education Program, September 25, 1998.

*Pamela J. Sims, Pharm.D., Ph.D.*                                                      24

An Update on Antibiotics.  Atlanta Periodontal Study Group, Atlanta, Georgia, July 12, 1998.

Choosing the Right Medication for Your Dental Patient: Important Pharmacologic Consideration for Dentistry.  Alabama Dental Association 129th Annual Meeting, Perdido Beach Resort, June 20, 1998.

Controlling Pain and Behavior in the Dental Patient, Indiana University Dental Continuing Programs, Indianapolis, IN, May 15, 1998.

Update on Antibiotics, Indiana University Dental Continuing Education Programs, Indianapolis, IN, May 15, 1998.

Update on Antibiotics, UAB School of Dentistry, Birmingham, AL, May 8, 1998.

Medications Commonly Used in Dentistry, Alumni Weekend: Celebrating 50 Years of Success, University of Alabama School of Dentistry, Birmingham, AL, February 6, 1998.

Interaction of the Top 200 Drugs, Birmingham District Dental Society, Birmingham, AL, January 16, 1998.

Sedation of Pediatric Patients, Birmingham District Society of Pediatric Dentists, Birmingham, AL, January 13, 1998.

Pharmacology Review, Academy of General Dentistry Mastership Program, Birmingham, AL, September 19, 1997 and November 7, 1997.

Medications Commonly Used in Dentistry, Ninth District Dental Society, Auburn, AL, September 25, 1997.

Controlling Pain and Behavior in the Dental Patient, University of Alabama at Birmingham School of Dentistry, Birmingham, AL, September 12, 1997.

The Top 200 Drugs: What the Dentist Should Know, Alabama Academy of General Dentistry 24th Annual Review of Dentistry, Destin, FL, September 4-7, 1997.
The Most Commonly Used Drugs in Dentistry, Alabama Dental Hygienists Association Annual Session, Huntsville, Al, June 6-7, 1997.

Update on Antibiotics, Pediatric Dental Grand Rounds, June 5,12,19,1997.

Update on Antibiotics, UAB School of Dentistry CE,  Birmingham, AL, May 2, 1997.

Antimicrobial Update, Behavior Management, Local Anesthetics, Fifth District Dental Society, Gadsden, Al, February 14, 1997.

Dental Pharmacology, AGD Mastership Program, UAB School of Dentistry, Birmingham, AL, November 22, 1996.

Dental Pharmacology, AGD Mastership Program, UAB School of Dentistry, Birmingham, AL, October 25, 1996.

*Pamela J. Sims, Pharm.D., Ph.D.*                                       25

Dental Pharmacology, AGD Mastership Program, UAB School of Dentistry, Birmingham, AL, August 23, 1996.

Controlling Pain and Behavior in the Dental Patient, UAB School of Dentistry CE, Birmingham, AL, August 9, 1996.

Dental Pharmacology, AGD Mastership Program, UAB School of Dentistry, Birmingham, AL, April 19, 1996.

The Dental Pharmacy Interface, Birmingham Advanced Dental Study Group, Birmingham, AL, March 25, 1996.

Dental-Drug Interactions for the Top 200 Drugs, Eighth District Dental Society,. Huntsville, Al, March 8, 1996.

Medications and the Dental Patient, New Developments in Antibiotic and Pain Therapy for the Dental Patient, District Dental Society, Montgomery, AL, January 19, 1996.

Medications and Complications, Dental Care for the Elderly, Jefferson County Department of Health, Dental Division, Birmingham, AL, September 29, 1995.

Drug Therapy in the Dental Practice and Its Risks, UAB School of Dentistry CE, Birmingham, AL, August 18, 1995.

Pharmacology Update for Dentists II, Third District Dental Society, Lake Pointe, AL, May 11, 1995.

Pharmacology Update for the Dentist, Third District Dental Society, Dothan, AL, October 6, 1994.

Drug Therapy in Dental Practice and Its Risks, UAB School of Dentistry, CE Program, September 30, 1994.

Drug Therapy in Dental Practice and Its Risks, UAB School of Dentistry, CE Program, April 8, 1994.

Medications and the Dental Patient. Birmingham District Dental Society Annual Meeting, November 12, 1993.

Reducing Risk in Dental Patients, AIAGD Annual Review of Dentistry, San Destin, FL, September 1993.
Your Dental Patient and Their Medications, Eighth District Dental Society Annual Meeting, Huntsville, AL, May 1993.

Current Risks in Dentistry, UAB School of Dentistry, Continuing Education Program, March 27, 1993.

Medications and the Dental Patients, Birmingham Dental Hygiene Club January 1993.

Pediatric Patients and Their Medications, Jefferson County Pedodontics Society, November 1992.

*Pamela J. Sims, Pharm.D., Ph.D.*                                         26

The Dental Pharmacy Interface, The Impact of Pharmacotherapy on Dental Practice, ALDAPAC Annual Meeting, Birmingham, AL, November 1992.

Dental Patients and their Medications. Alabama Dental Hygiene Convention, Birmingham, AL, October 1992.

Oral Effects of Medications, ACIPCO Department of Dentistry, January 1992.

Oral Effects of Drugs in the Elderly. Oral Health for Long-Term Care Residents. The University of Alabama School of Dentistry and Jefferson County Department of Health, Birmingham, AL, February 1991.

**Medicine:**

Bioequivalence, Therapeutic Equivalence, and Clinical Case Management: A Thyroid Disease Advisory Board, Dallas, TX, May 30-31, 2003

Knowing You're A's and B's: Bioequivalence and Narrow Therapeutic Range Twelfth Annual Meeting and Clinical Congress of the American Association of Clinical Endocrinologists, San Diego, CA, May 16, 2003

Drug Interactions of SSRIs and COX-II Inhibitors.  Trace Crossings Family Medicine, Hoover, AL, February 21, 2002

Drug Interactions of COX-II Inhibitors and SSRIs.  St. Vincent's Hospital, Birmingham, AL, July 17, 2001

Important Consideration of COX-II Inhibitors, Physician CE, ACIPCO, Birmingham, AL, May 7, 2001.

Important Consideration of COX-II Inhibitors, Physician CE, Birmingham, AL, April 3, 2001, April 24, 2001.

Drug Interactions of COX-II Inhibitors, Physician CE, Birmingham, AL, March 28, 2001

Important Consideration of COX-II Inhibitors, Physician CE, Florence, AL, January11, 2001 April 3, 2001, April 24, 2001.

AB Ratings and Narrow Therapeutic Range Drug Product Selection. Med Management, St. Vincent's Hospital, November 1, 1997.

**Nursing:**

Neonatal Pharmacology, A Neonatal Intensive Care Review Conference for the Registered Nurse, AL Association of Neonatal Nurses, Birmingham, AL,  August 14, 1996.

**Optometry:**

Consideration of Drug Interactions, CE Program, UAB School of Optometry,  September 1991.

*Pamela J. Sims, Pharm.D., Ph.D.*                                            27

Systemic Medications and the Elderly Adult, CE Program, UAB School of Optometry, September 1991.

Systemic Medications and the Elderly Adult, CE Program, UAB School of Optometry, September 1990.

Consideration of Drug Interactions, CE Program, UAB School of Optometry, September 1990.

**Pharmacy:**

Drug Monitoring in the Elderly, McWhorter School of Pharmacy Continuing Education, Birmingham, AL, October 12, 2014.

Preventing Infection, Jefferson County Pharmaceutical Association, Birmingham, AL, September 11, 2014

Medication Allergies, Fall CE Program, Alabama Pharmacy Association, Montgomery, AL, October 10, 2010

Pharmacologic Aspects of Aging, Samford University McWhorter School of Pharmacy Consultant Pharmacists Program, Birmingham, AL, October 18, 2009

The ABCs of Product Selection: Important Considerations of Bioequivalency and Narrow Therapeutic Range, Samford University School of Pharmacy CE Program, National Webcast, June 25, 2003

Drug Product Selection: Important Considerations for the Pharmacist, CVS Pharmacists, Birmingham, AL November 15, 2000.

Management of Acute Pain in the Ambulatory Setting, CVS Pharmacists, Birmingham, AL November 15, 2000.

Drug Product Selection: Important Considerations for the Pharmacist, CVS Pharmacists, Birmingham, AL November 15, 2000.

Management of Acute Pain in the Ambulatory Setting, CVS Pharmacists, Birmingham, AL November 14, 2000

Drug Product Selection: Important Considerations for the Pharmacist, CVS Pharmacists, Birmingham, AL November 14, 2000.

COX-II Inhibitors, Powers Rx, Pfizer, Inc. Birmingham, AL October 11, 2000.

Pharmacologic Approaches to Pain Management.  125th Annual Convention of the Georgia Pharmacy Association, Amelia Island, Florida, June 18, 2000.
Management of Acute Pain in the Ambulatory Setting.  CVS Pharmacists, Montgomery, AL.  June 8 & 9, 2000

Management of Acute Pain in the Ambulatory Setting, Continuing Education Program for Publix Pharmacists, Jacksonville, FL, May 12, 2000

*Pamela J. Sims, Pharm.D., Ph.D.*                                                             28

Management of Acute Pain in the Ambulatory Setting, Continuing Education Program for Publix Pharmacists, Atlanta, GA, May 8, 2000

Important Considerations for the Pharmacist in Drug Product Selection, Jefferson County Pharmaceutical Association, October 14, 1999.

Important Considerations for the Pharmacist in Drug Product Selection, 118th Annual AL Pharmacy Association Convention and Trade Show, San Destin Resort, FL, June 28, 1999.

Hypothyroidism: The Pharmacist's Role, The University of Minnesota College of Pharmacy Visiting Faculty Program, The Pointe Hilton Resort at Tapatio Cliffs, Phoenix, AZ, May 15, 1999

Pharmacy Through the Decades, Panel Discussion, 75th Anniversary Conference, University of Florida, Gainesville, FL, April 9, 1999.

Important Considerations for the Pharmacist in Drug Product Selections, Continuing Education Program for Publix Pharmacists, Atlanta, GA, March 29, 1999.

Applying PBL to the Early Practice Experiences, Preceptor Program for Faculty, February 17, 1999.

Understanding Drug Metabolism through the Liver and P450 Enzymes.  Preceptor Program and Continuing Education, Samford University McWhorter School of Pharmacy Continuing Education Program, January 24, 1999.

Update of Pharmacology of Opioid Analgesics, Opioid Analgesics-Pharmacology and Regulatory Issues: An Update for the Pharmacist, Raley's, Bel Air and Nob Hill Pharmacy Continuing Education Program, Sacramento, CA, October 24, 1998.

The Physiological and Pharmacokinetic Components of Drug Behavior in the Patient.  A Continuing Education Program to Discuss Therapeutic Substitution, November 23, 1997.

AB Ratings and Narrow Therapeutic Range Drug Product Selection.  New Perspectives in Thyroid Disease: Clinical, Legal and Communications Issues, Lisle, Illinois, June 21, 1997.
AB Ratings and Narrow Therapeutic Range Drug Product Selection, New Perspectives in Thyroid Disease: Clinical, Legal and Communications Issues, Pharmaceutical Care Management Association Symposium, Dallas, TX, February 22, 1997.

Non-traditional Pharm.D. Program, Contemporary Issues Affecting Pharmacy, Jefferson County Pharmaceutical Association, Birmingham, AL, May 9, 1996.

Pharmacokinetics and Pharmacodynamics of Aging.  Samford University School of Pharmacy CE Program, Birmingham, AL,  December 10, 1995.

Update on Quinolone Antibiotics. Brookwood Hospital Pharmacy, Birmingham, AL, October 26, 1994.
Pharmaceutical Care in the Ambulatory Setting. Infectious Disease. Samford University School of Pharmacy CE Program, Birmingham, AL, October 17, 1993.

*Pamela J. Sims, Pharm.D., Ph.D.*                                              29

Update on Antimicrobials, APA Annual Convention, Bay Point Resort, Fl, June 1993.

Drug Testing in the Workplace, What the Pharmacist Should Know, KPA Annual Convention, Owensboro, Kentucky, June 1993.

Advances in Drug Delivery Systems. Advances in Drug Delivery. Samford University School of Pharmacy CE Program, Birmingham, AL, November 1992.

Medications for Childhood Disorders and Illnesses. Pediatrics Update. Samford University School of Pharmacy CE Program, Birmingham, AL, October 1992.

Drug Level Monitoring of Psychotropic Medications. Drugs and Their Use in Treating Psychiatric Disorders. Samford University School of Pharmacy CE Program, Birmingham, AL, September 1992.

Urine Drug Testing in the Workplace. Continuing Education to Eckerd Pharmacists, Birmingham, AL, September 1991.

Drug Testing in the Workplace. Substance Abuse, Samford University School of Pharmacy CE Program, Birmingham, AL, February 1991.

Food and Drug Interactions:  Special Considerations in the Elderly. 1991 Interim Meeting West Virginia Pharmacists Association and West Virginia Society of Hospital Pharmacists, Charleston, WV, February 1991.

Advances in Drug Delivery Systems, Samford University CE Program , Birmingham, AL, January 1990.

Pharmacokinetic and Pharmacodynamic Changes in the Elderly, C.E. Program for Geriatric Certificate Program, Post Falls, ID, February 1989.

Pharmacokinetic and Pharmacodynamic Changes in the Elderly, C.E. Program for Geriatric Certificate Program, Pocatello, ID, February 1989.

Pharmacokinetic and Pharmacodynamic Changes in the Elderly, C.E. Program for Geriatric Certificate Program, Boise, ID, February 1989.

## Other International Meetings:

Can I use PBL in a large class? An application of modified PBL, National Clinical Pharmacy Education Symposium, Meijo University, Nagoya, Japan  February, 2005

## Other National Meetings:

Equipping Future Nurse Prescribers Through a Blended Advanced Pharmacology and Therapeutics Course, National Organization of Nurse Practitioner Faculty, Washington DC, April 16, 2010

Legal Issues in Pharmacy Academia:  Implications for Educators, 2009 American Association of Colleges of Pharmacy Annual Meeting, Boston, MA, July 19, 2009.

*Pamela J. Sims, Pharm.D., Ph.D.*                                        30

Faculty Recruitment and Retention, AACP Annual Meeting and Seminars, Minneapolis, MN, July 22, 2004

Effectiveness of Critical Thinking Teaching Methods: A Focus on Problem-Based Learning, AACP 2003 Spring Practice and Research Forum and Updates in Therapeutics, Palm Springs, CA, April 28, 2003

Implementing Program Assessment, 2002 AACP Institute, Leesburg, VA, June 1, 2002

Multidimensional Program Assessment: Using Focus Groups to Map Curricular Competencies and Using Personality types to Adapt Course Delivery.  AACP Curriculum SIG program.  2001 AACP Annual Meeting and Seminars, Toronto, Canada July 10, 2001

Faculty Teaching Skill Renewal: A Seminar on Teaching as Scholarly Work.  Problem Based Learning.  2001 AACP Teachers Seminar, 2001 AACP Annual Meeting and Seminars, Toronto, Canada July 7, 2001

PBL Portfolios: Publishing the Scholarship of Teaching, PBL 2000 Conference, Birmingham, AL October 30, 2000.

Overview of the PBL-PR Grant, PBL 2000 Conference, Birmingham, AL October 30, 2000.

Lessons Learned, PBL 2000 Conference, Birmingham, AL October 30, 2000.

Assessment of PBL in a Large Class Setting, PBL in Pharmacy, PBL 2000 Conference, Birmingham, AL October 29, 2000.

Covington TR, Monk-Tutor MR, Sims P, Steil C, Webster A. One school's experience with accreditation and standards 2000: The Assessment Interface.  AACP Institute 2000. Leesburg, VA. May 19-23, 2000.

Sims PJ, Covington TR, Monk-Tutor MR, Steil C, Webster A. Program Assessment: The Scholarship of Teaching, AACP Institute 2000.  Leesburg, VA. May 19-23, 2000.

Portfolios-Applications in the Classroom and for the Scholarship of Teaching, 19th Annual Lilly Conference on College Teaching, Miami University, Oxford, Ohio, November 19, 1999

One Facilitator Model of Small Group Learning in a Large Class, 19th Annual Lilly Conference on College Teaching, Miami University, Oxford, Ohio, November 19, 1999

Creating a Culture of Quality Within a Professional School, 10th AAHE Conference on Assessment and Quality, Boston, MA, June 11-14, 1995.

Total Quality Applications in Pharmaceutical Education, 95th Annual AACP Meeting, Albuquerque, New Mexico, July 19, 1994.

*Pamela J. Sims, Pharm.D., Ph.D.*                                                            31

**Other Regional Conferences:**

Using Forensic Problems to Set the Hook, Alabama Academy of Science Annual Meeting, Problem-Based Learning in the Sciences: A Symposium, Birmingham, AL March 31, 2000

Drug Use During Breast-feeding, Breastfeeding Support in Health Care Settings Conference, Alabama Department of Public Health, Birmingham, AL, July 30, 1994.

Drugs and Lactation, Breastfeeding Educational Support Team, Birmingham, AL, March 15, 1994.

Career Pathway Panelist, APHA Regional Midyear Meeting, Boise, ID, November 1988. The symptomatology and pharmacokinetics of diazepam withdrawal in abusers. Annual Regional Conference for Hospital Pharmacy, Teachers, Residents and/or Graduate Students, Athens, GA, Spring 1983.

**Interdisciplinary Training:**

Living with the Pain of Arthritis, Alabama Department of Public Health Satellite Video conference, Montgomery, AL June 13, 2001

Pain and Pain Management, Satellite Conference, Alabama Department of Public Health, Montgomery, AL October 18, 2000.

Pharmacologic Considerations in the Elderly, Eighteenth Annual Conference Alabama Gerontological Society, Birmingham, AL, April 6, 1999.

Medication Use in the Elderly, UAB Center for Aging, Birmingham, AL, January 16, 1997.

Food and Drug Interactions, UAB Center for Aging, Geriatric Education Center's Summer Intensive, Birmingham, AL, June 14, 1996.

UAB CFA GEC Teleconference. Drug Use and the Older Adult, July 25, 1995.

UAB CFA GEC teleconference. Drug Use and the Older Adult, July 6, 1995.

Antimicrobial Update: Where Do the New Drugs Fit?, Thirteenth Annual Review of Modern Therapeutics, UAB School of Medicine at Huntsville, May 11-13,1995.

Drug-related Problems of the Elderly, 16th Annual Meeting of the Southern Gerontological Society, Fourteenth Conference of the Alabama Gerontological Society, April 19, 1995.

Nutritional Health, Drugs and Nutrition, UAB CFA GEC Ninth Annual Summer Interdisciplinary Core Curriculum, July 21, 1994.

Accuracy of Predictive Measures in Geriatric Medicine, UAB Center for Aging, Scientific Seminar Series, January 28, 1994.

Geriatric Drug Dosing. UAB School of Medicine, Division of Gerontology/Geriatric

*Pamela J. Sims, Pharm.D., Ph.D.*                                              32

Medicine, Noon Conference. January 27, 1994.

Update on Antibiotics:  Mechanisms and New Drug Treatments. UAB School of Medicine and University Hospital, Department of Pathology. December 15, 1993.

Medications and the Older Adult. UAB CFA GEC Audio Teleconference. November 16, 1993.

Medications and the Older Adult. UAB CFA GEC Audio Teleconference. November 11, 1993.

Drugs and Drug Problems in the Elderly. UAB GEC Eighth Annual Summer Interdisciplinary Core Curriculum, July 1993.

Drug Use in the Older Adult, UAB GEC Seventh Annual Summer Interdisciplinary Core Curriculum, July 1992.

Drug Use in the Older Adult, UAB GEC Outreach Program, Audio Teleconference, February 1992.

Pharmacokinetics of Corticosteroid in Pediatric Patients.  The Children's Hospital of Alabama Department of Allergy, Journal Club, September 1991.

Drugs and Drug Problems in the Older Adult, Sixth Annual UAB GEC Summer Interdisciplinary Core Curriculum, July 1991.

Drug Use in the Older Adult, UAB GEC Fifth Annual Summer Interdisciplinary Core Curriculum, July 1990.

Drug Use in the Older Adult, UAB GEC Fourth Annual Summer Interdisciplinary Core Curriculum, July 1989.

Pharmacokinetic and Pharmacodynamic Changes in the Elderly. Ft. Lyon Veteran's Administration Medical Center, Ft. Lyon, CO, March 1987.

**<u>Public Service:</u>**

A Career in Pharmacokinetics, Hoover High School Career Days, September 17, 1998.

Using Your Medications Wisely.  Vestavia AARP, February 14, 1995.

Correct Use of Pain and Sleep Medications. Positive Maturity Governor's Drug Conference, September 19, 1994.

Drug Testing in the Workplace, Rotary Club, Birmingham, AL, May 5, 1994.

Taking Your Medications Wisely, UAB MedWise Program, February 1993.

OTC Drugs and Your Health. Spring Garden Retirement Center, October 1991.

The Medicine Cabinet. Talk About Drugs Workshop. Positive Maturity Governor's Drug Conference. Birmingham, AL, September 1991.

*Pamela J. Sims, Pharm.D., Ph.D.*                                          33

Psychotropic Drugs: Administering and Side Effects, Seventh Annual Foster Home Conference, State of Alabama Department of Mental Health, Bessemer, AL, June 1991.

**Other Professional:**

Buchanan/Macon Teaching Workshop, "Using Forensic Cases in Problem Based Lecturing" and "Individual and Group Testing as Formative and Summative Assessment" Samford University, March 24, 2009

Pediatric Dentistry Residents, Graduation Program, UAB School of Dentistry, June 27, 2003

Assessment Outcomes Project, Samford University, McWhorter School of Pharmacy, Advisory Board, April 27, 2001.

Curricular Grant Presentation, Quality Council, Samford University, Birmingham, AL November 7, 2000.

Programmatic Assessment, Samford University McWhorter School of Pharmacy Advisory Board, Birmingham, AL November 3, 2000

Using Problem-Based Learning.  Ninth Annual 2000 Faculty Development Institute, The University of Alabama, Tuscaloosa, AL, August 11, 2000.

PBL Curriculum Development in the McWhorter School of Pharmacy.  Samford University July 13, 2000.

Dean JO, Sims, PJ, The State of PBL, McWhorter School of Pharmacy Report, Samford University SFT, Birmingham, AL., May 5, 2000.

Major C, Sims PJ, PBL Workshop, Butler University School of Pharmacy, Indianapolis Indiana, April 18, 2000.

PBL Update: McWhorter School of Pharmacy. Advisory Board Meeting, McWhorter School of Pharmacy, Samford University, October 29, 1999

PBL Success Stories: Therapeutic Drug Management I and II, Pre-School Faculty Workshop, Samford University, August 24, 1999

Therapeutic Drug Management II, The Pew PBL Initiative: 1999-2000 Course Design Presentations,  Samford University, August 11, 1999
Curricular Revision Utilizing TQM Tools, Shenandoah University, College of Pharmacy, October 31, 1995.

Hoshin Planning a Curriculum. St. John's University, Jamaica, NY, March 29, 30, 1995.

Clinical Pharmacokinetics as a Career: How Did I Get There?. ASP Convocation, Samford School of Pharmacy, September 1991.

Vancomycin Pharmacokinetics. In-service. The Children's Hospital of Alabama, Department of Pharmacy, September 1991.

*Pamela J. Sims, Pharm.D., Ph.D.*                                      34

Accuracy of Predictive Measures in Geriatric Patient Care, Samford University School of Pharmacy, Birmingham, AL, March 1989.

Accuracy of Predictive Clinical Measures in Geriatric Medicine, Auburn University School of Pharmacy, Auburn, AL, March 1989.

Accuracy of Predictive Measures in Geriatric Clinical Medicine, University of Nebraska Medical Center, Omaha, NE, January 1989.

Overview of Pharmacokinetics, Bannock Regional Medical Center, Pocatello, ID, November 1987.

The Accuracy of Creatinine Clearance Determinations in Adult and Geriatric Males, ISU College of Pharmacy, Pocatello, ID, February 1987.

Postgraduate Opportunities in Pharmacy Education, Convocation, University of Colorado, Denver, CO, October 1986.

Creatinine Clearance Determinations in the Elderly.  Geriatric Research Conference, University of Colorado Health Sciences Center, Denver, CO, April 1986.

Bayesian Versus Correlation Statistical Analysis of Predictive Measures. Geriatric Research Conference, University of Colorado Health Sciences Center, Denver, CO, November 1985.

Post Graduate Academic Opportunities, Convocation Presented by Colorado Society of Hospital Pharmacists and University of Colorado School of Pharmacy, Denver, CO, October 1985.

Protocols for Individualizing Aminoglycoside Dosage and Dosing Intervals Utilizing Serum Concentration and Time Data. Pharmacokinetic Consultation Service, Georgia Baptist Hospital, Atlanta, GA,  1983.

*\*My last name was formerly Rhodes.*

ELECTRONICALLY FILED
5/7/2019 3:54 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGGE, | ) | |
| Who sues as Administrator and | ) | |
| Personal Representative of the Estate of | ) | |
| ALBINA AGDASOVNA | ) | |
| SHARIFULLINA, Deceased, | ) | |
| | ) | |
| **Plaintiff,** | ) | Case No.:  CV 16-900001 |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MOTION TO CONTINUE

COMES NOW Daniel Snyder, by and through undersigned counsel, and moves the Court to continue the case from the current June 24, 2019 trial setting.  As grounds for this motion Snyder states the following:

1.      This case is currently set on the June 24, 2019 trial docket.

2.      Undersigned counsel currently has an older case set in Perry County, Alabama on June 24, 2019.  That case is entitled <u>Marion Bank and Trust v. Anchor Insurance Agency, Inc. d/b/a Marion Insurance Agency, Inc., et al.</u> in the Circuit Court of Perry County; Civil Action Number 14-900097.  At a hearing on May 7, 2019, Judge Pettaway informed the parties that it would be the first case set that week and we should be ready to go to trial June 24, 2019.

3.      It will take a significant amount of trial preparation to get ready for the case in Perry County.

4.      Undersigned counsel will be out of the office the week of May 20, 2019 to attend his daughters' graduation from college in Virginia and his youngest daughter's graduation from high school.

5.      The discovery cut off in this case is set for May 27, 2019.

6.      Counsel for Snyder and counsel for plaintiff have identified three expert witnesses that have yet to be deposed.

7.      Due to the attorneys' and experts' schedule, it will not be possible to get those depositions scheduled before the discovery cut off.

8.      With the Memorial Day holiday, the earliest the expert depositions could be completed is mid June.

9.      Undersigned counsel anticipates that there may be Motions in Limine filed with respect to the qualifications of identified expert witnesses.  Since the expert witness depositions cannot take place until at best mid-June, counsel will not have time to prepare the Motions in Limine associated with those experts.

10.     Snyder's experts are located in Michigan which would require at least two full days of time with travel and depositions.

11.     The undersigned needs to be preparing for the Marion Bank trial the first part of June.

12.     One of Snyder's expert witnesses, Bob Taylor's daughter is getting married and he will be attending her wedding festivities the week of June 24, 2019.

13.     Although undersigned counsel does not believe this case would last more than one week of trial, he needs to make this Court aware that he has a family vacation planned beginning on June 30, 2019 where he will be out of the country for two weeks.

14.     There is a summary judgment filed by the Whitlocks that is pending.

15.     Undersigned counsel has spoken with counsel for co-defendant the Whitlocks and they have no objection to a continuance.

WHEREFORE, PREMISES CONSIDERED, undersigned counsel respectfully request this Court continue the case from the current June 24, 2019 trial setting.

/s/ Daniel S. Wolter
Daniel S. Wolter (WOL012)
Attorney for Daniel Snyder

**OF COUNSEL:**

Daniel Wolter Law Firm, LLC
402 Office Park Drive, Ste 100
Birmingham, Alabama 35223
(205) 983-6440 Telephone
(205) 900-8095 Facsimile
dwolter@wolterlawfirm.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing has been served on the following by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email, on May 7, 2019.

Marcus W. Lee, Esq.
Kendall A. Lee, Esq.
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL  35216
\

David R. Wells, Esq.
MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Ave. N.
Birmingham, AL  35203

Jason P. Knight, Esq.
KNIGHT & KNIGHT, LLC
210 2nd St. SE
Cullman, AL  35055-3508


                                          */s/ Daniel S. Wolter*_____
                                          OF COUNSEL

ELECTRONICALLY FILED
5/7/2019 11:42 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE,<br>as Administrator and Personal<br>Representative of the ESTATE<br>OF ALBINA AGDASOVNA<br>SHARIFULLINA, deceased,<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**DANIEL B. SNYDER, et al.,**<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION NO.**<br>**CV-2016-900001** |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT DANIEL B. SNYDER'S MOTION TO CONTINUE TRIAL SETTING

Comes now the Plaintiff, **MARINA STEWART-MAGEE, as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, and in response to the Motion to Continue filed by Defendant Daniel B. Snyder (Doc. 350), submits the following:.

1.      The above-captioned lawsuit was filed on January 5, 2016 (Doc. 2) and is presently scheduled for a jury trial on June 24, 2019.

2.      The trial date has already been continued once at the request of Defendants Jeff Whitlock and Hunter Whitlock (Docs. 273, 280). The trial was originally set for February 11, 2019, but subsequently rescheduled to June 24, 2019. (Doc. 280).

3.      The Plaintiff is fully prepared to proceed with trial as scheduled on June 24, 2019 and does not want to further postpone the resolution of this matter. Plaintiff therefore objects to the continuance requested by Defendant Daniel B. Snyder (Doc. 350) and respectfully requests that this Honorable Court deny the same.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Marina Stewart-Magee respectfully requests this Honorable Court to deny the Motion to Continue filed by Defendant Daniel B. Snyder (Doc. 350) and allow the trial to proceed as scheduled on June 24, 2019.

Respectfully submitted this 7th day of May, 2019.

/s/ Kendall A. Lee

**MARK W. LEE (LEE003)**
**KENDALL A. LEE (LEE091)**
Attorneys for Plaintiff
MARINA STEWART-MAGEE

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

---

## CERTIFICATE OF SERVICE

---

I hereby certify that I have on this 7th day of May, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

David R. Wells, Esq.
**MUDD, BOLVIG, LUKE**
**& WELLS, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Floyd D. Gaines, Esq.
**GAINES LLC**
2160 Highland Avenue South, Suite 101
Birmingham, Alabama 35205
fgaines@gainesllc.com

Daniel S. Wolter, Esq.
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

Jason P. Knight, Esq. (via e-mail only)
**KNIGHT & KNIGHT, LLC**
210 2nd Street SE
Cullman, Alabama 35055
jpknight@knight-knightattorneys.com

/s/ Kendall A. Lee
OF COUNSEL



ELECTRONICALLY FILED
5/8/2019 11:52 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA  AGDASOVNA  SHARIFULLINA,  )
DECEASED MARINA STE,                       )
Plaintiff,                                             )
                                                            )
V.                                                         )  Case No.:      CV-2016-900001.00
                                                            )
SNYDER DANIEL B.,                              )
WHITLOCK JEFFREY HOWARD,           )
WHITLOCK JEFFREY HUNTER,            )
Defendants.                                          )

### ORDER

MOTION TO CONTINUE filed by SNYDER DANIEL B. is hereby GRANTED.
Case is reset for trial on the next available docket.

**DONE this 8th day of May, 2019.**

/s/ **GREGORY A NICHOLAS**
**CIRCUIT JUDGE**



ELECTRONICALLY FILED
5/8/2019 11:52 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA AGDASOVNA SHARIFULLINA,   )
DECEASED MARINA STE,   )
Plaintiff,   )
    )
V.   ) Case No.:   CV-2016-900001.00
    )
SNYDER DANIEL B.,   )
WHITLOCK JEFFREY HOWARD,   )
WHITLOCK JEFFREY HUNTER,   )
Defendants.   )

## ORDER

Pursuant to § 6-6-20 Code of Alabama (1975), the parties to this action are ordered to submit to alternate dispute resolution all legal issues in dispute between them arising from the facts forming the basis of the above styled action.  It is further ORDERED as follows:

1.  Within 10 days of the entry of this order counsel for the above named parties shall communicate with one another in an effort to select a mediator agreeable to all concerned. If the counsel for the parties cannot agree on a mediator within 20 days of the date of this order, counsel shall notify the court that their efforts to select a neutral mediator have been unsuccessful and the Court shall select a mediator from the roster provided by the Alabama Center for Dispute Resolution.

2. Mediation shall be scheduled and completed within 120 days of this order unless good cause is shown for this deadline to be extended.

3. The initial costs of the mediation shall be borne equally between the Plaintiff and Defendant but the Court reserves the right to tax mediation expenses as cost at the

conclusion of the litigation.

4. If the mediation is unsuccessful, the original petitioning party shall, within 14 days after the conclusion of the mediation, file a motion notifying the court of the unsuccessful mediation and request that a trial date be set.

5. Nothing herein shall be construed to require the parties to mediate if they are able to resolve all matters in dispute through settlement negotiations, provided the parties have executed a written settlement agreement before the mediation deadline has passed. If a settlement is reached either before or after mediation, counsel for the initial petitioning party shall submit the settlement agreement along with a proposed final judgment incorporating that agreement no later than 14 days after the parties have signed their settlement agreement.

**DONE this 8th day of May, 2019.**

**/s/ GREGORY A NICHOLAS**
**CIRCUIT JUDGE**



ELECTRONICALLY FILED
5/8/2019 12:03 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA AGDASOVNA SHARIFULLINA,  )
DECEASED MARINA STE,             )
Plaintiff,                        )
                                  )
V.                                )   Case No.:    CV-2016-900001.00
                                  )
SNYDER DANIEL B.,                )
WHITLOCK JEFFREY HOWARD,         )
WHITLOCK JEFFREY HUNTER,         )
Defendants.                       )

## ORDER

The hearing date scheduled May 22, 2019 is continued and is reset June 27, 2019 at 9:00 a.m.


**DONE this 8th day of May, 2019.**


                              **/s/ GREGORY A NICHOLAS**
                              **CIRCUIT JUDGE**

ELECTRONICALLY FILED
6/11/2019 5:31 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK



## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

MARINA STEWART-MAGEE, )
as Administrator and Personal )
Representative of the ESTATE )
OF ALBINA AGDASOVNA )
SHARIFULLINA, deceased, )
                                   )           CIVIL ACTION NO.
     Plaintiff, )           CV-2016-900001
                                    )
v. )
                                      )
DANIEL B. SNYDER, et al., )
                                      )
     Defendants. )

---

## PLAINTIFF'S MOTION TO CONTINUE SUMMARY
## JUDGMENT HEARING SET FOR JUNE 27, 2019

Comes now the Plaintiff, **MARINA STEWART-MAGEE, as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, and respectfully requests this Honorable Court to continue the hearing on the Motion for Summary Judgment filed by Defendants Jeffrey Howard Whitlock ("Jeff Whitlock") and Jeffrey Hunter Whitlock ("Hunter Whitlock") until after the mediation scheduled for August 7, 2019 is completed. As grounds for said Motion, Plaintiff submits the following:

1.       On May 8, 2019, the Honorable Gregory A. Nicholas ordered the case to mediation pursuant to Ala. Code § 6-6-20. See Order, Doc. 356. In compliance with the directives of Judge Nicholas, the parties have selected a mediator and a mediation date. The mediation is scheduled for Wednesday, August 7, 2019 in Birmingham. The mediator selected by the parties is George M. Van Tassel, Jr. of Upchurch Watson White & Max.

2.       Defendants Jeff Whitlock and Hunter Whitlock filed a Motion for Summary Judgment on February 6, 2019 (Doc. 303). The Defendants' Motion for Summary Judgment is

presently set for hearing on June 27, 2019 at 9:00 a.m. (Doc. 358).

3.      In the interest of time and expense, the Plaintiff requests that the hearing on Defendants' Motion for Summary Judgment be continued until after the court-ordered mediation scheduled for August 7, 2019 is completed. The Plaintiff specifically requests that the hearing be continued to the first available hearing date after the scheduled mediation.

4.      The Plaintiff's request for a continuance is made in good faith and not for purposes of delay.  The requested continuance will allow the parties an opportunity to settle this litigation without incurring any more fees and costs than absolutely necessary, thereby conserving the resources of both the parties and the Court.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Marina Stewart-Magee respectfully requests this Honorable Court to continue the hearing on the Motion for Summary Judgment filed by Defendants Jeff Whitlock and Hunter Whitlock until after the mediation scheduled for August 7, 2019 is concluded.

Respectfully submitted this 11th day of June, 2019.

/s/ Kendall A. Lee
**MARK W. LEE (LEE003)**
**KENDALL A. LEE (LEE091)**
Attorneys for Plaintiff
MARINA STEWART-MAGEE

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this 11th day of June, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

David R. Wells, Esq.
**MUDD, BOLVIG, LUKE**
**& WELLS, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Floyd D. Gaines, Esq.
**GAINES LLC**
2160 Highland Avenue South, Suite 101
Birmingham, Alabama 35205
fgaines@gainesllc.com

Daniel S. Wolter, Esq.
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

Jason P. Knight, Esq.
**KNIGHT & KNIGHT, LLC**
210 2nd Street SE
Cullman, Alabama 35055
jpknight@knight-knightattorneys.com

/s/ Kendall A. Lee
OF COUNSEL

DOCUMENT 363



ELECTRONICALLY FILED
6/12/2019 1:03 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

**IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA**

ALBINA AGDASOVNA SHARIFULLINA, )
DECEASED MARINA STE, )
Plaintiff, )
 )
V. ) Case No.:      CV-2016-900001.00
 )
SNYDER DANIEL B., )
WHITLOCK JEFFREY HOWARD, )
WHITLOCK JEFFREY HUNTER, )
Defendants. )

**ORDER**

MOTION TO CONTINUE filed by ALBINA AGDASOVNA SHARIFULLINA, DECEASED
MARINA STE is hereby GRANTED. Case is reset for hearing August 19, 2019 at 9:00
a.m.

**DONE this 12th day of June, 2019.**

                                  **/s/ GREGORY A NICHOLAS**
                                  **CIRCUIT JUDGE**

ELECTRONICALLY FILED
6/27/2019 9:39 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA McSWAIN, CLERK

DOCUMENT 366

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGGE, | ) | |
| Who sues as Administrator and | ) | |
| Personal Representative of the Estate of | ) | |
| ALBINA AGDASOVNA | ) | |
| SHARIFULLINA, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: CV 16-900001 |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL B. SNYDER, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO CONTINUE

COMES NOW Daniel Snyder and moves the Court to continue the case from the current August 26, 2019 trial setting. As grounds for this motion Snyder states the following:

1.    The parties are currently scheduled to mediate this case on August 7, 2019. That mediation is being performed pursuant to the Court's May 8, 2019 mediation order.

2.    Undersigned counsel received notice of the August 26, 2019 trial setting today.

3.    Undersigned counsel contacted the retained expert witnesses to inform them of the trial setting.

4.    Chris VanEe is an expert retained by Daniel Snyder. Mr. VanEe has informed undersigned counsel that he has to be in Court that week in North Carolina as witness in a military trial and has signed a contract to be on base that entire week.

5.    Mr. VanEe has performed extensive work on this case. Mr. VanEe's testimony is critical to the defense of the case. It is imperative that Mr. VanEe be available to testify live at trial. Due to a conflict, Mr. VanEe cannot be in Cullman County the week of August 26, 2019. (A copy of correspondence from Mr. VanEe setting out his conflict is attached as Exhibit A).

WHEREFORE, PREMISES CONSIDERED, undersigned counsel respectfully request this Court continue the case from the current August 26, 2019 trial setting and reset the case on the next available trial docket.

/s/ Daniel S. Wolter
Daniel S. Wolter (WOL012)
Attorney for Daniel Snyder

**OF COUNSEL:**

Daniel Wolter Law Firm, LLC
402 Office Park Drive, Ste 100
Birmingham, Alabama 35223
(205) 983-6440 Telephone
(205) 900-8095 Facsimile
dwolter@wolterlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on the following by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email, on June 27th, 2019.

Marcus W. Lee, Esq.
Kendall A. Lee, Esq.
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL  35216

David R. Wells, Esq.
MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Ave. N.
Birmingham, AL  35203

Jason P. Knight, Esq.
KNIGHT & KNIGHT, LLC
210 2nd St. SE
Cullman, AL  35055-3508

/s/ Daniel S. Wolter
OF COUNSEL

DOCUMENT 366

# EXHIBIT A

DOCUMENT 366

**Carol Graves**

| | |
|---|---|
| **From:** | Chris Van Ee <ChrisV@dreng.com> |
| **Sent:** | Tuesday, June 25, 2019 4:29 PM |
| **To:** | Carol Graves |
| **Cc:** | Robert Taylor; Cindy Prossen |
| **Subject:** | Re: Daniel Snyder matter |

I am a witness in a military trial that week in NC and have signed a contract to be on base that entire week.

Cell 734-604-3340

On Jun 25, 2019, at 4:53 PM, Carol Graves <cgraves@wolterlawfirm.com> wrote:

> Danny wanted me to let you know the trial has been set August 26.
>
> Carol Graves
> Legal Secretary to Daniel Wolter
> Daniel Wolter Law Firm, Inc.
> 402 Office Park Drive, Suite 100
> Birmingham, Alabama 35223
> (205) 983-6440 Telephone
> (205) 900-8095 Facsimile
> (205 229-3480 Cell
> cgraves@wolterlawfirm.com
> <image001.jpg>
>
> CONFIDENTIALITY NOTICE AND DISCLAIMER:  This electronic mail transmission may contain information that is confidential, privileged, proprietary in nature, or is otherwise legally exempt from disclosure.  If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, in whole or in part, including any attachments thereto.  If you have received this transmission in error, please delete the message and any attachments from your system without reading the content, and notify the sender immediately of the inadvertent transmission.  There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege that may attach to this communication.  Unless otherwise stated, the content of this message and its attachments.

DOCUMENT 366

DOCUMENT 368

ELECTRONICALLY FILED
6/27/2019 12:03 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

**IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA**

ALBINA AGDASOVNA SHARIFULLINA,, )
DECEASED MARINA STE, )
Plaintiff, )
  )
V. ) Case No.:      CV-2016-900001.00
  )
SNYDER DANIEL B., )
WHITLOCK JEFFREY HOWARD, )
WHITLOCK JEFFREY HUNTER, )
Defendants. )

**ORDER**

It is hereby ORDERED that the MOTION TO CONTINUE filed by DANIEL B. SNYDER is hereby GRANTED. The case shall be set on the next available trial docket following the August setting.

**DONE this 27ᵗʰ day of June, 2019.**

**/s/ GREGORY A NICHOLAS**
**CIRCUIT JUDGE**

ELECTRONICALLY FILED
6/28/2019 4:26 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARINA STEWART-MAGEE,** | ) | |
| **as Administrator and Personal** | ) | |
| **Representative of the ESTATE** | ) | |
| **OF ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA, deceased,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | **CV-2016-900001** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S MOTION TO SET ASIDE ORDER GRANTING DEFENDANT DANIEL B. SNYDER'S SECOND MOTION TO CONTINUE TRIAL SETTING

Comes now the Plaintiff, **MARINA STEWART-MAGEE, as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, and respectfully moves this Honorable Court to set aside its Order granting the second Motion to Continue filed by Defendant Daniel B. Snyder on June 27, 2019 (Docs. 365, 368). In support of said Motion, Plaintiff submits the following opposition to Defendant's Motion to Continue (Doc. 365):

1.      The above-captioned lawsuit was filed on January 5, 2016 (Doc. 2) and involves a fatal SeaDoo collision which occurred in the early morning hours of Sunday, July 6, 2014 on Smith Lake in Cullman County, Alabama. Plaintiff Marina Stewart-Magee filed this lawsuit on behalf of the estate of her daughter, Albina Sharifullina, who died in the collision.

2.      The trial date has already been continued twice at the request of the Defendants. (Docs. 273, 280). The trial was originally set for February 11, 2019, rescheduled to June 24, 2019 (Doc. 280), and rescheduled again to August 26, 2019. Defendant Daniel B. Snyder is now requesting another continuance based on the unavailability of an expert witness, Chris Van Ee.

(Doc. 365). The trial should not be continued on this ground alone. Mr. Van Ee has not been deposed in this case and the Defendant can preserve his testimony for trial by way of deposition. See Ala. R. Civ. P. 32 (a)(3)(F) ("the deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.").

3.      The trial setting of August 26, 2019 should remain as scheduled. There are four parties and six attorneys of record in this case, none of whom have reported a conflict with the August trial date. The Plaintiff's expert witnesses are also available to appear and testify at trial that week. The Defendant's other expert witness, Robert Taylor, is presumably available as well.

4.      The Plaintiff is prepared to proceed with trial as previously scheduled on August 26, 2019 and does not want to further postpone the resolution of this matter. The fifth anniversary of her daughter's death is approaching and the Plaintiff is entitled to closure. A third continuance of the trial would be prejudicial to the Plaintiff and her well-being as a grieving mother. Plaintiff therefore objects to the continuance requested by Defendant Daniel B. Snyder (Doc. 365) and respectfully requests that this Honorable Court set aside its Order granting the same (Doc. 368).

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Marina Stewart-Magee respectfully requests this Honorable Court to set aside its Order granting the second Motion to Continue filed by Defendant Daniel B. Snyder, and allow the trial to proceed as previously scheduled on August 26, 2019.

Respectfully submitted this 28th day of June, 2019.

/s/ Mark W. Lee
**MARK W. LEE (LEE003)**
**KENDALL A. LEE (LEE091)**
Attorneys for Plaintiff
MARINA STEWART-MAGEE

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

---

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 28th day of June, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

David R. Wells, Esq.
**MUDD, BOLVIG, LUKE**
**& WELLS, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Floyd D. Gaines, Esq.
**GAINES LLC**
2160 Highland Avenue South, Suite 101
Birmingham, Alabama 35205
fgaines@gainesllc.com

Daniel S. Wolter, Esq.
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

Jason P. Knight, Esq.
**KNIGHT & KNIGHT, LLC**
210 2nd Street SE
Cullman, Alabama 35055
jpknight@knight-knightattorneys.com

/s/ Mark W. Lee
OF COUNSEL



ELECTRONICALLY FILED
7/1/2019 10:26 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA AGDASOVNA SHARIFULLINA,  )
DECEASED MARINA STE,                   )
Plaintiff,                              )
                                )
V.                                ) Case No.:      CV-2016-900001.00
                                )
SNYDER DANIEL B.,               )
WHITLOCK JEFFREY HOWARD,    )
WHITLOCK JEFFREY HUNTER,     )
Defendants.                    )

## ORDER

The MOTION TO VACATE OR MODIFY filed by ALBINA AGDASOVNA SHARIFULLINA, DECEASED MARINA STE is hereby DENIED. The above styled action was recently transferred to the undersigned after attorney Jason Knight entered a notice of appearance as co-counsel for a Defendant in April of 2019.

On May 8, 2019, the parties were ordered to attend mediation within 120 days and mediation is scheduled for August 8, 2019, according to the pleadings. The mediation shall not stay discovery that is necessary or desirable to prepare for the mediation. Further, it is ORDERED that the August 18, 2019 hearing on the Defendant's motion for summary judgment is continued and will be reset by the court in the event mediation is not successful.

**DONE this 1ˢᵗ day of July, 2019.**

                                        **/s/ GREGORY A NICHOLAS**
                                        **CIRCUIT JUDGE**

ELECTRONICALLY FILED
7/11/2019 9:08 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA AGDASOVNA SHARIFULLINA,     )
DECEASED MARINA STE,                             )
Plaintiff,                                                       )
                                                                       )
V.                                                                   )   Case No.:        CV-2016-900001.00
                                                                       )
SNYDER DANIEL B.,                                   )
WHITLOCK JEFFREY HOWARD,            )
WHITLOCK JEFFREY HUNTER,              )
Defendants.                                                   )

## ORDER

A MOTION TO VACATE OR MODIFY has been filed by Plaintiff requesting that a previous court order entered by Judge Williams sealing the file as it relates to discovery is due to be vacated. A hearing on the motion is set for August 19, 2019 at 9:00 a.m. in circuit courtroom number one. Counsel for the parties shall provide the court with any legal authority regarding whether an agreement between the parties, ratified by the court, is sufficient to satisfy the *Holland* standard.

**DONE this 11th day of July, 2019.**

**/s/ GREGORY A NICHOLAS**
**CIRCUIT JUDGE**

ELECTRONICALLY FILED
7/22/2019 12:12 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| As Administrator and Personal | ) | |
| Representative of the ESTATE OF | ) | |
| ALBINA AGDASOVNA | ) | |
| SHARFIFULLINA, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: CV 2016-900001 |
| | ) | |
| DANIEL B. SNYDER, *et al.* | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO SET HEARING

COME NOW, the Defendants, Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock and move this Court to enter an Order setting a hearing to hear oral argument on their Motion for Summary Judgment on August 19, 2019, and as grounds for such show unto the Court as follows:

1.     This Court recently entered Order scheduling a hearing on August 19, 2019, at 9:00 a.m. on the Plaintiff's Motion to Vacate or Modify an Order previously entered by Judge Williams.

2.     Defendants, Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock, have a Motion for Summary Judgment pending on a purely legal issue, *i.e.,* the statute of limitations, which was previously set for hearing in August.

3.     The Court recently continued that hearing due to a mediation which will be concluded prior to August 19th.

4.     For that reason, these Defendants respectfully request the Court also hear oral argument on their Motion for Summary Judgment at the August 19th hearing.

                                            */s/ David R. Wells*
                                            DAVID R. WELLS (WEL016)
                                            Attorney for the Defendants,
                                            Jeffrey Howard Whitlock and Jeffrey Hunter
                                            Whitlock

OF COUNSEL:

MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203
(205) 639-5300
(205) 639-5350 *facsimile*
dwells@wmslawfirm.com


**<u>CERTIFICATE OF SERVICE</u>**

         I hereby certify that I have served a complete copy of the foregoing instrument upon the following attorney of record via the electronic ALAFILE system, on this 22nd day of July, 2019.

Mark W. Lee
Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway
Suite 300
Birmingham, AL 35216
(205) 326-6600
mlee@pljpc.com
klee@pljpc.com

Daniel S. Wolter
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive
Suite 100
Birmingham, AL 35223
dwolter@wolterlawfirm.com

                                            */s/ David R. Wells*
                                            OF COUNSEL

ELECTRONICALLY FILED
7/23/2019 4:11 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA AGDASOVNA SHARIFULLINA, )
DECEASED MARINA STE, )
Plaintiff, )
)
V. )  Case No.:        CV-2016-900001.00
)
SNYDER DANIEL B., )
WHITLOCK JEFFREY HOWARD, )
WHITLOCK JEFFREY HUNTER, )
Defendants. )

## ORDER

The undersigned judge has only recently been assigned this case due to recusal. As previously Ordered, the August 18, 2019 hearing on the Defendant's motion for summary judgment is continued and will be reset by the court in the event mediation is not successful.

**DONE this 23rd day of July, 2019.**

**/s/ GREGORY A NICHOLAS**
**CIRCUIT JUDGE**

ELECTRONICALLY FILED
8/9/2019 11:04 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARINA STEWART-MAGEE,** | ) | |
| **as Administrator and Personal** | ) | |
| **Representative of the Estate of** | ) | |
| **ALBINA AGDASOVNA** | ) | |
| **SHARIFULLINA**, | ) | |
| | ) | **Case No.: CV-2016-900001** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **DANIEL B. SNYDER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEDIATION REPORT

COMES NOW Daniel Snyder by and through undersigned counsel and files this mediation report.

1.     The parties mediated the case on August 7, 2019.  Undersigned counsel informs the Court that mediation was unsuccessful.


/s/ Daniel S. Wolter
Daniel S. Wolter
*Attorney for Daniel B. Snyder*


**OF COUNSEL:**
Daniel S. Wolter (dwolter@wolterlawfirm.com)
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Mountain Brook, AL  35223-2435
Telephone:     205-983-6440
Facsimile:     205-900-8095

DOCUMENT 386

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing has been served on the following by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email, on August 9, 2019.

Marcus W. Lee, Esq.
Kendall A. Lee, Esq.
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL  35216
***Attorney for Plaintiff Marina Stewart-Magee***

David R. Wells, Esq.
MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Ave. N.
Birmingham, AL  35203

Jason P. Knight, Esq.
KNIGHT & KNIGHT, LLC
210 2nd St. SE
Cullman, AL  35055-3508
***Attorneys for Defendants Jeffrey Howard Whitlock and***
***Jeffrey Hunter Whitlock***

/s/ Daniel S. Wolter
OF COUNSEL

2

ELECTRONICALLY FILED
8/9/2019 3:35 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA AGDASOVNA SHARIFULLINA, )
DECEASED MARINA STE, )
Plaintiff, )
)
V. ) Case No.:        CV-2016-900001.00
)
SNYDER DANIEL B., )
WHITLOCK JEFFREY HOWARD, )
WHITLOCK JEFFREY HUNTER, )
Defendants. )

## ORDER

This case was filed approximately 31/2 years ago and was initially assigned to Judge

Williams. However, Judge Williams was required to disqualify herself due to the recent decision

of a party to associate a lawyer with whom Judge Williams has a business relationship.  Pending

at the time of the recusal was a motion by the Plaintiff to vacate or amend a previous order

entered by Judge Williams, which ratified an agreement of the parties, to "seal" the deposition of

Daniel Snyder, as well as any "motions, briefs, pleadings or other filings with any discovery

and/or deposition excerpts attached" thereto. The Order further prevented the Plaintiff from

providing the Cullman County District Attorney with a copy of the Snyder deposition or other

documents that were filed "under seal".

Counsel for the parties were previously Ordered to provide the court with any legal

authority regarding whether an agreement between the parties, ratified by the court, is sufficient

to satisfy the procedural requirements of *Holland* and *Barze*, with respect to sealing court

records. In addition, counsel for the parties shall provide the court with any other legal citation

that relates to the authority of a court to order non-disclosure of the deposition of Daniel Snyder,

which deposition is not part of the court filings and therefore presumably not subject to the same public policy considerations related to the right of the public to inspect court filings.

There is also a pending motion for summary judgment filed in this case that will be set for hearing at a later date.

**DONE this 9th day of August, 2019.**

**/s/ GREGORY A NICHOLAS**
**CIRCUIT JUDGE**



## Upchurch Watson White & Max
### M E D I A T I O N   G R O U P

2000 A SouthBridge Parkway
Suite 400
Birmingham, AL 35209

Telephone: 205-933-9033
Toll Free: 888-435-9033
Facsimile: 205-871-2808
Website: www.uww-adr.com

August 7, 2019

Honorable Gregory A. Nicholas
Circuit Court of Cullman County
500 Second Avenue S.W.
Cullman AL, 35055

Re:   Marina Stewart-Magee v. Daniel Snyder, et al
      Circuit Court of Cullman County, Alabama
      Case No.: 25-CV-2016-900001
      Date of Mediation: August 7, 2019
      **OUR FILE NO.: 19MVT-080**

Dear Judge Nicholas:

I conducted a mediation of this case on the date stated above. All of the parties and their attorneys worked diligently during our mediation session, and although progress was made, the parties were not able to resolve this matter.

It still may be possible for the parties to make the compromises necessary to resolve this case, and if I may be of any additional assistance to the Court or the parties in helping to bring the parties together, I stand ready to do what I can.

Thank you for the opportunity to have mediated this case which is pending in your court, and I hope to do so again in the near future.

Respectfully yours,

George M. Van Tassel, Jr.

GMVT/st

cc:   Kendall Lee, Esq.
      Mark W. Lee, Esq.
      Daniel Wolter, Esq
      David R. Wells, Esq.
      Phillip Luke, Esq.
      Jason P. Knight, Esq.

## FILED IN OFFICE

### AUG 1 9 2019

LISA McSWAIN
CIRCUIT CLERK
CULLMAN COUNTY


ELECTRONICALLY FILED
8/27/2019 9:11 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

ALBINA AGDASOVNA SHARIFULLINA,  )
DECEASED MARINA STE,  
Plaintiff,                      )

                                )

V.                              )   Case No.:      CV-2016-900001.00

                                )

SNYDER DANIEL B.,               )
WHITLOCK JEFFREY HOWARD,        )
WHITLOCK JEFFREY HUNTER,        )
Defendants.                     )

## ORDER

     A MOTION TO VACATE OR MODIFY has been filed by Plaintiff requesting that a previous court order entered by Judge Williams sealing the file as it relates to discovery is due to be vacated. A hearing on the motion is set for September 23, 2019 at 9:00 a.m. in circuit courtroom number one. Counsel for the parties shall provide the court with any legal authority regarding whether an agreement between the parties, ratified by the court, is sufficient to satisfy the *Holland* standard on or before September 20, 2019.

**DONE this 27th day of August, 2019.**

                    **/s/ GREGORY A NICHOLAS**
                    **CIRCUIT JUDGE**

ELECTRONICALLY FILED
9/5/2019 7:59 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| As Administrator and Personal | ) | |
| Representative of the ESTATE OF | ) | |
| ALBINA AGDASOVNA | ) | |
| SHARFIFULLINA, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: CV 2016-900001 |
| | ) | |
| DANIEL B. SNYDER, *et al.* | ) | |
| | ) | |
| Defendant. | ) | |

## **MOTION TO SET HEARING**

COME NOW, the Defendants, Jeffrey Howard Whitlock and Jeffrey Hunter Whitlock

and move this Court to enter an Order setting a hearing on their Motion for Summary Judgment.


*/s/ David R. Wells*
DAVID R. WELLS (WEL016)
Attorney for the Defendants,
Jeffrey Howard Whitlock and Jeffrey Hunter
Whitlock

OF COUNSEL:

MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203
(205) 639-5300
(205) 639-5350 *facsimile*
dwells@wmslawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a complete copy of the foregoing instrument upon the following attorney of record via the electronic ALAFILE system, on this 5th day of September, 2019.

Mark W. Lee
Kendall A. Lee
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway
Suite 300
Birmingham, AL 35216
(205) 326-6600
mlee@pljpc.com
klee@pljpc.com

Daniel S. Wolter
DANIEL WOLTER LAW FIRM, LLC
402 Office Park Drive
Suite 100
Birmingham, AL 35223
dwolter@wolterlawfirm.com

*/s/ David R. Wells*
OF COUNSEL


ELECTRONICALLY FILED
9/6/2019 10:26 AM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

**IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA**

ALBINA AGDASOVNA SHARIFULLINA,
DECEASED MARINA STE,
Plaintiff,

V.

SNYDER DANIEL B.,
WHITLOCK JEFFREY HOWARD,
WHITLOCK JEFFREY HUNTER,
Defendants.

Case No.:    CV-2016-900001.00

**ORDER**

MOTION TO SET HEARING filed by WHITLOCK JEFFREY HOWARD and WHITLOCK JEFFREY HUNTER is hereby granted. Motion for Summary Judgment filed by the Defendant Jeffery Howard Whitlock and Defendant Jeffery Hunter Whitlock is set for hearing November 14, 2019 at 9:00 a.m.

**DONE this 6th day of September, 2019.**

**/s/ GREGORY A NICHOLAS**
**CIRCUIT JUDGE**

ELECTRONICALLY FILED
9/13/2019 2:00 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

MARINA STEWART-MAGEE,       )
as Administrator and Personal    )
Representative of the Estate of    )
ALBINA AGDASOVNA        )
SHARFIFULLINA,          )
                          )    **01-CV-2016-900001**
    Plaintiff,         )
v.                   )
                          )
DANIEL B. SNYDER,       )
                          )
    Defendant.       )

## DEFENDANT DANIEL B. SNYDER'S
## MOTION TO SHOW CAUSE

Defendant Daniel B. Snyder ("Snyder") respectfully moves this Court to Order counsel for Plaintiff Marina Stewart-Magee, as Administrator and Personal Representative of the Estate of Albina Agdasovna Sharifullina ("Stewart-Magee" or "Plaintiff") to Show Cause why Plaintiff's counsel should not be held in contempt of court for failing to comply with this Court's April 6, 2016 (Doc. 20).  In support of this Motion, Snyder states as follows:

1.      This matter involves an accident that occurred on July 5, 2014 when Snyder and Plaintiff's daughter Albina Agdasovna Sharifullina were riding a personal watercraft at Smith Lake in Cullman County, Alabama, resulting in the death of Sharifullina.

2.      On January 28, 2016, Snyder filed a Motion to Stay (Doc. 10) proceedings because the Cullman County District Attorney was investigating the accident to determine whether criminal charges would be pursued against Snyder.

3.      As grounds for his Motion to Stay, Snyder asserted that based upon the allegations in Plaintiff's Complaint, he suffered a reasonable apprehension that he could not defend himself in this suit without surrendering his constitutionally protected privileged against self-

incrimination.  Snyder relied upon authority from the United States Constitution, the United States

Supreme Court, the Alabama Rules of Civil Procedure and the Alabama Supreme Court.  *Id.* (citing

U.S. CONST. amend. V, *Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1086 (5th Cir.

1979) (citing *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977)), *McCarthy v. Arndstein*, 266.

U.S. 34, 40 (1924), Ala. R. Civ. P. 26(b)(1), *Ex parte Ebbers*, 871 So. 2d 776 (Ala. 2003)).

4.      Plaintiff filed an Objection to Snyder's Motion to Stay on January 28, 2016 (Doc.

12).   In Plaintiff's motion, Plaintiff's counsel, who at the time was, Stephen D. Heninger

represented to the Court the following:

> This attorney [Stephen D. Heninger] met with the District Attorney of Cullman
> County in December 2015 and was informed that the District Attorney was not
> going to pursue criminal charges against the Defendant or seek an indictment.  The
> family of the decedent was present at this meeting.  We were informed that no
> formal statement is even issued saying charges will not be pursued or announcing
> closure of the file but that was his decision to not go forward.  We informed the DA
> that we would be pursuing a civil case and would subpoena his file and he stated
> he understood that while the DA's office was not saying the Defendant was
> innocent that his office would not pursue an indictment.

Doc. 12 at 1.

5.      Plaintiff argued that a stay should not be granted because there was no showing of

a risk of self-incrimination "since the DA has closed his investigation and nothing to the contrary

has been shown."  *Id.* at 2.

6.      On January 29, 2016, the Court entered an order setting a hearing on the Motion to

Stay and requested that a representative of the District Attorney's office attend.  (Doc. 14).

7.      The Court conducted a hearing on the Motion to Stay on March 16, 2016, in which

counsel for Plaintiff, counsel for Snyder and District Attorney Wilson Blaylock attended.  (Doc.

16).  During the hearing, counsel for the parties and District Attorney Blaylock informed the Court

that they reached an agreement on the Motion to Stay and would prepare an Order for the Court. (Doc. 16).

8.      Based upon the District Attorney's Representations made to Plaintiff regarding the decision not to pursue criminal charges against Snyder and Plaintiff's agreement not to share any discovery provided by Snyder to the District Attorney, Snyder agreed to participate in discovery in this case.  On April 6, 2016, this Court entered the agreed-upon Order of the parties and the District Attorney, which states in pertinent part the following:

> The Court has been informed that there has been an agreement reached between the parties. Pursuant to that agreement, any discovery filed on behalf of Daniel Snyder will be done "under seal." Further, the deposition of Daniel Snyder will be taken "under seal." Any motions, briefs, pleadings or other filings with any discovery and/or deposition excerpts attached or cited must be filed "under seal." Plaintiff has agreed that she will not present any discovery provided by Daniel Snyder, the deposition of Daniel Snyder, or any documents filed "under seal" to the District Attorney for Cullman County, Alabama for any reason. Based upon these agreements, the motion to stay proceedings is DENIED and discovery will proceed pursuant to this Order.

(Doc. 20).

9.      On June 26, 2016, this Court entered a Standard Pre-Trial Scheduling Order that requires, "[a]ny motion filed by an attorney requesting the Court to resolve any discovery dispute shall certify in the motion to compel all efforts made to resolve the discovery dispute with counsel representing the party from whom discovery is being sought."  (Doc. 26 at 2).

10.      On July 10, 2019, Plaintiff filed a Motion for Relief from the Court's Order Entered April 6, 2016 ("Motion for Relief"), which prohibits Plaintiff from presenting any discovery obtained from Snyder to the District Attorney.  (Doc. 375).[1]  Plaintiff did not seek consent to the relief requested in Plaintiff's Motion or otherwise attempt to resolve this matter with Snyder prior to filing the Motion for Relief.

---

[1] Snyder will separately be filing an Opposition to Plaintiff's Motion for Relief.

11.     In Plaintiff's Motion, Plaintiff's counsel directly violated the Court's April 6, 2016 Order by sharing discovery with the District Attorney and by failing to file deposition excerpts under seal with the Court.

12.     For example, Plaintiff's counsel admits that on July 9, 2019, Plaintiff's counsel met with District Attorney Wilson Blacklock regarding this case and the District Attorney's decision not to prosecute Snyder.  Plaintiff claims that the District Attorney's decision not to prosecute Snyder stems from a 2016 conversation with Snyder's former criminal attorney Steve Griffith (now deceased) and the District Attorney about what Snyder's trial testimony may be in a potential criminal trial.  (Doc. 375 at 2).  Earlier in this case, when Plaintiff filed her Objection to Snyder's Motion to Stay, Plaintiff did not indicate that any representation was made by the District Attorney to Plaintiff or counsel concerning that the basis of the prosecution decision involved potential criminal trial testimony of Snyder. (Doc. 12).

13.     Now, in Plaintiff's Motion for Relief, Plaintiff argues that Snyder's actual deposition testimony conflicts with the hypothetical criminal trial testimony Plaintiff's counsel claims that Snyder's now deceased former criminal attorney allegedly told the District Attorney over three years ago.  (Doc. 375 at 2).

14.     In the Motion for Relief, Plaintiff's counsel further proceeds to summarize and cite actual testimony from Snyder's deposition in this case taken over three years ago.   (Doc. 375 at 2-3).

15.     Plaintiff's counsel argues that the District Attorney should have access to Snyder's discovery in order to revisit whether an indictment should be entered against him.  Unfortunately, Plaintiff's counsel's has already visited with the District Attorney on July 9, 2019 about Snyder's

testimony and has publicly filed its Motion for Relief, providing access to Snyder's testimony to the District Attorney and the public.[2]

16.    Even if Plaintiff's multi-leveled hearsay explanation of the basis of their motion were true, because Plaintiff's counsel intentionally failed to file Plaintiff's Motion for Relief under seal, it constitutes a direct violation of this Court's April 6, 2016 Order.

17.    Plaintiff's conduct and Motion for Relief also is an improper attempt to provide backdoor discovery to the District Attorney to further Plaintiff's personal interests in seeking criminal charges against Snyder.

18.    Plaintiff presents no evidence from affidavit or otherwise to support Plaintiff's bald conclusion that the "primary reason" the District Attorney made the decision not to prosecute Snyder was based upon Snyder's attorney's conjecture of what Snyder's theoretical criminal trial testimony would be.

19.    In contrast, the District Attorney made an informed decision over three years ago not to prosecute Snyder based upon all the evidence collected and provided by multiple agencies and law enforcement involved in investigating the accident.  Further, the District Attorney was well aware that Daniel Snyder intended to preserve his Fifth Amendment privilege, a fact that is well documented through Snyder's Motion to Stay (Doc. 10).  In reliance upon the District Attorney's decision not to prosecute, the agreement of Plaintiff and Order of this Court, Snyder has willingly participated in discovery so that he can adequately defend himself in this case.

20.    Alabama Rule Civil Procedure 70A allows a Court to find a party who fails to comply with a Court order in civil contempt in order to coerce conduct in accordance with the

---

[2] Because Plaintiff's counsel filed its Motion in violation of this Court's Order, Snyder's counsel contacted the Clerk's office and requested that the Motion for Relief be placed under seal.  Although the Clerk's office placed the Motion for Relief under seal there was a period of time that Plaintiff's motion was fully accessible by the District Attorney's office and the public.

Order.  "'Civil contempt' means willful, continuing failure or refusal of **any person** to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with."  Ala. R. Civ. P. 70A(a)(2)(D).  "Civil contempt is intended to coerce or compel compliance with orders of the court."  *Varner v. Varner* 662 So. 2d 273, 277 (Ala. Civ. App. 1994) (citing *State v. Thomas,* 550 So. 2d 1067 (Ala. 1989).

21.    To hold a person in contempt, "the trial court must find that the party willfully failed or refused to comply with a court order."  *Humber v. Bjornson*, 8 So. 3d 995, 1002 (Ala. Civ. App. 2008) (quoting *T.L.D. v. C.G.,* 849 So. 2d 200, 205 (Ala. Civ. App. 2002)).  "The failure to perform an act required by the court for the benefit of an opposing party constitutes civil contempt."  *J.K.L.B. Farms, LLC v. Phillips*, 975 So. 2d 1001, 1012 (Ala. Civ. App. 2007) (quoting *Carter v. State ex rel. Bullock County,* 393 So. 2d 1368, 1370 (Ala. 1981)).  Holding Plaintiff's counsel in contempt will be the only way to have Plaintiff's counsel comply with this Court's Order.

22.    Plaintiff's counsel has willfully and blatantly violated this Court's April 6, 2016 Order by discussing Snyder's testimony with the District Attorney impermissibly filing deposition testimony of Snyder in order to interfere with the District Attorney's decision to not prosecute Snyder – crushing the very reason this Court initially entered such order requiring discovery to be filed under seal.

23.    Because any liability of Snyder to Plaintiff is not dependent upon the District Attorney's prosecution decision, Plaintiff's efforts amount to an improper attempt to render vigilante justice by maliciously interfering with the District Attorney's three-year old decision not to seek charges against Snyder.

WHEREFORE, Snyder respectfully requests that this Court issue an Order requiring Plaintiff's counsel show cause why Plaintiff's counsel should not be held in contempt for failing

to comply with the April 6, 2016 Order, awarding Snyder all attorneys' fees and costs incurred in

connection with this Motion, and granting any other such relief as this Court deems just and proper.

DATED:  September 13, 2019                    Respectfully submitted,

                                             */s/ Daniel S. Wolter*
                                             Daniel S. Wolter
                                             **Attorney for Daniel B. Snyder**

**OF COUNSEL:**
Daniel S. Wolter (dwolter@wolterlawfirm.com)
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Mountain Brook, AL  35223-2435
Telephone:     205-983-6440
Facsimile:     205-983-6443
**Attorney for Daniel B. Snyder**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served on the following by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email, on September 13, 2019.

Marcus W. Lee, Esq.
Parsons, Lee & Juliano, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL  35216
***Attorney for Marina Stewart-Magee***

David R. Wells, Esq.
MUDD, BOLVIG, LUKE & WELLS, LLC
2011 4th Avenue North
Birmingham, AL 35203

Jason P. Knight, Esq.
KNIGHT & KNIGHT, LLC
210 2nd Street SE
Cullman, AL 35055
***Attorneys for Jeffrey Howard Whitlock and
Jeffrey Hunter Whitlock***

Floyd D. Gaines, Esq.
GAINES LLC
2160 Highland Avenue South, Suite 101
Birmingham, AL 35205
***Attorney for Daniel B. Snyder***

*/s/ Daniel S. Wolter*_____
OF COUNSEL

ELECTRONICALLY FILED
9/20/2019 10:43 PM
25-CV-2016-900001.00
CIRCUIT COURT OF
CULLMAN COUNTY, ALABAMA
LISA MCSWAIN, CLERK

## IN THE CIRCUIT COURT OF CULLMAN COUNTY, ALABAMA

| | | |
|---|---|---|
| MARINA STEWART-MAGEE, | ) | |
| as Administrator and Personal | ) | |
| Representative of the ESTATE | ) | |
| OF ALBINA AGDASOVNA | ) | |
| SHARIFULLINA, deceased, | ) | |
| | ) | **CIVIL ACTION NO.** |
| Plaintiff, | ) | **CV-2016-900001** |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL B. SNYDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO THE COURT'S ORDER ENTERED AUGUST 27, 2019

Comes now the Plaintiff, **MARINA STEWART-MAGEE, as Administrator and Personal Representative of the ESTATE OF ALBINA AGDASOVNA SHARIFULLINA, deceased**, and in response to this Honorable Court's Order entered August 27, 2019 (Doc. 391), respectfully submits the following:

1.      The Plaintiff is seeking relief from the Court's Order entered April 6, 2016 (Doc. 20) so that the transcript of the deposition of Daniel Snyder ("Snyder") may be unsealed and presented to the District Attorney for Cullman County, Alabama. The Plaintiff's request for relief is set for a hearing on September 23, 2019.

2.      On August 27, 2019, the Court entered an Order (Doc. 391) instructing the parties to submit any legal authority regarding whether an agreement between the parties, ratified by the court, satisfies the standard for sealing documents set forth in <u>Holland v. Eads</u>, 614 So. 2d 1012 (Ala. 1993). In <u>Holland</u>, the Supreme Court of Alabama held that a trial court may not seal court records except upon a written finding that the moving party has proved by clear and convincing evidence that the document sought to be sealed:

> (1) constitutes a trade secret or other confidential commercial research or information; or (2) is a matter of national security; or (3) promotes scandal or defamation; or (4) pertains to wholly private family matters, such as divorce, child custody, or adoption; or (5) poses a serious threat of harassment, exploitation, physical intrusion, or other particularized harm to the parties to the action; or (6) poses the potential for harm to third persons not parties to the litigation.

Holland v. Eads, 614 So. 2d 1012, 1016 (Ala. 1993).

3.      Plaintiff's counsel is not aware of any reported decisions from the Alabama Supreme Court, the Alabama Court of Civil Appeals, or the Alabama Court of Criminal Appeals holding that an agreement between the parties, ratified by the court, is sufficient to satisfy the Holland standard. The Holland decision has been cited in the following cases:

(1)     D.A.R. v. R.E.L., 272 So. 3d 1030 (Ala. 2018) (refusing to consider whether the trial court erred in sealing the entire court record because the plaintiff did not challenge the decision on appeal)

(2)     Ex parte Barze, 184 So. 3d 1012 (Ala. 2015) (holding that the trial court failed to make written findings that the defendant proved by clear and convincing evidence that the information contained in defendant's motion to stay fell within one of the six categories set forth in Holland)

(3)     Gewin v. TCF Asset Mgmt. Corp., 668 So. 2d 523 (Ala. 1995) (holding that the existence of litigation in federal district court was a matter of public record)

(4)     Duck Head Apparel Co. v. Hoots, 659 So. 2d 897 (Ala. 1995) (modifying the trial court's protective order to unseal certain portions of a trial transcript and trial exhibits)

(5)     Schillaci v. Gentry, 228 So. 3d 1016 (Ala. Civ. App. 2017) (trial court's order sealing consolidated grandparent visitation cases in their entirety was improperly entered because the order contained no written findings indicating that the wholesale sealing of an entire record was warranted)

(6)     N.B. v. J.C.R., 204 So. 3d 887 (Ala. Civ. App. 2016) (citing Holland as an example of a decision that provides the procedure for sealing records from public access)

(7)     Riley v. State, 166 So. 3d 705 (Ala. Crim. App. 2013) (holding that the defendant failed to establish by clear and convincing evidence that the court file should have been sealed and finding no error in the trial court's refusal to seal the file).

(8)    <u>State v. Martin</u>, 4 So. 3d 1196 (Ala. Crim. App. 2008) (trial court did not abuse its discretion in granting the defendant's motion to access the exhibits admitted at defendant's trial)

(9)    <u>Ex parte Birmingham News Co.</u>, 624 So. 2d 1117 (Ala. Crim. App. 1993) (citing <u>Holland</u> as a recent decision setting forth the procedures to be followed by trial courts in determining whether to seal a record and ordering the trial court to disclose certain specified documents from a criminal proceeding against the governor)

4.    Although there are no state court cases on point in Alabama, an Alabama federal court and a significant number of courts in other jurisdictions have held that "the parties' agreement to seal a settlement or other document is not a relevant consideration in the decision whether to seal." <u>Clark v. Bamberger</u>, No. 1:12cv1122-MHT, 2016 U.S. Dist. LEXIS 39864, at *11 (M.D. Ala. Mar. 28, 2016); <u>Whitewater West Indus. v. Pac. Surf Designs, Inc.</u>, No. 3:17-cv-01118-BEN-BLM, 2019 U.S. Dist. LEXIS 63617, at *3-4 (S.D. Cal. Apr. 11, 2019) ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records . . . . Moreover, the fact that both sides agree to seal or that the documents are designated confidential under a protective order is insufficient cause for sealing") <u>Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC</u>, No. 6:17-cv-1542-Orl-31DCI, 2018 U.S. Dist. LEXIS 217036, at *6-7 (M.D. Fla. July 25, 2018) ("The parties' agreement to seal records will not automatically result in the sealing of records"); <u>Mitcham v. Pittsburgh Cardiovascular Inst.</u>, No. 10-76, 2011 U.S. Dist. LEXIS 133280, at *2-3, n.1 (W.D. Pa. Nov. 18, 2011) ("The parties agreement to seal the case notwithstanding, the Court has an independent obligation to determine whether sealing the record is proper."); <u>Landmark Am. Ins. Co. v. Magoo's II, Inc.</u>, No. 3:07 CV 327 (MRK), 2007 U.S. Dist. LEXIS 75887, at *4 (D. Conn. Oct. 12, 2007) ("the parties' agreement to seal or limit disclosure of documents on file is not a sufficient basis for granting such an order"); <u>Zurich Am. Ins. Co. v. Rite Aid Corp.</u>, 345 F. Supp. 2d 497, 504 (E.D. Pa. Nov. 23, 2004) ("[J]udges should 'carefully and skeptically' review

3

privately-reached confidentiality agreements that are submitted to the court for approval before approving them. The court should not 'rubber stamp' any agreement among the parties to seal the record.").

**CONCLUSION**

Based on the foregoing authorities and for the reasons articulated in the Plaintiff's Motion for Relief (Doc. 376), Plaintiff Marina Stewart-Magee respectfully requests this Honorable Court to relieve the Plaintiff from the Court's Order entered April 6, 2016 (Doc. 20), and allow Snyder's deposition transcript to be presented to the District Attorney for Cullman County, Alabama.

Respectfully submitted this 20th day of September, 2019.

/s/ Mark W. Lee
**MARK W. LEE (LEE003)**
**KENDALL A. LEE (LEE091)**
Attorneys for Plaintiff
MARINA STEWART-MAGEE

**OF COUNSEL:**
**PARSONS, LEE & JULIANO, P.C.**
600 Vestavia Parkway, Suite 300
Birmingham, Alabama 35216
Telephone: (205) 326-6600
Facsimile: (205) 324-7097
mlee@pljpc.com
klee@pljpc.com

4

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 20<u>th</u> day of September, 2019, electronically filed the foregoing pleading with the Clerk of the Court using the AlaFile system which will send notification of such filing to the following:

David R. Wells, Esq.
**MUDD, BOLVIG, LUKE**
**& WELLS, LLC**
2011 4th Avenue North
Birmingham, Alabama 35203
dwells@wmslawfirm.com

Floyd D. Gaines, Esq.
**GAINES LLC**
2160 Highland Avenue South, Suite 101
Birmingham, Alabama 35205
fgaines@gainesllc.com

Daniel S. Wolter, Esq.
**DANIEL WOLTER LAW FIRM, LLC**
402 Office Park Drive, Suite 100
Birmingham, Alabama 35223
dwolter@wolterlawfirm.com

Jason P. Knight, Esq.
**KNIGHT & KNIGHT, LLC**
210 2nd Street SE
Cullman, Alabama 35055
jpknight@knight-knightattorneys.com

/s/ Mark W. Lee
OF COUNSEL